**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

OCADO INNOVATION LTD. and
OCADO SOLUTIONS LTD.,

     *Plaintiffs*,

     v.

AUTOSTORE AS and
AUTOSTORE SYSTEM, INC.,

     *Defendants*.

Case No.: 1:21-cv-00041-JL

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**TABLE OF CONTENTS**

I.      INTRODUCTION.................................................................................................... 1

II.     BACKGROUND ..................................................................................................... 1

        A.      Defendants ................................................................................................... 1

        B.      Ocado .......................................................................................................... 2

        C.      Litigation History ....................................................................................... 3

III.    LEGAL STANDARDS ........................................................................................... 3

        A.      Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2) ............................... 3

        B.      Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ........................... 4

        C.      Failure to Claim Patent Eligible Subject Matter Under 35 U.S.C. § 101 ............... 5

                1.      The Test for Patent Eligibility Under § 101 ................................... 5

                2.      Infringement Claims May Be Dismissed Under Section 101 at the
                        Pleadings Stage. ............................................................................. 7

IV.     ARGUMENT........................................................................................................... 8

        A.      All Claims Against AutoStore AS Should Be Dismissed For Lack of
                Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2) ............................... 8

                1.      The Court Lacks General Personal Jurisdiction over AutoStore AS .......... 8

                2.      The Court's Personal Jurisdiction Over AutoStore System, Inc.
                        Does Not Beget Personal Jurisdiction Over AutoStore AS ...................... 10

        B.      Ocado's Infringement Claims for the '404 Patent Should Be Dismissed
                Because the '404 Patent Claims Are Invalid Under Section 101 ......................... 13

                1.      The '404 Patent .............................................................................. 14

                2.      The Independent Claims Fail *Alice* Step One Because They Recite
                        Abstract Ideas................................................................................. 15

                3.      The Independent Claims Fail *Alice* Step 2 Because They Do Not
                        Disclose an "Inventive Concept" .................................................. 18

                4.      The Dependent Claims Add Nothing Inventive........................................ 19

C.      Ocado's Willful Infringement Claims For All Asserted Patents Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ............... 21

D.      Ocado's Indirect Infringement Claims For All Asserted Patents Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ............... 23

**V.      CONCLUSION ......................................................................................................... 25**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A Corp. v. All Am. Plumbing, Inc.*,
812 F.3d 54 (1st Cir. 2016)..............................................................................................4

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ............................................................................................... *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020)........................................................................................5

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2019)......................................................................................16

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015)......................................................................................17

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..........................................................................................................4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..........................................................................................................4

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)........................................................................................7

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018)..................................................................................5, 16

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014)......................................................................................18

*Canon, Inc. v. Avigilon USA Corp. Inc.*,
411 F. Supp. 3d 162 (D. Mass. 2019) .......................................................................23, 24

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020)........................................................................................7

*Carreras v. PMG Collins*,
LLC, 660 F.3d 549 (1st Cir. 2011) ..................................................................................4

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)........................................................................................7

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
  935 F.3d 1341 (Fed. Cir. 2019)...............................................................................6

*ChargePoint, Inc. v. SemaConnect, Inc.*,
  920 F.3d 759 (Fed. Cir. 2019)...................................................................... *passim*

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
  986 F.3d 1367 (Fed. Cir. 2021).............................................................................18

*D'Jamoos v. Atlas Aircraft Ctr., Inc.*,
  669 F. Supp. 2d 167 (D.N.H. 2009)........................................................................3

*Dagesse v. Plant Hotel N.V.*,
  113 F. Supp. 2d 211 (D.N.H. 2000).........................................................................3

*Daimler AG v. Bauman*,
  571 U.S. 117 (2014)...............................................................................................8, 9

*Danton v. Innovative Gaming Corp. of Am.*,
  246 F. Supp. 2d 64 (D. Me. 2003) ........................................................................10

*De Castro v. Sanifill, Inc.*,
  198 F.3d 282 (1st Cir. 1999)..................................................................................11

*E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
  No. 12-CV-517-LM, 2015 WL 226084 (D.N.H. Jan. 15, 2015), *amended in part*, No. 12-CV-517-LM, 2015 WL 925614 (D.N.H. Mar. 3, 2015), and *aff'd*,
  645 F. App'x 992 (Fed. Cir. 2016) .........................................................................6

*Elec. Power Grp., LLC v. Alstom S.A.*,
  830 F.3d 1350 (Fed. Cir. 2016)..........................................................................5, 15

*Enfish, LLC v. Microsoft Corp.*,
  822 F.3d 1327 (Fed. Cir. 2016)...............................................................................5

*Escude Cruz v. Ortho Pharm. Corp.*,
  619 F.2d 902 (1st Cir. 1980)..............................................................................10, 13

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
  839 F.3d 1089 (Fed. Cir. 2016)...............................................................................7

*Finjan, Inc. v. Cisco Sys. Inc.*,
  No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ............22, 23

*Gilbert v. City of Chicopee*,
  915 F.3d 74 (1st Cir. 2019)......................................................................................4

v

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
 564 U.S. 915 (2011)..................................................................................................8

*Halo Elecs. Inc. v. Pulse Elecs., Inc.*,
 136 S. Ct. 1923 (2016).....................................................................................21, 22, 23

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
 792 F.3d 1363 (Fed. Cir. 2015).............................................................................5, 7

*Interactive Wearables, LLC v. Polar Electro Oy*,
 No. 19-CV-3084 (GRB), 2020 WL 6792766 (E.D.N.Y. Nov. 19, 2020)..................................7

*Kowalski v. Doherty, Wallace, Pillsbury & Murphy*,
 787 F.2d 7 (1st Cir. 1986).........................................................................................3

*Kuan Chen v. United States Sports Acad., Inc.*,
 956 F.3d 45 (1st Cir. 2020).......................................................................................9

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
 566 U.S. 66 (2012)...............................................................................................4, 5

*Medici v. Lifespan Corp.*,
 239 F. Supp. 3d 355 (D. Mass. 2017) .......................................................................10

*Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
 472 F. Supp. 3d 377 (E.D. Mich. 2020)....................................................................22

*Negron-Torres v. Verizon Commc'ns, Inc.*,
 478 F.3d 19 (1st Cir. 2007).....................................................................................10

*Palomar Techs., Inc. v. MRSI Sys.*,
 LLC, 462 F. Supp. 3d 13 (D. Mass. 2020)..................................................................6

*Phillips v. Prairie Eye Ctr.*,
 530 F.3d 22 (1st Cir. 2008).......................................................................................4

