**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| OCADO INNOVATION LTD. and<br>OCADO SOLUTIONS LTD.,<br><br>*Plaintiffs*,<br><br>v.<br><br>AUTOSTORE AS and<br>AUTOSTORE SYSTEM INC.,<br><br>*Defendants*. | Case No.: 1:21-cv-00041-JL |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF PARTIALLY RENEWED MOTION TO DISMISS**

# TABLE OF CONTENTS


**I. INTRODUCTION ........ 1**

**II. BACKGROUND ........ 1**

A. Defendants ........ 1

B. Ocado ........ 2

C. Litigation History ........ 3

**III. LEGAL STANDARDS ........ 3**

A. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ........ 3

B. Failure to Claim Patent Eligible Subject Matter Under 35 U.S.C. § 101 ........ 4

1. The Test for Patent Eligibility Under § 101 ........ 4

2. Infringement Claims May Be Dismissed Under Section 101 at the Pleadings Stage. ........ 6

**IV. ARGUMENT ........ 7**

A. Ocado's Infringement Claims for the '404 Patent Should Be Dismissed Because the '404 Patent Claims Are Invalid Under Section 101 ........ 7

1. The '404 Patent ........ 7

2. The Independent Claims Fail *Alice* Step One Because They Recite Abstract Ideas ........ 9

3. The Independent Claims Fail *Alice* Step 2 Because They Do Not Disclose an "Inventive Concept" ........ 14

4. The Dependent Claims Add Nothing Inventive ........ 16

B. Ocado's Direct Infringement Claims for the '404 Patent Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ........ 18

C. Ocado's Willful Infringement Claims For All Asserted Patents Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ........ 19

D. Ocado's Indirect Infringement Claims For All Asserted Patents Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6) ........ 24

**V. CONCLUSION ........ 25**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
573 U.S. 208 (2014) ........ *passim*

*Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*,
967 F.3d 1285 (Fed. Cir. 2020) ........ 5

*Apple, Inc. v. Ameranth, Inc.*,
842 F.3d 1229 (Fed. Cir. 2019) ........ 11

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015) ........ 12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 3

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 3

*Berkheimer v. HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018) ........ 6

*BSG Tech LLC v. Buyseasons, Inc.*,
899 F.3d 1281 (Fed. Cir. 2018) ........ 5, 11

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) ........ 15

*Canon, Inc. v. Avigilon USA Corp. Inc.*,
411 F. Supp. 3d 162 (D. Mass. 2019) ........ 24, 25

*CardioNet, LLC v. InfoBionic, Inc.*,
955 F.3d 1358 (Fed. Cir. 2020) ........ 6

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019) ........ 7

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
935 F.3d 1341 (Fed. Cir. 2019) ........ 6

*ChargePoint, Inc. v. SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019) ........ *passim*

*cxLoyalty, Inc. v. Maritz Holdings Inc.*,
986 F.3d 1367 (Fed. Cir. 2021) ........ 13

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
815 F. App'x 529 (Fed. Cir. 2020) ..... 13

*E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*,
No. 12-CV-517-LM, 2015 WL 226084 (D.N.H. Jan. 15, 2015), *amended in part*, No. 12-CV-517-LM, 2015 WL 925614 (D.N.H. Mar. 3, 2015), and *aff'd*, 645 F. App'x 992 (Fed. Cir. 2016), and *aff'd*, 645 F. App'x 992 (Fed. Cir. 2016) ..... 6

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ..... 4, 9

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) ..... 4

*FairWarning IP, LLC v. Iatric Sys., Inc.*,
839 F.3d 1089 (Fed. Cir. 2016) ..... 6

*Fast 101 Pty Ltd. v. CitiGroup Inc.*,
834 F. App'x 591 (Fed. Cir. 2020) ..... 6

*Finjan, Inc. v. Cisco Sys. Inc.*,
No. 17-CV-00072-BLF, 2017 WL 2462423 (N.D. Cal. June 7, 2017) ..... 20, 23

*Gilbert v. City of Chicopee*,
915 F.3d 74 (1st Cir. 2019) ..... 3

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011) ..... 21, 22

*Halo Elecs. Inc. v. Pulse Elecs., Inc.*,
136 S.Ct. 1923 (2016) ..... 19, 23

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
792 F.3d 1363 (Fed. Cir. 2015) ..... 5, 6

*Interactive Wearables, LLC v. Polar Electro Oy*,
No. 19-CV-3084 (GRB), 2020 WL 6792766 (E.D.N.Y. Nov. 19, 2020) ..... 7

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
566 U.S. 66 (2012) ..... 4

*Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
472 F. Supp. 3d 377 (E.D. Mich. 2020) ..... 23

*MONEC Holding AG v. Motorola Mobility, Inc.*,
897 F. Supp. 2d 225 (D. Del. 2012) ..... 22

*Motiva Patents, LLC v. Sony Corp.*,
408 F. Supp. 3d 819 (E.D. Tex. 2019) ..... 22

*Nonend Inventions, N.V. v. Apple. Inc.*,
No. 2:15-CV-466-JRG-RSP, 2016 WL 1253740 (E.D. Tex. Mar. 11, 2016) ..... 21

*Palomar Techs., Inc. v. MRSI Sys., LLC*,
462 F. Supp. 3d 13 (D. Mass. 2020)....................5

*Proxyconn Inc. v. Microsoft Corp.*,
No. SACV 11-1681 DOC ANX, 2012 WL 1835680 (C.D. Cal. May 16, 2012)....................24

*Regents of Univ. of Minnesota v. AT & T Mobility LLC*,
135 F. Supp. 3d 1000 (D. Minn. 2015)....................21

*Sanofi v. Watson Lab'ys Inc.*,
875 F.3d 636 (Fed. Cir. 2017)....................25

*SAP Am., Inc. v. InvestPic, LLC*,
898 F.3d 1161 (Fed. Cir. 2018)....................6

*SEC v. Tambone*,
597 F.3d 436 (1st Cir. 2010)....................4

*Shay v. Walters*,
702 F.3d 76 (1st Cir. 2012)....................4

*Simplivity Corp. v. Springpath, Inc.*,
No. CV 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016)....................23

*Solutran, Inc. v. Elavon, Inc.*,
931 F.3d 1161 (Fed. Cir. 2019)....................12, 15

*State Indus., Inc. v. A.O. Smith Corp.*,
751 F.2d 1226 (Fed. Cir. 1985)....................20

*Teradata US, Inc. v. SAP SE*,
No. 20-CV-06127-WHO, 2021 WL 326930 (N.D. Cal. Feb. 1, 2021)....................7

*In re TLI Commc'ns LLC Patent Litig*,
823 F.3d 607 (Fed. Cir. 2016)....................12, 15

