**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| OCADO INNOVATION LTD. and<br>OCADO SOLUTIONS LTD.,<br><br>Plaintiffs,<br><br>v.<br><br>AUTOSTORE AS and<br>AUTOSTORE SYSTEM INC.,<br><br>Defendants. | Case No.: 1:21-cv-00041-JL<br><br>**Hon. Joseph N. Laplante** |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' PARTIALLY RENEWED MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**


INTRODUCTION ....................................................................................................1

ARGUMENT ..........................................................................................................2

I. OCADO HAS SUFFICIENTLY PLEADED DIRECT, WILLFUL, AND INDIRECT PATENT INFRINGEMENT ....................................................................2

A. Ocado Has Adequately Pleaded That AutoStore Directly Infringed the ’404 Patent ....................................................................................................3

B. Ocado Has Adequately Pleaded Willful Infringement ..................................5

C. Ocado Has Adequately Pleaded Induced Infringement ..................................9

II. THE ’404 PATENT IS DIRECTED TO ELIGIBLE SUBJECT MATTER .....................11

A. The ’404 Patent Solves Problems Specific to Operation of Fully Automated Stacked-Bin Grid Storage Systems ....................................................12

B. *Alice* Step 1: The Invention Is Not Directed to an Abstract Idea..........................16

1. AutoStore’s Motion Relies on Abstraction of the Invention and Assumed Claim Constructions, Which the Court Has Not Adopted .........16

2. AutoStore Is Wrong That the ’404 Patent’s Invention Can Be Carried Out in the Human Mind ..............................................................21

C. *Alice* Step 2: The Claims Include Inventive Concepts That Comprise More Than Well-Understood, Routine, or Conventional Activity ........................25

1. Claim 1 Includes the Required Inventive Concepts..................................26

2. The Dependent Claims Include Additional Inventive Concepts................28

3. AutoStore Cannot Meet Its Burden of Showing That There Is No Set of Facts That Supports Patent-Eligibility at *Alice* Step 2 ....................30

CONCLUSION......................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aatrix Software, Inc.* v. *Green Shades Software, Inc.*,
882 F.3d 1121 (Fed. Cir. 2018)....................12

*Alice Corp.* v. *CLS Bank Int'l*,
573 U.S. 208 (2014).................... *passim*

*Ariosa Diagnostics, Inc.* v. *Sequenom, Inc.*,
788 F.3d 1371 (Fed. Cir. 2015)....................19

*Bancorp Servs., L.L.C.* v. *Sun Life Assurance Co. of Can. (U.S.)*,
687 F.3d 1266 (Fed. Cir. 2012)....................12, 19

*Barry* v. *Medtronic, Inc.*,
250 F. Supp. 3d 107 (E.D. Tex. 2017)....................6

*BASCOM Global Internet* v. *AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)....................25

*Baxter Int'l, Inc.* v. *Carefusion Corp.*,
2016 WL 2770787 (N.D. Ill. May 13, 2016)....................23

*Berkheimer* v. *HP Inc.*,
881 F.3d 1360 (Fed. Cir. 2018)....................30

*Bio-Rad Labs., Inc.* v. *10X Genomics, Inc.*,
2020 WL 2079422 (D. Mass. Apr. 30, 2020)....................5

*Bio-Rad Labs., Inc.* v. *Thermo Fisher Sci., Inc.*,
267 F. Supp. 3d 499 (D. Del. 2017)....................5

*Cellspin Soft, Inc.* v. *Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)....................12, 26, 30

*ChargePoint, Inc.* v. *SemaConnect, Inc.*,
920 F.3d 759 (Fed. Cir. 2019)....................18

*CLS Bank Int'l* v. *Alice Corp. Pty*,
717 F.3d 1269 (Fed. Cir. 2013)....................23

*Content Extraction & Transmission LLC* v. *Wells Fargo Bank, Nat'l Ass'n*,
776 F.3d 1343 (Fed. Cir. 2014)....................25

*Core Wireless Licensing S.A.R.L.* v. *LG Elecs., Inc.*,
880 F.3d 1356 (Fed. Cir. 2018).........................................................................17

*Crypto Research, LLC* v. *Assa Abloy, Inc.*,
236 F.Supp.3d 671 (E.D.N.Y. 2017) ..................................................................4

*cxLoyalty, Inc.* v. *Maritz Holdings Inc.*,
986 F.3d 1367 (Fed. Cir. 2021).........................................................................19

*Data Engine Techs. LLC* v. *Google LLC*,
906 F.3d 999 (Fed. Cir. 2018).....................................................................13, 18

*DDR Holdings, LLC* v. *Hotels.com, L.P.*,
773 F.3d 1245 (Fed. Cir. 2014).........................................................................22

*DermaFocus LLC* v. *Ulthera, Inc.*,
201 F. Supp. 3d 465 (D. Del. 2016)....................................................................4

*Enfish, LLC* v. *Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)...................................................................16, 17

*Finjan, Inc.* v. *Blue Coat Sys., Inc.*,
879 F.3d 1299 (Fed. Cir. 2018)...................................................................17, 25

*Fr. Telecom S.A.* v. *Marvell Semiconductor Inc.*,
39 F. Supp. 3d 1080 (N.D. Cal. 2014) ..............................................................24

*Glob.-Tech Appliances* v. *SEB S.A.*,
563 U.S. 754 (2011)...........................................................................................8

*Halo Elecs. Inc.* v. *Pulse Elecs.*,
136 S. Ct. 1923 (2016)........................................................................................6

*Incom Corp.* v. *Walt Disney Co.*,
2016 WL 4942032 (C.D. Cal. Feb. 4, 2016)...................................................3, 5

*In re Bill of Lading*,
681 F.3d 1323 (Fed. Cir. 2012).........................................................................10

*In re Marco Guldenaar Holding B.V.*,
911 F.3d 1157 (Fed. Cir. 2018).........................................................................25

*Ioengine, LLC* v. *PayPal Holdings, Inc.*,
2019 WL 330515 (D. Del. Jan. 25, 2019)............................................................9

*Le Roy* v. *Tatham*,
55 U.S. 156 (1852).............................................................................................11

*Lexington Luminance LLC* v. *TCL Multimedia Tech. Holdings, Ltd.*,
2017 WL 3795769 (D. Mass. Aug. 30, 2017) ....................5

*Lifetime Indus., Inc.* v. *Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)....................3, 10

*Iron Gate Security, Inc.* v. *Lowe's Companies, Inc.*,
2016 WL 4146140 (S.D.N.Y. Aug. 3, 2016)....................23

*Mayo Collaborative Servs.* v. *Prometheus Labs., Inc.*,
566 U.S. 66 (2012)....................11

*McRO, Inc.* v. *Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)....................17

*Metro-Goldwyn-Mayer Studios, Inc.* v. *Grokster, Ltd.*,
545 U.S. 913 (2005)....................10

*Microsoft Corp.* v. *i4i Ltd. P'ship*,
564 U.S. 91 (2011)....................12

*MONEC Hldg. AG* v. *Motorola Mobility, Inc.*,
897 F. Supp. 2d 225 (D. Del. 2012)....................8

*Motiva Patents, LLC* v. *Sony Corp.*,
408 F. Supp. 3d 819 (E.D. Tex. 2019)....................7, 10

*Nalco Co.* v. *Chem-Mod, LLC*,
883 F.3d 1337 (Fed. Cir. 2018)....................9

*North Star Innovations, Inc.* v. *Micron Tech., Inc.*,
2017 WL 5501489 (D. Del. Nov. 16, 2017) ....................4

*Prowire LLC* v. *Apple, Inc.*,
2017 WL 3444689 (D. Del. Aug. 9, 2017) ....................4

*Rapid Litig. Mgmt.* v. *CellzDirect, Inc.*,
827 F.3d 1042 (Fed. Cir. 2016)....................26

*Read Corp.* v. *Portec, Inc.*,
970 F.2d 827 (Fed. Cir. 1992)....................6

*Sapphire Crossing LLC* v. *Quotient Tech. Inc.*,
2020 WL 1550786 (D. Del. Apr. 1, 2020)....................30

*Scripps Research Inst.* v. *Illumina, Inc.*,
2016 WL 6834024 (S.D. Cal. Nov. 21, 2016) ....................4

*SIMO Holdings, Inc.* v. *Hong Kong uCloudlink Network Tech. Ltd.*,
396 F. Supp. 3d 323 (S.D.N.Y. 2019)....................7

