**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

OCADO INNOVATION LTD. and
OCADO SOLUTIONS LTD.,

*Plaintiffs*,

v.

AUTOSTORE AS and
AUTOSTORE SYSTEM INC.,

*Defendants*.

Case No.: 1:21-cv-00041-JL

**DEFENDANTS' REPLY IN SUPPORT OF**
**PARTIALLY RENEWED MOTION TO DISMISS**

# TABLE OF CONTENTS

**I. INTRODUCTION .......... 1**

**II. ARGUMENT .......... 1**

A. The '404 Patent Claims Are Invalid Under Section 101 .......... 1

1. The '404 Patent Claims Are Directed to an Abstract Idea .......... 1

2. The '404 Patent Claims Lack Inventive Concepts .......... 7

B. Ocado's Direct Infringement Claims for the '404 Patent Should Be Dismissed .......... 9

C. All of Ocado's Willful Infringement Claims Should Be Dismissed .......... 10

D. All of Ocado's Induced Infringement Claims Should Be Dismissed .......... 12

**III. CONCLUSION .......... 12**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*,
No. 15-915, 2018 WL 620968 (D. Del. Jan. 30, 2018) ....10

*In re Bill of Lading*,
681 F.3d 1323 (Fed. Cir. 2012)....12

*Cellspin Soft, Inc. v. Fitbit, Inc.*,
927 F.3d 1306 (Fed. Cir. 2019)....8

*CG Tech. Dev., LLC v. Big Fish Games, Inc.*,
No. 16-00587, 2016 WL 4521682 (D. Nev. Aug. 29, 2016) ....10

*Enfish, LLC vs. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....5

*Finjan, Inc. v. Cisco Sys. Inc.*,
No. 17-00072, 2017 WL 2462423 (N.D. Cal. June 7, 2017)....10, 11

*Free Stream Media Corp. v. Alphonso*,
-- F.3d --, 2021 WL 1880931 (Fed. Cir. May 11, 2021)....5, 6

*Halo v. Pulse Elecs.*,
136 S. Ct. 1923 (2016)....10

*Iron Gate Sec., Inc. v. Lowe's Cos., Inc.*,
No. 15-cv-8814, 2016 WL 4146140 (S.D.N.Y. Aug. 3, 2016)....4

*Lifetime Indus., Inc. v. Trim-Lok, Inc.*,
869 F.3d 1372 (Fed. Cir. 2017)....12

*McKnight, Inc. v. United Indus. Corp.*,
273 F. Supp. 3d 874 (W.D. Tenn. 2017)....10

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
837 F.3d 1299 (Fed. Cir. 2016)....6

*Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*,
472 F. Supp. 3d 377 (E.D. Mich. 2020)....10

*Motiva Pats., LLC v. Sony Corp.*,
408 F. Supp. 3d 819 (E.D. Tex. 2019)....12

*MyMail, Ltd. v. ooVoo, LLC*,
934 F.3d 1373 (Fed. Cir. 2019).....6

*Signify N. Am. Corp. v. Axis Lighting, Inc.*,
No. 19-5516, 2020 WL 1048927 (S.D.N.Y. Mar. 4, 2020).....10

*Simplivity Corp. v. Springpath, Inc.*,
No. 15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016).....11

*SiRF Techs., Inc. v. Int'l Trade Comm'n*,
601 F.3d 1319 (Fed. Cir. 2010).....4

*SynQor Inc. v. Artesyn Techs., Inc.*,
No. 07-CV-497-TJW-CE, 2011 WL 3624957 (E.D. Tex. Aug. 17, 2011),
*aff'd*, 709 F.3d 1365 (Fed. Cir. 2013).....11

# I. INTRODUCTION

Ocado's arguments do not overcome the many deficiencies in its Second Amended Complaint. As explained below and in AutoStore's renewed motion to dismiss, all claims with respect to U.S. Patent No. 10,901,404 ("the '404 patent") must be dismissed because they are invalid under 35 U.S.C. § 101, and for failure to allege direct infringement. Additionally, Ocado's allegations of willful infringement and induced infringement are wholly insufficient and must be dismissed as well.

