**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

|  |  |
|---|---|
| OCADO INNOVATION LTD. and<br>OCADO SOLUTIONS LTD.,<br><br>              Plaintiffs,<br>       v.<br><br>AUTOSTORE AS and<br>AUTOSTORE SYSTEM INC.,<br><br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. 1:21-cv-00041-JL

**Hon. Joseph N. Laplante**

### PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSE OF INEQUITABLE CONDUCT

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Plaintiffs Ocado Innovation Ltd. and Ocado Solutions Ltd. ("Ocado") respectfully request that the Court strike the inequitable conduct affirmative defense asserted by Defendants AutoStore AS and AutoStore System Inc. ("AutoStore"). (Dkt. 49 ¶¶ 130-50.) Inequitable conduct is subject to the heightened pleading standard set forth in Federal Rule of Civil Procedure 9(b), and AutoStore's allegations do not come close to meeting that standard. As shown below, district courts regularly strike inequitable conduct defenses on the pleadings when, as here, the supporting allegations are deficient.[1]

---

[1] Simultaneously with the filing of this motion, Ocado is filing its Answer to AutoStore's counterclaims (declaratory judgment claims that mirror Ocado's infringement claim and AutoStore's invalidity defense). The parties have also exchanged drafts of a proposed discovery plan and proposed protective order and are ready to file those documents and attend a patent scheduling conference at the Court's convenience.

## PRELIMINARY STATEMENT

Referring to inequitable conduct allegations as the "atomic bomb" of patent law, the Federal Circuit observed that accused infringers without a viable non-infringement or invalidity defense (like AutoStore here) routinely attempted to assert inequitable conduct based on boilerplate and unsubstantiated allegations of fraud that "plagued not only the courts but also the entire patent system." *Therasense, Inc.* v. *Becton, Dickinson & Co.*, 649 F.3d 1276, 1288-89 (Fed. Cir. 2011). In response to that problem, the Federal Circuit "tighten[ed] the standards" for inequitable conduct "in order to redirect a doctrine that has been overused to the detriment of the public." *Id.* at 1290. That redirection "ensure[d] that the defense is sustained only in egregious circumstances and . . . discourage[d] parties from using it as a mere litigation tactic in garden-variety cases." *PetEdge, Inc.* v. *Yahee Techs. Corp.*, 2017 WL 1702276, at *3 (D. Mass. May 2, 2017). Especially after the Federal Circuit's *Therasense* decision, district courts regularly strike deficient inequitable conduct defenses on the pleadings.[2] Applying *Therasense* and the Rule 9(b) pleading standard, AutoStore's inequitable conduct defense is deficient for several reasons.

*First*, AutoStore's pleading fails to identify specifically the information that allegedly was not disclosed to the U.S. Patent and Trademark Office ("PTO") in connection with prosecution of the patent at issue, U.S. Patent No. 10,901,404 (the "'404 Patent"). AutoStore

---

[2] *See*, *e.g.*, *Town & Country Linen Corp.* v. *Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597 (S.D.N.Y. June 25, 2020); *Impact Engine, Inc.* v. *Google LLC*, No. 319-cv-01301, 2020 WL 3414627 (S.D. Cal. June 22, 2020); *Signify N. Am. Corp.* v. *Reggiani Lighting USA, Inc.*, No. 18 CIV. 11098, 2020 WL 1331919 (S.D.N.Y. Mar. 23, 2020); *Allergan USA, Inc.* v. *Prollenium US, Inc.*, No. 19-126, 2020 WL 409684 (D. Del. Jan. 24, 2020); *PetEdge, Inc.*, 2017 WL 1702276; *Capella Photonics, Inc.* v. *Cisco Sys., Inc.*, 77 F. Supp. 3d 850 (N.D. Cal. 2014); *Lexington Luminance LLC* v. *Osram Sylvania Inc.*, 972 F. Supp. 2d 88 (D. Mass. 2013); *Seaboard Int'l, Inc.* v. *Cameron Int'l Corp.*, No. 1:13-cv-00281, 2013 WL 3936889 (E.D. Cal. July 30, 2013); *Senju Pharm. Co.* v. *Apotex, Inc.*, 921 F. Supp. 2d 297 (D. Del. 2013); *Jennings* v. *Auto Meter Prod., Inc.*, No. 1:07-cv-1123, 2008 WL 11376576 (S.D. Ind. Oct. 22, 2008). In addition, although *Therasense* was decided on a fully developed record, the legal principles announced by the Federal Circuit are regularly applied to evaluate the sufficiency of pleadings.

