**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

OCADO INNOVATION LTD. and
OCADO SOLUTIONS LTD.,

     *Plaintiffs*,

     v.

AUTOSTORE AS and
AUTOSTORE SYSTEM INC.,

     *Defendants*.

Case No.: 1:21-cv-00041-JL

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR OPPOSITION
TO PLAINTIFFS' MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSE
OF INEQUITABLE CONDUCT**

**TABLE OF CONTENTS**

I.     **INTRODUCTION**................................................................................................ **1**

II.    **LEGAL STANDARD** ........................................................................................ **2**

III.   **ARGUMENT**...................................................................................................... **3**

      A.    AutoStore's Inequitable Conduct Allegations Are Pled With Sufficient
           Particularity Under FRCP 9(b) ................................................................ 3

           1.    AutoStore's Materiality Allegations Are Sufficient to Support Its
                 Inequitable Conduct Defense ........................................................ 4

           2.    AutoStore's Actual Knowledge and Specific Intent Allegations
                 Are Sufficient to Support Its Inequitable Conduct Defense ....... 9

      B.    AutoStore Should Be Permitted to Amend Its Allegations Regarding the
           Materiality and Knowledge of Prior Art Considered in Combination with
           the Red Line Routing Functionality.......................................................... 13

      C.    Any Dismissal Should Be Without Prejudice........................................... 14

IV.   **CONCLUSION** .................................................................................................. **15**

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerocrine AB v. Apieron Inc.,*
No. 08-cv-787, 2010 WL 1225090 (D. Del. Mar. 30, 2010)....................................................11

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
768 F.3d 1185 (Fed. Cir. 2014) ..........................................................................................2

*Artskills, Inc. v. Royal Consumer Prods., LLC*,
No. 3:17-CV-1552 (VAB), 2018 WL 6304348 (D. Conn. Dec. 3, 2018) ...........................10

*Audionics Sys., Inc. v. AAMP of Fla., Inc.*,
Case No. CV 12-10763 MMM, 2014 WL 12580235 (C.D. Cal. Mar. 24, 2014) ...............15

*Boston Sci. Corp. v. Micro-Tech Endoscopy USA Inc.*,
No. 18-1869, 2020 WL 1550781 (D. Del. Apr. 1, 2020) ....................................................6

*Capella Photonics, Inc. v. Infinera Corp.*,
No. 2:20-CV-00077-JRG, 2021 WL 765084 (E.D. Tex. Feb. 26, 2021) .............................5

*Diebold Nixdorf, Inc. v. Hyosung TNS, Inc.*,
No. CV 19-1695-LPS, 2021 WL 861734 (D. Del. Mar. 4, 2021) .......................................2

*Doe v. United States*,
58 F.3d 494 (9th Cir. 1995) ...............................................................................................15

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
575 F.3d 1312 (Fed. Cir. 2009) ..................................................................................*passim*

*Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*,
No. 3:10-cv-891-J-37JBT, 2011 WL 4862498 (M.D. Fla. Sept. 12, 2011) .......................11

*HTC Corp. v. IPCom GmbH & Co., KG*,
671 F. Supp. 2d 146 (D.D.C. 2009)....................................................................................10

*Illumina Inc. v. BGI Genomics Co.*,
No. 20-CV-01465-WHO, 2021 WL 428632 (N.D. Cal. Feb. 8, 2021) ..........................8, 12

*Int'l Test Sols., Inc. v. Mipox Int'l Corp.*,
No. 16-cv-00791-RS, 2017 WL 2118314 (N.D. Cal. May 16, 2017) .................................11

*MicroUnity Sys. Eng'g, Inc. v. Acer Inc.*,
No. 2:10-CV-91-LED-RSP, 2012 WL 12892903 (E.D. Tex. Aug. 29, 2012......................11

*Mobile Medical Int'l Corp. v. Advanced Mobile Hosp. Sys., Inc.*,
No. 2:07-cv-231, 2015 WL 6554887 (D. Vt. Oct. 29, 2015) ..............................................6

*Ohio Willow Wood Co. v. Alps S., LLC*,
    735 F.3d 1333 (Fed. Cir. 2013) ......................................................................................... 2

*PetEdge, Inc. v. Fortress Secure Sols., LLC*,
    No. 15-11988-FDS, 2016 WL 407065 (D. Mass. Feb. 2, 2016) ......................................... 15

*President & Fellows of Harvard College v. Micron Tech., Inc.*,
    230 F. Supp. 3d 46 (D. Mass. 2017) ................................................................................... 14

*Resolution Trust Corp. v. Gold*,
    30 F.3d 251 (1st Cir. 1994) ................................................................................................ 13

