# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| OCADO INNOVATION LTD. and<br>OCADO SOLUTIONS LTD.,<br><br>             Plaintiffs,<br>   v.<br><br>AUTOSTORE AS and<br>AUTOSTORE SYSTEM INC.,<br><br>             Defendants. | Case No. 1:21-cv-00041-JL |

## RULE 26(F) CONFERENCE REPORT AND PROPOSED DISCOVERY PLAN

**DATE/PLACE OF CONFERENCE:**

Counsel for Ocado Innovation Ltd. and Ocado Solutions Ltd. (collectively, "Plaintiffs" or "Ocado") met and conferred with counsel for AutoStore AS and AutoStore System Inc. (collectively, "Defendants" or "AutoStore") (Ocado and AutoStore each individually a "Party" and collectively the "Parties") on September 10, September 15, and October 13, 2021 via telephone to discuss the discovery plan and a schedule for the case.

**COUNSEL PRESENT/REPRESENTING**:

The following attorneys were present for the initial Rule 26(f) conference on September 10, 2021:

Henry Quillen, Counsel for Plaintiffs

Marc De Leeuw, Counsel for Plaintiffs

Laura Kabler Oswell, Counsel for Plaintiffs

Dustin Guzior, Counsel for Plaintiffs

Morgan Schusterman, Counsel for Plaintiffs

Helen Andrews, Counsel for Plaintiffs

Robert Lucic, Counsel for Defendants

Bryanna Devonshire, Counsel for Defendants

Josh Glucoft, Counsel for Defendants

Emily Scott, Counsel for Defendants

## **CASE SUMMARY**

This is an action for infringement of U.S. Patent Nos. 9,796,080 ("'080 Patent"), 10,901,404 ("'404 Patent"), 10,913,602 ("'602 Patent"), and 10,961,051 ("'051 Patent"). The parties are also engaged in litigation before the International Trade Commission ("ITC"), the Eastern District of Virginia ("E.D. Va."), and the Patent Trial and Appeal Board ("PTAB") regarding several patents owned by AutoStore's affiliates. Defendants have also filed a petition before the PTAB regarding the validity of the '080 Patent. The PTAB will issue an institution decision by October 23, 2021.

Plaintiffs allege that Defendants infringe the '602 Patent by making, using, importing, selling, distributing, and/or offering to sell B1 Robots and the Black Line system in the United States. Plaintiffs further allege that Defendants infringe the '051 Patent by making, using, importing, selling, distributing, and/or offering to sell in the United States cubic AS/RS systems that utilize both Black Line and Red Line robots. Plaintiffs further allege that Defendants infringe the '404 Patent by making, using, importing, selling, distributing and/or offering to sell AutoStore's Router software in the United States, which is used as part of the Black Line and Red Line systems. Lastly, Plaintiffs further allege that Defendants infringe the '080 Patent by making, using, importing, selling, distributing, and/or offering to sell "tote-in-tote" buffering systems in the United States as part of the Black Line and Red Line systems.

Defendants contend that they do not infringe the '602, '051, '404, and '080 Patents, and that said patents are invalid and unenforceable. Defendants have also counterclaimed for non-infringement and invalidity of all of the asserted patents.

**JURISDICTIONAL QUESTIONS**:

None.

**QUESTIONS OF LAW:**

1. The construction of terms in the patent claims asserted in the case.

2. Likely summary judgment motions regarding infringement, validity, and/or enforceability.

**TYPE OF TRIAL**:

Jury

## DISCOVERY

**TRACK ASSIGNMENT:**

Complex - 24 months. See proposed schedule, below.

**DISCOVERY NEEDED:**

Plaintiffs anticipate taking discovery on the issues of infringement, and damages related to Plaintiffs' asserted patents, as well as issues related to Defendants' affirmative defenses and counterclaims.

Defendants anticipate taking discovery on the issues of non-infringement, invalidity, unenforceability, and damages related to Plaintiffs' asserted patents, as well as issues related to Defendants' counterclaims and Plaintiffs' affirmative defenses to those counterclaims.

**EMAIL SERVICE:**

Pursuant to Fed. R. Civ. P. 5(b)(2)(E), the parties agree to service by email, that service is complete when an email is sent, and that three (3) days shall not be added to any deadline triggered

by such service. Email service on plaintiffs may only be effected by email on Ocado_DNH@sullcrom.com and hquillen@whatleykallas.com and email service on defendants may only be effected by email to autostore_newhampshire@kirkland.com.