*Platten v. HG Bermuda Exempted Ltd.*,
 437 F.3d 118 (1st Cir. 2006)................................................................................9, 13

*Presby Pat. Tr. v. Infiltrator Sys., Inc.*,
 No. 14-CV-542-JL, 2015 WL 3506517 (D.N.H. June 3, 2015) ................................................9

*Proxyconn Inc. v. Microsoft Corp.*,
 No. SACV 11-1681 DOC ANX, 2012 WL 1835680 (C.D. Cal. May 16, 2012) ....................23

*SAP Am., Inc. v. InvestPic, LLC*,
 898 F.3d 1161 (Fed. Cir. 2018)..................................................................................7

*Sawtelle v. Farrell*,
    70 F.3d 1381 (1st Cir. 1995)..................................................................................................3

*SEC v. Tambone*,
    597 F.3d 436 (1st Cir. 2010)..................................................................................................4

*Shay v. Walters*,
    702 F.3d 76 (1st Cir. 2012)....................................................................................................4

*Solutran, Inc. v. Elavon, Inc.*,
    931 F.3d 1161 (Fed. Cir. 2019)..................................................................................17, 18

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985)............................................................................................21

*Teradata US, Inc. v. SAP SE*,
    No. 20-CV-06127-WHO, 2021 WL 326930 (N.D. Cal. Feb. 1, 2021) ....................................7

*In re TLI Commc'ns LLC Patent Litig*,
    823 F.3d 607 (Fed. Cir. 2016)....................................................................................17, 18

*Trading Techs. Int'l, Inc. v. IBG LLC*,
    921 F.3d 1084 (Fed. Cir. 2019)............................................................................................16

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*,
    960 F.2d 1080 (1st Cir. 1992)..............................................................................................10

*United States v. Arkwright, Inc.*,
    690 F. Supp. 1133 (D.N.H. 1988).......................................................................................11

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    No. C 11-06638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012) ......................................22

*Verint Sys. Inc. v. Red Box Recorders Ltd.*,
    No. 14-CV-5403 (KBF), 2016 WL 7177844 (S.D.N.Y. Dec. 7, 2016).................................22

*Vita-Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)............................................................................................24

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016)............................................................................................21

*Zond, Inc. v. SK Hynix Inc.*,
    No. CIV.A. 13-11570-RGS, 2014 WL 346008 (D. Mass. Jan. 31, 2014)..............................23

**Statutes**

N.H. Rev. Stat. § 293-A:15.10...................................................................................................3

viii

**Rules**

Fed. R. Civ P. 12(b)(2)..................................................................................................................1

Fed. R. Civ. P. 12(b)(6).................................................................................................................1

## I.    INTRODUCTION

AutoStore AS hereby moves to dismiss Ocado Innovation Ltd. and Ocado Solutions Ltd.'s (collectively, "Ocado") amended complaint for lack of personal jurisdiction. *See* Fed. R. Civ P. 12(b)(2). AutoStore AS is a Norwegian corporation that does not maintain sufficient contacts with this district for the Court to exercise either general or specific personal jurisdiction over it.

Additionally, Defendants AutoStore AS and AutoStore System, Inc. (collectively, "Defendants") move to dismiss Ocado's willful infringement and induced infringement claims with respect to U.S. Patent Nos. 10,913,602 ("the '602 patent"); 10,901,404 ("the '404 patent"); and 9,796,080 ("the '080 patent") (collectively, "the Asserted Patents") because Ocado's allegations are insufficient to support the pre-suit knowledge requirements of these claims. *See* Fed. R. Civ. P. 12(b)(6). Defendants also move to dismiss all infringement claims with respect to the '404 patent because no claim of this patent is directed to patentable subject matter, and therefore all claims of the '404 patent are invalid pursuant to 35 U.S.C. § 101. *See id.*

## II.    BACKGROUND

### A.    Defendants

AutoStore AS is a Norwegian corporation with its headquarters and principal place of business at Stokkastrandvegen 85, 5578 Nedre Vats, Norway. Ex. 1 (Lier Decl.) ¶ 3. Since its founding in the 1990s in Nedre Vats, Norway, AutoStore AS has pioneered the development of, commercialized, and patented innovative Automated Storage and Retrieval Systems ("AS/RS"). Ex. 2 (1228 Compl.) ¶ 2. These systems provide unprecedented flexibility to warehouse owners and operators. *Id.* In these systems, storage bins are stacked vertically in a grid and stored in a cubic structure. *Id.* The bins are retrieved by robots travelling on the structure. *Id.* This makes it possible for the grid to be placed around columns, on mezzanines, and on multiple levels. *Id.*

Today, AutoStore AS conducts R&D on AS/RS systems and markets and sells the Red Line and Black Line solutions. Ex. 1 (Lier Decl.) ¶ 6. AutoStore Technology AS, a related company to AutoStore AS, has received numerous patents in the United States and around the world to protect its innovations in the AS/RS industry.

AutoStore System, Inc. is a Delaware subsidiary of AutoStore AS. Ex. 2 (1228 Compl.) ¶ 9. Its headquarters and principal place of business are at 3 Corporate Park Drive, Unit 1, Derry, NH 03038. Ex. 3 (Roy Decl.) ¶ 3. AutoStore System, Inc. markets the AutoStore AS/RS system to customers and partners in the United States and provides design, engineering, training, and support (including installation, testing, and repair) to customers and partners in the United States. *See id.* ¶ 5; Ex. 2 (1228 Compl.) ¶ 9.