*Trading Techs. Int'l, Inc. v. IBG LLC*,
921 F.3d 1084 (Fed. Cir. 2019)....................11

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
No. C 11-06638 RS, 2012 WL 1831543 (N.D. Cal. May 18, 2012)....................20, 21, 22

*Verint Sys. Inc. v. Red Box Recorders Ltd.*,
No. 14-CV-5403 (KBF), 2016 WL 7177844 (S.D.N.Y. Dec. 7, 2016)....................20

*Vita-Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)....................25

*VLSI Tech. LLC v. Intel Corp.*,
No. CV 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019)....................21

*WBIP, LLC v. Kohler Co.*,
829 F.3d 1317 (Fed. Cir. 2016) .......... 19

*Zond, Inc. v. SK Hynix Inc.*,
No. CIV.A. 13-11570-RGS, 2014 WL 346008 (D. Mass. Jan. 31, 2014) .......... 24

# I. INTRODUCTION

Plaintiffs Ocado Innovation Ltd. and Ocado Solutions Ltd.'s (collectively, "Ocado") twice-amended complaint continues to set forth several fatally deficient pleadings. Defendants AutoStore AS and AutoStore System Inc. (collectively, "Defendants" or "AutoStore") hence renew their motion to dismiss with respect to several counts. ***First,*** AutoStore moves to dismiss all infringement claims with respect to U.S. Patent No. 10,901,404 ("the '404 patent") because all claims of this patent are directed to unpatentable subject matter, and therefore are invalid pursuant to 35 U.S.C. § 101. ***Second,*** AutoStore also moves to dismiss Ocado's direct infringement claims with respect to the '404 patent for failure to plead sufficient facts. ***Third,*** AutoStore moves to dismiss Ocado's willful infringement claims with respect to U.S. Patent Nos. 10,913,602 ("the '602 patent"); 10,901,404 ("the '404 patent"); 9,796,080 ("the '080 patent"); and 10,961,051 ("the '051 patent") (collectively, "the Asserted Patents") because Ocado's complaint, even after ***two*** amendments, lacks sufficient allegations to support the pre-suit knowledge and egregious conduct requirements to support these claims. ***Finally,*** AutoStore moves to dismiss Ocado's induced infringement claims for all Asserted Patents for failure to sufficiently allege pre-suit knowledge and specific intent. Neither Ocado's two amendments to its complaint, nor its reliance on expert opinion, salvage these glaring holes in its pleadings. As such, these claims should be dismissed with prejudice.

# II. BACKGROUND

## A. Defendants

AutoStore AS is a Norwegian corporation with its headquarters and principal place of business in Nedre Vats, Norway. Ex. 1 (1228 Compl.) ¶ 8. Since its founding in the 1990s in Nedre Vats, AutoStore AS has pioneered the development of, commercialized, and patented innovative Automated Storage and Retrieval Systems ("AS/RS"). *Id.* ¶ 2. These systems provide

unprecedented flexibility to warehouse owners and operators. *Id.* In these systems, storage bins are stacked vertically in a grid and stored in a cubic structure. *Id.* The bins are retrieved by robots travelling on the structure. *Id.* This makes it possible for the grid to be placed around columns, on mezzanines, and on multiple levels. *Id.* Today, AutoStore AS conducts R&D on AS/RS systems and markets and sells the Red Line and Black Line solutions. *Id.* AutoStore Technology AS, a related company to AutoStore AS, has received numerous patents in the United States and around the world to protect its innovations in the AS/RS industry. *Id.* ¶ 7.

AutoStore System Inc. is a Delaware subsidiary of AutoStore AS. Ex. 1 (1228 Compl.) ¶ 9. Its headquarters and principal place of business are at 3 Corporate Park Drive, Unit 1, Derry, NH 03038. *Id.* AutoStore System Inc. markets the AutoStore AS/RS system to customers and partners in the United States and provides design, engineering, training, and support (including installation, testing, and repair) to customers and partners in the United States. *See id.*

**B. Ocado**

Ocado is a publicly traded online grocery retailer based in the United Kingdom. The company began a commercial delivery service in 2002. Ex. 1 (1228 Compl.) ¶ 24. In 2012, Ocado contacted AutoStore AS's predecessor, Jakob Hatteland Computer ("Hatteland Computer"), to buy the AutoStore AS/RS system and to acquire exclusive rights to distribute the AutoStore AS/RS system for sales in the grocery segment. *Id.* ¶ 25. Hatteland Computer rejected this proposal both because it had a multi-distribution strategy in all markets, and Ocado did not meet Hatteland Computer's criteria (in terms of experience, service organization, customer portfolio, etc.) for selling the AutoStore AS/RS system. *Id.* Ultimately, Ocado purchased an AutoStore AS/RS system in 2012 for use in one of its U.K. sites, using the distributor Swisslog to manage the project. *Id.* ¶ 26. After studying the AutoStore AS/RS system, Ocado released its own AS/RS system, the Ocado Smart Platform, just a few years later. *Id.*

### C. Litigation History

This is a retaliatory lawsuit. AutoStore AS has been in litigation with Ocado for years. In 2016, Ocado sued AutoStore AS in Norway to gain ownership of an AutoStore patent family. But it failed. In 2019, Ocado then challenged AutoStore Technology AS's European patents in European opposition proceedings. By October 2020, Ocado had imported infringing robots into the United States, compelling AutoStore AS; AutoStore System Inc.; and AutoStore Technology AS to file patent infringement complaints in the International Trade Commission (Inv. No. 337-TA-1228) and in the Eastern District of Virginia (Case No. 2:20-cv-00494), alleging that the Ocado Smart Platform infringes five AutoStore Technology AS patents. Ocado's retaliation began in December 2020 and January 2021, when Ocado filed for *inter partes* review and post-grant review before the Patent Trial and Appeal Board regarding the patents asserted in those cases. In February 2021, Ocado filed suit in the Eastern District of Virginia against AutoStore AS, AutoStore System Inc., and AutoStore Technology AS (Case No. 2:21-cv-00068), alleging that their enforcement of AutoStore Technology AS patents violates antitrust laws. Ocado also filed this retaliatory lawsuit on January 17, 2021, and filed amended complaints on February 16, 2021 and April 23, 2021. Dkt. 1, 11, 35.

## III. LEGAL STANDARDS

### A. Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

To survive a motion to dismiss, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court must accept "all well-pled facts in the complaint as true" and construe all reasonable inferences in the plaintiff's favor. *Gilbert v. City*

*of Chicopee*, 915 F.3d 74, 80 (1st Cir. 2019). But the court "need not give weight to bare conclusions, unembellished by pertinent facts." *Shay v. Walters*, 702 F.3d 76, 82-83 (1st Cir. 2012). If the complaint's factual averments are "too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture," dismissal is warranted. *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).