*Simplivity Corp.* v. *Springpath, Inc.*,
2016 WL 5388951 (D. Mass. July 15, 2016)....................7

*SiRF Technologies, Inc.* v. *Int'l Trade Comm'n*,
601 F.3d 1319 (Fed. Cir. 2010)....................23

*Sunrise Techs., Inc.* v. *Cimcon Lighting, Inc.*,
219 F. Supp. 3d 260 (D. Mass. 2016)....................3

*Suprema, Inc.* v. *Int'l Trade Comm'n*,
2015 WL 5315371 (Fed. Cir. 2015)....................8

*SynQor, Inc.* v. *Artesyn Techs., Inc.*,
2011 WL 3624957 (E.D. Tex. Aug. 17, 2011),
*aff'd*, 709 F.3d 1365 (Fed. Cir. 2013)....................7

*Thales Visionix Inc.* v. *United States*,
850 F.3d 1343 (Fed. Cir. 2017)....................16

*Tinnus Enters., LLC* v. *Telebrands Corp.*,
846 F.3d 1190 (Fed. Cir. 2017)....................10

*TQP Dev., LLC* v. *Intuit Inc.*,
2014 WL 651935 (E.D. Tex. Feb. 19, 2014)....................24

*Välinge Innovation AB* v. *Halstead New England Corp.*,
2018 WL 2411218 (D. Del. May 28, 2018)....................6

*Vasudevan Software, Inc.* v. *TIBCO Software Inc.*,
2012 WL 1831543 (N.D. Cal. May 18, 2012)....................8

*Vineyard Investigations* v. *E. & J. Gallo Winery*,
2021 WL 22497 (E.D. Cal. Jan. 4, 2021)....................23

**Statutes**

35 U.S.C. § 101.................... *passim*

35 U.S.C. § 112(f)....................20

35 U.S.C. § 271(b)....................9

35 U.S.C. § 282....................2, 12

Plaintiffs ("Ocado") respectfully submit this opposition to Defendants' ("AutoStore") Partially Renewed Motion to Dismiss (ECF Nos. 36, 36-1) ("Motion" or "Mot.").[1]

**INTRODUCTION**

AutoStore's Partially Renewed Motion seeks dismissal of claims on three separate bases, each of which is flawed. *First*, although Ocado's direct infringement allegations regarding U.S. Patent No. 10,901,404 ("'404 Patent")[2] did not change in the Second Amended Complaint ("SAC"), AutoStore argues for the first time in its Motion that Ocado did not adequately plead direct infringement of the '404 Patent by AutoStore's software ("Router"). (Mot. at 18-19.) Of course, more specific allegations of infringement by *software* cannot be made until Ocado receives access to AutoStore's source code under a protective order. Ocado has more than adequately alleged infringement based on available information evidencing Router's operation. That information (SAC ¶¶ 48-57, 72-76, 103-10) satisfies the applicable pleading standards.

*Second*, AutoStore argues that Ocado has not sufficiently pleaded AutoStore's knowledge of the Asserted Patents to establish (i) induced infringement (*i.e.*, inducement of direct infringement by customers and partners), or (ii) willful infringement that may entitle Ocado to enhanced damages. With regard to both, Ocado has sufficiently pleaded *pre*-suit knowledge of the Asserted Patents because the factual allegations support a reasonable inference that AutoStore knew of, or was willfully blind to, the Asserted Patents. Moreover, Ocado has established induced and willful infringement based on AutoStore's *post*-suit knowledge, which is legally sufficient and

---

[1] AutoStore's original motion to dismiss (ECF Nos. 28, 28-1) included a jurisdictional challenge that it has since dropped. AutoStore has renewed its challenge under Rule 12(b)(6).

[2] The patents asserted in this action are U.S. Patent Nos. 9,796,080 ("'080 Patent"), 10,901,404 ("'404 Patent"), 10,913,602 ("'602 Patent"), and 10,961,051 ("'051 Patent") (collectively, the "Asserted Patents").

which AutoStore does not contest. And AutoStore's argument that Ocado must allege "egregious conduct" is legally mistaken. (Mot. at 19, 23.) Courts have repeatedly held that there is no "egregious conduct" pleading requirement, and the patentee must only plead knowledge of the asserted patents. In any event, Ocado pleaded egregious conduct—*i.e.*, deliberate copying of Ocado's technology. (SAC ¶¶ 13-22, 70-71, 80-87.)

*Third*, AutoStore requests that the Court summarily invalidate one of Ocado's patents—presumed valid under 35 U.S.C. § 282 until proved invalid by clear and convincing evidence—based on an improper overgeneralization of the patented technology, which AutoStore touts as critical to its products. As AutoStore undoubtedly knows, in response to concerns about courts summarily invalidating patents through Rule 12 motions, the Federal Circuit held in 2018 and in cases thereafter that courts should invalidate patents on the pleadings only where the movant shows by clear and convincing evidence that there is *no set of facts* supporting validity. The Federal Circuit made clear that the question of whether a patent is directed to eligible subject matter often involves fact issues to be resolved by a jury (*e.g.*, because of an expert declaration, as Ocado submitted here), and it is inappropriate to dispose of a patent through a Rule 12 motion.

## ARGUMENT

### I. OCADO HAS SUFFICIENTLY PLEADED DIRECT, WILLFUL, AND INDIRECT PATENT INFRINGEMENT.

AutoStore argues that Ocado did not sufficiently plead (i) direct infringement of the '404 Patent by AutoStore's new software (Mot. at 18-19), (ii) willful infringement of any Asserted Patent (*id.* at 19-24), and (iii) induced infringement of any Asserted Patent (*id.* at 24-25). These arguments are meritless.

**A. Ocado Has Adequately Pleaded That AutoStore Directly Infringed the '404 Patent.**

There is no requirement that a plaintiff "prove its case at the pleading stage." *Lifetime Indus., Inc.* v. *Trim-Lok, Inc.*, 869 F.3d 1372, 1379 (Fed. Cir. 2017) (reversing grant of motion to dismiss patent infringement complaint). Instead, to prevail on a motion to dismiss under Rule 12(b)(6), "a complaint must 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* at 1376 (quoting *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inferences that the defendant is liable for the misconduct alleged." *Incom Corp.* v. *Walt Disney Co.*, 2016 WL 4942032, at *2 (C.D. Cal. Feb. 4, 2016) (denying in part motion to dismiss patent infringement complaint for failure to state claim); *Sunrise Techs., Inc.* v. *Cimcon Lighting, Inc.*, 219 F. Supp. 3d 260, 263-64 (D. Mass. 2016) (denying in part 12(b)(6) motion to dismiss claim of direct patent infringement).

In half of one page, AutoStore half-heartedly argues that Ocado failed to allege that defendants' product practices all the elements of at least one of the claims of the '404 Patent because Ocado purportedly failed to plead that AutoStore's Router software met the third and fourth elements of claim 1 of the '404 Patent. (*See* Mot. at 18-19.) As a preliminary matter, in any patent infringement case concerning software, specific infringement contentions are expected and provided after experts inspect confidential source code, which typically is provided under the most stringent obligations of a protective order. Accordingly, software infringement allegations in a patent infringement complaint always are based on high-level information about what software

does, as is the case here. Ocado more than adequately met the pleading standards with respect to the third and fourth elements of claim 1 of the ’404 Patent.[3]

The third claim element recites “a reservation unit configured to reserve a path on the grid-like structure for each transporting device based on the determined route.” ’404 Patent, at 26:5-7. Ocado alleged that the “Router meets this element” at least because it “includes a module configured to plan and reserve a route for robots operating on the grid.” (SAC ¶ 47.) Ocado further alleged that (i) “AutoStore has described Router as ‘ensur[ing] the best possible traffic flow, always,’ which necessarily requires that the system map and reserve routes for the robots” (SAC ¶ 106), and (ii) “Router conducts sophisticated planning and dynamic re-planning in which each robot has at least a portion of its route planned” (SAC ¶ 74). Ocado further included an image from an AutoStore presentation that “explains that the robots ‘cannot cross [the] red . . . blocked areas,’ which depict the robots’ reserved path across the grid.” (SAC ¶ 75.) These allegations more than sufficiently support a reasonable inference that Router utilizes a reservation unit, as required by claim 1.