# II. ARGUMENT

## A. The '404 Patent Claims Are Invalid Under Section 101

### 1. The '404 Patent Claims Are Directed to an Abstract Idea

Ocado argues the claims of the '404 patent are not directed to an abstract idea because they are allegedly "directed to a specific technological solution that improves the ability of a computer control system to manage large numbers of robots simultaneously on a *fully automated* stacked-bin grid storage system." Dkt. 42 ("Opp.") at 17 (emphasis added). But the claims are far broader. By their plain terms, the claims do ***not*** recite "manage[ment] of large numbers of robots"; they do ***not*** recite "simultaneous[]" management of robots; and they certainly do ***not*** recite a "*fully automated* stacked-bin grid storage system." *See* '404 patent at 25:62-26:17, 28:13-21. Ocado simply reads in these requirements:

- <u>"manag[ing] large numbers of robots"</u>: The preamble in independent claim 1 (even if assumed to be limiting), recites "transporting devices arranged to transport containers." '404 patent at claim 1. There is no reference to the number of "transporting devices" (robots). This element could be met with as few as two robots. Nor do any of the independent claims require additional robots.

- "manag[ing] … robots **simultaneously**": The claims do not recite "simultaneous" management of the robots. The "movement optimisation unit" ("MOU") is "configured to determine a route of a [robot] from one location on a grid-like structure to another location on the grid-like structure for each [robot]." '404 patent at claim 1. This may be met by determining routes one at a time, which does not need to be done for ***all*** robots in the system. Likewise, the "reservation unit," which is "configured to reserve a path on the grid-like structure for each [robot] based on the determined route," may carry out its function one robot at a time, and need not compute paths for all robots. *Id.* Finally, the "clearance unit" need not "provide a clearance instruction" to multiple robots simultaneously. *Id.*
- "fully automated" system: The claims do not recite that all actions by the system are automated. They merely recite a "facility having pathways arranged in a grid-like structure above the stacks," and "[robots] being configured to operate on the grid-like structure." '404 patent at claim 1.

Indeed, after amending its complaint twice, Ocado still cannot explain away the basic problem with the claims of the '404 patent—they recite activity that can be performed in the human mind or with the aid of pen and paper. Ocado pleads that "[h]umans simply cannot carry out the movement planning and path optimization processes as necessary to provide collision-free paths as the robots carry out their assigned tasks at the speeds required to coordinate hundreds of robots simultaneously and in real time." SAC Ex. 22 ¶ 36; SAC ¶ 55. But that is beside the point, because the claim language does not impose any such requirements. *See* Dkt. 36-1 ("Mot.") at 10-11. The claims may be practiced with as few as two robots, using methods that rely on mental processes (or pen and paper) over an unconstrained time period.

Ocado makes three arguments, but none amounts to a real response. ***First,*** it argues "the claimed system is inextricably tied to machine control of robots in a fully automated grid-based storage system." Opp. 21-22. This is unsupported attorney say-so, demonstrated by Ocado's inability to cite a single piece of the intrinsic record (the claims, the specification, or the file history) to support its argument that the claimed system "is a specific improvement to a fully automated system that is designed to require no or minimal human interaction." *See id*. There are no such requirements in the claims.

***Second,*** to manufacture a factual dispute, Ocado asserts that "as a factual matter, the operations required by the claimed system cannot be performed in the human mind[,]" and lists four tasks that "[t]he system must" do that allegedly cannot be done by the mind. *See* Opp. at 22-23, 23 n.14. This is the thinnest of distinctions, and one that is ultimately meaningless because performing mental steps with generic electronics components cannot save the claims.

(i) "receiv[ing] status reports from robots electronically": The only claim reciting this limitation is dependent claim 6. Ocado does not explain why a human cannot send or receive "status reports," albeit not electronically.

(ii) "simultaneously and electronically track the location of multiple robots in real time on the grid": There is no "simultan[eity]" requirement in the claims; nor is there a requirement that robot locations be "tracked," let alone "electronically."

(iii) "simultaneously and in real time select optimized paths for multiple robots (reservation unit) and predict their movement based on actual behavior (clearance unit)": Besides the fact that the claims lack any simultaneity requirement, they also do not require "real time" selection of "optimized paths" for multiple robots. The claims also do not recite predicting robot movement based on actual behavior. Ocado does not dispute that these

tasks (selecting "optimized paths" and predicting robot movement based on actual behavior) may be done with the mind for as few as two robots using mental processes, because the claims impose no constraint on how to perform these tasks.

(iv) "communicate electronically with robots to provide predetermined paths and clearance instructions": Ocado fails to explain why a human cannot perform this step using generic communications equipment.