admits that Ocado's representatives disclosed the "prior art Red Line System" to the PTO in a November 2019 Information Disclosure Schedule ("IDS") (Dkt. 49 ¶ 141),[3] but then AutoStore vaguely alleges that unspecified "information," and "technology," relating to the Red Line system was not disclosed, without ever providing the "relevant details" supposedly withheld (*id.* ¶¶ 137, 140, 142-43, 150).  Although AutoStore identifies seven specific documents in the paragraphs supporting its inequitable conduct defense (*id.* ¶¶ 132-34, 136)—presumably to give the defense the appearance of specificity—AutoStore does not allege that any of those documents (i) is material to patentability of the '404 Patent's claims, or (ii) was fraudulently withheld from the PTO.  The seven documents are "window dressing" that ultimately play no role in AutoStore's alleged defense.  Instead, the operative allegations rely on the assertions that Ocado did not disclose unspecified "information," "technology," and "relevant details" somehow relating to the Red Line system.  In short, contrary to controlling law, AutoStore's pleading does not tell the Court or Ocado **what exactly** Ocado's representatives fraudulently withheld from the PTO.  That is reason alone to strike AutoStore's defense.

*Second*, under the Federal Circuit's *Therasense* decision, AutoStore must plead **how** the allegedly non-disclosed information was but-for material to the PTO's issuance of the '404 Patent.  To do so, AutoStore must allege how the PTO examiner would have reviewed the

---

[3] AutoStore's pleading incorporates by reference two webpage links. (Dkt. 49 ¶141.)  A copy of the content available at each link is appended to this motion as Exhibits A and B, and a copy of the IDS in which Ocado's patent counsel disclosed those references to the PTO is attached as Exhibit C.  Exhibit A is a screen capture of a video presentation, which is available at https://www.youtube.com/watch?v=iyVDMp2bL9c.  *See Polaris Indus.* v. *Arctic Cat Inc.*, 2015 WL 4636544, at *7 (D. Minn. Aug. 24, 2015) (considering an IDS when dismissing an inequitable conduct counterclaim and defense); *see also Aatrix Software, Inc.* v. *Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018) (noting "the complaint, the patent, and materials subject to judicial notice" are "properly considered on a motion to dismiss").  As shown in Exhibits A, B, and C, Ocado's representatives disclosed the information available at those website links, which shows the operation of and provides information about AutoStore's commercial Red Line system, which is an old system that AutoStore developed in the 1990s.

unspecified Red Line information and why the examiner likely would have rejected the '404 Patent's claims because of it.  *E.g.*, *Corning Inc.* v. *Wilson Wolf Mfg. Corp.*, No. 20-700, 2021 WL 4251907, at *8 (D. Minn. Sept. 17, 2021) (dismissing inequitable conduct claim on the pleadings because plaintiff "d[id] not identify which claims would not have issued because of the allegedly undisclosed information and the reason they would not have issued"); *see Therasense*, 649 F.3d at 1291 ("[T]he court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed reference.").  AutoStore's two allegations that touch upon materiality are conclusory and deficient.

AutoStore first alleges that the unspecified Red Line "information" is *not* material to the patentability of the '404 Patent's claims because the Red Line system does not infringe those claims.  (Dkt. 49 ¶ 146.)  AutoStore then alleges that *if and only if* a New Hampshire jury finds that its Red Line system infringes the '404 Patent, then the unspecified information will become material as "anticipatory" of the '404 Patent's claims.  (*Id.* ¶ 247.)  Setting aside the odd nature of fraud allegations that depend on the jury's rejection of the proponents' other defenses, there is a fundamental problem with AutoStore's position:  Ocado never accused the "prior art Red Line system" of infringing the '404 Patent, which is something easily verified with reference to the face of Ocado's Second Amended Complaint ("SAC").  (Dkt. 35.)  Ocado accused AutoStore's new software, the Router, of infringing the '404 Patent (*id.* ¶¶ 103-10), and "AutoStore admits that its Router-branded system was launched in September and October 2020" (Dkt. 49 ¶ 73).  Although AutoStore has recently implemented the 2020 Router software with both its old Red Line system and newer Black Line system, the *2020 software* is the product accused of infringement, and Ocado never accused the "prior art Red Line system" on its own of infringing the '404 Patent.  Thus, the

premise of AutoStore's odd, conditional materiality allegation clearly is deficient and cannot support its inequitable conduct defense even on the pleadings.[4]