*Sig Sauer, Inc. v. Freed Designs, Inc.*,
    No. 14-CV-461-SM, 2017 WL 4119046 (D.N.H. Mar. 17, 2017) ....................................... 7

*SKF Condition Monitoring, Inc. v. Invensys Sys., Inc.*,
    No. 07CV1116 BTM BGS, 2010 WL 3463686 (S.D. Cal. Aug. 31, 2010) ......................... 8

*Steir v. Girl Scouts of the USA*,
    383 F.3d 7 (1st Cir. 2004) .................................................................................................. 13

*Synventive Molding Sols., Inc. v. Husky Injection Molding Sys., Inc.*,
    No. 2:08-CV-136, 2009 WL 3172740 (D. Vt. Oct. 1, 2009) .............................................. 12

*Terves LLC v. Yueyang Aerospace New Materials Co.*,
    No. 1:19 CV 1611, 2021 WL 949711 (N.D. Ohio Mar. 12, 2021) ....................................... 5

*Therasense Inc. v. Becton Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) ....................................................................................... 2, 7

*Zadro Prods., Inc. v. SDI Techs., Inc.*,
    Case No. 17-1406 (WCB), 2019 WL 1100470 (D. Del. Mar. 8, 2019) .............................. 12

*Zep Solar Inc. v. Westinghouse Solar Inc.*,
    No. C 11-06493 JSW, 2012 WL 12920832 (N.D. Cal. Apr. 17, 2012) .............................. 15

iv

## I.    INTRODUCTION

AutoStore's allegations in its Answer set forth specific details regarding how Ocado's prosecution counsel and a named inventor of U.S. Patent No. 10,901,404 ("'404 Patent") failed to disclose "but for" material AutoStore prior art to the PTO examiner during prosecution of that patent. Per AutoStore's allegations, the "but for" material information consisted of the routing functionality of AutoStore's flagship Red Line system—which Ocado had purchased and used more than a year before it filed the application to which the '404 Patent claims priority. AutoStore further alleges that it gave the material information to Ocado as part of its purchase of a Red Line system as early as 2011. AutoStore's allegations are clear: under Ocado's interpretation of the '404 Patent's claims, the prior art routing functionality of AutoStore's Red Line system constitutes "but for" material prior art that would have precluded the claims from issuance in their current form. AutoStore specifically alleges who at Ocado knew about this information and its materiality, had a duty of disclosure to the PTO with respect to the '404 Patent, and knowingly failed to disclose the information to the PTO examiner. These allegations meet the pleading standard for all elements of inequitable conduct, as they specify the "who, what, when, where, and how" of the material omission committed before the PTO, rendering the '404 Patent unenforceable.

Ocado tries to escape this outcome early in the case, presumably to avoid having to hand over harmful discovery regarding its knowledge of AutoStore's material prior art and its failure to disclose it to the PTO. But its motion to strike rests on feeble ground, cherry picking statements from AutoStore's Answer that it contends are too conclusory to plead inequitable conduct. But AutoStore's Answer is far from conclusory. Considered in their full context, the allegations in the Answer describe in detail the withholding of material prior art with specific intent to deceive the PTO, leaving no question that they meet the pleading standards set forth by FRCP 9(b), *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312 (Fed. Cir. 2009), and *Therasense, Inc. v. Becton*

*Dickinson & Co.*, 649 F.3d 1276 (Fed. Cir. 2011) (en banc). Therefore, as explained further below, Ocado's motion to strike AutoStore's inequitable conduct defense should be denied.

Additionally, AutoStore seeks leave to amend its Answer to cure any potential deficiencies in its allegations respecting the materiality of the Red Line routing functionality when considered in combination with other prior art, rendering Ocado's arguments regarding these allegations moot. Because this proposed amendment is timely and not futile, AutoStore respectfully requests that leave to amend be granted.

## II.    LEGAL STANDARD

A party asserting inequitable conduct must show "that the patent applicant (1) misrepresented or omitted information material to patentability, and (2) did so with specific intent to mislead or deceive the PTO." *Am. Calcar, Inc. v. Am. Honda Motor Co.*, 768 F.3d 1185, 1188– 89 (Fed. Cir. 2014) (quoting *Ohio Willow Wood Co. v. Alps S., LLC*, 735 F.3d 1333, 1344 (Fed. Cir. 2013)). At the pleading stage, a claimant need not prove inequitable conduct by clear and convincing evidence. *Diebold Nixdorf, Inc. v. Hyosung TNS, Inc.*, No. CV 19-1695-LPS, 2021 WL 861734, at *2 (D. Del. Mar. 4, 2021) (citing *Exergen*, 575 F.3d at 1329 n.5). Rather, inequitable conduct need only be pled with particularity pursuant to FRCP 9(b). *Exergen*, 575 F.3d at 1326– 27. This requires the party asserting the defense to "identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328. Moreover, the intent prong of inequitable conduct may be pled generally, so long as the defense includes "sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." *Id.* at 1328–29. As the Federal Circuit has explained, "[a] reasonable inference is one that is plausible and that flows logically from the facts alleged." *Id.* at 1329 n.5.