**MANDATORY DISCLOSURES (Fed. R. Civ. P. 26(a)(1)):**

The parties stipulate that the disclosures contemplated by Fed. R. Civ. P. 26(a)(1) will be exchanged by November 12, 2021.

**INTERROGATORIES:**

A maximum of twenty-five (25) interrogatories per side, where, consistent with Fed. R. Civ. P. 33, each discrete subpart of an interrogatory will be considered a separate interrogatory. However, to the extent an interrogatory is addressed to multiple parties and must be answered separately by each party, such interrogatories will be counted only as a single interrogatory. Responses due thirty (30) days after service unless otherwise agreed pursuant to Fed. R. Civ. P. 29.

**DEPOSITIONS:**

A maximum of fifteen (15) non-expert depositions per side, except as permitted by the Court for good cause. Each deposition shall be limited to a maximum of seven (7) hours unless extended by agreement of the parties, except that depositions occurring in a language other than English are limited to a maximum of fourteen (14) hours (inclusive of all translator time) and no more than seven (7) hours per day. Any Rule 30(b)(6) depositions, to the extent they are taken in addition to seven-hour Rule 30(b)(1) depositions or non-Rule 30(b)(1) depositions[1], will be counted as a single deposition in seven-hour increments (*e.g.*, depositions of four Rule 30(b)(6)

---

[1] Where a Rule 30(b)(1) witness provides testimony that is concurrently designated as Rule 30(b)(6) testimony, time spent on the record with the Rule 30(b)(1) witness does not also count as time spent on Rule 30(b)(6) testimony. In other words, any given deposition counts only towards the limit on Rule 30(b)(1) depositions or on Rule 30(b)(6) depositions but not towards both limits at the same time.

deponents that last 21 hours in aggregate will count as three depositions, but four such deponents that last 22 hours in aggregate will count as four depositions).

**REQUESTS FOR ADMISSION:**

A maximum of one hundred (100) requests for admission by each party to any other party. Responses due thirty (30) days after service unless otherwise agreed to pursuant to Fed. R. Civ. P. 29.

**AUTHENTICITY:**

All documents produced in this action by either a Party or a non-party shall be presumed to satisfy the authenticity requirements of Fed. R. Evid. 901 and the business record exception of Fed. R. Evid. 803(6) and 803(7). However, each Party reserves the right to challenge the authenticity of a specific document (or any portion of the document), if the Party believes, in good faith, that the document cannot be authenticated. Each Party also expressly reserves the right to object to a specific document (or any portion of any document) to the extent it can be shown that such document or portion does not fall within Fed. R. Evid. 803(6) or 803(7) or should otherwise not be admitted (*e.g.*, pursuant to Fed. R. Evid. 402 or 403).

**DOCUMENT PRODUCTION AND ELECTRONIC INFORMATION DISCLOSURES:**

Discovery of Electronically Stored Information:

The Parties agree that, in the event email is sought, the request for email shall be limited to no more than seven (7) email custodians per side. In the event that any Party wishes to seek email during discovery, the Parties will confer about the procedures for the searching and production of email.

Email attachments maintained separately as independent documents or files may not be withheld from discovery on the basis of having been transmitted or obtained by email. All attachments must be stamped sequentially following the final Bates number of the parent email.

The Parties agree that no voicemail, instant messages (including, for example, communications made over workplace instant messaging platforms such as Slack), text messages, or materials that may be archived and/or retained in tape, floppy disc, optical disc or similar media for backup or disaster recovery shall be searched for or produced unless good cause for the production can be shown, and further subject to the producing party's claim of undue burden or cost. The Parties shall meet and confer as to good cause and undue burden on this issue.

If responsive documents are located on a centralized server or network, the producing party shall not be required to search for additional copies of such responsive documents that may be located on the personal computer, or otherwise in the possession, of individual employees absent a showing of good cause that the production of such additional copies is necessary. The Parties shall meet and confer as to good cause and undue burden on this issue.

Each Party shall use its best efforts to filter out common system files using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NSRL") NIST hash set list. Non-substantive embedded content, such as signature block graphics and other inline images, may be withheld from production.