### B.    Ocado

Ocado is a publicly traded online grocery retailer based in the United Kingdom. The company began a commercial delivery service in 2002. Ex. 2 (1228 Compl.) ¶ 24. In 2012, Ocado contacted AutoStore AS's predecessor, Jakob Hatteland Computer ("Hatteland Computer"), to buy the AutoStore AS/RS system and to acquire exclusive rights to distribute the AutoStore AS/RS system for sales in the grocery segment. *Id.* ¶ 25. Hatteland Computer rejected this proposal both because it had a multi-distribution strategy in all markets, and Ocado did not meet Hatteland Computer's criteria (in terms of experience, service organization, customer portfolio, etc.) for selling the AutoStore AS/RS system. *Id.* Ultimately, Ocado purchased an AutoStore AS/RS system in 2012 for use in one of its U.K. sites, using the distributor Swisslog to manage the project. *Id.* ¶ 26. After studying the AutoStore AS/RS system, Ocado released its own AS/RS system, the Ocado Smart Platform, just a few years later. *Id.*

### C.    Litigation History

This is a retaliatory lawsuit. AutoStore AS has been in litigation with Ocado for years. In 2016, Ocado sued AutoStore AS in Norway to gain ownership of an AutoStore patent family. But it failed. In 2019, Ocado then challenged AutoStore Technology AS's European patents in European opposition proceedings. By October 2020, Ocado had imported infringing robots into the United States, compelling AutoStore AS; AutoStore System, Inc.; and AutoStore Technology AS to file patent infringement complaints in the International Trade Commission (Inv. No. 337-TA-1228) and in the Eastern District of Virginia (Case No. 2:20-cv-00494), alleging that the Ocado Smart Platform infringes five AutoStore Technology AS patents. Ocado's retaliation began in December 2020 and January 2021, when Ocado filed for *inter partes* review and post-grant review before the Patent Trial and Appeal Board regarding the patents asserted in those cases. In February 2021, Ocado filed suit in the Eastern District of Virginia against AutoStore AS; AutoStore System, Inc.; and AutoStore Technology AS (Case No. 2:21-cv-00068), alleging that their enforcement of AutoStore Technology AS patents violates antitrust laws. Ocado also filed this retaliatory lawsuit on January 17, 2021.

## III.    LEGAL STANDARDS

### A.    Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2)

"Before a court may exercise personal jurisdiction over a non-resident defendant, the plaintiff must show, first, that the forum state's long-arm statute confers jurisdiction over the defendant, and second, that the exercise of jurisdiction comports with constitutional due process standards (by establishing that the defendant has sufficient 'minimum contacts' with the forum state)." *D'Jamoos v. Atlas Aircraft Ctr., Inc.*, 669 F. Supp. 2d 167, 169 (D.N.H. 2009) (citing *Kowalski v. Doherty, Wallace, Pillsbury & Murphy*, 787 F.2d 7, 9–10 (1st Cir. 1986)). New Hampshire's corporate long-arm statute, N.H. Rev. Stat. § 293-A:15.10, is coextensive with the

requirements of federal law, such that the satisfaction of the constitutional due process requirements for personal jurisdiction is sufficient to satisfy New Hampshire's jurisdictional requirements as well. *See Sawtelle v. Farrell*, 70 F.3d 1381, 1388 (1st Cir. 1995).

"When a defendant contests personal jurisdiction under Rule 12(b)(2), the plaintiff bears the burden of showing that a basis for asserting jurisdiction exists." *Dagesse v. Plant Hotel N.V.*, 113 F. Supp. 2d 211, 214 (D.N.H. 2000). The party invoking this Court's jurisdiction bears the burden of "proffer[ing] evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *A Corp. v. All Am. Plumbing, Inc.*, 812 F.3d 54, 58 (1st Cir. 2016) (quoting *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008)). To satisfy that standard, "a plaintiff may not rest on mere allegations but, rather, must submit competent evidence showing sufficient dispute-related contacts between the defendant and the forum." *Carreras v. PMG Collins*, LLC, 660 F.3d 549, 552 (1st Cir. 2011).

### B.    Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must accept "all well-pled facts in the complaint as true" and construe all reasonable inferences in the plaintiff's favor. *Gilbert v. City of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019). But the court "need not give weight to bare conclusions, unembellished by pertinent facts." *Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012). If the complaint's factual averments are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," dismissal is warranted. *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

C.      **Failure to Claim Patent Eligible Subject Matter Under 35 U.S.C. § 101**

1.      **The Test for Patent Eligibility Under § 101**

A patent is invalid under 35 U.S.C. § 101 if it claims patent-ineligible subject matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Patent eligibility under § 101 is assessed with a two-step test: First, the court determines whether the claims are directed to a patent ineligible concept—laws of nature, natural phenomena, or abstract ideas. *Id.* at 217 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)). If so, the court then determines whether the claims contain an "inventive concept"—that is, an "element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217–18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72).

Step one of the *Alice* test determines whether the "focus of the claims, their character as a whole," is directed to an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal quotations omitted). This entails looking to the specification to understand "the problem facing the inventor" and, ultimately, the described invention. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019). A claim is directed to an abstract idea when neither the claim nor the specification suggests an improvement in the functioning of a computer or other technology or technical field. *See id.* at 771; *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338-39 (Fed. Cir. 2016).

Courts recognize various forms of abstract ideas, including activity that can be performed mentally or with pen and paper. *See, e.g.*, *Alice*, 573 U.S. at 219; *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368–69 (Fed. Cir. 2015). Claims directed to an abstract idea do not become patentable simply by claiming the abstract idea within a narrow technological context or use case. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed.

5

Cir. 2018). Nor does reciting physical components make the claim subject matter eligible. *ChargePoint*, 920 F.3d at 774–75 (finding claims directed to networked electric vehicle charging stations patent ineligible). Indeed, "[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *Id.* at 769. A claim that recites a desired result without providing specific ways of achieving it may be directed to an abstract idea. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1294-95 (Fed. Cir. 2020) (claim reciting a goal without specifying a specific way of achieving it was directed to an abstract idea); *Palomar Techs., Inc. v. MRSI Sys.*, LLC, 462 F. Supp. 3d 13, 24 (D. Mass. 2020) (Saylor, J.) (claims describing only a basic conceptual framework of moving a component from a first point to a different desired second point, and then to a third and final desired point for attachment, were directed to an abstract idea).

Step two of the *Alice* test assesses whether the claim elements, individually or in their ordered combination, add an "inventive concept" that "transform the nature of the claim into a patent-eligible application" or "amount[] to significantly more" than a patent on the abstract idea itself. *Alice*, 573 U.S. at 217–18. These additional features cannot simply be "well-understood, routine, conventional activities previously known to the industry." *Id.* at 225. Implementing an abstract idea with generic technical components does not add an inventive concept. *ChargePoint*, 920 F.3d at 775 ("add[ing] network connectivity to these charging stations" does not improve the charging station "in an unconventional way."); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348 (Fed. Cir. 2019) (claims reciting specific hardware did not pass *Alice* step two because they added nothing inventive to the abstract idea). This Court has previously "applied [the] lesson of *Alice*" to find that "when the alleged innovation involves the use of a

6

generic computer to do what such computers typically do, i.e., speed up a process by eliminating the need for human activity, that innovation is not an invention eligible for patent protection." *E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-CV-517-LM, 2015 WL 226084, at *7 (D.N.H. Jan. 15, 2015), *amended in part*, No. 12-CV-517-LM, 2015 WL 925614 (D.N.H. Mar. 3, 2015), and *aff'd*, 645 F. App'x 992 (Fed. Cir. 2016).