### B. Failure to Claim Patent Eligible Subject Matter Under 35 U.S.C. § 101

#### 1. The Test for Patent Eligibility Under § 101

A patent is invalid under 35 U.S.C. § 101 if it claims patent-ineligible subject matter. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014). Patent eligibility under § 101 is assessed with a two-step test: First, the court determines whether the claims are directed to a patent ineligible concept—laws of nature, natural phenomena, or abstract ideas. *Id.* at 217 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 77-78 (2012)). If so, the court then determines whether the claims contain an "inventive concept"—that is, an "element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" *Id.* at 217–18 (alteration in original) (quoting *Mayo*, 566 U.S. at 72).

Step one of the *Alice* test determines whether the "focus of the claims, their character as a whole," is directed to an abstract idea. *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) (internal quotations omitted). This entails looking to the specification to understand "the problem facing the inventor" and, ultimately, the described invention. *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 767 (Fed. Cir. 2019). A claim is directed to an abstract idea when neither the claim nor the specification suggests an improvement in the functioning of a computer or other technology or technical field. *See id.* at 771; *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1338-39 (Fed. Cir. 2016).

Courts recognize various forms of abstract ideas, including activity that can be performed mentally or with pen and paper. *See, e.g.*, *Alice*, 573 U.S. at 219; *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368–69 (Fed. Cir. 2015). Claims directed to an abstract idea do not become patentable simply by claiming the abstract idea within a narrow technological context or use case. *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1287 (Fed. Cir. 2018). Nor does reciting physical components make the claim subject matter eligible. *ChargePoint*, 920 F.3d at 774–75 (finding claims directed to networked electric vehicle charging stations patent ineligible). Indeed, "[e]ven a specification full of technical details about a physical invention may nonetheless conclude with claims that claim nothing more than the broad law or abstract idea underlying the claims, thus preempting all use of that law or idea." *Id.* at 769. A claim that recites a desired result without providing specific ways of achieving it may be directed to an abstract idea. *Am. Axle & Mfg., Inc. v. Neapco Holdings LLC*, 967 F.3d 1285, 1294-95 (Fed. Cir. 2020) (claim reciting a goal without specifying a specific way of achieving it was directed to an abstract idea); *Palomar Techs., Inc. v. MRSI Sys., LLC*, 462 F. Supp. 3d 13, 24 (D. Mass. 2020) (Saylor, J.) (claims describing only a basic conceptual framework of moving a component from a first point to a different desired second point, and then to a third and final desired point for attachment, were directed to an abstract idea).

Step two of the *Alice* test assesses whether the claim elements, individually or in their ordered combination, add an "inventive concept" that "transform the nature of the claim into a patent-eligible application" or "amount[] to significantly more" than a patent on the abstract idea itself. *Alice*, 573 U.S. at 217–18. These additional features cannot simply be "well-understood, routine, conventional activities previously known to the industry." *Id.* at 225. Implementing an abstract idea with generic technical components does not add an inventive concept. *ChargePoint*,

920 F.3d at 775 ("add[ing] network connectivity to these charging stations" does not improve the charging station "in an unconventional way."); *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1348 (Fed. Cir. 2019) (claims reciting specific hardware did not pass *Alice* step two because they added nothing inventive to the abstract idea). This Court has previously "applied [the] lesson of *Alice*" to find that "when the alleged innovation involves the use of a generic computer to do what such computers typically do, i.e., speed up a process by eliminating the need for human activity, that innovation is not an invention eligible for patent protection." *E. Coast Sheet Metal Fabricating Corp. v. Autodesk, Inc.*, No. 12-CV-517-LM, 2015 WL 226084, at *7 (D.N.H. Jan. 15, 2015), *amended in part*, No. 12-CV-517-LM, 2015 WL 925614 (D.N.H. Mar. 3, 2015), and *aff'd*, 645 F. App'x 992 (Fed. Cir. 2016).

#### 2. Infringement Claims May Be Dismissed Under Section 101 at the Pleadings Stage.

Dismissing an infringement claim at the pleadings stage is appropriate where the asserted patent claims are patent ineligible under § 101. *See, e.g.*, *Fast 101 Pty Ltd. v. CitiGroup Inc.*, 834 F. App'x 591, 592–94 (Fed. Cir. 2020); *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1097–98 (Fed. Cir. 2016). Patent eligibility under Section 101 is a question of law. *Intellectual Ventures I*, 792 F.3d at 1366. *Alice* step one presents a legal question that may be answered based on intrinsic evidence (*i.e.*, from the specification, claims, and file history of the patent). *See CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372 (Fed. Cir. 2020). The second step of the *Alice* test may entail factual questions as to whether something is well-understood, routine, and conventional to a person of ordinary skill in the art at the time of the patent. *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1369 (Fed. Cir. 2018). Dismissal of an infringement claim at the pleadings stage under § 101 is nonetheless appropriate in the absence of plausible, non-conclusory, and specific allegations that the claims contain an inventive concept. *SAP Am., Inc.*

*v. InvestPic, LLC*, 898 F.3d 1161, 1166 (Fed. Cir. 2018) ("Like other legal questions based on underlying facts, [patent eligibility under § 101] may be, and frequently has been, resolved on a Rule 12(b)(6) or (c) motion where the undisputed facts, considered under the standards required by that Rule, require a holding of ineligibility under the substantive standards of law."); *Interactive Wearables, LLC v. Polar Electro Oy*, No. 19-CV-3084 (GRB), 2020 WL 6792766, at *11 (E.D.N.Y. Nov. 19, 2020) (no proper allegations that the claims contained an inventive concept); *Teradata US, Inc. v. SAP SE*, No. 20-CV-06127-WHO, 2021 WL 326930, at *6 (N.D. Cal. Feb. 1, 2021) (specification did not support the inventive concept claimed to be recited in claims); *see also Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1317–1318 (Fed. Cir. 2019).

## IV. ARGUMENT

### A. Ocado's Infringement Claims for the '404 Patent Should Be Dismissed Because the '404 Patent Claims Are Invalid Under Section 101

Because the claims of the '404 patent are invalid under 35 U.S.C. § 101, Ocado's infringement claims for that patent should be dismissed. The claims are directed to the abstract idea of routing vehicles, specifically: (1) finding routes for vehicles; (2) reserving paths while ensuring that the vehicles do not collide; and (3) instructing the vehicles to proceed on the path one segment at a time. This is not an "inventive concept." These basic traffic management concepts—which can be performed in a human's mind or with pen and paper—neither improve the functioning of the computer nor any other technology or technical field. *Alice*, 573 U.S. at 225. At most, they recite routing robot traffic using generic electronics or computer systems ("units" as referred to by claim 1) to automate a mental process—and thus are not patentable.