The fourth claim element recites “a clearance unit” that provides “a clearance instruction . . . for execution by a control unit on each transporting device at a future time.” ’404

[3] Since the December 2015 abrogation of Form 18, “the extent to which a plaintiff must plead direct infringement element-by-element remains unsettled.” *Crypto Research, LLC* v. *Assa Abloy, Inc.*, 236 F.Supp.3d 671, 685 (E.D.N.Y. 2017). The District of Delaware—which oversees the bulk of patent litigation in the United States—has “decline[d]” to require element-by-element pleading. *DermaFocus LLC* v. *Ulthera, Inc.*, 201 F. Supp. 3d 465, 469 (D. Del. 2016); *see Prowire LLC* v. *Apple, Inc.*, 2017 WL 3444689, at *3 (D. Del. Aug. 9, 2017). Ocado does not have an “element-by-element” pleading obligation, which is a sufficient reason to deny AutoStore’s motion. Moreover, courts requiring element-by-element allegations recognize that pleadings do not need details that would be expected at later stages. *See Scripps Research Inst.* v. *Illumina, Inc.*, 2016 WL 6834024, at *6 (S.D. Cal. Nov. 21, 2016); *North Star Innovations, Inc.* v. *Micron Tech., Inc.*, 2017 WL 5501489, at *3 (D. Del. Nov. 16, 2017).

Patent, at 26:12-17. Ocado alleged that Router's "tasks include *advanced* traffic control, *planning* and *scheduling* of tasks" (SAC ¶ 72 (emphasis added)), which is more than sufficient to draw the reasonable inference that Router provides for future execution of commands. The SAC also alleges that "the descriptions of how Router functions, including that it is 'constantly re-evaluating all the routes to ensure the best possible traffic flow,' lead to a reasonable inference that clearance instructions to travel over a portion of a reserved path are provided for execution by a control unit on each robot for execution at a later time." (SAC ¶ 106.)

Ocado "has stated a plausible claim for direct infringement by specifically identifying Defendants' products and alleging that they perform the same unique function as [Ocado]'s patented system." *Incom Corp.*, 2016 WL 4942032, at *3 (citing *Bender* v. *LG Electronics U.S.A., Inc.*, 2010 WL 889541, at *6 (N.D. Cal. Mar. 11, 2010)). It is unreasonable for AutoStore to expect Ocado to prove its case in the pleadings.

**B. Ocado Has Adequately Pleaded Willful Infringement.**

AutoStore argues that Ocado's willful infringement claims should be dismissed because Ocado did not plead "egregious conduct." AutoStore's argument is legally flawed. Courts in this Circuit have held that "whether [a] plaintiff can ultimately show that it is entitled to enhanced damages for Defendants' *egregious infringement behavior is not relevant* to the Court's consideration of a motion to dismiss," and "at this juncture, a plaintiff is not required to allege more than knowledge of the patent and of infringement." *Bio-Rad Labs., Inc.* v. *10X Genomics, Inc.*, 2020 WL 2079422, at *6 (D. Mass. Apr. 30, 2020) (alterations omitted and emphasis added); *see also Lexington Luminance LLC* v. *TCL Multimedia Tech. Holdings, Ltd.*, 2017 WL 3795769, at *6 (D. Mass. Aug. 30, 2017); *see also Bio-Rad Labs., Inc.* v. *Thermo Fisher Sci., Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017) ("At the pleading stage, it is not necessary to show that the case

is egregious."); *Välinge Innovation AB* v. *Halstead New England Corp.*, 2018 WL 2411218, at *6-9 (D. Del. May 28, 2018) (same).[4] As a matter of law, AutoStore's argument can readily be rejected.

In any event, Ocado *has* sufficiently alleged egregious conduct. The Federal Circuit has enumerated nine factors courts often consider to assess egregiousness—the first two of which are (i) "whether the infringer deliberately copied the ideas or designs of another," and (ii) "whether the infringer, when [they] knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or that it was not infringed." *Read Corp.* v. *Portec, Inc.*, 970 F.2d 827 (Fed. Cir. 1992); *see also Barry* v. *Medtronic, Inc.*, 250 F. Supp. 3d 107, 112 (E.D. Tex. 2017) ("The copying inquiry under *Read* focuses not on whether [the infringer] copied [the patentee's] patent but whether it copied 'the ideas or design of another,' regardless of when [the patentee's] patents might have issued." (quoting *Read Corp.*, 970 F.2d at 827)). As alleged in the SAC, the timeline of AutoStore's "development" of its Black Line product strongly supports the inference that AutoStore deliberately copied Ocado's ideas and designs. (*See* SAC ¶¶ 7, 13-22.) Unlike Ocado, AutoStore did not invest heavily in innovation; it simply continued to sell its legacy Red Line System for many years, and then launched a "new" product

---

[4] AutoStore relies exclusively on out-of-circuit cases and mischaracterizes Justice Breyer's concurrence in *Halo*. Justice Breyer stated that an enhanced damages award at the end of a patent case requires a finding of egregious conduct, but that has nothing to do with pleading requirements. *See Halo Elecs. Inc.* v. *Pulse Elecs.*, 136 S. Ct. 1923, 1936 (2016) (Breyer, J., concurring). Moreover, an "egregiousness" pleading requirement would undermine uniformity and consistency of federal law. Although it rests in the discretion of the court whether to award enhanced damages based on the totality of the facts presented at the case, and a finding of egregious conduct, it makes no sense to ask a court to assess "egregiousness" based on a complaint.

line that is similar to Ocado's innovative system in several respects, as alleged in the SAC. (*See id.*)

Separately, AutoStore wrongly argues that Ocado did not sufficiently allege AutoStore's pre-suit knowledge of the Asserted Patents. Pre-suit knowledge may be inferred based on indicia of knowledge or, alternatively, under a theory of willful blindness. *See SIMO Holdings, Inc.* v. *Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 334 (S.D.N.Y. 2019) ("Evidence of knowledge to show willful infringement need not be "direct" so long as it is "evidence from which a jury could reasonably infer . . . knowledge."); *Motiva Patents, LLC* v. *Sony Corp.*, 408 F. Supp. 3d 819, 830 (E.D. Tex. 2019) (finding that the "requisite knowledge" may be "circumstantially inferred"). Ocado's allegations are sufficient under either standard.

As alleged in the SAC, there are at least four indicia supporting an inference of pre-suit knowledge. *First*, knowledge can be inferred from the competitive nature of the industry—Ocado and AutoStore are the only two competitors in the Cubic AS/RS market.[5] (SAC ¶¶ 13, 70-71, 81-82.) *Second*, the chronology of AutoStore's product development strongly suggests that AutoStore copied Ocado's patented technology.[6] (SAC ¶¶ 13-21, 70-71, 80-82.) *Third*, AutoStore has frequently cited Ocado's patents in AutoStore's own patent applications, and

[5] *See SynQor, Inc.* v. *Artesyn Techs., Inc.*, 2011 WL 3624957, at *6 (E.D. Tex. Aug. 17, 2011), *aff'd*, 709 F.3d 1365 (Fed. Cir. 2013) (inferring knowledge, in part, because patentee and accused infringer were both in a "highly competitive industry in which each of the [Defendants] closely followed [patentee's] technology and obtained access to its products and datasheets").

[6] *See Simplivity Corp.* v. *Springpath, Inc.*, 2016 WL 5388951, at *10 (D. Mass. July 15, 2016) ("[I]t is difficult to envision the alternative scenario: a sophisticated party, after allegedly investigating and in some regard—the extent to which likely will become clear through discovery—copying a competitor's technology, being oblivious to the patent reflecting that technology.").

it has filed oppositions to several of Ocado's international patent applications—*including counterparts to the Asserted Patents*—strongly suggesting that AutoStore is well-aware of Ocado's patents.[7] (SAC ¶ 82.) AutoStore also has filed entitlement proceedings related to the '404 Patent in the United Kingdom. (SAC ¶ 84.) *Fourth*, at least with respect to U.S. Patent Nos. 10,913,602 ("'602 Patent") and 10,961,051 ("'051 Patent"), before the initiation of this action, Ocado filed two *inter partes* review petitions against AutoStore patents, which specifically cited patents in the same patent family. (SAC ¶ 83.) To determine whether those patents were prior art, AutoStore necessarily reviewed the patent family. (*See* SAC ¶¶ 13-21, 22 n.21.)