Ocado's reliance on *SiRF* and *Iron Gate* is inapposite. In both, the claims required information that the human mind could not compute (a GPS position in *SiRF*; processing and indexing in *Iron Gate*). *SiRF Techs., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 1332-33 (Fed. Cir. 2010); *Iron Gate Sec., Inc. v. Lowe's Cos., Inc.*, No. 15-cv-8814, 2016 WL 4146140, at *12 (S.D.N.Y. Aug. 3, 2016). Here, what Ocado contends cannot be done by the human mind in fact can be done with the human mind, with the potential difference that a person could communicate without using generic electronics (or at most, could do the same tasks using generic electronic).

Ocado cannot escape the "human mind" problem just by saying it is "boilerplate" without giving any support. *See* Opp. at 23-24. Ocado then baldly states without qualification that whether steps can be done by the human mind is a question of fact. *Id.* at n.24. This is not the law—if it were, courts could not find claims directed to abstract ideas at the motion to dismiss stage. Indeed, there is no factual dispute that the ***actual claim limitations*** can be performed in the mind: Ocado does not plead otherwise, and its expert does not declare otherwise either.

Ocado's distinctions between the abstract tasks recited by its claims and what a presidential motorcade does or what people do when driving are exceedingly weak. Reading between the lines, Ocado does not dispute that each of those mental tasks performs at least some of the elements of the independent claims. Ocado states that a person driving to work does not "reserve" a path that

avoids overlap with all other vehicles on the road. Opp. at 24. But it does not dispute that persons driving to work could determine paths (like the recited "movement optimization unit" and could perform the "clearance unit" instruction). Ocado also argues that a presidential motorcade does not use clearance instructions to avoid collisions because they are the only vehicle allowed to move on the road—but the point is that it could (setting aside the protocols of the Secret Service). Moreover, Ocado does not dispute that the motorcade would mentally perform the other tasks in the independent claims. Perhaps Ocado would be less disagreeable if one were to switch a presidential motorcade with the motorcade of a city mayor—those typically are not the only vehicles allowed to move on the road. Another apt analogy is the work done by an air traffic controller when routing a few as two planes on the ground. The controller must determine paths for each plane, reserve those paths to avoid collisions, and provide clearance instructions in real time to the planes to pass different portions of the paths.

***Third,*** Ocado argues "preemption" concerns are not implicated here because the claims are "expressly [] limited to a particular context—autonomous robots operating in a stacked-bin system." *See* Opp. at 25. But again, there is no requirement in the claims for "autonomous robots." Moreover, AutoStore does not argue that the claims would preempt "vehicle routing" or "traffic planning and collision avoidance"—only that people routing vehicles or planning traffic perform the same mental steps claimed in the context of operating robotic vehicles. The claims certainly preempt mental operations of vehicle routing in stacked-bin grid systems.

To attempt to save the patent, Ocado argues the features of the '404 patent's claims are analogous, "in concept," to those at issue in *Enfish.* Not so. *Enfish* held that claims were directed to a specific improvement in computer functionality—a "self-referential table for a computer database." *Enfish, LLC vs. Microsoft Corp.*, 822 F.3d 1327, 1336-37 (Fed. Cir. 2016). Here, by

contrast, the claims undisputedly do ***not*** refer to a specific improvement to computer functionality—even under Ocado's contention, they relate to an alleged improvement using generic computers configured to perform other tasks in an allegedly more efficient manner. *See, e.g.*, *Free Stream Media Corp. v. Alphonso*, -- F.3d --, 2021 WL 1880931, at *5-*6 (Fed. Cir. May 11, 2021) (distinguishing *Enfish* on same grounds). Moreover, as AutoStore explained in its motion, and unlike in *Enfish*, the claims at issue recite tasks at a functional, results-based level, without any specific manner of performing the function.

Neither do the claims focus on a specific means or method that improves the relevant technology—rather, they are directed to a functional result that is an abstract idea, without identifying how that functional result is achieved. *Free Stream*, 2021 WL 1880931, at *6 (citing *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016)). As explained in AutoStore's renewed motion, the claims do not recite any specific method for any of the claimed "movement optimization unit," "reservation unit," or "clearance units," and whatever Ocado ***pleads*** is new in the prior art is not actually ***claimed***. Mot. at 13-14.