AutoStore also alleges that the unspecified Red Line information is material "in combination with ***other prior art***," presumably contending that the combination would have made some of the claims obvious, although AutoStore never alleges why or how. (Dkt. 49 ¶ 148.) Indeed, AutoStore never even identified the "other prior art" in its pleading much less alleged (i) why the "other prior art" makes the unspecified Red Line information material to patentability, or (ii) that any person involved in prosecution of the '404 Patent actually knew of the unidentified "other prior art." Courts regularly strike inequitable conduct defenses based on these type of vague and boilerplate materiality allegations. *See*, *e.g.*, *Seaboard Int'l, Inc.*, 2013 WL 3936889, at *5 (striking inequitable conduct defense based on "vague allegations" of, among other things, "'how' the non-disclosed information was material"); *Jennings*, 2008 WL 11376576, at *2 (striking affirmative defense of inequitable conduct when defendant only "vaguely referred to the non-disclosure of information without specifying the content of that information"); *see also Corning Inc.*, 2021 WL 4251907, at *8 (striking inequitable conduct defense when pleading "fail[ed] to adequately identify what claims would not have issued if the purportedly material information had been submitted to the Examiner," and did not "allege[] that the Examiner was unaware of the [information]" or that the "undisclosed information was not cumulative of the references that were already before the Examiner").

---

[4] When addressing a Rule 12 motion, a court is not obligated to accept as true an obvious mischaracterization of a judicially noticeable document like Ocado's SAC. *Secured Mail Sols. LLC* v. *Universal Wilde, Inc.*, 873 F.3d 905, 913 (Fed. Cir. 2017) ("[A] court need not 'accept as true allegations that contradict matters properly subject to judicial notice . . . .'" (citation omitted)); *Dufour* v. *Matrisch*, No. 18 CV 1269, 2018 WL 4073337, at *2 (N.D. Ill. Aug. 27, 2018) (noting the court does not have to "assume all the complaint's factual allegations are true . . . when the allegations contradict judicially-noticed facts").

*Third*, AutoStore fails to provide sufficient factual allegations from which the Court could plausibly infer the requisite scienter element of inequitable conduct because AutoStore did not allege facts to support an inference that a person involved in prosecution of the '404 Patent intended to deceive the PTO.  More specifically, AutoStore failed to provide factual allegations to support a plausible inference, as required by *Therasense*, 649 F.3d at 1290-91, that any individual (a) knew of the unspecified Red Line information, (b) knew that the information was material and not cumulative of information that already had been provided to the PTO (*e.g.*, the November 2019 IDS), (c) knew that he or she had an obligation to disclose the unspecified information, and critically, (d) withheld the information with the specific intent to deceive the PTO.

AutoStore identifies fourteen individuals by name (Dkt. 49 ¶ 136)—again, presumably in an attempt to give the defense the appearance of specificity—but then does not accuse any of those people of committing inequitable conduct.  Instead, after several irrelevant paragraphs (*id.* ¶¶ 130-38), AutoStore ultimately accuses only three other individuals of inequitable conduct:  (i) Rob Stadie, one of the named inventors of the '404 Patent; and (ii) Sean Douglass and Patrick Keane, an associate and partner, respectively, at a patent prosecution law firm that assisted with prosecution of the '404 Patent (*id.* ¶¶ 139-140, 142).  With regard to Mr. Stadie, AutoStore alleges "on information and belief" only that Mr. Stadie might have been aware of Red Line documents that AutoStore allegedly gave to *other people* (*id.* ¶ 142), but that "information and belief" allegation is legally insufficient to sustain a fraud claim, as explained below.  *Infra* pp. 14-16.  With regard to all three individuals, AutoStore makes conclusory assertions—once again insufficiently "on information and belief" only—that each individual (i) was "aware of" the unspecified Red Line information (Dkt. 49 ¶¶ 140, 142-43), (ii) "intentionally did not disclose" that information to the PTO (*id.* ¶¶ 143, 149), and (iii) "knew"

that the information "was 'but-for' material" (*id.* ¶ 147). These conclusory allegations of specific intent to deceive are legally inadequate.