## III.    ARGUMENT

### A.    AutoStore's Inequitable Conduct Allegations Are Pled With Sufficient Particularity Under FRCP 9(b)

To escape AutoStore's inequitable conduct allegations, Ocado resorts to repeated mischaracterizations of these allegations. But when AutoStore's allegations are taken as true (as is required at the pleading stage), it is clear that they sufficiently set forth the required "who, what, when, where, and how" of Ocado's material omission before the PTO during prosecution of the '404 Patent, and that this omission was made with specific intent to deceive the PTO. AutoStore alleges that Ocado's employees and agents, specifically named inventor Robert Stadie and prosecution counsel Sean M. Douglass and Patrick C. Keane, were aware of the robot routing functionality of AutoStore's Red Line system that was disclosed to and used by Ocado from at least 2011 to 2013. Dkt. 49 ¶¶ 140–42. This prior art functionality is materially the same as that in AutoStore's accused Router software, notwithstanding later rebranding and improvements to other elements of the software. *Id.* ¶ 145. AutoStore alleges that, given Ocado's infringement theories on the accused Router software, Messrs. Stadie, Douglass, and Keane knew that the older Red Line routing functionality practices the claims of the '404 Patent under Ocado's understanding of the scope of the claims (*i.e.*, they knew that the older Red Line routing functionality anticipates the claims of the '404 Patent and is thus "but for" material). *Id.* ¶¶ 145–47. AutoStore alleges that, despite this knowledge, these individuals intentionally did not disclose the Red Line routing functionality to the PTO during prosecution of the '404 Patent. *Id.* ¶ 143. As explained below, these allegations sufficiently plead AutoStore's inequitable conduct defense with particularity, and therefore the defense should not be stricken.

3

### 1.    AutoStore's Materiality Allegations Are Sufficient to Support Its Inequitable Conduct Defense

With respect to the first prong of inequitable conduct, materiality, Ocado argues that AutoStore has not adequately described the reference that was withheld from the PTO and how that reference would have been material to the prosecution of the '404 Patent. *See* Dkt. 56-1 at 8–13. This argument fails on a first look, because it relies on singling out summary language in the Answer and wholly disregards specific allegations that set forth the "what," "where," and "how" of inequitable conduct with particularity.

***What.*** AutoStore pleads with particularity the prior art that was withheld from the PTO, satisfying the "what" of the inequitable conduct inquiry. AutoStore alleges multiple times in its inequitable conduct defense that the information withheld from the PTO during prosecution of the '404 Patent is not the AutoStore Red Line system generally (as Ocado avers throughout its motion), but rather is the "route-planning functionality that helps determine, optimize, and reserve the pathways for robots' movement around the facility" used in the Red Line system that Ocado inspected, analyzed, and used from at least 2011 to 2013. Dkt. 49 ¶¶ 135–37. Similar allegations are repeated throughout AutoStore's Answer:

- "On information and belief, both Messrs. Douglass and Keane, as well as individuals at Ocado, were aware of ***the way the Red Line system implemented route planning***." *Id.* ¶ 140 (emphasis added).

- Mr. Stadie received information from AutoStore that "permitted Ocado to observe the functionality of the ***AutoStore routing functionality used in the Red Line system in 2012.***" *Id.* ¶ 142 (emphasis added).

- "Mr. Stadie, Mr. Douglass, and Mr. Keane were aware of the relevance of AutoStore's technology, they intentionally did not disclose the prior art use and sale of AutoStore's Red Line system ***that embodied certain route-planning functionality*** referenced above." *Id.* ¶ 143 (emphasis added).

Not once does Ocado refer to any of these allegations. Instead, it argues that the Red Line system (without referring to its routing functionality) could not be "material" prior art because

4

AutoStore agrees that Ocado disclosed *some* information about it to the PTO during prosecution of the '404 Patent. Dkt. 56-1 at 9–10. That does nothing to help Ocado here, for the simple reason that Ocado failed to disclose the *relevant* information about the Red Line system—its routing functionality. During prosecution, Ocado only disclosed high-level information about the Red Line system (*e.g.*, that it contained a cubic grid system with robots). *See* Dkt. 49 ¶¶ 140–41. None of that information disclosed the specific routing functionality used by the Red Line. Indeed, as AutoStore alleges, the fact that only *some* information was disclosed—but not information that was *actually relevant* to the pending claims—is strong circumstantial evidence that the identified individuals knew that the withheld information was material. *See id.*