Form of Document Production:

All document production shall be in electronic format unless otherwise agreed to in advance by the Parties.

The Parties shall each produce imaged copies of responsive and non-privileged electronic and paper documents electronically, Bates-stamped, using Tagged Image ("TIFF") format. It shall be produced as single-page TIFF Group IV images, black and white except for Microsoft PowerPoint documents (which shall be produced in color as specified by paragraph 7 below), at 300 x 300 dpi resolution with a standard delimited concordance format (DAT file) and Opticon (OPT file) format, including document breaks and page counts. TIFF files shall be named with a unique production number followed by the appropriate file extension (*e.g.*, ABC000001.TIFF). If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document. The parties agree to produce documents in text-searchable format to the extent they are maintained in that form or to the extent reasonably possible. A single multi-page text file shall be provided for each document, and the filename should match its respective TIFF image filename. A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents written in English or other Latin-character language. When possible, the text of native files should be extracted directly from the native file. Text files will not contain the redacted portions of the documents and OCR text files will be substituted instead of extracted text files for redacted documents.

Productions that contain foreign language documents shall be Unicode compliant.

All hidden text (*e.g.*, tracked changes, hidden columns, hidden rows, mark-ups, comments, notes, etc.) shall be expanded and rendered in the produced image and extracted text file. This content should be made visible, if it exists, independent of how the document was last saved.

A Party is required to produce only a single copy of a responsive document and a party may de-duplicate responsive ESI (based on MD5 or SHA-1 hash values at the document level)

across custodians. To the extent that a party has propounded a specific request for email and shown good cause in compliance with this stipulation, the hash value will be generated based on the parent/child document grouping for emails with attachments. A party may also de-duplicate "near-duplicate" email threads as follows: In an email thread, only the final-in-time document need be produced, assuming that all previous emails in the thread are contained within the final message. Where a prior email contains an attachment, that email and attachment shall not be removed as a "near-duplicate." To the extent that de-duplication through MD5 or SHA-1 hash values is not possible, the parties shall meet and confer to discuss any other proposed method of de-duplication.

A Party that receives a document produced in a format specified above may make a reasonable request to receive the document in its native format, and upon receipt of such a request, the producing party, if reasonable, shall produce the document in its native format. Microsoft Excel and computer-aided design (CAD) files shall be produced natively. Other files that may also be requested in native format include files not easily converted to image format, such as Microsoft Access databases, other documents that cannot be converted to a TIFF image format in a readily usable and legible format, as well as source code, compiled libraries, and/or executables. For documents that are produced as native files, the producing Party shall endeavor to include in the set of image (TIFF) documents a slipsheet where the native file would otherwise have been produced indicating the production number of the native file or other document and the confidentiality designation. In addition, native files shall be produced using a name that bears the production number (*e.g.*, ABC000002.xls). The DAT file shall also include a path to the native file.

The Parties shall respond to reasonable requests for the production of higher-resolution or color images. The producing Party shall not object to reasonable requests for color images and

also shall not object to reasonable requests for higher resolution images if the document as originally produced is illegible or difficult to read. The producing Party shall have the option of producing the native-file version of the documents in response to such requests. Documents reproduced in color or at a higher resolution shall bear the same production number(s) as the originally produced document where practicable and shall be produced in JPEG.

Production of Electronically Stored Information ("ESI") shall include metadata if such fields exist and are reasonably available to the producing Party:

| Field Name | Field Description | Email | Non-Email ESI | Hard Copy |
| --- | --- | --- | --- | --- |
| Bates Number Begin | Beginning page Bates number | x | x | x |
| Bates Number End | Ending page Bates number | x | x | x |
| Attachment Begin | Beginning page of attachment range | x | x | x |
| Attachment End | Ending page of attachment range | x | x | x |
| Attachment Count | Number of attachments to an email | x | x | |
| Custodian | Name of the custodian or repository name of the document produced - Last Name, First Name format | x | x | x |
| All Custodians | Name(s) of the deduplicated custodians or repository name(s) of the document produced - Last Name, First Name format | x | x | x |
| File Name | File name of document | | x | |
| File Extension | File extension of document | | x | |
| Email Outlook Type | Type of Outlook item, e.g. email, calendar item, note, task | x | | |
| Page Count | For documents produced in TIFF form, number of pages in the document. | x | x | x |