### 2. Infringement Claims May Be Dismissed Under Section 101 at the Pleadings Stage.

Dismissing an infringement claim at the pleadings stage is appropriate where the asserted patent claims are patent ineligible under § 101. *See, e.g.*, *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097–98 (Fed. Cir. 2016). Patent eligibility under Section 101 is a question of law. *Intellectual Ventures I*, 792 F.3d at 1366. *Alice* step one presents a legal question that may be answered based on intrinsic evidence (*i.e.*, from the specification, claims, and file history of the patent). *See CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020). The second step of the *Alice* test may entail factual questions as to whether is something is well-understood, routine, and conventional to a person of ordinary skill in the art at the time of the patent. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). Dismissal of an infringement claim at the pleadings stage under § 101 is nonetheless appropriate in the absence of plausible, non-conclusory, and specific allegations that the claims contain an inventive concept. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Like other legal questions based on underlying facts, [patent eligibility under § 101] may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law."); *Interactive Wearables, LLC v. Polar Electro Oy*, No. 19-CV-3084 (GRB), 2020 WL 6792766, at *11 (E.D.N.Y. Nov. 19, 2020) (no proper allegations that the claims

7

contained an inventive concept); *Teradata US, Inc. v. SAP SE*, No. 20-CV-06127-WHO, 2021 WL 326930, at *6 (N.D. Cal. Feb. 1, 2021) (specification did not support the inventive concept that patentee claimed were recited by the claims); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317–1318 (Fed. Cir. 2019).

## IV.     ARGUMENT

### A.     All Claims Against AutoStore AS Should Be Dismissed For Lack of Personal Jurisdiction Under Fed. R. Civ. P. 12(b)(2)

Ocado names AutoStore AS, the Norwegian parent of AutoStore System, Inc., as a defendant, alleging that personal jurisdiction exists over this foreign corporation because "AutoStore AS has its U.S. principal place of business in New Hampshire," and because of the alleged infringement activities of AutoStore AS's U.S. subsidiary, AutoStore System, Inc., in this district. Dkt. 11 ("Am. Compl.") ¶ 29.

Ocado's first allegation for asserting personal jurisdiction over AutoStore AS is rooted in general jurisdiction. General jurisdiction exists when "the corporation's affiliations with the State in which suit is brought are so constant and pervasive 'as to render [it] essentially at home in the forum State.'" *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Ocado's second alleged basis is rooted in specific jurisdiction, which "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 564 U.S. at 919 (internal quotations omitted). Neither provides a proper basis to exercise personal jurisdiction over AutoStore AS in New Hampshire.

### 1.     The Court Lacks General Personal Jurisdiction over AutoStore AS

Ocado's first alleged basis for personal jurisdiction over AutoStore AS is that "AutoStore AS has its U.S. principal place of business in New Hampshire," such that general jurisdiction can

be exercised over AutoStore AS. Am. Compl. ¶ 29; *see Daimler*, 571 U.S. at 137 ("With respect to a corporation, the place of incorporation and principal place of business are 'paradigm … bases for general jurisdiction.'"). But this is false: AutoStore AS does not maintain a principal place of business in the U.S., let alone in New Hampshire. *See* Ex. 1 (Lier Decl.) ¶ 3. The only AutoStore entity with a principal place of business in New Hampshire is AutoStore System, Inc., the U.S. subsidiary of AutoStore AS. *Id* ¶ 5.[1]

Nor does AutoStore AS "have systematic and continuous contacts with the forum that sets the forum apart from the other states where defendant may conduct business—contacts that render the forum in some manner equivalent to a principal place of business." *Presby Pat. Tr. v. Infiltrator Sys., Inc.*, No. 14-CV-542-JL, 2015 WL 3506517, at *5 (D.N.H. June 3, 2015). As explained in more detail below, AutoStore AS's only contacts with New Hampshire are through its subsidiary AutoStore System, Inc. That relationship does not create contacts that are "so unusually substantial that [AutoStore AS] can fairly be described as at home" in this district. *Kuan Chen v. United States Sports Acad., Inc.*, 956 F.3d 45, 57 (1st Cir. 2020); *see also Daimler*, 571 U.S. at 136 ("[S]ubject[ing] foreign corporations to general jurisdiction whenever they have an in-state subsidiary or affiliate [is] an outcome that would sweep beyond even the 'sprawling view of general jurisdiction' we rejected in *Goodyear*."); *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 139 (1st Cir. 2006) (rejecting general jurisdiction over nonresident parent where alleged contacts with the forum were based on the activities of a subsidiary).

---

[1] The complaint in Inv. No. 337-TA-1228 states that "AutoStore AS has established offices in six locations outside of Norway, including the United States (Derry, New Hampshire and Londonderry, New Hampshire)… ." Ex. 2 (1228 Compl.) ¶ 16. This statement should not have included the "AS." In fact, AutoStore AS has six **subsidiaries** outside of Norway, including AutoStore System, Inc. in the United States. *See* Ex. 1 (Lier Decl.) ¶ 4.

9

### 2. The Court's Personal Jurisdiction Over AutoStore System, Inc. Does Not Beget Personal Jurisdiction Over AutoStore AS

Ocado further alleges that specific personal jurisdiction exists over AutoStore AS in New Hampshire "at least through AutoStore System, Inc." by way of that entity's alleged acts of infringement in this district. Am. Compl. ¶ 29. But "[t]he mere fact that a subsidiary company does business within a state does not confer jurisdiction over its nonresident parent, even if the parent is sole owner of the subsidiary." *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980). Rather, "[t]here is a presumption of corporate separateness that must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Id.* There is no such evidence that AutoStore AS controls the activities of AutoStore System, Inc.; thus specific personal jurisdiction cannot be exercised over AutoStore AS in this Court.