#### 1. The '404 Patent

The '404 patent relates to methods for retrieving units from a storage system using robots, as well as to systems and methods for coordinating product movement in a storage

system. Second Am. Compl. ("SAC"), Ex. 21 ("the '404 patent") at 1:20–26. The patent identifies a "need…for systems and processes for coordinating and controlling product movement" in a storage system. *Id.* at 2:29–30. The patent describes the need to optimize container placement in a storage system based on traffic flow, and identifies "systems and processes for coordinating and controlling product movement" as desirable. *Id.* at 2:22–30. The patent also identifies "co-ordination of the movement of the one or more robot[s]" (*id.* at 1:62–67; *see also* 2:31–33) as an objective.

The '404 patent describes a system to control the movement of robots on a grid:




**FIG. 7**

*Id.* at Fig. 7; 10:35–39. The control system is described as consisting of multiple generic "modules," including a "movement optimisation module," a "reservation module," and a "clearance module." *Id.* at Fig. 3, 13:24–40. These three "modules" work together to find paths for each robot to reduce the chance that robots collide, and to resolve path conflicts: The "movement optimisation module," using off-the-shelf computing equipment, calculates a path

and reserves it using the reservation module; the clearance module resolves conflicts in the paths. *Id.* at 15:43–49 and 16:1–8.

Independent claims 1 and 20 focus on controlling the robots' movement by determining a route on the grid for each robot, reserving non-overlapping paths, and providing a clearance instruction for each vehicle to travel along the reserved path. The actions are recited at a generic level, without specifying how each step is performed (*e.g.*, no specific algorithm is provided). Dependent claims 2–19 provide additional detail regarding: (1) the clearance instructions and clearance unit (claims 2–4, 6–8, 11–14); (2) how the control system dynamically re-plans the routes of the robots (claims 5, 9, 10, and 19); and (3) the storage system configuration and the transporting device (claims 15–18).

**2. The Independent Claims Fail *Alice* Step One Because They Recite Abstract Ideas**

It is well established that claims reciting limitations that may be performed in the mind are directed to an abstract idea (a mental process). *Alice*, 573 U.S. at 219; *Elec. Power Grp.*, 830 F.3d at 1353–54. Independent claims 1 and 20 fail *Alice* step one for that reason: They recite results-based functional actions—traffic planning and collision avoidance—that can be performed in the human mind or with pen and paper.

Independent claim 1 recites three elements:[1] (1) "a movement optimisation unit" that is "configured to determine a route" for each robot vehicle on the grid; (2) "a reservation unit" that is "configured to reserve a path on the grid-like structure for each transporting device based on the determined route," where the path for each transporting device does not overlap with the path for any other transporting device; and (3) "a clearance unit" that is "configured to provide a

[1] Claim 1 is a representative independent claim; the only other independent claim (20) recites a corresponding method that does not even recite generic "units." Claim 20 is invalid under 35 U.S.C. § 101 for the same reasons that claim 1 is.

clearance instruction" to each transporting device to traverse a portion of the reserved path, where the clearance instruction is for execution by the transporting device at a future time. '404 patent at 26:1–17. All three elements—determining a route, reserving a path based on that route, and providing a clearance instruction to traverse a portion of the reserved path—are directed to the abstract idea of vehicle routing. Any person could determine such a path.[2] She could then mentally or with the aid of pen and paper "reserve" non-overlapping paths to prevent vehicles colliding. And, at the beginning of each reserved path, she could instruct each vehicle whether it is clear to proceed or must stop to avoid collisions. People driving to work in densely packed cities, not to mention presidential motorcades, do these basic path-planning steps routinely. But they cannot patent these routine activities.

Ocado and its expert dispute this reading because "[h]umans simply cannot carry out the movement planning and path optimization processes as necessary to provide collision-free paths as the robots carry out their assigned tasks at the speeds required to coordinate hundreds of robots simultaneously and in real time." SAC Ex. 22 ¶ 36; SAC ¶ 55. But whether humans can carry out these tasks at sufficiently high speeds to operate a warehouse is beside the point, because the claim language does not require such speeds. Independent claims 1 and 20 impose

---

2 The claims on their face do not require that the routes determined by the "movement optimisation unit" be optimal in any sense—only that they be for "a transporting device from one location on a grid-like structure to another location on the grid-like structure." Although Ocado alleges that the "movement optimization unit" "determines for each robot ***an optimal route***," (SAC ¶ 51(a) (emphasis added)), that is incorrect as a matter of law. The plain claim language recites no such optimality—its broad wording covers known methods. The specification refers to certain search algorithms (*see* '404 patent at 22:12–25:43), but does not describe any as novel. Indeed, when explaining its purported invention to the U.S. Patent and Trademark Office, Ocado itself did not characterize the "optimization unit" as generating "optimal" routes. *See* SAC Ex. 22, App'x D at 2-3. Even Ocado's expert does not claim that the "movement optimization module" generates "optimal" routes. *See* SAC Ex. 22 ¶ 26. In describing the problem allegedly facing the inventors, he states that "[t]he paths used by the system must be optimized," (*id.* ¶ 33), but avoids attributing any optimal calculation to the "movement optimization unit."

no constraints on speed, throughput, efficiency, accuracy, or any other metric.[3] By their plain terms, independent claims 1 and 20 may be practiced with as little as two robots, using routing, reservation, and clearance methods that use nothing but the mind (or pen and paper), over an unconstrained period of time.

Claim 1 is directed to the abstract idea of route planning even though it refers to a particular technological context (movement of robots on a "grid-like structure" in a storage facility), and recites physical elements ("transporting devices"). *BSG Tech*, 899 F.3d at 1287. The claims are not limited to any ***specific***—let alone novel—way of computing routes, reserving paths, and/or issuing clearance instructions; they cover well-known methods of doing so. This is clear from the face of the independent claims, which only recite "determin[ing] a route" and "reserv[ing] a path … based on the determined route" in a way that would avoid collision between the vehicles. '404 patent at claim 1; *see also id.* at claim 20. The claims carry no detail regarding the specific method by which the "determin[ation]" and "reserv[ation]" are carried out. *See Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2019) (affirming ruling that the claims were directed to an abstract idea when they did not recite specific means or methods of improving the relevant technology and instead were directed to the desired result which was an abstract idea).