Given these indicia, it is reasonable to infer pre-suit knowledge. Even if that were not the case, each indicium separately supports willful blindness. *See Glob.-Tech Appliances* v. *SEB S.A.*, 563 U.S. 754, 769 (2011). There are "two basic requirements" to find a party willfully blind: "(1) The defendant must subjectively believe that there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.*; *see also Suprema, Inc.* v. *Int'l Trade Comm'n*, , 626 F. App'x 273, 281-82 (Fed. Cir. 2015). The indicia described above support an inference that AutoStore was subjectively aware of a high probability that Ocado had obtained the Asserted Patents but chose to stay blind to them.[8]

[7] For example, AutoStore filed an opposition to EP3030504, the European parent patent in the '602 Patent family, on November 7, 2018. AutoStore then filed an opposition to EP3299316, the next divisional patent in the same family, on July 9, 2020.

[8] The factual circumstances in the two cases Defendants cite for this point are inapposite and entirely distinguishable. *Vasudevan Software, Inc.* v. *TIBCO Software Inc.*, 2012 WL 1831543 (N.D. Cal. May 18, 2012) (finding that an allegation of mere knowledge of a pending patent application and no other indicia of knowledge was insufficient to state a claim); *MONEC Hldg. AG* v. *Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012) (finding that a vague allegation that defendants "likely monitor[] the activities of its primary competitors" insufficient

Finally, Ocado has sufficiently alleged willful infringement based on post-suit knowledge of the Asserted Patents, which the Federal Circuit has recognized is sufficient to sustain a claim for willful infringement as to post-suit infringement. *Ioengine, LLC* v. *PayPal Holdings, Inc.*, 2019 WL 330515, at *7 & n.4 (D. Del. Jan. 25, 2019) (Bryson, C.J., by designation). Defendants "do not dispute that Ocado has sufficiently alleged Defendants' post-suit knowledge of the Asserted Patents." (Mot. at 19 n.5 (emphasis omitted).)

**C. Ocado Has Adequately Pleaded Induced Infringement.**

AutoStore incorrectly argues that Ocado provided insufficient allegations to support a claim that AutoStore has induced and continues to induce its customers and partners to infringe. There often are situations in which the main economic actor does not itself directly infringe a patent (*e.g.*, because the patent is not directly infringed until a customer uses a product). Congress thus provided that a person who induces infringement shall be liable for patent infringement. 35 U.S.C. § 271(b). This is important because otherwise the main economic actor would escape liability, as AutoStore attempts to do here. Ocado's allegations are more than sufficient to sustain its induced infringement claims.

A plaintiff need only plead facts plausibly showing that the defendant "intended [another party] to infringe [the patent] and knew that the [other party]'s acts constituted infringement." *Nalco Co.* v. *Chem-Mod, LLC*, 883 F.3d 1337, 1355-56 (Fed. Cir. 2018) (quotation marks omitted). As described above, the SAC sufficiently alleges several indicia of knowledge. Moreover, in the context of induced infringement, Ocado provided an additional factual allegation

to imply willful blindness). As explained above, Ocado alleged and relies on five separate indicia of knowledge or, in the alternative, willful blindness.

that supports an inference of pre-suit knowledge. As alleged in the SAC, AutoStore's infringing products have no substantial non-infringing use (SAC ¶ 81), and the knowledge requirement of induced infringement "may [] be circumstantially inferred from the fact that the accused product or component has no substantial noninfringing uses." *See Motiva Patents*, 408 F. Supp. 3d at 830; *see also Metro-Goldwyn-Mayer Studios, Inc.* v. *Grokster, Ltd.*, 545 U.S. 913 (2005).

Separately, as with willful infringement, AutoStore's *post*-suit knowledge is sufficient because Defendants' infringement "is ongoing." (SAC ¶¶ 74-75, 82-83, 89-91, 97.) AutoStore conceded that, at the latest, it had knowledge of the Asserted Patents on January 17, 2021, when Ocado filed its original complaint. That is sufficient to sustain a claim based on post-suit conduct and knowledge. AutoStore asserts that a complaint may only provide the requisite knowledge for post-filing conduct in a *later-amended complaint*. (Mot. at 24.) That is confusing because Ocado did file an amended complaint on April 23, 2021, which alleged AutoStore's knowledge based on Ocado's prior complaints. (SAC ¶ 87.)

Finally, Ocado sufficiently alleges specific intent, which merely requires that "the patent owner . . . allege[] knowledge of the patent and [] plausibly plead[] that the defendants' customers" practice the claimed technology. *Lifetime Indus., Inc.*, 869 F.3d at 1379-80. Providing instruction manuals, technical assistance, and promotional materials that support and market an infringing system can all be sufficient circumstantial evidence of intent to induce infringement. *Tinnus Enters., LLC* v. *Telebrands Corp.*, 846 F.3d 1190, 1204-05 (Fed. Cir. 2017).[9] Here, Ocado

---

[9] *See, e.g.*, *In re Bill of Lading*, 681 F.3d 1323, 1341-42 (Fed. Cir. 2012) ("Common sense indicates that advertising that your product can be used in conjunction with [an infringing system] . . . gives rise to a reasonable inference that you intend to induce your customers to accomplish these benefits through utilization of the patented method.").

alleges that AutoStore provided "instructions, manuals, technical assistance, and promotional materials relating to the installation, use, operation, and maintenance of [the infringing products]." (SAC ¶¶ 73-74, 90-91, 98, 105, 113.) That is sufficient.

## II. THE '404 PATENT IS DIRECTED TO ELIGIBLE SUBJECT MATTER.

AutoStore requests that the Court declare (on the pleadings alone) that the '404 Patent is invalid purportedly because it is directed to ineligible subject matter under Section 101 of the Patent Act. This argument is misguided and wrong. Section 101 lists categories of patent-eligible subject matter: "[A]ny new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. "[L]aws of nature, natural phenomena, and abstract ideas" are an "exception." *Mayo Collaborative Servs.* v. *Prometheus Labs., Inc.*, 566 U.S. 66, 70 (2012) (quoting *Diamond* v. *Diehr*, 450 U.S. 175, 185 (1981)); *see also Le Roy* v. *Tatham*, 55 U.S. 156, 175 (1852). However, the Supreme Court has cautioned courts to "tread carefully in construing [these] exclusionary [categories] lest [they] swallow all of patent law," *Alice Corp.* v. *CLS Bank Int'l*, 573 U.S. 208, 217 (2014) (citing *Mayo*, 566 U.S. at 71), because "[a]t some level, 'all inventions . . . embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.'" *Id.* (quoting *Mayo*, 566 U.S. at 71). Even if an invention involves an abstract idea, "'[a]pplication[s]' of such concepts 'to a new and useful end' . . . remain eligible for patent protection." *Id.* (quoting *Gottschalk* v. *Benson*, 409 U.S. 63, 67 (1972)).

To assess § 101 eligibility, the Supreme Court established a two-step analysis. *See id.* at 217-24. Courts first "determine whether the claims at issue are directed to [a] patent-ineligible concept[]." *Id.* at 217. If so, the second step asks courts to "search for an 'inventive concept'" that is "sufficient to 'transform' the claimed abstract idea into a

patent-eligible application." *Id.* at 217, 221 (quoting *Mayo*, 566 U.S. at 72). The patents are presumed valid pursuant to 35 U.S.C. § 282, and the defendant must provide clear and convincing evidence to overcome that presumption. *Cellspin Soft, Inc.* v. *Fitbit, Inc.*, 927 F.3d 1306, 1319 (Fed. Cir. 2019) (addressing § 101 challenge); *see also Microsoft Corp.* v. *i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011) (same).

The step-two inquiry often involves questions of fact, making it inappropriate to dismiss a claim on § 101 grounds. *Cellspin Soft*, 927 F.3d at 1318; *Aatrix Software, Inc.* v. *Green Shades Software, Inc.*, 882 F.3d 1121, 1126-27 (Fed. Cir. 2018). Courts also increasingly defer resolution of § 101 challenges until after claim construction, which impacts both steps of the *Alice* inquiry. *See Bancorp Servs., L.L.C.* v. *Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012). Here, each step of the *Alice* inquiry independently confirms that the challenged patent claims are patent-eligible under § 101. In any event, dismissal at this early stage of the litigation—before claim construction and fact discovery—would be contrary to Federal Circuit precedent.