Ocado does not substantively dispute this point—its only answer is that the Court must engage in claim construction first before ruling on AutoStore's motion, without actually providing any construction. *See* Opp. at 19. That is insufficient. Claim construction is not required if the parties raise no disputes. *See MyMail, Ltd. v. ooVoo, LLC*, 934 F.3d 1373, 1379 (Fed. Cir. 2019). Ocado creates the appearance of claim construction disputes, without actually raising any. ***First,*** it states whether "routes produced by the 'movement optimization unit' must be optimal … [as well as] whether reserved paths based on those optimal routes can themselves be characterized as optimal" are matters for claim construction. Opp. at 20. It was free to take a position on the construction of this term, but it did not. ***Second,*** regarding AutoStore's point that the claims do not

recite what Ocado pleads—that the clearance unit "take[] into account that robots may not behave precisely as expected by the reservation unit … [and] is configured to use actual robot behavior and predict potential collisions"—Ocado again does not raise any actual dispute with respect to the independent claims.[1] It merely states that "[w]hat a clearance unit is, and what the clearance instruction is—as well as how the clearance unit is 'configured' to provide the instruction—are matters of claim construction …." Opp. at 20-21. It takes no stance on whether the claims actually recite what AutoStore states they do not. Ocado is certainly free to take this approach, but it cannot defer ruling on the instant motion without raising a claim construction dispute. If it were that easy, a patentee could always defeat a motion to dismiss based on patent ineligible subject matter by merely stating out that some claim terms may require construction. That is not the law.

**2. The '404 Patent Claims Lack Inventive Concepts**

Ocado's arguments why the claims of the '404 patent include inventive concepts miss the mark.

a. <u>Ocado does not plead inventive concepts with respect to the "reservation unit" and the "clearance unit."</u>

Ocado argues that both the "reservation unit" and the "clearance unit" are new. Opp. at 28. AutoStore already explained these elements lack inventive concepts because the claims do not recite the allegedly novel features. Mot. at 14-16. Ocado's only answer is to try to manufacture a claim construction dispute where none exists (at this time). As for the "reservation module," Ocado argues now that the claim language requires "reservation of paths such that no two transporting

---

[1] Dependent claim 11 recites "discrepancies with a physics model" as a basis for determining the "clearance instruction" recited in claim 1. If Ocado had actually identified a proposed construction, or even raised an actual claim construction dispute (and it has done neither), then that could have justified deferring a ruling until claim construction for claim 11 only—but not for any other claim, because no other claim has that element.

devices have locations on the grid-like structure which would cause transporting devices to overlap at a same time—a computation that is necessarily both real time and time dependent." Opp. at 27-28 (internal quotation omitted). That is ***not*** what Ocado's expert alleged—*i.e.*, he did not state that the "reservation module's" operation is time dependent. Rather, he stated that the reservation unit is used to reserve a "time-dependent and collision free path." SAC Ex. 22 ¶ 39. The distinction is important: a reservation module that reserves the same path for each robot each time would still ensure that the robots do not overlap "at a same time," (as Ocado alleges via its expert) but its operation is hardly "real time" or "time dependent" (as Ocado now seems to argue) under the plain meaning of those terms.

Likewise, for the "clearance unit," Ocado complains that AutoStore construes the claim "as not including the features that Ocado alleged, such as 'monitoring and using the actual behavior of the robot on the grid to predict potential collisions' and 'denying clearance to traverse' a reserved section of a path if a collision is predicted." Opp. at 28. Ocado cannot use "claim construction" to avoid invalidity, when it does not ***plead*** that the "clearance unit" must be ***construed*** as it purportedly alleges here. *See* SAC ¶¶ 51(c), 53 (describing what the "clearance unit" purportedly does, but not offering a construction for the term). *See Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1315, 1317 (Fed. Cir. 2019) (requiring plausible and specific factual allegations that aspects of the claims are inventive to defeat a motion to dismiss).

b. <u>The dependent claims add nothing new</u>.

Ocado's arguments regarding the dependent claims are also unavailing.

**<u>Claims 5 and 9</u>:** In both, the "re-planning elements" may be done by the movement optimization unit, which Ocado acknowledges is prior art (*see* Opp. at 14-15). Moreover, claim 5 recites "re-plan[ning] an operation," which can be ***anything***. The allegations by Ocado's expert are irrelevant because they do not acknowledge these points. *See* SAC Ex. 22 ¶ 43 (not recognizing

that claim 5 may be met by re-planning any operation, and not recognizing that the claimed re-planning by the movement optimization unit could be, just like the acknowledged prior art, "upon detecting an imminent collision between two robots").