Two points on AutoStore's deficient scienter allegations bear emphasis. First, as shown above, AutoStore's allegations regarding materiality depend on unidentified "other prior art" or an obvious mischaracterization of the products that Ocado accused of infringement. *Supra* pp. 4-5. Yet AutoStore never alleges that any of Messrs. Stadie, Douglass, or Keane knew of that unidentified "other prior art" or formed any view on whether the "prior art Red Line system" infringes the '404 Patent. In other words, AutoStore provided no factual allegations from which the Court could plausibly infer that the accused individuals knew that the unspecified Red Line system information was material to patentability even if one were to credit AutoStore's deficient materiality allegations in their own right. Second, AutoStore provided no factual allegations— direct or circumstantial—from which the Court could reasonably infer that any of the named individuals withheld the unspecified Red Line system information with specific intent to deceive the PTO, which is an inference that makes no sense on the pleadings in light of AutoStore's admission that Ocado disclosed the "prior art Red Line system" to the PTO in November 2019. That also is fatal to AutoStore's inequitable conduct defense.

In summary, AutoStore's fraud allegations fall far short of the heightened pleading standard that applies to inequitable conduct and, even accepting all of AutoStore's factual allegations as true, the defense is not viable. Although AutoStore piles up confusing factual allegations—regarding documents and people ultimately irrelevant to the fraud claim—AutoStore then does little more than repeat the elements of inequitable conduct "without setting forth the particularized factual bases for the allegation." *Exergen Corp.* v. *Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). AutoStore offers exactly the kind of boilerplate and baseless

allegations that previously "plagued" the patent system.  *Therasense, Inc.*, 649 F.3d at 1289.  The Court should strike AutoStore's inequitable conduct defense pursuant to Rule 12(f).

**ARGUMENT**

To sustain an inequitable conduct defense, the asserting party must show (i) that non-disclosed information was but-for material (*i.e.*, the "PTO would not have granted the patent but for [the] failure to disclose"), and (ii) that the relevant individual acted with specific intent to deceive the PTO (*i.e.*, the individual "knew of the reference, knew that it was material, and made a deliberate decision to withhold it").  *Therasense*, 649 F.3d at 1290, 1296.  The elements of "[m]ateriality and intent must be separately established," and intent may not be inferred from knowledge of the material information alone.  *Network Signatures, Inc.* v. *State Farm Mut. Auto. Ins. Co.*, 731 F.3d 1239, 1242 (Fed. Cir. 2013) (citation omitted).  Because inequitable conduct requires a showing that a person acted with specific intent to deceive the PTO, courts require that "the circumstances constituting [inequitable conduct] be stated with particularity," as required by Rule 9(b), including "the specific who, what, when, where, and how of the material misrepresentation or omission."  *Exergen Corp.*, 575 F.3d at 1326-27.  Courts regularly strike deficient inequitable conduct affirmative defenses on the pleadings.  *Supra* p. 2 n.2.

**I.      AutoStore Fails to Adequately Plead the "What," "Where," and "How" of Inequitable Conduct.**

AutoStore does not plead (i) "what" particular reference allegedly was not disclosed to the PTO, (ii) "where" the material information was located in that reference, and (iii) "how" the information was material to the patent examiner's decision (*i.e.*, why the non-disclosed information would have led a PTO examiner to reject the '404 Patent's claims).  *See Exergen Corp.*, 575 F.3d at 1327.  Each of these deficiencies are independently sufficient to strike AutoStore's defense.

***What and Where.*** AutoStore identifies seven specific documents at the outset of its affirmative defense (Dkt. 49 ¶¶ 132-34, 136), but AutoStore never alleges that any of those documents is material to patentability of the '404 Patent claims, much less shows how they are material. Instead, AutoStore vaguely asserts that the "[w]hat" of its inequitable conduct defense is the "prior art Red Line system" as a whole. (*Id.* ¶¶ 149-50.) What that means in terms of requisite particularity, however, is a riddle; it is not a factual allegation pled with specificity.