*Where*. As an initial matter, Ocado misrepresents the "where" requirement, averring that AutoStore should have pled "where" in the relevant prior art the "but for" material information was disclosed. Dkt. 56-1 at 10 n.6. But Ocado is wrong on the law. Several district courts have made clear that the "where" requirement is met when the claimant identifies the adjudicating body before which the misrepresentation or lack of disclosure took place; this is exactly what AutoStore did here. *See Terves LLC v. Yueyang Aerospace New Materials Co.*, No. 1:19 CV 1611, 2021 WL 949711, at *3 (N.D. Ohio Mar. 12, 2021) ("The Counterclaims identify the specific information allegedly withheld from the USPTO, who withheld the information, ***when and where it should have been presented***, and how that information would be relevant and material to the issuance of the subject Patents.") (emphasis added); *Capella Photonics, Inc. v. Infinera Corp.*, No. 2:20-CV-00077-JRG, 2021 WL 765084, at *5 (E.D. Tex. Feb. 26, 2021) ("The Court is also persuaded that Defendants' allegations of inequitable conduct satisfy the strictures of Fed. R. Civ. P. 9(b). ***Defendants have alleged…the 'where' (in filings before the patent office)***.") (emphasis added).

In any event, AutoStore has sufficiently pled where the undisclosed information is located within the relevant prior art, satisfying the "where" requirement as set forth in the *Corning* case cited by Ocado. AutoStore alleges that the functionality of the current AutoStore Router software that Ocado accuses of infringement is materially the same as that in the Red Line routing functionality known to and used by Ocado as early as 2011.[1] *See* Dkt. 49 ¶ 145. At this stage of the litigation, before any discovery (including that of source code) has taken place, these allegations taken together are sufficiently specific to satisfy the "what" and "where" questions under *Exergen* and *Therasense*.[2]

**How.** AutoStore has pled the "how" of inequitable conduct with particularity by explaining that the Red Line routing functionality would have been deemed by the PTO examiner to anticipate claims 1 and 9 of the '404 Patent if Ocado's understanding of the claims is correct. To satisfy the

---

[1]    AutoStore did not allege that the currently accused Router or the prior art Red Line system's routing functionality practice the asserted claims **under the proper interpretation and application of the claims**. Indeed, it specifically alleged that the Router **does not infringe** under the proper interpretation of the claims. *See* Dkt. 49 ¶¶ 103–110 (denying infringement of the '404 Patent). It is only under Ocado's interpretation and application that the prior art routing functionality in the Red Line system practices the asserted claims and therefore anticipates them. *See id.* ¶¶ 128–29 (affirmative defense of noninfringement of the '404 Patent); ¶ 146 ("AutoStore's Red Line products do not infringe the '404 Patent. […] **Under Ocado's apparent interpretation of the '404 Patent claims**, however, AutoStore's Red Line products do contain functionality that satisfy each limitation of at least claims 1 and 9 of the '404 Patent, and have also contained such functionality since well before the priority date of the '404 Patent.") (emphasis added).

[2]    The cases cited by Ocado are not to the contrary. In each case, the allegations regarding the "what" and "where" of inequitable conduct lacked the types of details present in AutoStore's allegations, rendering them conclusory and insufficient. In *Mobile Medical International Corp. v. Advanced Mobile Hospital Systems, Inc.*, the claimant only made "vague references" to the prior-art "lithotripsy and catheterization units" without any disclosure of where the prior art was disclosed, available, or known to the patentee. No. 2:07-cv-231, 2015 WL 6554887, at *3 (D. Vt. Oct. 29, 2015). And in *Boston Scientific Corp. v. Micro-Tech Endoscopy USA Inc.*, the claimant failed to identify the claims and limitations that were embodied by the undisclosed prior art device at issue. No. 18-1869, 2020 WL 1550781, at *2 (D. Del. Apr. 1, 2020). But AutoStore has done so here, noting that the Red Line routing functionality embodies at least claims 1 and 9 of the '404 Patent. Dkt. 49 ¶ 146.