| Field Name | Field Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| | For documents produced in native, page count will be 1 (for placeholder). | | | |
| Document Title | Title field extracted from the Metadata of a non-Email document | | x | |
| Author | Document author of a non-Email document | | x | |
| Email Subject | Subject of email | x | x | |
| From | Email author | x | x | |
| To | Email recipients | x | x | |
| CC | Email copyees | x | x | |
| BCC | Email blind copyees | x | x | |
| Date-Time Sent | Date sent (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Received | Date received (mm/dd/yyyy hh:mm:ss format) | x | x | |
| Date-Time Created | Creation date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Date-Time Last Modified | Last modification date (mm/dd/yyyy hh:mm:ss format) | | x | |
| Hash Value (MD5 or SHA-1) | Unique electronic signature of email or electronic file | x | x | |
| Production Volume | Production volume name | x | x | x |
| Confidentiality | Confidentiality designation pursuant to the Protective Order | x | x | x |
| Redacted | Descriptor for documents that have been redacted (<yes> or <no>) | x | x | x |
| File Path[2] | File path to the native at the time of collection | | x | |

---

[2] The Parties agree that File Path metadata will only be provided for custodial documents collected as they sit in the ordinary course: *i.e.*, the Parties agree that they need not provide File Path metadata for (1) documents removed from where they reside in the ordinary course and placed into a different folder used to collect documents to respond to an interrogatory, request for production, or any other request in connection with this Investigation, or (2) documents from shared drives, or other centrally stored documents, so long as the "Custodian" field indicates the repository from which the document was collected.

| Field Name | Field Description | Email | Non-Email ESI | Hard Copy |
|---|---|---|---|---|
| Native link | File path location to any native files as include in production deliverable | x | x | |
| Text link | File path location to OCR and extracted text files as included in production deliverable | x | x | x |

To the extent that any email productions take place, the requesting and producing Party shall meet and confer regarding the possible inclusion of additional fields.

Paper documents included in a Party's production shall be scanned to imaged copies and produced in the same manner specified above, except that all such imaged copies that are in color shall be produced in color. The imaged copies of scanned paper documents will be logically unitized (*i.e.*, to preserve page breaks between documents and otherwise allow separate documents to be identified) accessible because of undue cost or burden unless ordered to do so following motion by the requesting party that demonstrates good cause.

Custodians:

The Parties agree that the number of custodians shall be limited to fifteen (15) per side. Each side can specify up to five (5) of the other side's fifteen (15) custodians.

For purposes of clarity, notwithstanding the above paragraph, a producing party must conduct a reasonable search of all databases and/or storage locations (including shared drives and cloud storage sites) it knows or reasonably believes to have responsive information, including document management system locations; sharepoints; fileshares; and Wikis, and not withhold from production responsive, otherwise non-objectionable documents, solely because those documents constitute emails and/or individual custodian's documents.

**PROPOSED STIPULATION REGARDING CLAIMS OF PRIVILEGE / PROTECTION OF TRIAL PREPARATION MATERIALS (Fed. R. Civ. P. 26(f)):**

The preparation of standard privilege logs would be excessively burdensome and expensive. Accordingly, no party need provide a privilege log that involves a document or other communication created on or after January 17, 2021 (the filing date of this action) or a document or communication associated with Kirkland & Ellis LLP, Sullivan & Cromwell LLP, or Powell Gilbert LLP on or after January 1, 2019.

**COMPLETION OF FACT DISCOVERY:**

All fact discovery shall be completed [**AutoStore**: eighty-five (85)][**Ocado**: forty-five (45)] days after the Court issues its claim construction order.

**DATE OF DISCLOSURE OF EXPERTS AND EXPERTS' WRITTEN REPORTS AND SUPPLEMENTATIONS:**

Pursuant to LPR 8.1(a)(1), opening expert reports on issues for which the parties will bear the burden of proof at trial will be due [**AutoStore**: forty-five (45)][**Ocado**: thirty (30)] days after service of the Final Invalidity Contentions. Pursuant to LPR 8.1(a)(2), rebuttal expert reports will be due [**AutoStore**: forty-five (45)][**Ocado**: thirty (30)] days after service of the opening expert reports.

**CHALLENGES TO EXPERT TESTIMONY:**

Due thirty (30) days after the close of all expert discovery.