Courts in this circuit have determined that "a non-resident parent corporation is amenable to suit in the forum state if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction," indicating that the subsidiary is merely an "alter ego" of the parent. *Medici v. Lifespan Corp.*, 239 F. Supp. 3d 355, 371–72 (D. Mass. 2017) (citing *Danton v. Innovative Gaming Corp. of Am.*, 246 F. Supp. 2d 64, 72 (D. Me. 2003)). This analysis for jurisdictional purposes "has generally been seen as analogous to piercing the corporate veil." *Id.* at 372 (citing *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.*, 960 F.2d 1080, 1091 (1st Cir. 1992); *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 27 (1st Cir. 2007)). In New Hampshire, courts holistically consider the following factors to determine if a parent controls a subsidiary for purposes of piercing the corporate veil (and therefore for personal jurisdiction purposes):

> (1) intermingling of the corporations' properties, accounts and records, employees, and business transactions; (2) failure to observe corporate formalities (i.e., if the directors and officers of each corporation are common, separate meetings and delineation of the respective capacities in which the common

10

officials serve should be observed); (3) inadequate capitalization of the subsidiary; (4) enterprises not held out to the public as separate entities; (5) policies of the subsidiary directed primarily to the parent; and (6) the parent's control over the day-to-day operations of the subsidiary.

*United States v. Arkwright, Inc.*, 690 F. Supp. 1133, 1139 (D.N.H. 1988) (citations omitted). None of these factors supports exercising jurisdiction.

**First**, AutoStore System, Inc. leases all AutoStore facilities in the U.S.; all accounts and records (including invoices, paychecks, and financial reports) are AutoStore System, Inc.'s; and AutoStore System, Inc. employees are ***not*** employees of AutoStore AS (and vice versa). *See* Ex. 1 (Lier Decl.) ¶ 7; Ex. 3 (Roy Decl.) ¶¶ 4, 11–12. The first factor therefore indicates formal separation between the Norwegian and U.S. entities.

**Second**, although AutoStore System, Inc. and AutoStore AS have three overlapping directors (Karl Johan Lier, Gro Anita Klungtveit, and Helge Olsen), the companies hold separate board meetings with separate board resolutions. *See* Ex. 1 (Lier Decl.) ¶ 8; Ex. 3 (Roy Decl.) ¶ 8; *De Castro v. Sanifill, Inc.*, 198 F.3d 282, 283 (1st Cir. 1999) (holding that "the fact that the officers and directors of the two local corporations were also officers and directors of the parent" "would not establish a measure of control over them sufficient…to reject their own corporate identity."). This formal separation between the companies' boards and their activities confirms AutoStore System, Inc. is not an "alter ego" of AutoStore AS.

**Third**, AutoStore System, Inc. is adequately capitalized. AutoStore System, Inc. earns revenue from multiple independent revenue-generating activities: commissions based on AutoStore System, Inc.'s contributions to the implementation of AutoStore systems in North America; sales of AutoStore systems and spare parts to North American customers; freight costs on product sales; and on-site service revenue paid to AutoStore System, Inc. by distribution partners and/or AutoStore AS. *See* Ex. 3 (Roy Decl.) ¶¶ 5-6. Earnings from these revenue

11

streams are retained by AutoStore System, Inc. *Id.* ¶ 6. AutoStore System, Inc. thus is not a "shell" that operates from AutoStore AS's coffers, but rather is an independently capitalized entity.

*Fourth*, AutoStore AS and AutoStore System, Inc. are presented to the public as separate entities. Distributors and customers work with employees from both AutoStore AS and AutoStore System, Inc., and understand that all Norway-based individuals are employed by the parent company while all U.S.-based employees are employed by the subsidiary. Ex. 3 (Roy Decl.) ¶ 14. This is communicated, for example, by the presence of "AutoStore System, Inc." and/or the New Hampshire headquarters' address in AutoStore System, Inc. employees' email signatures, letterhead, and business cards. *Id.* ¶ 13.

*Fifth*, AutoStore System, Inc. does not have any policies that are directed primarily to AutoStore AS. While all AutoStore AS subsidiaries follow the same overall guidelines on how to do business, AutoStore System, Inc.'s policies are all directed to the business and operation of AutoStore System, Inc. on its own. *See* Ex. 1 (Lier Decl.) ¶ 10; Ex. 3 (Roy Decl.) ¶ 15.

*Sixth*, AutoStore AS does not directly control the day-to-day activities of AutoStore System, Inc. While AutoStore AS employees are involved in discussions with AutoStore System, Inc. regarding project opportunities and global strategy, all day-to-day sales and operational activities are managed by Paul Roy, Managing Director of AutoStore System, Inc., and conducted by employees of AutoStore System, Inc. in the United States. *See* Ex. 3 (Roy Decl.) ¶¶ 7, 10; Ex. 1 (Lier Decl.) ¶ 10. AutoStore System, Inc. also works with an external U.S.-based accountant that helps Mr. Roy and board member Gro Anita Klungtveit set an annual budget for the company, which guides day-to-day operations. *See* Ex. 3 (Roy Decl.) ¶ 9; Ex. 1 (Lier Decl.) ¶ 9. The external accountant provides monthly financial reports to Mr. Roy and Ms. Klungtveit

12

for AutoStore System, Inc. Ex. 3 (Roy Decl.) ¶ 9. The external accountant only works for AutoStore System, Inc., not AutoStore AS. *Id.* This day-to-day independence further establishes the lack of control exercised by AutoStore AS over AutoStore System, Inc. for purposes of the veil-piercing and jurisdictional analysis.

All six factors establish that AutoStore System, Inc. is an independently-operating subsidiary—not the alter ego of AutoStore AS—supporting the "presumption of corporate separateness" that precludes the Court from disregarding the corporate form. *Escude Cruz*, 619 F.2d at 905; *see also Platten*, 437 F.3d at 139 ("Again, there is no reason to disregard the corporate form in this case. Ultimately, nothing in the record substantiates the proposition that [defendant] 'plainly made a choice to avail itself of the forum's benefices.'"). AutoStore System, Inc.'s alleged infringement activities in New Hampshire thus do not establish specific personal jurisdiction over AutoStore AS. As a result, AutoStore AS should be dismissed as a defendant in this case for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2).

**B.      Ocado's Infringement Claims for the '404 Patent Should Be Dismissed Because the '404 Patent Claims Are Invalid Under Section 101**

Further, because the claims of the '404 patent are invalid under 35 U.S.C. § 101, Ocado's infringement claims for that patent should be dismissed. The claims are directed to the abstract idea of routing vehicles, specifically: (1) finding routes for vehicles; (2) reserving paths while ensuring that the vehicles do not collide; and (3) instructing the vehicles to proceed on the path one segment at a time. This is not an "inventive concept." These basic traffic management concepts—which can be performed in a human's mind or with pen and paper—neither improve the functioning of the computer nor any other technology or technical field. *Alice*, 573 U.S. at 225. At most, they recite routing robot traffic using generic electronics or computer systems ("units" as referred to by claim 1) to automate a mental process—and thus are not patentable.