Nor does the fact that claim 1 purports to carry out the abstract idea using generic computer components ("units") render it non-abstract—that would require that the claim

3 Ocado and its expert contend the recited system is "inextricably tied to the management of *robots*, which requires the controller to have capabilities humans do not have." SAC ¶ 55; *id.* at Ex. 22 ¶ 37. They refer to "the ability to receiving [*sic*] electronic status reports from the robots, to electronically track the location and movement of each robot, and to communicate electronically with the robots to provide predetermined paths and clearance commands." *Id.* There is no support for this. The independent claims plainly lack any such requirement. The dependent claims also do not recite these limitations.

improve the functioning of a computer or solve another technological problem. *Trading Techs. Int'l, Inc. v. IBG LLC*, 921 F.3d 1084, 1093 (Fed. Cir. 2019) (the claims were directed to an abstract idea because they did "not improve the functioning of the computer, make it operate more efficiently, or solve any technological problem," but instead recited generic information that assisted the user in processing information more quickly).

Claim 1 recites generic computer components "configured to" perform the abstract steps. '404 patent at 26:2–17; *see also id.* at 13:36–40, 4:33–35, 21:19–23, 21:48–22:7 (the "present system and method" may be implemented on a host of conventional platforms through "generic computer hardware and software implementation," including both the web and computers such as "generic computer device 100"). The other independent claim (20) does not even have that limitation, and it may be performed entirely by a person in her mind. And claims 1 and 20 do not improve the functioning of a computer (the patent specification does not even make such a contention). *Solutran, Inc. v. Elavon, Inc.*, 931 F.3d 1161, 1166-67 (Fed. Cir. 2019) (invalid claims were directed to abstract idea of "electronic check processing" and did not improve the underlying technologies of technical capture of check information or electronic crediting of a bank account).

Nor do claims 1 and 20 improve another technology or technical field. To assess whether a claim improves the technology or technical field, courts assess whether the claim addresses "the problem facing the inventor" as described in the specification. *See ChargePoint*, 920 F.3d at 767; *In re TLI Commc'ns LLC Patent Litig*, 823 F.3d 607, 612 (Fed. Cir. 2016); *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015). Here, the specification references two problems, neither of which are improved upon by the claim. ***First***, the specification states that "[t]he co-ordination of the movement of the one or more robot[s]," is

potentially "an important consideration in determining the overall efficiency and scalability of a system for storage and retrieval of a large number of different products." '404 patent at 1:62–67. Although the claims are directed to a system for coordinating the movements of transportation devices on a grid, the specification does not identify any specific problem in the prior art, let alone solve it with the recited claims. *cxLoyalty, Inc. v. Maritz Holdings Inc.*, 986 F.3d 1367, 1378 (Fed. Cir. 2021) (finding that the claims were directed to an abstract idea where they did not recite a solution to the problem in the specification). ***Second***, the specification discusses optimization of container placement as the technical problem. '404 patent at 2:22–30. But the claims do not address this problem; instead, they concern robot routing.

Ocado's expert contends claim 1 is not an abstract idea allegedly because it provides "a particular solution" to "particular…vehicle routing problems raised by a stacked-bin grid storage system," and "combine[s] a movement optimization unit, reservation unit and clearance unit." SAC Ex. 22 ¶ 35. Regardless of whether such a combination was new,[4] it does not rescue Ocado's deficient pleadings. As an initial matter, even what Ocado pleads was new over the prior art remains at a general level—the claims simply do not recite any specific method for any of the claimed "units." *See Dropbox, Inc. v. Synchronoss Techs., Inc.*, 815 F. App'x 529, 533 (Fed. Cir. 2020) ("The patent has to describe how to solve the problem in a manner that encompasses something more than the 'principle in the abstract.'") Moreover, what Ocado actually ***pleads*** is allegedly new over the prior art is not claimed at all.

- **<u>"Reservation Unit":</u>** Ocado pleads that "[t]he use of a reservation unit in the manner described [in paragraph 51] was unconventional and not well understood." SAC ¶ 52. In paragraph 51, Ocado pleads that the "reservation unit reserves a determined path

[4] Although Defendants dispute this point, the Court need not reach this factual question to rule on the instant motion.

for each robot such that no two robots have locations on the storage grid that would cause them to overlap at the same time. This takes into account that optimized paths for different robots should not conflict." *Id.* at ¶ 51(b). This is legally incorrect by contradicting the plain claim language in two respects. ***First,*** rather than "reserv[ing] a determined path" (as Ocado pleads), the claimed "reservation unit [is] configured to reserve ***a path*** … ***based on*** the determined route." There is no pleading by Ocado or statement by its expert whether the actual claimed function is novel in the prior art. ***Second,*** the allegation that the "reservation unit … takes into account that optimized paths for different robots should not conflict" is not in the claim language—the claims do not recite that any reserved paths be "optimal."

- **<u>"Clearance Unit":</u>** Ocado pleads that this unit "takes into account that robots may not behave precisely as expected by the reservation unit … [and] is configured to use actual robot behavior and predict potential collisions …." SAC ¶ 51(c); *see also id.* at ¶ 53, Ex. 22 ¶ 31. Again, the problem for Ocado is that the claims do not recite these features at all.

Because the claims do not recite these allegedly novel features, Ocado's and its expert's allegations regarding what was novel over the prior art are not germane to the determination of whether the '404 patent claims are directed to an abstract idea. *See ChargePoint*, 920 F.3d at 773 (the alleged technological solution must be evident from the claims).

### 3. The Independent Claims Fail *Alice* Step 2 Because They Do Not Disclose an "Inventive Concept"

The independent claims (1 and 20) are invalid. None adds elements that, either individually or in combination, would provide an "inventive concept." *See Alice*, 573 U.S. at 217–18. Neither the allegations in Ocado's amended complaint (*see* SAC ¶¶ 48–57) nor the

specification provides any facts suggesting that route computation, reserving non-overlapping paths, and issuing clearance instructions using generic "units" was at all novel in the existing art. *ChargePoint*, 920 F.3d at 774–75 (adding well-known network communication to conventional charging systems did not add an inventive concept).

Simply having "an 'abstract-idea-based solution implemented with generic technical components in a conventional way'" does not satisfy step two of *Alice*. *ChargePoint*, 920 F.3d at 775; *see also Alice*, 573 U.S. at 223 ("[T]he mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention."); *Solutron*, 931 F.3d at 1169; *In re TLI Commc'ns*, 823 F.3d at 614 (claims using only conventional computer components to implement abstract data did not add an "inventive concept"); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (invocation of generic computer functionality "adds no inventive concept"). Claim 1 uses generic computer "units" to automate the mental processes of routing, reserving paths, and providing clearance instructions as vehicles move along paths—nothing more. Claim 20 does not even recite the generic "units." According to the specification, the claims are implemented using a range of conventional platforms such as desktop computers and web-based servers. *See* '404 patent at 13:36–40; *see also id.* at 21:19–23, 21:48–22:7 (explaining that the "present system and method" may be implemented on a host of conventional platforms, including both the web and computers).