### A. The '404 Patent Solves Problems Specific to Operation of Fully Automated Stacked-Bin Grid Storage Systems.

The'404 Patent is directed to coordination of automated warehouse storage systems. '404 Patent, at 1:37-39. Certain businesses store thousands of different products, and efficient fulfillment of orders depends on an ability to store, retrieve, and return items quickly and with high accuracy. Traditional warehouses used stored items on rows of shelves, with aisles to allow access by employees or robots. *Id.* at 1:30-36. The system to which the '404 Patent pertains is different: bins are stacked in columns that comprise a dense storage cube without aisles, and the top of that cube has rails arranged in a grid pattern. *Id.* at 1:50-55. Robotic vehicles move

across the grid, providing access to each column from above, as shown in figure 7 of the '404 Patent. *Id*. at 1:56-59; Fig. 7.

The problem facing the inventors of the '404 Patent arises specifically in the context of such an automated stacked-bin storage system, which relies on hundreds of robots. *See* '404 Patent, at 1:35-36; 1:62-65; D'Andrea Decl. ¶ 22.[10] The robots are confined to rails on a two-dimensional grid, which necessarily limits the number of paths from any starting point to any destination, increasing the likelihood of robot collisions. *See, e.g.*, '404 Patent, at 6:26-29; *see also* D'Andrea Decl. ¶ 23. In addition to the limited number of pathways, the stacked-bin grid storage configuration creates other unique problems, including (i) human employees cannot move on the grid, so unlike some prior systems, operation depends entirely on efficient, automated control of robots without human intervention; (ii) the dense configuration of the grid—comprising metal columns and similar structures—interferes with radio signals, which increases the likelihood of missed communications between the controller and robots, '404 Patent, at 5:49-54; and (iii) robots do not ideally act according to models of their behavior, which makes it difficult to plan exactly the future location of each robot. Response to Office Action in App. No. 15/992,899, dated Dec. 3, 2018, at 3;[11] *see* D'Andrea Decl. ¶¶ 21-23. Accordingly, robot movement on such a system uniquely requires complex coordination by a central system that can, without human

[10] Plaintiffs refer herein to the Declaration of Professor Raffaello D'Andrea (ECF No. 35-22) (the "D'Andrea Decl."), a renowned expert in, among other areas, the development of control systems for robot coordination in automated warehouse systems.

[11] Courts regularly consider a patent's prosecution history in resolving § 101 challenges at the pleading stage. *See Data Engine Techs. LLC* v. *Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018) (noting that "[o]n a motion for judgment on the pleadings . . . the court may consider matters of public record," including the prosecution history).

intervention and in real time, plan, reserve, and maintain efficient travel paths for hundreds of robots. *See*, *e.g.*, '404 Patent, at 5:37-40; Response to Office Action in App. No. 15/992,899, dated Dec. 3, 2018, at 3-4; D'Andrea Decl. ¶ 23.

At the time of the invention, existing control systems did not plan and coordinate conflict-free paths for each robot from starting point to destination. Instead, prior systems planned a route without taking account of the movements of other robots on the grid, then relied on other, separate systems—such as robot proximity sensors—to prevent collisions on an *ad hoc* basis. D'Andrea Decl. ¶ 23. Such collision avoidance systems (*e.g.*, proximity sensors), although potentially adequate in a system with low vehicle density, were not adequate to address the problems raised by stacked-bin grid storage systems. In that context, the likelihood of a collision becomes exponentially greater and it is inefficient to rely on, *e.g.*, *ad hoc* proximity sensors as the collision avoidance mechanism. *Id.* As the '404 Patent explains, "[t]he co-ordination of the movement of one or more robotic or otherwise automated means may be an important consideration in determining the overall efficiency and scalability of a system for storage and retrieval of a large number of different products." '404 Patent, at 1:63-67.

The invention claimed in the '404 Patent provides a system that overcomes the scalability, efficiency, communications, and other problems associated with a stacked-bin grid storage system. The controller system of claim 1 of the '404 Patent includes three components. *First*, as in prior systems, the invention uses a movement optimization unit that determines a "route" from one location to another—the series of movements that will take a robot from a starting point to a destination. However, the routes generated by the movement optimization unit do not take into account the movements of other robots on the grid. As such, any particular route may

have the potential for collisions between robots. *See generally* Response to Office Action in Application No. 15/992,899, dated December 3, 2018, at 2-3.

*Second*, the invention includes a "reservation unit" to select and "reserve," from among a set of routes created by the movement optimization unit, a "path" such that "no two transporting devices have locations on the grid-like structure which would cause transporting devices to overlap *at a same time*." '404 Patent, claim 1 (emphasis added). The '404 Patent explains that the reservation unit uses a model of robot behavior to determine *when* the robot will traverse each portion of the route planned by the movement optimization unit. It compares this to the reserved paths already stored for other robots and, if there is any overlap, the path cannot be reserved for the robot, and the reservation unit evaluates another route. *See* '404 Patent, at 19:30-50; Response to Office Action in Application No. 15/992,899, dated December 3, 2018, at 3. The reservation unit is thus (unlike the movement optimization unit) "designed to create non-conflicting robot movement plans." '404 Patent, at 19:30-37.

*Third*, the invention includes a "clearance unit" to provide a robot, traveling on a section of a path reserved by the reservation unit, permission in advance to traverse the next portion of that path. The clearance module grants permission "to traverse a *portion* of the reserved path" only after "checking that it will not be possible to collide with another robot based on," among other things, specific information regarding "the current positions and speeds of robots." *Id.* claim 1 (emphasis added); *id.* at 18:39-45; *id.* claim 8. In other words, the system provides a clearance instruction to the robot telling it, based on its actual behavior, that it can safely proceed along a portion of the reserved path. If the clearance unit predicts a collision, clearance is denied and a new path can be planned and reserved "dynamically"—in real time—for the non-cleared robot. This is set out in, for example, dependent claims 5 and 9 of the '404 Patent.

The clearance unit accounts for the fact that robots may not precisely follow the path that was planned by the movement optimization unit and reserved by the reservation unit. Robots may become marginally off-path as a result of, among other things, missed communications, synchronization errors, or discrepancies between actual robot behavior and the model used to plan and reserve the path. *Id.* at 18:64-67. The clearance unit accounts for such off-path operation in light of the actual running behavior of the robot. *See, e.g.*, *id.* claim 11. Because the clearance unit relies on actual behavior, clearance instructions may—so long as significant deviations from model behavior are not observed—be provided in advance, "for execution [by the robot] at a future time," as required by claim 1. Although the reservation system provides conflict-free paths to eliminate most of the collision risk, the clearance unit provides another collision avoidance mechanism that efficiently eliminates remaining risk because of non-ideal behavior or missed communications. D'Andrea Decl. ¶¶ 29-30.

**B. *Alice* Step 1: The Invention Is Not Directed to an Abstract Idea.**

**1. AutoStore's Motion Relies on Abstraction of the Invention and Assumed Claim Constructions, Which the Court Has Not Adopted.**

AutoStore contends that the '404 Patent's claims are "directed to the abstract idea of vehicle routing" (*see* Mot. at 16), which is a strawman that depends on broad abstraction of the claims. AutoStore improperly ignores the claim language, the patent specification, and the prosecution history, and applies too high a level of abstraction without considering the individual elements of the claims. The Federal Circuit has repeatedly cautioned against abstraction that untethers the claims from their specific context and claim language. *See Enfish, LLC* v. *Microsoft Corp.*, 822 F.3d 1327, 1337 (Fed. Cir. 2016) (district court erred in "describing the claims at such a high level of abstraction and untethered from the language of the claims"); *Thales Visionix Inc.*

v. *United States*, 850 F.3d 1343, 1347 (Fed. Cir. 2017) (same); *McRO, Inc.* v. *Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016) (same).

Contrary to AutoStore's generalization and simplification of the '404 Patent as generic "vehicle routing," the claims of the '404 Patent are directed to a specific technological solution that improves the ability of a computer control system to manage large numbers of robots simultaneously on a *fully automated* stacked-bin grid storage system. Such a system has unique problems that do not arise generally or in other types of storage systems specifically (*e.g.*, in which humans directly control the robotic vehicles). *See infra* at II(B)(2). In the context of such fully automated systems, the '404 Patent provides a specific invention for routing that uses (1) a reservation unit that, unlike other routing systems, provides each robot with a path from its starting point to its destination that does not overlap the path of any other robot; and (2) a clearance system that keeps the robots on predetermined paths, rather than a system that simply tells the robot to deviate from its reserved path if a collision is imminent based on *ad hoc* events.