**Claims 3-4, 6, and 10:** Ocado takes issue with AutoStore's arguments that Ocado ***failed to plead*** that these claims lack an inventive concept because there is no allegation that the added features were not known in themselves. *See* Mot. at 17. Ocado does not answer this point. It refers back to its expert's declaration, but he also did not explain that these features, in themselves, were unknown. He only stated that they were not conventional or routine. SAC Ex. 22 ¶ 42.

c. No set of facts can show patent eligibility at *Alice* Step 2.

Ocado argues that "the *Alice* step 2 analysis raises fact issues regarding the unconventional nature of the clearance and dynamic re-planning steps that cannot be resolved on a motion to dismiss." Opp. at 30. But Ocado fails to plead anything that would create fact issues as to either the clearance step or the dynamic re-planning step (which only applies to two dependent claims).

### B. Ocado's Direct Infringement Claims for the '404 Patent Should Be Dismissed

Ocado has no real answer to the contention that it has inadequately pled direct infringement of the '404 patent. As for the "reservation module," Ocado lists its allegations and then states in conclusory fashion that they "more than sufficiently support a reasonable inference that Router utilizes a reservation [module]." Opp. at 4. But as AutoStore pointed out, there is no allegation that "the path reserved for each robot is ***'based on'*** the route that is allegedly reserved by the 'movement optimisation unit'." Mot. at 19 (quoting '404 patent claim 1) (emphasis added). Ocado provides no allegations to justify a "reasonable inference" that this limitation is met.

For the "clearance unit," Ocado alleges the Router "is constantly re-evaluating all the routes to ensure the best possible traffic flow." Opp. at 5 (internal quotations omitted). That does not show whether instructions are provided for traversal over a portion of the path, let alone that

the instructions are provided for execution at some time later. The allegation in SAC ¶ 72 that the Router's tasks "include advanced traffic control; [and] planning and scheduling of tasks" cannot support a reasonable inference that ***clearance instructions*** are provided for execution at a later time, without some allegation that the tasks include sending clearance instructions to begin with.

### C. All of Ocado's Willful Infringement Claims Should Be Dismissed

Ocado's willful infringement allegations are insufficient because Ocado does not adequately set forth either Defendants' pre-suit knowledge of or willful blindness to the Asserted Patents, or any egregious conduct by Defendants. Each element is required under *Halo v. Pulse Elecs.*, 136 S. Ct. 1923 (2016), so Ocado's failures necessitate dismissal of its willfulness claims.

Ocado first argues that it did not have to plead egregious conduct because a few district courts have determined that this is not required to plead willful infringement. *See* Opp. at 5-6. But Ocado ignores that this district has not spoken to this issue, and that many other district courts have relied upon Justice Breyer's concurrence in *Halo* to hold that egregious conduct ***must*** be alleged at the pleading stage for a willful infringement claim (in addition to knowledge) in order to survive a motion to dismiss. *See, e.g.*, *Mich. Motor Techs. LLC v. Volkswagen Aktiengesellschaft*, 472 F. Supp. 3d 377, 383–84 (E.D. Mich. 2020); *Signify N. Am. Corp. v. Axis Lighting, Inc.*, No. 19-5516, 2020 WL 1048927, at *3 (S.D.N.Y. Mar. 4, 2020); *Finjan, Inc. v. Cisco Sys. Inc.*, No. 17-00072, 2017 WL 2462423, at *5 (N.D. Cal. June 7, 2017); *Ansell Healthcare Prods. LLC v. Reckitt Benckiser LLC*, No. 15-915, 2018 WL 620968, at *6 (D. Del. Jan. 30, 2018); *CG Tech. Dev., LLC v. Big Fish Games, Inc.*, No. 16-00587, 2016 WL 4521682, at *14 (D. Nev. Aug. 29, 2016); *McKnight, Inc. v. United Indus. Corp.*, 273 F. Supp. 3d 874, 882 (W.D. Tenn. 2017). As a result, allegations of egregious conduct can and should be taken into account in assessing the sufficiency of Ocado's willful infringement allegations—and Ocado's allegations are not sufficient. Rather, Ocado's allegations of egregious conduct by AutoStore

amount to nothing more than an unsupported accusation of copying based solely on its (disputed) allegations of infringement. SAC ¶¶ 13-21, 81-82. This is not enough to plead egregious conduct, so Ocado's willful infringement claims should be dismissed on this basis alone. *See Finjan*, 2017 WL 2462423, at *5 (determining that "conclusory allegations of knowledge and infringement" were insufficient to plead egregious conduct for willful infringement claim).