As a preliminary matter, AutoStore admits that Ocado's representatives disclosed the "prior art Red Line system" to the PTO in a November 2019 IDS. (*Id.* ¶ 141; Exs. A, B, C.) Thus, AutoStore has not and cannot allege that Ocado failed to disclose the existence and nature of the "prior art Red Line system" to the PTO. AutoStore therefore must base its defense on some other purportedly undisclosed information relating to the Red Line, but AutoStore does not identify or describe any such undisclosed information in its pleading. Instead, AutoStore vaguely asserts (i) "on information and belief" that Messrs. Douglass and Keane might have been aware of "the way the Red Line system implemented route planning" (Dkt. 49 ¶ 140), (ii) that Mr. Stadie was aware of "AutoStore's technology" (*id.* ¶ 142), (iii) that Mr. Stadie received "information about the Red Line system" (*id.*),[5] and (iv) that Ocado did not disclose the "relevant details" of the Red Line system (*id.* ¶ 148). The reference to "information," "technology," and "relevant details," however, could mean virtually anything relating to the Red Line system, and AutoStore never actually alleges the "what" and "where" of inequitable conduct (*i.e.*, what reference specifically

---

[5] AutoStore also alleged that it provided certain documents to different Ocado employees who AutoStore did not accuse of inequitable conduct. (Dkt. 49 ¶¶ 136, 142.) Putting aside that deficiency, however, AutoStore never alleges that those documents are material to patentability and should have been disclosed to the PTO. (*See id.* ¶¶ 136-42.)

was not disclosed and where in that reference material information is found).[6]  *See Corning Inc.*, 2021 WL 4251907, at *4.  Without the details of the "what" and "where" of inequitable conduct, the defense fails to satisfy the Rule 9(b) standard and should be struck.  *See Mobile Med. Int'l Corp.* v. *Advanced Mobile Hosp. Sys., Inc.*, No. 2:07-cv-231, 2015 WL 6554887, at *3 (D. Vt. Oct. 29, 2015) (rejecting inequitable conduct claim when defendant made only "vague references" to the undisclosed information); *Exergen Corp.*, 575 F.3d at 1329; *Bos. Sci. Corp.* v. *Micro-Tech Endoscopy USA Inc.*, No. 18-1869, 2020 WL 1550781, at *2 (D. Del. Apr. 1, 2020).

**How.**  AutoStore fails to plead "'how' an examiner would have used [the non-disclosed] information in assessing the patentability of the claims" and why the information would have led the examiner to reject the '404 Patent's claims.  *Exergen Corp.*, 575 F.3d at 1330.  Of course, it is difficult to assess the "how" of inequitable conduct when AutoStore's pleading does not identify the "what" or "where."  Typically, the question of whether non-disclosed information is material to patentability—and whether a person intentionally withheld that information with a specific intent to deceive the PTO—would start with an identification of "what" the non-disclosed reference was and "where" the allegedly material information can be found in that reference.  Here, AutoStore's failure to identify the "what" and "where" makes assessment of the other requirements of the inequitable conduct challenging to say the least.  Nevertheless, Ocado demonstrates below why AutoStore failed to plead the "how" of inequitable conduct, and Ocado demonstrates in the next section below why AutoStore failed to plead the "who."

---

[6] When AutoStore alleges the "where" of inequitable conduct in its pleading, it says the "where" is "[b]efore the USPTO."  (Dkt. 49 ¶ 150.)  AutoStore appears to be confused.  The "where" of inequitable conduct is not a geographic location, building, or agency; rather, it is an identification of where in the *allegedly non-disclosed reference* material information is found.  *Corning Inc.*, 2021 WL 4251907, at *4 ("To sufficiently plead the . . . 'where' of the material misrepresentation or omission, a pleading must 'identify . . . where in those references the material information is found.'" (citation omitted)).