"how" requirement, the pleading needs to allege with sufficient specificity that the undisclosed information would have been but-for material to patentability—*i.e.*, that the PTO would not have allowed particular claims had it been aware of the undisclosed information. *Sig Sauer, Inc. v. Freed Designs, Inc.*, No. 14-CV-461-SM, 2017 WL 4119046, at *5 (D.N.H. Mar. 17, 2017) (citing *Therasense*, 649 F.3d at 1291–92); *see also Exergen*, 575 F.3d at 1329–30 (inequitable conduct pleading must allege "'how' an examiner would have used this information in assessing the patentability of the claims."). Here, AutoStore alleges that, under Ocado's interpretation of claims 1 and 9 of the '404 Patent, the examiner would have used the information about the Red Line route-planning functionality to find the pending claims anticipated. Dkt. 49 ¶¶ 146–47. AutoStore alleges that the relevant functionality of the routing software used in the Red Line has not changed in material respects from the version that was known to and used by Ocado from at least 2011 to 2013 (an allegation that Ocado completely ignores). Dkt. 49 ¶ 145. Consequently, if AutoStore's current Router software infringes claims 1 and 9 (as Ocado alleges and AutoStore disputes in this litigation), then the older version of the software must anticipate those claims because the functionality is materially unchanged. *Id.* ¶¶ 145–47. Taking these allegations as true (as the Court must do at the pleading stage), they adequately allege that the Red Line routing functionality would have been but-for material to the patentability of at least claims 1 and 9 of the '404 Patent. *See Sig Sauer*, 2017 WL 4119046, at *5 (finding materiality adequately pled where the pleading "alleged with sufficient specificity" that the undisclosed prior art anticipated the asserted claims in this case, because "[w]hen assumed true, these allegations support the inference that had this prior art been disclosed to the PTO, the PTO would not have issued the [asserted] patent"). Ocado cannot deny that such functionality would have been found by the examiner to be but-for material to patentability because Ocado now accuses materially identical functionality of infringing.

Additionally, AutoStore sufficiently alleges that the non-disclosed information regarding the Red Line routing functionality could not have been cumulative of other information that was presented to the PTO. AutoStore explains that Ocado disclosed more general information about Red Line during prosecution of the '404 Patent, but not the specific technical information about the operation of the routing functionality. Dkt. 49 ¶¶ 141, 143. The Red Line routing art could not be cumulative of anything else before the examiner. AutoStore was the first to implement this route-planning functionality in the Red Line that was available to and used by Ocado from at least 2011 to 2013. *See* Dkt. 49 ¶¶ 130–37. Indeed, Ocado makes no argument that any other piece of prior art provides the same information.

These specific allegations stand in contrast to the conclusory allegations deemed insufficient in *Exergen*, where the pleading merely made the conclusory statement that the undisclosed references were not cumulative of the prior art before the examiner. *Exergen Corp.*, 575 F.3d at 1329. AutoStore's allegations are more than sufficient to support a plausible inference that the withheld information regarding the Red Line routing functionality was not cumulative, which is all that is required at the pleading stage. *See Illumina Inc. v. BGI Genomics Co.*, No. 20-CV-01465-WHO, 2021 WL 428632, at *5 (N.D. Cal. Feb. 8, 2021) (finding inequitable conduct adequately pled where the "allegations are sufficient to support a plausible inference that the [undisclosed] reference is material and not cumulative"); *SKF Condition Monitoring, Inc. v. Invensys Sys., Inc.*, No. 07CV1116 BTM BGS, 2010 WL 3463686, at *7 (S.D. Cal. Aug. 31, 2010) (finding inequitable conduct adequately pled where "there are several allegations which support a reasonable inference that [the withheld] references would be non-cumulative," even though the pleading "never makes that allegation directly").[3]

---

[3]    Ocado's arguments regarding insufficiencies of AutoStore's materiality allegations in paragraph 148 of its Answer are moot in view of AutoStore's proposed amended complaint,

In sum, AutoStore's allegations regarding materiality (the "what," "where," "how," "who," and "when"[4]) are sufficient to meet the requirements of FRCP 9(b) and should not be stricken.

### 2.    AutoStore's Actual Knowledge and Specific Intent Allegations Are Sufficient to Support Its Inequitable Conduct Defense

AutoStore's Answer also sufficiently alleges facts that lead to a reasonable inference that the three individuals identified—Messrs. Stadie, Keane, and Douglass—had the requisite knowledge of the Red Line routing functionality and withheld this information with specific intent to deceive the PTO, which is all that is required to plead the scienter element of inequitable conduct. *Exergen*, 575 F.3d at 1328–29. Ocado attacks AutoStore's pleadings based "on information and belief," arguing they cannot be legally sufficient. *See* Dkt. 56-1 at 14–16. Ocado is wrong on this count too. As the Federal Circuit explained in *Exergen*, "***[p]leading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control***, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." 575 F.3d at 1330 (emphasis added). Despite Ocado's arguments to the contrary, that is met here—AutoStore adequately pleads the specific facts upon which its "information and belief" allegations regarding actual knowledge and specific intent are based.[5]

---

discussed in Section III.B *infra*. AutoStore maintains, however, that its materiality allegations are sufficient regardless of the allegations set forth in paragraph 148 for the reasons described in this section.

[4]    Ocado does not dispute that AutoStore's Answer sufficiently pleads the "who" and "when" of inequitable conduct. *See generally* Dkt. 56-1.