## OTHER ITEMS

**DISCLOSURE OF CLAIMS AGAINST UNNAMED PARTIES:**

December 30, 2021

**MOTIONS TO DISMISS:**

December 30, 2021

**JOINDER OF ADDITIONAL PARTIES:**

December 30, 2021

**THIRD-PARTY COMPLAINTS:**

December 30, 2021

**AMENDMENT OF PLEADINGS:**

LPR 6.1(d) + seven (7) days

**DISPOSITIVE MOTIONS:**

[**AutoStore**: Thirty (30)][**Ocado**: Fourteen (14)] days after close of expert discovery pursuant to LPR 8.1(b).

**SETTLEMENT POSSIBILITIES:**

At this point in the proceedings, settlement is unlikely.

**JOINT STATEMENT RE: MEDIATION:**

If the Parties agree to mediation, they shall mediate within sixty (60) days of the Court's claim construction order.

**TRIAL ESTIMATE:**

Ten (10) days, subject to revision as the case proceeds.

**TRIAL DATE:**

**AutoStore**: December 5, 2023

**Ocado**: March 7, 2023

**PRELIMINARY PRETRIAL CONFERENCE:**

A preliminary pretrial conference with the Court before entry of the scheduling order is requested.

## PROPOSED SCHEDULE

Pursuant to the Supplemental Rules for Patent Cases, the following schedule is proposed. Where the parties have agreed, only a single date is presented. The parties' positions regarding their proposed schedules are set forth further below.

| EVENT DESCRIPTION | AUTOSTORE'S PROPOSED DEADLINE | OCADO'S PROPOSED DEADLINE |
|---|---|---|
| Discovery Plan due | 10/22/21 | |
| LPR 3.1(b) – Protective Order due along with Discovery Plan | 10/22/21 | |
| Case Scheduling Conference | 10/29/21 | |
| Fed. R. Civ. P. 26(a)(1) Disclosures | 11/12/21 | |
| LPR 5.1(a) – Preliminary Infringement Contentions | 1/24/22 | 11/5/21 |
| Disclosure of claims against unnamed parties | 12/30/21 | |
| Motions to dismiss | 12/30/21 | |
| Joinder of additional parties | 12/30/21 | |
| Third party complaints | 12/30/21 | |
| LPR 5.1(c) – Preliminary Invalidity Contentions | 3/10/22 | 12/10/21 |
| LPR 6.1(a) – Exchange of Proposed Terms for Construction | 3/24/22 | 12/23/21 |
| LPR 6.1(b)(1) – Exchange of Preliminary Claim Constructions and Extrinsic Evidence | 4/7/22 | 1/6/22 |
| LPR 6.1(b)(2) – Identification of References in the specification or prosecution history that supports any proposed construction and designation of any supporting extrinsic evidence | 4/7/22 | 1/6/22 |
| LPR 6.1(b)(3) – Meet and Confer for the purpose of limiting terms in dispute | 4/21/22 | 1/14/22 |
| LPR 6.1(c) – Joint Claim Construction and Prehearing Statement | 5/5/22 | 1/28/22 |
| LPR 6.1(d) – Completion of Claim Construction Discovery | 5/26/22 | 2/18/22 |
| Amendment of pleadings | 6/2/22 | 2/25/22 |
| LPR 6.1(e)(1) – Claim Construction Briefs | 6/16/22 | 3/4/22 |
| LPR 6.1(e)(2) – Responsive Claim Construction Briefs | 6/30/22 | 3/18/22 |
| LPR 6.1(f) – Claim Construction Hearing (subject to convenience of the Court's calendar) | Approx. 8/29/22 | Approx. 4/8/22 |
| Order on Claims Construction Hearing ("CC Order") | TBD | |
| LPR 7.1(a)(1) – Final Infringement Contentions | CC Order + 21 | CC Order + 17 |
| LPR 7.1(a)(2) – Motion to Exclude amendments to Preliminary Infringement Contentions | CC Order + 35 | CC Order + 31 |
| LPR 7.1(b)(1) – Final Invalidity Contentions | CC Order + 42 | CC Order + 34 |