13

### 1.      The '404 Patent

The '404 patent relates to methods for retrieving units from a storage system using robots, as well as to systems and methods for coordinating product movement in a storage system. Am. Compl., Ex. 17, ("the '404 patent") at 1:20–26. The patent identifies a "need … for systems and processes for coordinating and controlling product movement" in a storage system. *Id.* at 2:29–30. The patent describes the need to optimize container placement in a storage system based on traffic flow, and identifies "systems and processes for coordinating and controlling product movement" as desirable. *Id.* at 2:22–30. The patent also identifies "co-ordination of the movement of the one or more robot[s]" (*id.* at 1:62–67; *see also* 2:31–33) as an objective.

The '404 patent describes a system to control the movement of robots on a grid:



FIG. 7

*Id.* at Fig. 7; 10:35–39. The control system is described as consisting of multiple generic "modules," including a "movement optimisation module," a "reservation module," and a "clearance module. *Id.* at Fig. 3, 10:35–39 and 13:24–40. These three "modules" work together to find paths for robot to reduce the chance that robots collide, and to resolve path conflicts: The

14

"movement optimisation module," using off-the-shelf computing equipment, calculates a path and reserves it using the reservation module; the clearance module resolves conflicts in the paths. *Id.* at 15:43–49 and 16:1–8.

Independent claims 1 and 20 focus on controlling the robots' movement by determining a route on the grid for each robot, reserving non-overlapping paths, and providing a clearance instruction for each vehicle to travel along the reserved path. The actions are recited at a generic level, without specifying how each step is performed (*e.g.*, no specific algorithm is provided). Dependent claims 2–19 provide additional detail regarding: (1) the clearance instructions and clearance unit (claims 2–4, 6–8, 11–14); (2) how the control system dynamically re-plans the routes of the robots (claims 5, 9, 10, and 19); and (3) the storage system configuration and the transporting device (claims 15-18).

### 2.    The Independent Claims Fail *Alice* Step One Because They Recite Abstract Ideas

It is well established that claims reciting limitations that may be performed in the mind are directed to an abstract idea (a mental process). *Alice*, 573 U.S. at 219; *Elec. Power Grp.*, 830 F.3d at 1353–54. Independent claims 1 and 20 fail *Alice* step one for that reason: They recite results-based functional actions—traffic planning and collision avoidance—that can be performed in the human mind or with pen and paper.

Independent claim 1 recites three elements:[2] (1) "a movement optimisation unit" that is "configured to determine a route" for each robot vehicle on the grid; (2) "a reservation unit" that is "configured to reserve a path on the grid-like structure for each transporting device based on the determined route," where the path for each transporting device does not overlap with the path

---

[2]    Claim 1 is a representative independent claim; the only other independent claim (20) recites a corresponding method that does not even recite generic "units." Claim 20 is invalid under 35 U.S.C. § 101 for the same reasons that claim 1 is.

for any other transporting device; and (3) "a clearance unit" that is "configured to provide a clearance instruction" to each transporting device to traverse a portion of the reserved path, where the clearance instruction is for execution by the transporting device at a future time. '404 patent at 26:1–17. All three elements—determining a route, reserving a path based on that route, and providing a clearance instruction to traverse a portion of the reserved path—are directed to the abstract idea of vehicle routing. Any person could determine such a path.[3] She could then mentally or with the aid of pen and paper "reserve" non-overlapping paths to prevent vehicles colliding. And, at the beginning of each reserved path, she could instruct each vehicle whether it is clear to proceed or must stop to avoid collisions. People driving to work in densely packed cities, not to mention presidential motorcades, do these basic path-planning steps routinely. But they cannot patent these routine activities.

Claim 1 is directed to the abstract idea of route planning even though it refers to a particular technological context (movement of robots on a "grid-like structure" in a storage facility), and recites physical elements ("transporting devices"). *BSG Tech*, 899 F.3d at 1287. The claims are not limited to any particular—let alone novel—ways of computing routes, reserving paths, and/or issuing clearance instructions; they cover well-known methods of doing so. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2019) (affirming ruling that the claims were directed to an abstract idea when they did not recite specific means or methods of improving the relevant technology and instead were directed to the desired result which was an abstract idea). Nothing in the complaint or the specification indicates that the combination of

---

[3] The claims do not require that the routes determined by the "movement optimisation unit" be optimal in any sense—only that they be for "a transporting device from one location on a grid-like structure to another location on the grid-like structure." Although the specification refers to certain search algorithms (*see* '404 patent at 22:12–25:43), it does not describe any as novel, and the claims are not so limited—their broad wording covers known methods.

routing, reserving, and issuing clearance instructions was in itself novel and/or improved the prior art. Nor does the fact that claim 1 purports to carry out the abstract idea using generic computer components ("units") render it non-abstract—that would require that the claim improve the functioning of a computer or solve another technological problem. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) (the claims were directed to abstract idea because they did "not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem," but instead recited generic information that assisted the user in processing information more quickly).

Claim 1 recites generic computer components "configured to" perform the abstract steps. '404 patent at 26:2–17; *see also id.* at 13:36–40, 4:33–35, 21:19–23, 21:48–22:7 (the "present system and method" may be implemented on a host of conventional platforms through "generic computer hardware and software implementation," including both the web and computers such as "generic computer device 100"). The other independent claim (20) does not even have that limitation, and it may be performed entirely by a person in their mind.

And claims 1 and 20 do not improve the functioning of a computer (the patent specification does not even make such a contention). *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1166-67 (Fed. Cir. 2019) (invalid claims were directed to abstract idea of "electronic check processing" and did not improve the underlying technologies of technical capture of check information or electronic crediting of a bank account).

Nor do claims 1 and 20 improve another technology or technical field. To assess whether a claim improves the technology or technical field, courts assess whether the claim addresses "the problem facing the inventor" as described in the specification. *See ChargePoint*, 920 F.3d at 767; *In re TLI Commc'ns LLC Patent Litig*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Ariosa*

17

*Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015). Here, the specification references two problems, neither of which are improved upon by the claim. ***First***, the specification states that "[t]he co-ordination of the movement of the one or more robot[s]," is potentially "an important consideration in determining the overall efficiency and scalability of a system for storage and retrieval of a large number of different products." '404 patent at 1:62–67. Although the claims are directed to a system for coordinating the movements of transportation devices on a grid, the specification does not identify any specific problem in the prior art, let alone solve it with the recited claims. *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021) (finding that the claims were directed to an abstract idea where they did not recite a solution to the problem in the specification). ***Second***, the specification addresses optimization of container placement as the technical problem. '404 patent at 2:22–30. But the claims do not focus on or even address this problem; instead, they concern routing robots.