Ocado contends through its expert that the '404 patent claims include the inventive concepts of a "reservation unit" and a "clearance unit." SAC Ex. 22 ¶¶ 39–40; *see also* SAC ¶¶ 52–53. Regardless of whether what Ocado alleges to be novel actually is, it does not save the '404 patent's claims because the claims do not recite the claimed novel features—rather, they recite functionality generically. In addition to the differences identified above, Ocado's expert's

contentions highlight other differences between the actual claim language and what Ocado now contends the claims to cover: As for the "reservation unit," Ocado's expert imports a number of features (emphasized) that are not in the claims: "[t]he use of a reservation unit to reserve, ***in real time***, ***a time-dependent*** and collision-free path from the robot's starting point to its destination, taking into account ***the previously reserved paths*** of all of the other robots in the system, simply was not used in prior systems, much less 'routine[ly]' used." SAC Ex. 22 ¶ 39 (emphasis added). But the claims do not require the reservation unit to work in "real time," or that it compute time-dependent paths—the unit as claimed could prioritize paths that do not change. Nor do the claims require that the reservation unit take into account "the previously reserved paths" of all other robots. Paths may be prioritized without accounting for other robots. As for the "clearance unit," Ocado's expert also contends that the unit performs a number of functions that are not claimed (emphasized again): "monitor[ing] and us[ing] ***the actual behavior of the robot*** on the grid to predict potential collisions," and "deny[ing] clearance to traverse a section of an already reserved path ***when the clearance unit predicts that a collision may occur in the future if clearance were to be granted***." *Id.* ¶ 40 (emphasis added).

#### 4. The Dependent Claims Add Nothing Inventive

Independent claims 2–19 are directed to the same abstract idea as claims 1 and 20. The specification provides no facts, and the complaint alleges none, to suggest that any of the additional features of dependent claims 2–19 adds anything inventive to the prior art.

**<u>Dependent claim 2</u>:** This claim adds that the time between when the clearance instruction is provided and the time at which it is executed is configurable. Use of a configurable time parameter was well-known and may be done in the mind or with conventional computers.

**<u>Dependent claims 3, 4 and 6</u>:** The claims recite conditioning the provision of a clearance instruction (3 and 6) or canceling a path (4) contingent on receiving an

acknowledgment. This conditioning was well-known and may be done in the mind or with conventional computers. Ocado contends, via its expert, that these were not routine or conventional because they were used in the context of stacked-bin warehouses. SAC Ex. 22 ¶ 42. He makes no allegation that these features, in themselves, were not known. Indeed, they were.

**Dependent claims 5 and 9:** These claims recite "re-plan[ning] an operation for the transporting device" (5) or "dynamic re-plan[ning]" of a route (9). Re-planning "an operation" (which may be ***any*** elementary operation, such as flashing a light) was well-known and could be performed in someone's mind or with conventional components. Likewise, dynamic re-planning, without more, is an abstract idea. Ocado contends via its expert that these operations were not known because prior art systems did not attempt to "keep each robot on a reserved path to minimize the possibility of collisions." *Id.* ¶ 43. But again, that is not what the claims recite. Claim 5 merely requires re-planning "an operation" (which Ocado does not dispute can be *anything*). Claim 9 requires dynamic re-planning by ***either*** the movement optimization unit or the clearance unit. Not even Ocado's expert contends that the movement optimization unit or its dynamic re-planning were new. Even as to the clearance unit, the claims do not recite dynamic re-planning to "minimize the possibility of collisions."

**Dependent claim 7:** This claim requires the clearance unit to be "a passive collision avoidance system" that does not "impact system performance." The claim has no details tied to it and remains an abstract idea; nor do any facts suggest it recites novel elements.

**Dependent claims 8 and 11:** These claims recite granting or withholding a clearance instruction based on certain factors. No facts in the specification or complaint suggest that these actions, recited at a high level of generality, were novel.

**<u>Dependent claim 10</u>:** This claim requires the "movement optimisation unit" to calculate a route that avoids conflicts "when at least one message is not received." Conflict avoidance, without detail as to how it is done, was a well-known generic concept and could be performed in the mind or with conventional computers. *See also supra* (discussion for claims 3–4 and 6).

**<u>Dependent claim 12</u>:** This claim requires the clearance unit to calculate a set of safe entry times for grid positions based on at least one of a number of factors. Similar to claims 8 and 11, no facts suggest that calculation of entry times (at that level of generality) was novel.

**<u>Dependent claim 13</u>:** This claim merely adds that the clearance unit provides clearance instruction for a predetermined period of time. No facts suggest this was novel.

**<u>Dependent claim 14</u>:** This claim requires the control unit to control movements based on information received from the clearance unit. No facts in the specification or complaint indicate that generic control based on received information was novel.

**<u>Dependent claims 15 and 16</u>:** These claims recite a storage facility or single-cell robots. No facts in the specification or complaint indicate that the facilities or robots were novel (or that use of a system of claim 1 in those systems was). Indeed, the patent acknowledges that the facilities were well-known. '404 patent at 1:30–36, 2:1–21.

**<u>Dependent claims 17-19</u>:** These claims recite particular actions if a clearance instruction is not received before a specific time. No facts in the specification or alleged in the complaint indicate that any of these actions (an abstract idea) adds anything novel to the prior art.

### B. Ocado's Direct Infringement Claims for the '404 Patent Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

Ocado's direct infringement allegations for the '404 patent fail to sufficiently plead that claim 1 (and therefore the rest of the claims of the '404 patent) are infringed for at least the following reasons:

**<u>"Reservation Unit":</u>** The third element of claim 1 requires "a reservation unit" configured to reserve a path on the grid-like structure for each transporting device ***based on the determined route***." The "determined route" is the route "determine[d]" by the previously recited "movement optimisation unit." Ocado's allegations (*see* SAC ¶ 106(k)(i)-(ii)), even taken to be true, are still deficient. Specifically, Ocado fails to plead that the path reserved for each robot is "based on" the route that is allegedly reserved by the "movement optimisation unit."

**<u>"Clearance Unit":</u>** This element requires the unit be "configured to provide a clearance instruction for each transporting device to traverse a portion of the reserved path, wherein the clearance instruction is provided for execution by a control unit on each transporting device at a future start time." Even taking Ocado's existing allegations as true for purposes of this motion, Ocado alleges ***nothing*** to support an inference that "the clearance instruction is provided for execution by a control unit on each transporting device ***at a future start time***," as opposed to, for example, execution "to turn or stop to prevent an imminent collision" (which Ocado's expert claims was in the prior art). *See* SAC Ex. 22 ¶ 31 (emphasis added).