In *Alice*, the Supreme Court held that claims that "improve[] an existing technological process" are patentable. 573 U.S. at 223-25; *see also Finjan, Inc.* v. *Blue Coat Sys., Inc.*, 879 F.3d 1299, 1303 (Fed. Cir. 2018) ("In cases involving software innovations, th[e] [step one] inquiry often turns on whether the claims focus on 'the specific asserted improvement in computer capabilities.'" (quoting *Enfish*, 822 F.3d at 1335-36)). A court must distinguish between an improvement to existing technology, like the invention claimed in the '404 Patent, that may *invoke* but is not *directed to* an abstract idea, from an abstract idea that is simply "implemented on a generic computer" or carried out through "a handful of generic computer components." *Alice*, 573 U.S. at 210; *see also Core Wireless Licensing S.A.R.L.* v. *LG Elecs., Inc.*, 880 F.3d 1356, 1363 (Fed. Cir. 2018) (claim was not directed to abstract idea, but rather constituted "an improvement

in the functioning of computers, particularly those with small screens"); *Data Engine Techs. LLC* v. *Google LLC*, 906 F.3d 999, 1007-11 (Fed. Cir. 2018) (software that improved accessibility of spreadsheet functions is patentable under § 101). The features of the '404 Patent's invention that distinguish it from general vehicle routing—the reservation unit and clearance unit—are the same, in concept, to the distinguishing features at issue in *Enfish*. In that case, the Federal Circuit held that the key "novel" features of the invention could not be ignored, and it recognized that "the claims are not simply directed to ***any form*** of storing tabular data, but instead are ***specifically direct to*** a self-referential table for a computer database." 822 F.3d at 1337 (emphasis added). The Federal Circuit concluded that it was error for the district court to disregard the actual claim elements in favor of the defendant's abstraction, which "oversimplified the self-referential component of the claims and downplayed the invention's benefits." *Id.* at 1338. AutoStore invites the same error.

The cases on which AutoStore relies are distinguishable. In those cases, the at-issue patent claims focused on ways that humans could carry out prior practices more efficiently with known technologies, not improvements to the technology itself. In *ChargePoint, Inc.* v. *SemaConnect, Inc.*, "the problem identified by the patentee, as stated in the specification, was the lack of a communication network that would allow drivers, businesses, and utility companies to interact efficiently with the charging stations." 920 F.3d 759, 767 (Fed. Cir. 2019). The specification "never suggests that the charging station itself is improved from a technical perspective, or that it would operate differently than it otherwise could," nor does it suggest "that the invention involved overcoming some sort of technical difficulty in adding networking capability to the charging stations." *Id.* at 768. By contrast, the '404 Patent does not improve the ability of human operators to communicate with robots in a grid storage system, but rather provides

a technological system that improves the functioning of a fully automated storage system and overcomes technical difficulties that arise only in that context.

Likewise, the problem facing the inventor in *In re TLI Communications LLC Patent Litigation* was to "provid[e] for recording, administration and archiving of digital images simply, fast and in such a way that the information therefore may easily be tracked" by humans. 823 F.3d 607, 612 (Fed. Cir. 2016). The Federal Circuit found that the claim was directed to ineligible subject matter, but suggested that the result would have been different if the problem facing the inventor had been a technological improvement, such as "how to combine a camera with a cellular telephone" or "how to transmit images via a cellular network." *Id.*[12] Here, the invention is not the use of computer systems to increase the efficiency with which humans perform a prior practice; rather, the '404 Patent provides a specific technological improvement to a fully automated system.

Separately, AutoStore's generalization and simplification of the '404 Patent depends on a premature claim construction exercise. The Court should not resolve whether the '404 Patent is directed to an abstract idea at least until the claims have been construed, which will be briefed, argued, and decided at a later stage. *See Bancorp Servs.*, 687 F.3d at 1273-74. Here,

[12] Similarly, in *cxLoyalty, Inc.* v. *Maritz Holdings Inc.*, the Federal Circuit acknowledged that the problem facing the inventors—connecting a loyalty awards system with those of third-party vendors while keeping the overall nature of the transaction hidden—was "not a technological problem requiring a solution that improves the performance of the computer system itself." 986 F.3d 1367, 1378 (Fed. Cir. 2021) (emphasis added). Rather, the claims merely recite "conventional techniques specified in functional terms and at a high degree of generality" to allow computers to conceal information. *Id.* The decision in *Ariosa Diagnostics, Inc.* v. *Sequenom, Inc.*, 788 F.3d 1371 (Fed. Cir. 2015), is even less relevant here. That case dealt with a patent for identifying a naturally occurring biological material. There was no allegation that the invention involved an abstract idea at all. *See id.* at 1377.

construction of at least the terms "reservation unit," "clearance unit," "clearance instruction," and the phrase "execution of a control unit . . . at a future time" in claim 1—and other terms and phrases in the dependent claims—stand to impact any decision about the scope of the invention to which the claims are directed.

AutoStore's arguments illustrate the importance of claim construction. AutoStore asserts that the claims "recite functionality generically" and repeatedly tries to impose its own interpretation on the claim language.[13] (*See*, *e.g.*, Mot. at 15.) In doing so, it ignores the guidance of the language of other claims, the specification, and the prosecution history of the '404 Patent as to what the language means. For example, AutoStore asserts that the "plain claim language" of the claims does not require that the "routes determined by the 'movement optimisation unit' be optimal in any sense." (*See* Mot. at 10 n.2.) It then asserts that the function of the reservation unit is not an improvement in the technology because "the allegation that the 'reservation unit . . . takes into account that optimized paths for different robots should not conflict' is not in the claim language." (*Id.* at 14.) But whether routes produced by the "movement *optimization* unit" must be optimal is a matter of claim construction, as is whether reserved paths based on those optimal routes can themselves be characterized as optimal. AutoStore is improperly attempting to impose its view of the "plain claim language" in place of the intrinsic evidence and the allegations of the SAC that should properly be used to construe the claims.

AutoStore also asserts that the asserted claims are directed to an abstract idea because they "do not recite" that the clearance unit 'takes into account that robots may not behave

[13] AutoStore argues that the claims of the '404 Patent are deficient because certain elements are claimed in terms of their function. However, functional claiming is permitted under U.S. patent law. *See* 35 U.S.C. § 112(f).

precisely as expected by the reservation unit . . . [and] is configured to use actual robot behavior and predict potential collisions." (Mot. at 14.) In fact, claim 1 requires a "clearance unit configured to provide a clearance instruction for each transporting device to traverse a portion of the reserved path." What a clearance unit is, and what the clearance instruction is—as well as how the clearance unit is "configured" to provide the instruction—are matters of claim construction that should be based on the specification, the prosecution history, and the claim language. In this case, the clearance instruction and clearance unit features are well-supported by the specific discussion of the clearance unit in the specification and prosecution history. Ocado's allegations regarding the meaning of these claim terms also are supported by, *inter alia*, the language of dependent claim 11, which recites that "the clearance is configured to provide the clearance instruction" based on, *inter alia*, "transporting device *discrepancies* with a physics model." Once again, AutoStore cannot, on a motion to dismiss, impose its unsupported interpretation of the claim language over the meaning provided by the intrinsic evidence and allegations in the SAC. AutoStore should not be permitted to short circuit complete and thorough analysis of the '404 Patent's claim language and invention.

**2. AutoStore Is Wrong That the '404 Patent's Invention Can Be Carried Out in the Human Mind.**

AutoStore incorrectly asserts that the '404 Patent is directed to an abstract idea because the claimed invention can be carried out "mentally or with the aid of pen and paper." (Mot. at 16.) AutoStore is wrong for multiple reasons. *First*, the claimed system is inextricably tied to machine control of robots used in a fully automated grid-based storage system. *See supra* at II(A). The claimed invention is not a mechanism for a human to perform a practice known from the pre-computer world more quickly with a standard computer; rather, it is a specific improvement

to a fully automated system that is designed to require no or minimal human interaction. That is exactly the kind of invention that the Federal Circuit has found patent eligible. *See, e.g.*, *DDR Holdings, LLC* v. *Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014) ("[T]hese claims . . . do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology [to] overcome a problem specifically arising in the realm of computer networks.").