Moreover, Ocado's allegations of pre-suit knowledge are insufficient because Ocado has failed to allege that AutoStore had knowledge of or was willfully blind to the ***specific patents*** asserted in this case. All of Ocado's allegations and arguments point to AutoStore's alleged general knowledge of Ocado's patent portfolio and patented technology,[2] or to AutoStore's alleged pre-suit awareness of Ocado patents that are not asserted here. As AutoStore explained, these allegations are not sufficient to support either knowledge or willful blindness because: (1) these general allegations, as a matter of law, do not lead to an inference that AutoStore had pre-suit knowledge of any specific patents; (2) Ocado has not alleged that AutoStore took deliberate action to avoid learning of the Asserted Patents; and (3) Ocado has not sufficiently alleged that AutoStore had a conscious belief regarding the existence of the Asserted Patents. *See* Mot. at 20-22. Ocado's pre-suit willful infringement allegations thus should be dismissed on this basis as well.

[2] The cases Ocado cites do not show that such allegations are sufficient to support its willful infringement claims. In *SynQor Inc. v. Artesyn Techs., Inc.*, the court inferred knowledge of the asserted patents from evidence that the defendants closely monitored plaintiff's patents, products, and datasheets—not just because both parties were in a "highly competitive industry." *See* No. 07-CV-497-TJW-CE, 2011 WL 3624957, at *4-6 (E.D. Tex. Aug. 17, 2011), *aff'd*, 709 F.3d 1365 (Fed. Cir. 2013). In *Simplivity Corp. v. Springpath, Inc.*, the plaintiff ***alleged*** that defendant had investigated and copied the patented technology, giving rise to an inference of knowledge of the patent. No. 15-13345-TSH, 2016 WL 5388951, at *9-10 (D. Mass. Jul. 15, 2016). Ocado has not set forth any non-conclusory allegations that AutoStore copied Ocado's patented technology.

### D. All of Ocado's Induced Infringement Claims Should Be Dismissed

Finally, Ocado has failed to state a claim for induced infringement under 35 U.S.C. § 271(b) because it has failed to allege that AutoStore had pre-suit knowledge of the Asserted Patents or that it acted with the required specific intent to induce infringement of the Asserted Patents. *See* Mot. at 24-25. With respect to pre-suit knowledge of the Asserted Patents, Ocado has failed to make this showing for the reasons explained above. Additionally, Ocado's conclusory allegation that AutoStore's products "have no substantial non-infringing uses" (SAC ¶ 81) is irrelevant because Ocado only alleges induced infringement under 35 U.S.C. § 271(b), not contributory infringement under § 271(c). Mot. at 25 n. 6; *see also Motiva Pats., LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 830 (E.D. Tex. 2019) (explaining that "[t]he requisite knowledge may also be circumstantially inferred from the fact that the accused product or component has no substantial noninfringing uses" only in the context of contributory infringement under § 271(c), not for induced infringement under § 271(b)).

Moreover, Ocado's allegations of specific intent are insufficient as a matter of law because they cannot show that AutoStore "assisted…or directed" its customers to use the allegedly infringing functionalities of AutoStore's products. *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017); *see also In re Bill of Lading*, 681 F.3d 1323, 1341-42 (Fed. Cir. 2012) (inducement allegations held sufficient because plaintiff alleged defendant intended for its customers to use the allegedly infringing method based on inference that defendant touted the infringing functionality to customers after learning of the patent in suit). Ocado merely alleges that AutoStore provided its customers with certain materials about its products (and not that these materials had anything to do with their allegedly infringing functionalities).

## III. CONCLUSION

Defendants respectfully request that the Court grant their motion to dismiss.

Dated: May 28, 2021

Respectfully Submitted,

AUTOSTORE AS and
AUTOSTORE SYSTEM INC.,

By Its Attorneys,

*/s/ Robert R. Lucic*

Robert R. Lucic (NH Bar #9062)
Bryanna K. Devonshire (NH Bar #2694620
SHEEHAN PHINNEY BASS & GREEN PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105
(603) 627-8188
rlucic@sheehan.com
bdevonshire@sheehan.com

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Emily M. Scott (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
glocascio@kirkland.com
emily.scott@kirkland.com

Joseph A. Loy, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jloy@kirkland.com

Ali-Reza Boloori (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
ali-reza.boloori@kirkland.com

**CERTIFICATE OF SERVICE**

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 28th day of May 2021.

/s/ *Robert R. Lucic*
Robert R. Lucic