AutoStore provides two equally deficient allegations regarding the "how" of inequitable conduct (*i.e.*, how the allegedly non-disclosed information is material to patentability of the '404 Patent's claims). AutoStore initially alleges that unspecified Red Line information is *not* material to patentability of the '404 Patent's claims because the information, according to AutoStore, is anticipatory if and only if the "prior art Red Line system" is found to infringe the '404 Patent. (Dkt. 49 ¶¶ 146-47.) According to AutoStore, the "prior art Red Line system" does not infringe the '404 Patent and therefore the unspecified Red Line information is not anticipatory. (*Id.* ¶¶ 123, 146.) AutoStore makes no effort to plead how the unspecified Red Line information would be used by a PTO examiner to reject the claims of the '404 Patent, and instead relies on the conditional premise that (i) Ocado accuses the "prior art Red Line system" of infringing the '404 Patent, and (ii) materiality can be presumed if the "prior art Red Line system" is found to infringe. This logic is fundamentally flawed, however, because Ocado does not accuse the "prior art Red Line system" of infringing the '404 Patent. The only product that Ocado accuses of infringing the '404 Patent is the Router software, which AutoStore admits was released to Red Line and Black Line customers only in late 2020. (*Id.* ¶ 73.) Thus, even if AutoStore could support an inequitable conduct defense with its conditional allegation, the defense necessarily fails because the Court is not required to accept AutoStore's incorrect characterization of Ocado's SAC. *Secured Mail Sols. LLC*, 873 F.3d at 913. Ocado did not accuse the "prior art Red Line system" of infringing the '404 Patent, and the premise of AutoStore's materiality theory falls away.

AutoStore also argues that "[t]he Examiner . . . would not have issued the '404 Patent had the Examiner known all relevant details of AutoStore's prior art Red Line system and considered such prior art *in combination with other references*." (Dkt. 49 ¶ 148 (emphasis added).) But AutoStore does not identify those "relevant details" or, more importantly, the "other references," let alone plead how they would be relevant to the patentability of the '404 Patent

claims. (*Id.*)  This kind of boilerplate and vague allegation is legally insufficient.  *See Analog Devices, Inc.* v. *Xilinx, Inc.*, No. 19-2225, 2021 WL 466859, at *3 (D. Del. Feb. 9, 2021) (defendant's "conclusory assertion that '[b]ut for [the] material omission, the [PTO] would not have granted one or more claims of the [patent]' is insufficient to satisfy th[e] pleading standard" for inequitable conduct); *Lexington Luminance LLC*, 972 F. Supp. 2d at 93 (defendants did not "demonstrate how the withheld information is 'material' because they [did] not show[] how a patent examiner, armed with the withheld information" would have "used [the omitted information] in assessing patentability" (citation omitted)).

Finally, as the Federal Circuit explained in *Therasense*, the party asserting an inequitable conduct defense must not only allege that non-disclosed information is material to patentability standing in isolation, but must also plead that the non-disclosed information is not cumulative of other information that was presented to the PTO.  *See Analog Devices*, 2021 WL 466859, at *2 (party alleging affirmative defense of inequitable conduct "must [plead] facts that demonstrate 'why' the withheld information is material and not cumulative" (quoting *Exergen Corp.*, 575 F.3d at 1330)); *Rothman* v. *Target Corp.*, 556 F.3d 1310, 1326 (Fed. Cir. 2009) ("A piece of prior art is not material to patent prosecution when it is cumulative of information already before the examiner."); 37 C.F.R. § 1.56(b) ("[I]nformation is material to patentability when it is not cumulative to information already of record or being made of record in the application . . . ."). That is particularly relevant here because AutoStore admitted that Ocado's representatives disclosed information regarding the "prior art Red Line system" to the PTO (Dkt. 49 ¶ 141), but AutoStore never explains why the unspecified, additional Red Line information purportedly not disclosed was not cumulative of what Ocado's representatives admittedly did disclose.  Without specific allegations that show why the unspecified Red Line information was not cumulative, AutoStore's inequitable conduct defense cannot survive a motion to strike.  *Exergen Corp.*, 575

F.3d at 1329 (finding insufficient a "pleading [that] state[d] generally that the withheld references are . . . 'not cumulative to the information already of record'" without explaining "'why' the withheld information is . . . not cumulative").

In sum, after failing to identify the "what" and "where" of inequitable conduct with particularity, AutoStore also fails to adequately plead the "how" of inequitable conduct. The Court is not required to accept as true AutoStore's mischaracterization of the SAC, and AutoStore's other allegations regarding materiality are conclusory legal assertions without any supporting factual allegations.

## II.     AutoStore Fails to Sufficiently Plead the "Who" of Inequitable Conduct.

To adequately plead an inequitable conduct defense, the asserting party must allege that a person involved in the patent prosecution (i) actually knew of the non-disclosed information, (ii) actually knew that the information was material information that the person was obligated to disclose to the PTO, and (iii) deliberately withheld the information with a specific intent to deceive the PTO. *Therasense*, 649 F.3d at 1290 (specific intent requires "that the applicant knew of the reference, knew that it was material, and made a deliberate decision to withhold it"). Although the heightened pleading requirements of Rule 9(b) do not apply to knowledge or intent, a party alleging inequitable conduct must "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind." *Exergen Corp.*, 575 F.3d at 1327.