[5]    Ocado complains that AutoStore identifies fourteen individuals at Ocado other than Messrs. Stadie, Keane, and Douglass in connection with its allegations regarding Ocado's receipt and use of information regarding the Red Line routing functionality, but those individuals are not accused of inequitable conduct. Dkt. 56-1 at 6, 13 (citing Dkt. 49 ¶ 136). These arguments are a red herring. Nowhere does Ocado dispute that AutoStore has met the "who" requirement of pleading inequitable conduct by "nam[ing] the specific individual associated with the filing or prosecution of the application issuing as the [asserted] patent, who both knew of the material information and deliberately withheld or misrepresented it" (*i.e.*, Messrs. Stadie, Keane, and

Regarding actual knowledge, AutoStore alleges that Messrs. Douglass and Keane knew about the Red Line routing functionality because they disclosed more general information about the Red Line in an Information Disclosure Statement during prosecution of the '404 Patent (rendering them aware of the Red Line prior art overall), and because the specific technical information about the Red Line routing functionality was known to their client, Ocado. Dkt. 49 ¶¶ 140–41. It is reasonable to infer that Messrs. Douglass and Keane obtained this knowledge from their client because it dealt with the same technology at issue in the application that led to the '404 Patent (routing for automated storage and retrieval robots used in cubic automated storage systems). *See, e.g.*, *Artskills, Inc. v. Royal Consumer Prods., LLC*, No. 3:17-CV-1552 (VAB), 2018 WL 6304348, at *10 (D. Conn. Dec. 3, 2018) (scienter allegations sufficient to plead inequitable conduct where client had informed prosecution counsel of the existence of a prior art product and the product "was not included in the patent application, even though it contained features relating to the patents whose validity is currently challenged").

As for Mr. Stadie, AutoStore alleges that he attended a meeting with AutoStore in 2012 during and after which AutoStore shared technical information regarding the Red Line routing functionality. Dkt. 49 ¶ 142. Because Mr. Stadie attended this meeting and was involved in discussions with AutoStore about its routing technology, it is reasonable to infer that Mr. Stadie also knew of the Red Line routing functionality at issue in AutoStore's inequitable conduct defense here. *See HTC Corp. v. IPCom GmbH & Co., KG*, 671 F. Supp. 2d 146, 151 (D.D.C. 2009) (finding actual knowledge allegations sufficient where pleading alleged that the material information was disclosed during a meeting attended by the inventor accused of inequitable conduct). AutoStore

---

Douglass). *Exergen*, 575 F.3d at 1329. These other individuals are named in AutoStore's pleading to explain the circumstances under which Messrs. Stadie, Keane, and Douglass were aware of the relevant, material information that was withheld from the PTO.

also alleges that Mr. Stadie received simulations of the Red Line system, which "permitted Ocado to observe the functionality of the AutoStore routing functionality used in the Red Line system in 2012." Dkt. 49 ¶ 142. Mr. Stadie's receipt of simulations further supports a reasonable inference that Mr. Stadie understood and/or could figure out how the Red Line routing functionality worked. Taken together, these specific facts adequately set forth the basis for AutoStore's "information and belief" allegations respecting actual knowledge.[6]

AutoStore has also pled sufficient facts to support a plausible inference that Messrs. Stadie, Douglass, and Keane had the specific intent to deceive the PTO by withholding information about the Red Line's routing functionality during prosecution of the '404 Patent. These individuals were aware of the Red Line routing functionality—Ocado (and Mr. Stadie specifically) were given information allowing them to understand the functionality of AutoStore's routing software. *See* Dkt. 49 ¶¶ 136–37, 142. And yet, Messrs. Stadie, Douglass, and Keane (among others) sought to

---

[6]    The cases cited by Ocado regarding the actual knowledge requirement are inapposite. In several, the pleadings averred that the individuals accused of inequitable conduct were generally aware of potentially relevant references and information without explaining whether the applicant specifically knew of the information within them that was material. *See Exergen*, 575 F.3d at 1330 (pleading knowledge of a prior art patent was not sufficient to plead actual knowledge of material information contained in that patent); *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 3:10-cv-891-J-37JBT, 2011 WL 4862498, at *4 (M.D. Fla. Sept. 12, 2011) (same); *Int'l Test Sols., Inc. v. Mipox Int'l Corp.*, No. 16-cv-00791-RS, 2017 WL 2118314, at *6 (N.D. Cal. May 16, 2017) (pleading knowledge of a company's operations not sufficient to infer knowledge of specific data sheets from that company); *MicroUnity Sys. Eng'g, Inc. v. Acer Inc.*, No. 2:10-CV-91-LED-RSP consol., 2012 WL 12892903, at *3 (E.D. Tex. Aug. 29, 2012) (alleging attendance at a conference insufficient to plead actual knowledge of the content of a presentation from that conference). In contrast here, AutoStore has alleged sufficient facts to show that Messrs. Stadie, Douglass, and Keane were aware of the specific Red Line routing functionality that AutoStore alleges to be material. Moreover, in *Aerocrine AB v. Apieron Inc.*, the court determined that the pleading's actual knowledge allegations were sufficient because it alleged that the individuals accused of inequitable conduct had specific knowledge of the material parts of the withheld references, rather than just alleging general awareness. No. 08-cv-787, 2010 WL 1225090, at *6 (D. Del. Mar. 30, 2010). Ocado's citation to the case for the opposite proposition comes from the court's summary of the parties' arguments rather than from the court's analysis.