| | | |
|---|---|---|
| LPR 7.1(b)(2) – Motion to Exclude amendments to Final Invalidity Contentions | CC Order + 56 | CC Order + 48 |
| Mediation to be completed | CC Order + 60 CC Order + 60 | |
| Close of Fact Discovery | CC Order + 85 | CC Order + 45 |
| LPR 8.1(a)(1) – Non-Claim Construction Opening Expert Reports | CC Order + 87 | CC Order + 60 |
| LPR 8.1(a)(2) – Non-Claim Construction Rebuttal Expert Reports | CC Order + 132 | CC Order + 90 |
| LPR 8.1(b) – Completion of Non-Claim Expert Depositions | CC Order + 177 | CC Order + 120 |
| Challenges to expert testimony | CC Order + 207 | CC Order + 140 |
| Motions for summary judgment | CC Order + 252 | CC Order + 140 |
| LR 7.1(b) – Oppositions to motions for summary judgment | CC Order + 282 | CC Order + 170 |
| LR 7.1(e) – Replies to oppositions to motion for summary judgment | CC Order + 296 | CC Order + 184 |
| **Pre-Trial and Trial** | | |
| Final pre-trial conference | Approx. 10 days prior to trial | |
| Trial | Two-week trial period beginning 12/5/23 | Two-week trial period beginning 3/7/23 |

**AutoStore's Position:** On October 6, 2021, Ocado initiated a new action in this District asserting that AutoStore infringes another Ocado patent that is related to one of the patents asserted in this matter. *See* Case No. 1:21-cv-00806-JL (the "new action"). On the same day, Ocado filed in this matter a "Notice of Filing Related Action," stating that "it would generate efficiencies for the parties and the Court [if the matters were] consolidated, or at least coordinated, [for] discovery and trial." *See* Dkt. 59 at 2. AutoStore agrees that judicial economy would be greatly enhanced by consolidating the two matters. However, AutoStore's deadline to respond to the complaint in the new action is not until December 10, 2021,[3] in accordance with AutoStore's waiver of the service

---

[3] The deadline for defendant AutoStore System Inc. to respond is December 10, 2021 while the deadline for defendant AutoStore AS (a foreign entity) to respond is not until January 10, 2022. However, both defendants are preparing to respond at the earlier deadline of December 10, 2021.

of summons. *See* Case No. 1:21-cv-00806-JL, Dkt. Nos. 3 and 4. Accordingly, AutoStore's proposed schedule above assumes that this Court consolidates this action with the new action—which the parties agree would "generate efficiencies"—and sets deadlines in accordance with this District's Supplemental Rules For Patent Cases, many of which are guided by the date of "service ***of the last filed answer***" (*i.e.*, December 10, 2021), starting with Rule 5.1(a).

Ocado's proposed schedule seeks to fast-track the new action by shoehorning it into this action's schedule. *See* Dkt. 59 at 2 ("Plaintiffs are prepared to follow the schedule adopted in this [older] case for the" new action that Ocado filed just weeks ago.). This approach improperly deprives AutoStore of a fair opportunity to review and respond to the complaint in the new action. To the extent that Ocado argues that AutoStore does not need time to review the new complaint because the newly asserted patent is related to a patent asserted in this older action, such argument cannot be squared with the fact that it took Ocado more than two months after the newly asserted patent issued to file its new complaint; if the issues raised by the newly asserted patent were truly so similar to those raised by the related patent asserted in this matter, then it should not have taken Ocado more than two months to perform its "diligence" before filing the new action. *See* Dkt. 59 at 1-2.

**Ocado's Position:** On October 6, 2021, Ocado filed a complaint in this District (the "'770 Action") concerning AutoStore's infringement of U.S. Patent No. 11,079,770 (the "'770 Patent"), which is in the same family as the '404 Patent and infringed by the same accused product (AutoStore's Router). The '770 Patent was issued on August 3, 2021, and the '770 complaint was filed after a period of due diligence and after the initial scheduling conference (originally scheduled for September 24) was rescheduled. (Ocado had planned to inquire at that conference about

whether the Court preferred the '770 complaint to be filed as a separate action or asserted in some other way.)

Although, among other things, there are differences in claim language and cited prior art in prosecution, there is nothing in the '770 complaint that justifies further delay in the schedule. Ocado has made every effort to reach an agreement with Defendants concerning a schedule for the '770 Action and for a consolidated action, should the Court wish to consolidate, to no avail.