### 3.     The Independent Claims Fail *Alice* Step 2 Because They Do Not Disclose an "Inventive Concept"

The independent claims (1 and 20) are invalid. None adds elements that, either individually or in combination, would provide an "inventive concept." *See Alice*, 573 U.S. at 217–18. Neither the allegations in Ocado's amended complaint (*see* Am. Compl. ¶¶ 42–46) nor the specification provide any facts suggesting that route computation, reserving non-overlapping paths, and issuing clearance instructions using generic "units" was at all novel in the existing art. *ChargePoint*, 920 F.3d at 774–75 (adding well-known network communication to conventional charging systems did not add an inventive concept).

Simply having "an 'abstract-idea-based solution implemented with generic technical components in a conventional way'" does not satisfy step two of *Alice*. *ChargePoint*, 920 F.3d at 775; *see also Alice*, 573 U.S. at 223 ("[T]he mere recitation of a generic computer cannot

18

transform a patent-ineligible abstract idea into a patent-eligible invention."); *Solutron*, 931 F.3d at 1169; *In re TLI Commc'ns*, 823 F.3d at 614 (claims using only conventional computer components to implement abstract data did not add an "inventive concept"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (invocation of generic computer functionality "adds no inventive concept"). Claim 1 uses generic computer "units" to automate the mental processes of routing, reserving paths, and providing clearance instructions as vehicles move along paths—nothing more. Claim 20 does not even recite the generic "units." According to the specification, the claims are implemented using a range of conventional platforms such as desktop computers and web-based servers. *See* '404 patent at 13:36–40; *see also id.* at 21:19–23, 21:48–22:7 (explaining that the "present system and method" may be implemented on a host of conventional platforms, including both the web and computers).

### 4.    The Dependent Claims Add Nothing Inventive

Independent claims 2-19 are directed to the same abstract idea as claims 1 and 20. The specification provides no facts, and the complaint alleges none, suggesting that any of the additional features of dependent claims 2-19 adds anything inventive to the prior art.

**Dependent claim 2:** This claim adds that the time between when the clearance instruction is provided and the time at which it is executed is configurable. Use of a configurable time parameter was well-known and may be done in the mind or with conventional computers.

**Dependent claims 3, 4 and 6:** The claims recite conditioning the provision of a clearance instruction (3 and 6) or canceling a path (4) contingent on receiving an acknowledgment. This conditioning was well-known and may be done in the mind or with conventional computers.

**Dependent claims 5 and 9:** These claims recite "re-plan[ning] an operation for the transporting device" (5) or "dynamic re-plan[ning]" of a route (9). Re-planning "an operation"

(which may be *any* elementary operation, such as flashing a light) was well-known and could be performed in someone's mind or with conventional components. Likewise, dynamic re-planning, without more, is an abstract idea.

**Dependent claim 7:** This claim requires the clearance unit to be "a passive collision avoidance system" that does not "impact system performance." The claim has no details tied to it and remains an abstract idea; nor do any facts suggest it recites novel elements.

**Dependent claims 8 and 11:** These claims recite granting or withholding a clearance instruction based on certain factors. No facts in the specification or complaint suggest that these actions, recited at a high level of generality, were novel.

**Dependent claim 10:** This claim requires the "movement optimisation unit" to calculate a route that avoids conflicts "when at least one message is not received." Conflict avoidance, without detail as to how it is done, was a well-known generic concept and could be performed in the mind or with conventional computers.

**Dependent claim 12:** This claim requires the clearance unit to calculate a set of safe entry times for grid positions based on at least one of a number of factors. Similar to claims 8 and 11, no facts suggest that calculation of entry times (at that level of generality) was novel.

**Dependent claim 13:** This claim merely adds that the clearance unit provides clearance instruction for a predetermined period of time. No facts suggest this was novel.

**Dependent claim 14:** This claim requires the control unit to control movements based on information received from the clearance unit. No facts in the specification or complaint indicate that generic control based on received information was novel.

**Dependent claims 15 and 16:** These claims recite a storage facility or single-cell robots. No facts in the specification or complaint indicate that the facilities or robots were novel (or that

20

use of a system of claim 1 in those systems was). Indeed, the patent acknowledges that the facilities were well-known. '404 patent at 1:30–36, 2:1–21.

**Dependent claims 17-19:** These claims recite particular actions if a clearance instruction is not received before a specific time. No facts in the specification or alleged in the complaint indicate that any of these actions (an abstract idea) adds anything novel to the prior art.

### C. Ocado's Willful Infringement Claims For All Asserted Patents Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

Ocado alleges willful infringement via Defendants' alleged preexisting generalized knowledge of "Ocado's patented technologies." *See* Am. Compl. ¶¶ 69–72, 77, 86, 93. Ocado has not specifically alleged that Defendants had pre-suit knowledge of the Asserted Patents, or that Defendants engaged in any "egregious" conduct. Thus, Ocado has failed to state a willful infringement claim under the Supreme Court's decision in *Halo Elecs. Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

***First***, the defendant's prior knowledge of the asserted patents is a necessary component to show willfulness under *Halo*. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). To plead knowledge, the plaintiff must allege that defendant had knowledge of the ***specific patents*** at issue. *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe *a patent*, the patent must exist and one must have knowledge of it.") (emphasis in original). Ocado merely alleges that it "made Defendants aware of its patent portfolio" during the course of their business relationship, that Ocado and Defendants "are the only competitors in the Cubic AS/RS market," that Defendants submitted third-party observations during prosecution of "international patent applications related to the Asserted Patents," and that Defendants "frequently" have cited Ocado's patents in their own patent applications. Am. Compl. ¶¶ 69-71. But that is insufficient. Ocado does not allege that

21

Defendants cited the Asserted Patents in their own applications. Nor does it allege that Ocado made Defendants aware of the Asserted Patents. None of Ocado's general allegations related to its overall technologies and patent portfolio give rise to an inference that Defendants had pre-suit knowledge of the Asserted Patents. *See Verint Sys. Inc. v. Red Box Recorders Ltd.*, No. 14-CV-5403 (KBF), 2016 WL 7177844, at *3 (S.D.N.Y. Dec. 7, 2016) (knowledge of the asserted patents was not established where "the collective evidence shows that Red Box knew that plaintiffs were competitors, had a technology portfolio, and had certain patents"); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) ("The requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of *other* patents, even if somewhat similar.") (emphasis in original); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) ("Knowledge of a patent portfolio generally is not the same thing as knowledge of a specific patent"). The Court should dismiss Ocado's willful infringement allegations on this basis alone.