### C. Ocado's Willful Infringement Claims For All Asserted Patents Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)

Ocado alleges willful infringement solely based on AutoStore's alleged preexisting generalized knowledge of "Ocado's patented technologies," and then concludes that AutoStore must have been "willfully blind" to the Asserted Patents before this lawsuit. *See* SAC ¶¶ 14, 80-86, 92, 99, 107, 115. These allegations of pre-suit knowledge are deficient as a matter of law,[5] as Ocado has failed to allege that Defendants have engaged in any "egregious" conduct either pre-

[5] Defendants do not dispute that Ocado has sufficiently alleged Defendants' ***post-suit*** knowledge of the Asserted Patents. *See* SAC ¶¶ 79, 87.

or post-suit. Ocado fails to state a willful infringement claim under the Supreme Court's decision in *Halo Elecs. Inc. v. Pulse Elecs., Inc.* for at least two reasons. *See* 136 S. Ct. 1923 (2016).

***First***, the defendant's ***prior knowledge*** of the asserted patents is a necessary component to show willfulness under *Halo*. *See WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). To plead knowledge, the plaintiff must allege that the defendant had knowledge of the ***specific patents*** at issue. *See State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed. Cir. 1985) ("To willfully infringe *a patent*, the patent must exist and one must have knowledge of it.") (emphasis in original). Ocado merely alleges that it "made Defendants aware of its patent portfolio" during the course of their business relationship, that Ocado and AutoStore "are the only competitors in the Cubic AS/RS market," that AutoStore submitted third-party observations during prosecution of "international patent applications related to the Asserted Patents," that AutoStore "frequently" has cited Ocado's patents in its own patent applications, and that AutoStore was aware of other Ocado patents in the same families as the asserted '602, '051, and '404 patents because of Ocado's citations in IPR petitions and an entitlement action brought by AutoStore. *See* SAC ¶¶ 80-84. But these allegations are entirely insufficient to show AutoStore's actual knowledge of the Asserted Patents. Ocado does not allege that AutoStore cited the Asserted Patents in its own applications. Nor does it allege that Ocado made AutoStore aware of the Asserted Patents. None of Ocado's general allegations related to its overall technologies and patent portfolio (which includes more than 100 patents and applications) give rise to an inference that Defendants had pre-suit knowledge of the Asserted Patents. *See Verint Sys. Inc. v. Red Box Recorders Ltd.*, No. 14-CV-5403 (KBF), 2016 WL 7177844, at *3 (S.D.N.Y. Dec. 7, 2016) (knowledge of the asserted patents was not established where "the collective evidence shows that Red Box knew that plaintiffs were competitors, had a technology portfolio, and had certain

patents”); *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C 11-06638 RS, 2012 WL 1831543, at *3 (N.D. Cal. May 18, 2012) (“The requisite knowledge of the patent allegedly infringed simply cannot be inferred from mere knowledge of *other* patents, even if somewhat similar.”) (emphasis in original); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-CV-00072-BLF, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017) (“Knowledge of a patent portfolio generally is not the same thing as knowledge of a specific patent.”).

Perhaps recognizing that its actual knowledge allegations were woefully insufficient, Ocado’s Second Amended Complaint adds the new allegation that AutoStore was “at least willfully blind” to the Asserted Patents and/or their predecessor applications before this lawsuit was filed as an attempt to satisfy the knowledge requirement. *See* SAC ¶ 85. But this allegation is insufficient as well. Willful blindness requires that (1) “the defendant must subjectively believe that there is a high probability that a fact exists,” and (2) “the defendant must take deliberate actions to avoid learning of that fact.” *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011); *see also Vasudevan Software*, 2012 WL 1831543, at *5-6 (applying the *Global-Tech* standard to evaluate willful blindness in the context of willful infringement); *Nonend Inventions, N.V. v. Apple. Inc.*, No. 2:15-CV-466-JRG-RSP, 2016 WL 1253740, at *2 (E.D. Tex. Mar. 11, 2016) (same); *VLSI Tech. LLC v. Intel Corp.*, No. CV 18-966-CFC, 2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (same). For a willful blindness allegation to survive a motion to dismiss, the plaintiff “must point to some type of action on the part of the Defendants from which a jury could conclude the Defendants engaged in willful blindness.” *Regents of Univ. of Minnesota v. AT & T Mobility LLC*, 135 F. Supp. 3d 1000, 1012 (D. Minn. 2015).

Nothing in Ocado’s Second Amended Complaint does that. Relying on Defendants’ aforementioned alleged general knowledge of Ocado’s technologies, patents, and applications,

Ocado alleges that AutoStore was willfully blind to the Asserted Patents—specifically, it alleges Defendants "were at least (i) aware that there was a high probability that Ocado filed the applications that led to the Asserted Patents (and the technology claimed in them), and (ii) if AutoStore did not actually know the Asserted Patents (and the applications that led to them), AutoStore intentionally avoided learning of them despite the high probability that they existed." SAC ¶ 85. This is insufficient at minimum because Ocado "has neglected to identify any ***affirmative actions*** taken by [AutoStore] to avoid gaining actual knowledge of the" Asserted Patents. *Vasudevan Software,* 2012 WL 1831543, at *6 (emphasis added); *see also MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012) ("The allegations in the first amended complaint do not suggest that Defendants purposefully avoided knowledge of the '678 patent. […] Although the first amended complaint also contains allegations of 'constructive knowledge of the '678 Patent, and the Reexamined '678 Patent,' these allegations are insufficient to establish 'active efforts by an inducer' to avoid knowledge of the patent-in-suit.") (citing *Glob.-Tech*, 563 U.S. at 770).

Separately, Ocado pleads no basis to support its allegation about Defendants' subjective awareness. Instead, Ocado merely states that the "historical discussions" and "patent-related proceedings" between the parties would have necessarily made Defendants "aware that there was a high probability that Ocado filed the applications that led to the Asserted Patents." SAC ¶ 85. This conclusory assumption is not sufficient to establish the subjective belief prong of the willful blindness inquiry because it does not show that Defendants had a "conscious" belief regarding the existence of the Asserted Patents or their related applications. *See Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 837-38 (E.D. Tex. 2019) (explaining that willful blindness and willful infringement "require[] a 'conscious' belief on the defendant's behalf). Overall, Ocado's

generalized allegations of willful blindness are not adequate to state a claim for willful infringement, and should be dismissed on this basis alone.