*Second*, as a factual matter, the operations required by the claimed system cannot be performed in the human mind. The system must (i) receive status reports from robots electronically, (ii) simultaneously and electronically track the location of multiple robots *in real time* on the grid, (iii) simultaneously and *in real time* select optimized paths for multiple robots (reservation unit) and predict their movement based on actual behavior (clearance unit), and (iv) communicate electronically with robots to provide predetermined paths and clearance instructions. *See supra* at II(A); '404 Patent, at 6:55-58, 9:46-58; D'Andrea Decl. ¶¶ 36-37. The invention is not merely increasing the speed and efficiency of prior ***human*** activity with a standard computer; it is an improvement to an automated system that accomplishes something the human mind cannot. Unlike the patentable system claimed in the '404 Patent, the human mind cannot communicate electronically, or manipulate electronic signals, or perform the types of calculations required to coordinate the movement of hundreds of robots in real time.[14]

[14] AutoStore argues that there "is no support" in the patent that the "recited system 'is inextricably tied to the management of *robots*, which requires the controller to have capabilities humans do not have.'" (Mot. at 17 n.3 (quoting SAC ¶ 55).) But, on the same page, AutoStore concedes that claim 1 "refers to a particular technological context (movement of robots on a 'grid-like

The claimed invention is thus like the claims found patent-eligible by the Federal Circuit in numerous cases. In *SiRF*, for example, the Federal Circuit upheld patent claims directed to a "method for calculating an absolute position of a GPS receiver and an absolute time of reception of satellite signals [that] could not be performed without the use of a GPS receiver." *SiRF Technologies, Inc.* v. *Int'l Trade Comm'n*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010). The patent challenger had argued that calculating the position of a GPS receiver "can be performed entirely in the human mind," but the Federal Circuit disagreed, holding that, without a GPS receiver, "it would be impossible to generate pseudoranges or to determine the position of the GPS receiver whose position is the precise goal of the claims." *Id.*[15] Similarly, in *Iron Gate Security, Inc.* v. *Lowe's Companies, Inc.*, the Federal Circuit upheld patent claims and rejected the challenger's argument that the relevant tasks could be performed in the human mind because "it is not clear that the contemporaneous processing and indexing described in the [asserted patent] is something which the human mind can perform." 2016 WL 4146140, at *12 (S.D.N.Y. Aug. 3, 2016). Moreover, district courts routinely reject boilerplate "human mind" arguments like the one that AutoStore attempts to advance here. *See, e.g.*, *Baxter Int'l, Inc.* v. *Carefusion Corp.*, 2016 WL 2770787, at *8-*9 (N.D. Ill. May 13, 2016); *Vineyard Investigations* v. *E. & J. Gallo Winery*,

---

structure' in a storage facility)." (Mot. at 17.) It necessarily follows that "directing the movement of robots on a grid-like structure" requires capabilities that humans do not have—receiving electronic status reports from the robots, electronically tracking the location and movement of the robots, and communicating electronically with the robots.

[15] *See also CLS Bank Int'l* v. *Alice Corp. Pty*, 717 F.3d 1269, 1302 (Fed. Cir. 2013) (endorsing the holding in *SiRF Tech.* because "'a machine,' a GPS receiver, was 'integral to each of the claims at issue' and 'place[d] a meaningful limit on the scope of the claims'" (quoting *SiRF*, 601 F.3d at 1332-33), *aff'd*, *Alice Corp. Pty. Ltd.* v. *CLS Bank Int'l*, 573 U.S. 208 (2014)).

2021 WL 22497, at *10 (E.D. Cal. Jan. 4, 2021). The Court should reject AutoStore's similarly vague and unsubstantiated "human mind" argument here.[16]

AutoStore also argues that "any person" with "the aid of pencil and paper" could carry out the elements of claim 1, which it abstracts as "determining a route, reserving a path based on that route, and providing a clearance instruction to traverse a portion of the vehicle path." It bases this conclusion on the unsupported assertion that "people driving to work in densely packed cities, not to mention presidential motorcades, do these basic path-planning steps routinely." (Mot. at 10.) But "people" do not perform the steps claimed in claim 1. A person driving to work does not "reserve" a path that avoids overlap with all other vehicles on the road—rather people make instant-by-instant decisions about how to move their vehicle on the road to avoid a collision; exactly what the invention of the '404 Patent is intended to avoid. *See* D'Andrea Decl. ¶ 23. Likewise, presidential motorcades do not use clearance instructions to avoid collisions because they are the only vehicles allowed to move on the road; motorcades do not have to contend with the problem faced by the inventors of the '404 Patent—multiple robots competing for paths on the grid. *See*, *e.g.*, D'Andrea Decl. ¶ 22.[17]

---

[16] Whether these steps can be performed in the human mind is a question of fact. *Magna Elecs., Inc.* v. *Valeo, Inc.*, 2017 LEXIS 77326, at *19-20 (E.D. Mich. Apr. 7, 2017); *see also, e.g.*, *TQP Dev., LLC* v. *Intuit Inc.*, 2014 WL 651935, at *5 (E.D. Tex. Feb. 19, 2014); *Fr. Telecom S.A.* v. *Marvell Semiconductor Inc.*, 39 F. Supp. 3d 1080, 1096 (N.D. Cal. 2014).

[17] AutoStore argues that the invention can be carried out by the human mind, or with the aid of pen and paper, because "the claim language does not require . . . speeds" to operate a warehouse. (*See* Mot. at 16.) AutoStore reaches this conclusion because independent claims 1 and 20 "may be practiced with as little as two robots . . . over an unconstrained period of time." (Mot. at 17.) AutoStore's limited hypothetical illustrates what is inventive: A person would not need to employ planning, reservation, *and* clearance methods if there were no chance of a collision with another robot in the first place. *See* D'Andrea Decl. ¶¶ 21-22.

*Third*, the concern in *Alice* about allowing patents for abstract ideas is not whether the invention can be performed in the human mind, but rather whether the claims *preempt* an idea or an entire technological field. *See Alice*, 573 U.S. at 223 (explaining that the "concern that undergirds [the] § 101 jurisprudence" is preemption); *In re Marco Guldenaar Holding B.V.*, 911 F.3d 1157, 1161 (Fed. Cir. 2018) (noting that "[p]reemption is the underlying concern behind the abstract idea exception"). Where, as here, the claims expressly are limited to a particular context—autonomous robots operating in a stacked-bin grid system—there is no concern about pre-emption. There is no risk that the '404 Patent will preempt the concept of "vehicle routing" or "traffic planning and collision avoidance," as AutoStore argues. (*See* Mot. at 15.)

Because the claims of the '404 Patent are not directed to an abstract idea, the Court need not reach step two of the *Alice* analysis. *See Finjan, Inc.*, 879 F.3d at 1306 ("The idea is non-abstract and there is no need to proceed to step two of *Alice*."). Ocado nonetheless addresses the step two inquiry below.

### C. *Alice* Step 2: The Claims Include Inventive Concepts That Comprise More Than Well-Understood, Routine, or Conventional Activity.

At *Alice* step 2, a court evaluates the claims for "an inventive concept" that is "sufficient to transform the claimed abstract idea into a patent-eligible application." *Alice,* 573 U.S. at 221 (internal quotation omitted). An "inventive concept" requires more than a general instruction to "apply" an abstract idea, and must constitute "more than performance of 'well-understood, routine, [and] conventional activities previously known to the industry.'" *Content Extraction & Transmission LLC* v. *Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1347-48 (Fed. Cir. 2014) (quoting *Alice*, 573 U.S. at 225). Thus, inventive concepts are claim elements that are more than well-understood, routine, or conventional activity. *See BASCOM*

*Global Internet* v. *AT&T Mobility LLC*, 827 F.3d 1341, 1350-51 (Fed. Cir. 2016) ("[T]he installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user" was an inventive concept.); *Rapid Litig. Mgmt.* v. *CellzDirect, Inc.* 827 F.3d 1042, 1051 (Fed. Cir. 2016) (process that combined the individually well-known freezing and thawing steps was "far from routine and conventional").[18]

### 1. Claim 1 Includes the Required Inventive Concepts.

At least two elements of claim 1—the "reservation unit" and the "clearance unit"—were not well-understood, routine, or conventional at the time of the invention, and offer inventive concepts that would transform an otherwise abstract idea into patent-eligible subject matter. *See, e.g.*, Notice of Allowance in App. No. 16/575,906 at 8-9 (noting that the limitations of claim 1 "alone and in combination with the other limitations in the independent and dependent claim, were neither found, nor taught or fairly suggested, in the prior art of record").[19]

*First*, the use of a reservation unit in the way taught in the '404 Patent was unconventional and was not well-understood at the time of the invention. At the relevant time (mid-2014), the coordinated path planning for a multitude of autonomous vehicles had only recently become the object of study. D'Andrea Decl. ¶ 35. Even then, most work focused on decentralized path planning (such as for an autonomous car), not on centralized, high-performance

[18] At the motion to dismiss stage, a court may consider "plausible and specific factual allegations" in the complaint, as long as they are not "wholly divorced form the claims or the specification." *Cellspin Soft*, 927 F.3d at 1317-18.