In its pleading, AutoStore identifies *fourteen* individuals by name who it does not accuse of inequitable conduct. (Dkt. 49 ¶ 136.) AutoStore then accuses three *different* people of inequitable conduct—Messrs. Stadie, Douglass, and Keane. (*Id.* ¶¶ 139, 142.) Yet, even for those three people, AutoStore does not allege facts—direct or circumstantial—from which the Court could plausibly infer that each person knew of the unspecified Red Line information, knew that it

was material to patentability, and deliberately withheld it with intent to deceive the PTO.[7]  With respect to Mr. Stadie—a non-lawyer inventor of the '404 Patent—AutoStore also fails to allege facts from which the Court could plausibly infer that Mr. Stadie knew that the unspecified Red Line information fell within the scope of an ongoing disclosure obligation.  Instead, AutoStore alleges, without any supporting facts, that the three individuals "were aware of the relevance of AutoStore's technology" and "intentionally did not disclose the prior art use and sale of AutoStore's Red Line system."  (*Id.* ¶ 143.)  That falls far short of what is required even at the pleading stage, as explained in more detail below.

*Actual Knowledge.*  AutoStore first vaguely alleges—"on information and belief" only—that Messrs. Douglass and Keane "were aware of the way the Red Line system implemented route planning."  (*Id.* ¶ 140.)  It is well-settled that a pleading on "information and belief"— particularly in the context of fraud—can be credited "only if the pleading sets forth the specific facts upon which the belief is reasonably based," and the allegation should not be credited if the asserting party details neither "the 'information' on which it relies nor any plausible reasons for its 'belief,'" as AutoStore failed to do here.  *Exergen Corp.*, 575 F.3d at 1330-31.  Here, none of AutoStore's factual allegations supports its conclusory "information and belief" allegation.

First, AutoStore states correctly that in November 2019, Messrs. Douglass and Keane submitted an IDS to the PTO in which they disclosed AutoStore's Red Line system.  (Dkt. 49 ¶ 141.)  AutoStore then alleges that Messrs. Douglass and Keane should have known about the Red Line system—presumably how the system implemented route planning—because

---

[7] As noted above, AutoStore's failure to specifically plead the "what" and "where" of inequitable conduct makes it difficult even to address the "how" and "who" elements.  The Court cannot meaningfully assess scienter when AutoStore has not even told the Court and Ocado in requisite detail (or with any specificity whatsoever) **what** Messrs. Stadie, Douglass, and Keane allegedly withheld from the PTO.

AutoStore publicly commercialized the system and Ocado inspected a Red Line system.  (*Id.*)

These broad allegations amount to speculation, and they are insufficient as a matter of law.  *See*,

*e.g.*, *Exergen Corp.*, 575 F.3d at 1330 ("[O]ne cannot assume that an individual, who generally

knew that a reference existed, also knew of the specific material information contained in that

reference."); *Int'l Test Sols., Inc.* v. *Mipox Int'l Corp.*, No. 16-cv-00791, 2017 WL 2118314, at *6

(N.D. Cal. May 16, 2017) (finding that "[g]eneral knowledge of [plaintiff's] operations is 'not

sufficient to support an inference that [a person] knew of specific material information contained

in the prior art allegedly withheld'" (citation omitted)); *Aerocrine AB* v. *Apieron Inc.*, No. 08-cv-

787, 2010 WL 1225090, at *6 (D. Del. Mar. 30, 2010) (finding that defendant's "allegations fall

short of establishing how a general awareness of" certain references "'evidences any knowledge

of the specific portion' of the references that [defendant] alleges are material").[8]

With regard to Mr. Stadie, AutoStore alleges—again "on information and belief"

only—that Mr. Stadie might have been aware of Red Line documents that AutoStore allegedly

provided to *other* people.  (Dkt. 49 ¶ 142.)  Even if one were to assume that this pleading was

sufficient to support an inference of knowledge (it is not), AutoStore never alleged, much less

showed, that any of the specific documents allegedly provided to other people at Ocado were

material to patentability.  (*See id.* ¶ 139.)  Instead, as explained above, *supra* pp. 11-12, AutoStore

vaguely asserted only that unspecified Red Line information was conditionally anticipatory and

material in combination with "other" unidentified prior art references.