patent materially the same functionality as recited in claims 1 and 9 of the '404 Patent (under Ocado's interpretation of the claims). *Id.* ¶¶ 140–47. It stands to reason that they would have known that the Ocado named inventors did not actually invent the claims that cover AutoStore's Red Line routing functionality, and that the PTO would not grant claims that cover prior art (*i.e.*, that the withheld information was "but for" material). *See Illumina*, 2021 WL 428632, at *4 (finding intent to deceive adequately pled where the allegations showed that the prior art at issue was copied by the inventors but withheld during prosecution).

This inference is further bolstered by the allegation that the relevant functionality that Ocado now accuses of infringement is materially the same as the functionality that Ocado and its employees and agents were aware of as early as 2011, as AutoStore alleges. *See* Dkt. 49 ¶ 145. Thus, it is reasonable to infer that Mr. Stadie (as an Ocado employee) and Messrs. Douglass and Keane (as Ocado's patent attorneys) knew that AutoStore's older Red Line routing functionality practices the claims of '404 Patent as Ocado intended to interpret them during prosecution, but deliberately withheld that information because they knew that AutoStore was necessarily the correct inventor of the invention they sought to patent. *See id.* ¶ 147. Allegations of failure to disclose information to the PTO that is known to be material are sufficient to satisfy the pleading standard for specific intent, which is what AutoStore has done here. *See, e.g.*, *Zadro Prods., Inc. v. SDI Techs., Inc.*, Case No. 17-1406 (WCB), 2019 WL 1100470, at *4–5 (D. Del. Mar. 8, 2019) (finding deceptive intent adequately pled from fact that applicant withheld prior art product which she knew would be material to patentability of claimed invention); *Synventive Molding Sols., Inc. v. Husky Injection Molding Sys., Inc.*, No. 2:08-CV-136, 2009 WL 3172740, at *3 (D. Vt. Oct. 1, 2009) (finding a reasonable inference of scienter after defendant "specifically alleged the individuals involved, the information withheld and why it was material").

12

**B.    AutoStore Should Be Permitted to Amend Its Allegations Regarding the Materiality and Knowledge of Prior Art Considered in Combination with the Red Line Routing Functionality**

Ocado also spends much of its motion complaining that AutoStore fails to specifically allege the materiality of "other references" that would have been considered in combination with the Red Line routing functionality, as well as facts supporting whether Messrs. Stadie, Douglass, and Keane had knowledge of those references. Dkt. 56-1 at 5, 11–12, 16 (citing Dkt. 49 ¶ 148). But these allegations are not essential to AutoStore inequitable conduct defense; rather, AutoStore has adequately pled inequitable conduct with particularity regardless of its allegations dealing with "other references," as explained in Section III.A above.

Moreover, these arguments are moot because AutoStore hereby seeks leave to amend its Answer as set forth in Exhibit 1 in order to cure any potential deficiencies in its allegations regarding the materiality of the Red Line routing functionality in combination with other prior art references (*i.e.*, as set forth in its Answer at paragraph 148). Since this case is in its early days and no deadline has been set for amendments to the pleadings, "'leave to amend is to be 'freely given when justice so requires,' unless the amendment 'would be futile, or reward, *inter alia*, undue or intended delay.'" *Steir v. Girl Scouts of the USA*, 383 F.3d 7, 12 (1st Cir. 2004) (quoting FRCP 15(a)(2) and *Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994)).