As set forth in Ocado's Notice of Filing Related Action (Dkt. 59), Ocado believes there would be efficiencies of consolidation or at least coordination of the two actions. Ocado respectfully requests, however, that the '770 Action not cause delay in the schedule for this action, which was filed on January 17, 2021. Thus, as stated in Ocado's Notice, Ocado is prepared to follow the schedule proposed above in the '770 Action, whether consolidated or not. (*See* Dkt. 59.)

AutoStore is incorrect in stating that its response to the '770 complaint is due on December 10 (AutoStore System Inc,'s response is due on November 5),[4] but that unfortunate dispute should not impact the schedule in this action or the '770 Action. In the schedule Ocado proposes above, AutoStore's first substantive submission (preliminary invalidity contentions pursuant to Local Patent Rule 5.1(c)) would be due on December 10, the date AutoStore says it needs to respond to the '770 complaint.[5] Respectfully, given the time that has already elapsed in

---

[4] As set forth in its Response to AutoStore's Notice in the '770 Action (Case No. 1:21-cv-00806-JL, Dkt. 15), Ocado tried to negotiate a reasonable response time for both Defendants with AutoStore's counsel. After the parties were unable to reach an agreement, Ocado served AutoStore System Inc. by hand on October 15, 2021, and thus its response to the '770 complaint is due on November 5, 2021. Ocado remains willing to negotiate a reasonable response date for both Defendants.

[5] Ocado is unsure why AutoStore feels it needs 60 days to respond to a complaint with substantially similar allegations to the complaint it has already answered in this action. (*See* Dkt. 49.) AutoStore has not been able to provide an answer to this question.

this action since it was filed on January 17 and the presumptive two-year schedule of Supplemental Patent Rule 3.1(c), Ocado submits that its proposed schedule above is a reasonable and efficient way to proceed to trial in both actions by early 2023. AutoStore should not be permitted to use a delay in filing an answer to the '770 complaint (which will almost surely be very similar to its Answer in this action) to delay a trial for many months. The parties litigated broader patent disputes in the ITC (including issues involving domestic industry requirements) in a substantially shorter time (10 months to trial) than Ocado is currently proposing. There is no reason why Ocado's proposed schedule—regardless of consolidation—cannot be met.

| | |
|---|---|
| Dated: October 22, 2021 | Respectfully Submitted,<br><br>OCADO INNOVATION LTD. AND<br>OCADO SOLUTIONS LTD.<br><br>By Their Attorneys,<br><br>*/s/ Henry C. Quillen*<br>Henry C. Quillen (NH Bar #26540)<br>WHATLEY KALLAS, LLP<br>159 Middle Street, Suite 2C<br>Portsmouth, New Hampshire<br>Telephone: (603) 294-1591<br>Facsimile: (800) 922-4851<br>hquillen@whatleykallas.com<br><br>Garrard R. Beeney (admitted *pro hac vice*)<br>Marc De Leeuw (admitted *pro hac vice*)<br>Dustin F. Guzior (admitted *pro hac vice*)<br>Alexander N. Gross (admitted *pro hac vice*)<br>Helen F. Andrews (admitted *pro hac vice*)<br>Morgan N. Schusterman (admitted *pro hac vice*)<br>SULLIVAN & CROMWELL LLP<br>125 Broad Street<br>New York, New York 10004<br>Telephone: (212) 558-4000<br>Facsimile: (212) 558-3588<br>Ocado_DNH@sullcrom.com<br><br><br>AUTOSTORE AS AND<br>AUTOSTORE SYSTEM INC.,<br><br>By Their Attorneys,<br><br>*/s/ Robert R. Lucic*<br>Robert R. Lucic (NH Bar #9062)<br>Bryanna K. Devonshire (NH Bar #269462)<br>SHEEHAN PHINNEY BASS & GREEN PA<br>1000 Elm Street, PO Box 3701<br>Manchester, NH 03105<br>(603) 627-8188<br>rlucic@sheehan.com<br>bdevonshire@sheehan.com |

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Emily M. Scott (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
glocascio@kirkland.com
emily.scott@kirkland.com

Joseph A. Loy, P.C. (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jloy@kirkland.com

Ali-Reza Boloori (admitted *pro hac vice*)
Josh Glucoft (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
555 South Flower Street, Suite 3700
Los Angeles, CA 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500
ali-reza.boloori@kirkland.com
josh.glucoft@kirkland.com