***Second***, Ocado has not properly alleged egregious conduct—another required element of willful infringement. Specifically, Justice Breyer's concurring opinion in *Halo* indicates that knowledge alone is insufficient to state a willful infringement claim. *Halo*, 136 S. Ct. at 1936 ("[T]he Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*.") (emphasis in original). While neither the Federal Circuit nor this district has spoken to the issue, the majority of district courts addressing it have relied on Justice Breyer's concurrence to conclude that an allegation of willful infringement without evidence of egregiousness is

22

insufficient, futile, and must be dismissed. *See Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 383–84 (E.D. Mich. 2020) (collecting cases).

Ocado has failed to allege such egregious conduct here. At most, Ocado alleges that Defendants released a new product that infringes Ocado's patents (which Defendants dispute), summarily concluding that this behavior is indicative of "deliberat[e] cop[ying]." Am. Compl. ¶¶ 13–21, 71. When Ocado's unsupported conclusory allegations are properly ignored, however, Defendants' alleged conduct does not rise to the level of egregiousness necessary to support a claim for willful infringement—i.e., conduct that is "willful, wanton, malicious, bad–faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo*, 136 S. Ct. at 1932; *see also Finjan*, 2017 WL 2462423, at *5 ("Finjan makes no specific factual allegations about Cisco's subjective intent, or any other aspects of Cisco's behavior that would suggest its behavior was 'egregious.' Instead, Finjan has simply made conclusory allegations of knowledge and infringement, which, considered in the totality of circumstances here, is not enough to plausibly allege 'egregious[ness].'"). Ocado's failure to adequately allege egregious conduct provides an independent ground to dismiss its willful infringement claims.

**D.    Ocado's Indirect Infringement Claims For All Asserted Patents Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

Further, because Ocado fails to allege that Defendants had pre-suit knowledge of the Asserted Patents and that Defendants had the specific intent to infringe, its claims for indirect infringement must be dismissed as well. "To state a viable claim for induced infringement, plaintiff must allege that defendant (1) knew of the patent, (2) knowingly induced infringing acts, and (3) acted with specific intent." *Canon, Inc. v. Avigilon USA Corp. Inc.*, 411 F. Supp. 3d 162, 164 (D. Mass. 2019) (citations omitted).

***First***, while neither the Federal Circuit nor this Court has spoken to the precise issue, other courts in this circuit have held that "a complaint is sufficient to demonstrate actual knowledge in order to state a claim for inducement ***when limited to post-filing conduct only in a later-amended complaint***." *Id.* at 165 (emphasis added); *Zond, Inc. v. SK Hynix Inc.*, No. CIV.A. 13-11570-RGS, 2014 WL 346008, at *3 (D. Mass. Jan. 31, 2014); *see also Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC ANX, 2012 WL 1835680, at *7 (C.D. Cal. May 16, 2012) ("[A] complaint fails to state a claim for indirect patent infringement where the *only* allegation that purports to establish the knowledge element is the allegation that the complaint itself or previous complaints in the same lawsuit establish the defendant's knowledge of the patent.") (emphasis in original). Here, because Ocado does not allege pre-suit knowledge, Defendants' knowledge of the Asserted Patents (and alleged inducement) can only be set as of complaint. *Canon, Inc.*, 411 F. Supp. 3d at 164. As a result, Ocado's claims for induced infringement must be dismissed.

***Second***, even if the Court were to hold that knowledge of the patents as of the date of filing of the lawsuit is sufficient, Ocado has still not properly alleged that Defendants have the requisite specific intent. Ocado's allegations at face value would only show that Defendants provide "instructions, manuals, technical assistance, and promotional materials relating to the installation, use, operation, and maintenance" of the accused functionalities. Am. Compl. ¶ 75. None of this, construed most favorably to Ocado, would suffice to show that Defendants had the requisite specific intent—*i.e.*, the specific intent to cause others to perform an act that Defendants knew would constitute infringement. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328–29 (Fed. Cir. 2009) (declining to find inducement where "the record [was] devoid of actual evidence establishing specific intent to encourage customers to infringe" and the

24

product instructions and product design relied upon by plaintiff did not "support an inference of intent").

## V.    CONCLUSION

For the foregoing reasons, AutoStore AS respectfully requests that the Court grant its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2), and Defendants AutoStore AS and AutoStore System, Inc. request that the Court grant their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: March 22, 2021      Respectfully Submitted,

             AUTOSTORE AS,

             By Its Attorneys,

             */s/ Robert R. Lucic*

             Robert R. Lucic (NH Bar #9062)
             Bryanna K. Devonshire (NH Bar #269462)
             SHEEHAN PHINNEY BASS & GREEN PA
             1000 Elm Street, PO Box 3701
             Manchester, NH 03105
             (603) 627-8188
             rlucic@sheehan.com
             bdevonshire@sheehan.com

             **-and-**

             AUTOSTORE SYSTEM, INC.,

             By Its Attorneys,

             */s/ Robert R. Lucic*

             Robert R. Lucic (NH Bar #9062)
             Bryanna K. Devonshire (NH Bar #2694620
             SHEEHAN PHINNEY BASS & GREEN PA
             1000 Elm Street, PO Box 3701
             Manchester, NH 03105
             (603) 627-8188
             rlucic@sheehan.com
             bdevonshire@sheehan.com

             Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
             Emily M. Scott (admitted *pro hac vice*)
             KIRKLAND & ELLIS LLP
             1301 Pennsylvania Avenue, N.W.
             Washington, D.C. 20004
             (202) 389-5000
             glocascio@kirkland.com
             emily.scott@kirkland.com

             Joseph A. Loy, P.C. (admitted *pro hac vice*)
             KIRKLAND & ELLIS LLP
             601 Lexington Avenue
             New York, NY 10022

26

(212) 446-4800
jloy@kirkland.com

Ali-Reza Boloori (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
ali-reza.boloori@kirkland.com

27

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 22nd day of March 2021.

/s/ *Robert R. Lucic*
Robert R. Lucic

28