***Second***, Ocado has not properly alleged egregious conduct—another required element of willful infringement. Specifically, Justice Breyer's concurring opinion in *Halo* indicates that knowledge alone is insufficient to state a willful infringement claim. *See Halo*, 136 S. Ct. at 1936 (Bryer, J., concurring) ("[T]he Court's references to 'willful misconduct' do not mean that a court may award enhanced damages simply because the evidence shows that the infringer knew about the patent *and nothing more*.") (emphasis in original). While neither the Federal Circuit nor this district has spoken to the issue, the majority of district courts addressing it have relied on Justice Breyer's concurrence to conclude that an allegation of willful infringement without evidence of egregiousness is insufficient, futile, and must be dismissed. *See Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 383–84 (E.D. Mich. 2020) (collecting cases).

Ocado fails to allege such egregious conduct here. At most, Ocado alleges that Defendants released a new product that infringes Ocado's patents (which Defendants dispute), summarily concluding that this behavior is indicative of "deliberat[e] cop[ying]." SAC ¶¶ 13–21, 81–82. When Ocado's unsupported conclusory allegations are properly ignored, however, Defendants' alleged conduct does not rise to the level of egregiousness necessary to support a claim for willful infringement—i.e., conduct that is "willful, wanton, malicious, bad–faith, deliberate, consciously wrongful, flagrant, or—indeed—characteristic of a pirate." *Halo*, 136 S. Ct. at 1932; *see also Finjan*, 2017 WL 2462423, at *5 ("Finjan makes no specific factual allegations about Cisco's subjective intent, or any other aspects of Cisco's behavior that would suggest its behavior was 'egregious.' Instead, Finjan has simply made conclusory allegations of

knowledge and infringement, which, considered in the totality of circumstances here, is not enough to plausibly allege 'egregious[ness].'"); *Simplivity Corp. v. Springpath, Inc.*, No. CV 4:15-13345-TSH, 2016 WL 5388951, at *18 (D. Mass. July 15, 2016) (holding post-filing willful infringement allegations sufficient under *Halo* where plaintiff alleged an "escalation" of infringing behavior after the suit was filed). Ocado's failure to adequately allege egregious conduct provides an independent ground to dismiss all willful infringement claims.

**D. Ocado's Indirect Infringement Claims For All Asserted Patents Should Be Dismissed for Failure to State a Claim Under Fed. R. Civ. P. 12(b)(6)**

Further, because Ocado fails to allege that Defendants had pre-suit knowledge of the Asserted Patents and that Defendants had the specific intent to infringe, its claims for indirect infringement must be dismissed as well. "To state a viable claim for induced infringement, plaintiff must allege that defendant (1) knew of the patent, (2) knowingly induced infringing acts, and (3) acted with specific intent." *Canon, Inc. v. Avigilon USA Corp. Inc.*, 411 F. Supp. 3d 162, 164 (D. Mass. 2019) (citations omitted).

***First***, while neither the Federal Circuit nor this Court has spoken to the precise issue, other courts in this circuit have held that "a complaint is sufficient to demonstrate actual knowledge in order to state a claim for inducement ***when limited to post-filing conduct only in a later-amended complaint***." *Id.* at 165 (emphasis added); *Zond, Inc. v. SK Hynix Inc.*, No. CIV.A. 13-11570-RGS, 2014 WL 346008, at *3 (D. Mass. Jan. 31, 2014); *see also Proxyconn Inc. v. Microsoft Corp.*, No. SACV 11-1681 DOC ANX, 2012 WL 1835680, at *7 (C.D. Cal. May 16, 2012) ("[A] complaint fails to state a claim for indirect patent infringement where the *only* allegation that purports to establish the knowledge element is the allegation that the complaint itself or previous complaints in the *same* lawsuit establish the defendant's knowledge of the patent.") (emphasis in original). Because Ocado does not adequately allege pre-suit knowledge

or willful blindness, Defendants' knowledge of the Asserted Patents (and alleged inducement) can only be set as of the complaint. *Canon, Inc.*, 411 F. Supp. 3d at 164. As a result, Ocado's claims for pre-suit induced infringement (*see* SAC ¶¶ 90, 98, 105, 113) must be dismissed.

***Second***, even though Defendants' post-suit knowledge of the Asserted Patents is not disputed, Ocado still has not properly alleged that Defendants have the requisite specific intent to induce infringement of these patents. Ocado's allegations at face value would only show that Defendants provide "instructions, manuals, technical assistance, and promotional materials relating to the installation, use, operation, and maintenance" of the accused functionalities. *See* SAC ¶¶ 90, 98, 105, 113. None of this, construed most favorably to Ocado, suffices to show that Defendants had the requisite specific intent—*i.e.*, the specific intent to cause others to perform an act that Defendants knew would constitute infringement. *See Vita-Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328–29 (Fed. Cir. 2009) (declining to find inducement where "the record [was] devoid of actual evidence establishing specific intent to encourage customers to infringe" and the product instructions and product design relied upon by plaintiff did not "support an inference of intent").[6]

## V. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant their motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

---

[6] Defendants' addition of a conclusory allegation that Defendants' products "have no substantial non-infringing uses" (SAC ¶ 81) is irrelevant, because "Section 271(b), on inducement, does not contain the 'substantial noninfringing use' requirement of section 271(c), on contributory infringement." *Sanofi v. Watson Lab'ys Inc.*, 875 F.3d 636, 646 (Fed. Cir. 2017). Further, Ocado's counsel must know its allegation to be false and therefore must withdraw it under Fed. R. Civ. P. 11, because Ocado does not accuse pre-September 2020 versions of AutoStore's router software (*see, e.g.*, SAC ¶ 16), such as those used in Red Line and Black Line systems offered for sale before September 2020 (*see, e.g.*, SAC Ex. 15 (Black Line introduced in 2019); SAC Ex. 25 at 5 (showing timeline of the Red Line and Black Line robots)), of infringement.

Dated: May 7, 2021

Respectfully Submitted,

AUTOSTORE AS,

By Its Attorneys,

*/s/ Robert R. Lucic*

Robert R. Lucic (NH Bar #9062)
Bryanna K. Devonshire (NH Bar #269462)
SHEEHAN PHINNEY BASS & GREEN PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105
(603) 627-8188
rlucic@sheehan.com
bdevonshire@sheehan.com

**-and-**

AUTOSTORE SYSTEM INC.,

By Its Attorneys,

*/s/ Robert R. Lucic*

Robert R. Lucic (NH Bar #9062)
Bryanna K. Devonshire (NH Bar #2694620
SHEEHAN PHINNEY BASS & GREEN PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105
(603) 627-8188
rlucic@sheehan.com
bdevonshire@sheehan.com

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Emily M. Scott (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
glocascio@kirkland.com
emily.scott@kirkland.com

Joseph A. Loy, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

(212) 446-4800
jloy@kirkland.com

Ali-Reza Boloori (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
ali-reza.boloori@kirkland.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 7th day of May 2021.

/s/ *Robert R. Lucic*
Robert R. Lucic