[19] Independent claim 20 claims the method used by the controller of claim 1, dependent claim 15 claims the storage system including the controller of claim 1, and claim 16 claims the storage system of claim 15 in which the robot covers a single grid space. Each of these claims is directed to patentable subject matter for the same reasons as claim 1.

path planning for hundreds of robots or vehicles acting in a coordinated fashion. *Id.* ¶ 22. Prior control systems for automated warehouse storage did not plan and reserve conflict-free robot routes, from starting point to destination, that took into account the previously planned and reserved paths for each of the other robots in the system. *Id.* ¶ 23. Instead, they simply planned a route *without taking account of the movements of other robots on the grid*, and then relied on other systems to avoid an imminent collision. *Id.* The ability of the '404 Patent to reserve paths in that non-conventional way substantially reduced the likelihood of robot collisions, and required less reliance on other *ad hoc* collision avoidance systems, which were inefficient. *Id.* This allowed the clearance system to better tolerate non-ideal robot behavior and missed communications.

*Second*, the "clearance unit" element of claim 1 was far from routine and conventional. *See* D'Andrea Decl. ¶ 40. Earlier systems either did not provide clearance to traverse a portion of a planned route (but merely instructed the robot to turn or stop to prevent an imminent collision), or did not provide clearance by examining the potential for collisions based on the actual behavior of the robot. *See, e.g.*, US Patent No. 7,912,574 ("'574 Patent"), at 18:13-15 ("segment reservation module" determines whether clearance may be provided to one robot to traverse a particular segment of a path "based solely on whether another [robot] currently has the requested segment reserved"); D'Andrea Decl. ¶ 31 (discussing the system of the '574 Patent, on which he is named as an inventor).

AutoStore asserts that the claims do not include an inventive concept because, as it construes them (contrary to the allegations in the SAC), "the claims do not require the reservation unit to work in 'real time,' or that it compute time-dependent paths [because] the unit as claimed could prioritize paths that do not change." (*See* Mot. at 16 (contradicting allegations in D'Andrea Decl. ¶ 39).) But this ignores that, among other things, the language of the claim itself requires

reservation of paths such that "no two transporting devices have locations on the grid-like structure which would cause transporting devices *to overlap at a same time*"—a computation that is necessarily both real time and time dependent. AutoStore cannot adopt a specialized construction—inconsistent with the claims, intrinsic evidence, and allegations in the SAC—at the pleadings stage.

AutoStore also asserts that the clearance unit is not an inventive concept because the claim language should be construed as not including features that Ocado alleged, such as "monitoring and using the actual behavior of the robot on the grid to predict potential collisions" and "denying clearance to traverse" a reserved section of a path if a collision is predicted. Once again, this is an improper and premature claim construction. AutoStore ignores all of the evidence supporting Ocado's construction of the clearance unit limitation, and simply adopts its own interpretation to declare features "not inventive." *See supra* at II(B).

**2. The Dependent Claims Include Additional Inventive Concepts.**

In addition to the elements of claim 1, many of the dependent claims include other inventive concepts. For example, the re-planning elements included in dependent claims 5 and 9 were not well-understood, routine, or conventional. These claims are directed to the aspect of the invention where, if clearance is denied due to missed communications or a potential collision, a new path can be planned and reserved "dynamically"—in real time at the time clearance is refused—for the non-cleared robot. In contrast, prior systems simply told a robot to stop or turn from its assigned path when the system discerned the possibility of an imminent collision rather than proving an entirely new planned and reserved route. D'Andrea Decl. ¶¶ 32, 43.

Prior systems might work when other robots are ***not*** constrained to travel on the same pathways as the instructed robot, but they create problems when the other robots must travel

on the constrained pathways of a stacked-bin grid storage system. *Id.* ¶ 33. Because of these constraints, in a stacked-bin grid system an instruction to one robot simply to turn aside or divert from its reserved path to a new path risks collisions with other robots that are traveling on, and have already reserved, any portion of that new path. By replanning the route for one robot (taking into account the paths already reserved for other robots), instead of diverting it without replanning, the risk of such collisions is avoided in a manner that is both efficient and scalable. *See* Response to Office Action, dated June 3, 2019, in App. No. 15/992,899 (replanning feature "is particularly important on the grid based system recited in the claims because a transporting device wandering off route into a neighboring cell without planning could cause a collision with another transporting device occupying or entering the neighboring grid cell"); *see also* Notice of Allowance in App. No. 15/992,899 at 6 (noting that the prior art does not disclose claim limitations including dynamic re-planning).

Dependent claims 3-4, 6, and 10 also include additional inventive concepts beyond those in claim 1. These claims are directed to the withholding of clearance by the clearance unit in the event of a communications failure between the controller and the robot. *See* D'Andrea Decl. ¶ 42. The elements added by these claims were not routine or conventional at the time of the invention because they addressed a problem—the increased likelihood of missed communications between the robot and the controller—that became critically important only in the context of stacked-bin grid warehouse configurations. *See supra* at II(A).[20] While AutoStore argues that the dependent claims do not add inventive concepts, its arguments simply ignore and contradict the

[20] Dependent claims 7, 8, 11-14, and 17-19 all claim refinements on the clearance unit of claim 1, *see* D'Andrea Decl. ¶¶ 44-45, and include inventive concepts for the same reason as claim 1.

allegations of the SAC. (*See, e.g.*, Mot. at 16-17 (arguing, in contradiction to D'Andrea Decl. ¶ 42, that the features of dependent claims 3, 4, and 6 were "well-known"); *id.* at 17 (arguing, in contradiction to D'Andrea Decl. ¶ 43, that features of dependent claims 5 and 9 were "well-known.").) If AutoStore believes the allegations in the SAC are wrong, it can prove that at trial. However, AutoStore cannot summarily dispose of the '404 Patent by disagreeing with the factual allegations, the patent claim language, and the intrinsic patent record.

#### 3. AutoStore Cannot Meet Its Burden of Showing That There Is No Set of Facts That Supports Patent-Eligibility at *Alice* Step 2.

At a minimum, the *Alice* step 2 analysis raises fact issues regarding the unconventional nature of the clearance and dynamic re-planning steps that cannot be resolved on a motion to dismiss. This independently requires denial of AutoStore's motion. *See Berkheimer* v. *HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) ("[O]n this record summary judgment was improper, given the fact questions created by the specification's disclosure" at *Alice* step 2); *Cellspin Soft*, 927 F.3d at 1318; *Sapphire Crossing LLC* v. *Quotient Tech. Inc.*, 2020 WL 1550786, at *2 (D. Del. Apr. 1, 2020) (Report and Recommendation) ("Here, the Amended Complaint—which incorporates [an expert]'s declaration . . . by reference—contains 'plausible and specific factual allegations that aspects of the claims are inventive[,]' sufficient to defeat Defendants' Motions [to dismiss].").

## V. CONCLUSION

For the foregoing reasons, the Court should deny AutoStore's partially renewed motion to dismiss.

Date: May 21, 2021

Respectfully submitted,

*/s/ Henry C. Quillen*
Henry C. Quillen
New Hampshire Bar No. 265420
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, New Hampshire
Tel: (603) 294-1591
Fax: (800) 922-4851
Email: hquillen@whatleykallas.com

Garrard R. Beeney
Dustin F. Guzior
Morgan N. Schusterman
Admitted *pro hac vice*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
Tel: (212) 558-4000
Fax: (212) 558-3588
Email: SC-Ocado@sullcrom.com

*Counsel for Plaintiffs Ocado Innovation Ltd. and Ocado Solutions Ltd.*