---

[8] *See also MicroUnity Sys. Eng'g, Inc.* v. *Acer Inc.*, No. 2:10-CV-91, 2012 WL 12892903, at *3 (E.D. Tex. Aug. 29, 2012) ("the pleadings [were] insufficient to infer that specific material information was conveyed at [a] presentation" and "the fact that [a person] attended a conference" where a presentation on the prior art was given was insufficient to infer that he "learned any specific information that would have been material to patentability"); *Graphic Packaging Int'l, Inc.* v. *C.W. Zumbiel Co.*, No. 3:10-cv-891, 2011 WL 4862498, at *4 (M.D. Fla. Sept. 12, 2011) (defendant's allegations were insufficient to plead that a party was aware of material information because "[s]pecific allegations identifying the material information contained in a reference [was] needed" and defendant "d[id] not identify the specific information . . . that was 'discussed'").

***Specific Intent.*** AutoStore also provides no factual allegations from which the Court could plausibly infer that Messrs. Stadie, Douglass, and Keane withheld any information with the specific intent to deceive the PTO. With regard to all three individuals, AutoStore alleges in conclusory fashion—"on information and belief" only—that each individual (i) "intentionally did not disclose" that information to the PTO (Dkt. 49 ¶¶ 143, 149), and (ii) "knew" that the information was "'but-for' material" (*id.* ¶ 147). As a preliminary matter, and as noted above, the Court should disregard AutoStore's unsubstantiated allegations "on information and belief." When those assertions are set aside, AutoStore provides no other allegations from which the Court could reasonably infer deceptive intent.

AutoStore has no ability to cure this deficiency, for at least two reasons. First, as explained above, *supra* pp. 11-13, AutoStore alleges materiality of the unspecified Red Line information in two ways: (i) AutoStore conditionally alleges materiality if and only if the "prior art Red Line system" is found to infringe the '404 Patent; and (ii) AutoStore alleges that the unspecified Red Line information becomes material in combination with unidentified "other" prior art. To plausibly plead deceptive intent, AutoStore must provide sufficient factual allegations from which the Court could plausibly infer that Messrs. Stadie, Douglass, and Keane knew that the unspecified Red Line information was material to patentability. Yet, based on AutoStore's own pleading, that would require those three gentlemen to have (i) themselves come to the view that AutoStore's "prior art Red Line system" infringed the '404 Patent, or (ii) known of the unidentified "other" prior art and have come to the view that the combination rendered the '404 Patent's claims unpatentable. AutoStore has not remotely alleged—and could not allege (because it is not true)—that Messrs. Stadie, Douglass, and Keane formed those views or knew of the unidentified "other" prior art.

*          *          *

AutoStore "failed to specify sufficient factual circumstances from which the Court could plausibly infer that [Mr. Stadie, Mr. Douglass, and Mr. Keane] knew [the Red Line System] was material and deliberately withheld it." *Lexington Luminance LLC*, 972 F. Supp. 2d at 93. Allowing AutoStore's baseless and confusing inequitable conduct defense to move into discovery would "reinflict the plague of patent unenforceability based on the thinnest of speculation regarding the applicant's putative mental state," *1st Media, LLC* v. *Elec. Arts, Inc.*, 694 F.3d 1367, 1375 (Fed. Cir. 2012), potentially delay this proceeding, and increase the already formidable cost of discovery.

## CONCLUSION

For the foregoing reasons, the Court should strike AutoStore's affirmative defense of inequitable conduct.

Date:  October 1, 2021

Respectfully submitted,

*/s/ Henry C. Quilen*

Henry C. Quillen
New Hampshire Bar No. 265420
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, New Hampshire  03801
Tel:  (603) 294-1591
Fax:  (800) 922-4851
Email:  hquillen@whatleykallas.com

Garrard R. Beeney
Marc De Leeuw
Dustin F. Guzior
Morgan Schusterman
Helen Andrews
*Admitted pro hac vice*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel:  (212) 558-4000
Fax:  (212) 558-3588
Email:  SC-Ocado@sullcrom.com