AutoStore's proposed amendment is not futile because it bolsters its allegations regarding other prior art that would have been considered by the examiner in conjunction with the Red Line routing functionality, meeting the heightened pleading standard for inequitable conduct. AutoStore's amended Answer identifies four prior art references that, when considered in combination with the Red Line routing functionality, would have led the examiner to reject the claims of the '404 Patent—further supporting AutoStore's allegation that the Red Line routing functionality was material. Ex. 1 ¶ 148. AutoStore further alleges that Messrs. Stadie, Douglass,

13

and Keane would have been aware of these references because each was considered by the examiner during prosecution of the '404 Patent and/or related patents. *Id.* Thus, in view of AutoStore's allegations regarding knowledge of the Red Line routing functionality, it is reasonable to infer that Messrs. Stadie, Douglass, and Keane would have known that the Red Line routing functionality in combination with any of the other references identified would lead to the rejection of the claims of the '404 Patent, and consequently withheld the Red Line routing prior art to avoid such rejection. *See id.* These factual allegations further bolster AutoStore's pleading of materiality and specific intent, solidifying their sufficiency under FRCP 9(b) and *Exergen*.

### C.   Any Dismissal Should Be Without Prejudice

AutoStore's allegations are more than sufficient to adequately plead inequitable conduct with particularity under FRCP 9(b), either with or without the proposed amendment discussed in Section III.B. But even if the Court were to credit Ocado's arguments and determine that AutoStore's allegations are insufficient in both the original pleading and as amended, AutoStore respectfully submits that the Court's dismissal of any such allegations should be without prejudice, allowing AutoStore to seek leave to amend its pleadings after receiving discovery, in accordance with the amendment deadline to be set forth in the procedural schedule pursuant to FRCP 15(a)(2). Discovery is yet to take place in this case. Fact discovery will shed more light on many relevant issues, including what the accused Ocado individuals knew about AutoStore's Red Line routing functionality, and the extent to which they used such information in their purported invention of the '404 Patent claims. The types of information that AutoStore could obtain through discovery would allow it to plead its inequitable conduct defense with even greater particularity, such that an amendment would not be futile or in bad faith. *See President & Fellows of Harvard College v. Micron Tech., Inc.*, 230 F. Supp. 3d 46, 47–49 (D. Mass. 2017) ("Generally, a court ought grant leave to amend unless such an amendment was made in bad faith, was unduly delayed, or would

14

prove futile."). Moreover, it is the standard practice of courts in this circuit and elsewhere to grant motions to strike inequitable conduct allegations without prejudice, allowing leave to amend. *See, e.g.*, *PetEdge, Inc. v. Fortress Secure Sols., LLC*, No. 15-11988-FDS, 2016 WL 407065, at *4 (D. Mass. Feb. 2, 2016) (striking defendants' inequitable conduct affirmative defense "without prejudice to their renewal upon amendment of the pleadings"); *Zep Solar Inc. v. Westinghouse Solar Inc.*, No. C 11-06493 JSW, 2012 WL 12920832, at *2 (N.D. Cal. Apr. 17, 2012) (striking inequitable conduct defense but granting leave to amend because defendants "may be able to allege facts that could satisfy the heightened pleading standard for inequitable conduct"); *Audionics Sys., Inc. v. AAMP of Fla., Inc.*, Case No. CV 12-10763 MMM (JEMx), 2014 WL 12580235, at *10 (C.D. Cal. Mar. 24, 2014) (striking inequitable conduct defense but granting leave to amend because the party "may plausibly be able adequately to allege inequitable conduct" based on certain facts in the record, explaining that "a district court should grant leave to amend ... unless it determines that the pleading could not possibly be cured by the allegation of other facts") (citing *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).

Should the Court agree with Ocado and find that AutoStore's inequitable conduct allegations are not pled with sufficient particularity, it should follow this general practice and grant the motion without prejudice to AutoStore amending its pleadings in due course.

## IV.    CONCLUSION

For the reasons stated above, Defendants respectfully request that the Court deny Plaintiffs' motion to strike Defendants' inequitable conduct defense. Defendants further request that the Court grant leave for Defendants to file an amended Answer as set forth in Exhibit 1.

In the alternative, if the Court is inclined to grant Ocado's motion, Defendants respectfully submit that the right course would be for the Court to do so without prejudice, allowing AutoStore another opportunity to raise its defense after some fact discovery has taken place.

15

Dated: October 15, 2021

Respectfully Submitted,

AUTOSTORE AS and
AUTOSTORE SYSTEM INC.,

By Their Attorneys,

*/s/ Robert R. Lucic*

Robert R. Lucic (NH Bar #9062)
Bryanna K. Devonshire (NH Bar #2694620
SHEEHAN PHINNEY BASS & GREEN PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105
(603) 627-8188
rlucic@sheehan.com
bdevonshire@sheehan.com

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Emily M. Scott (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
glocascio@kirkland.com
emily.scott@kirkland.com

Joseph A. Loy, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jloy@kirkland.com

Ali-Reza Boloori (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
(213) 680-8400
ali-reza.boloori@kirkland.com

Josh Glucoft (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
(310) 552-4200

16

josh.glucoft@kirkland.com

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 15th day of October 2021.

/s/ *Robert R. Lucic*
Robert R. Lucic

18