## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

OCADO INNOVATION LTD. and
OCADO SOLUTIONS LTD.,

      *Plaintiffs*,

    v.

AUTOSTORE AS and
AUTOSTORE SYSTEM INC.,

      *Defendants*.

Case No.: 1:21-cv-00041-JL

## DEFENDANTS AUTOSTORE AS'S AND AUTOSTORE SYSTEM INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO PLAINTIFFS' COMPLAINT IN FORMER CASE NO. 1:21-CV-00806-JL

## DEMAND FOR JURY TRIAL

Defendants AutoStore System Inc. and AutoStore AS ("AutoStore"), by and through their undersigned attorneys, hereby submit their answer, affirmative defenses, and counterclaims in response to the complaint (Dkt. 1, the "Complaint") filed by Ocado Innovation Ltd. ("Ocado Innovation") and Ocado Solutions Ltd. ("Ocado Solutions") (together, "Ocado" or "Plaintiffs") in this Court on October 6, 2021, as follows:

## INTRODUCTION

1.      AutoStore admits that Ocado offers a cubic automated storage and retrieval system ("Cubic AS/RS") called the "Hive," which is part of the "Ocado Smart Platform" ("OSP"), a solution for grocery order placement, fulfillment, and delivery. AutoStore admits that the OSP may include (i) an internet-based ordering system, (ii) Customer Fulfillment Centers ("CFCs," which include the Hive), and (iii) a way to deliver the ordered products to end customers. AutoStore denies the remaining allegations contained in paragraph 1 of the Complaint.

2.     AutoStore admits that Ocado's Cubic AS/RS solution includes a storage cube with robots that move along the top of the cube, retrieve containers that store inventory items up vertically from a storage column, and deliver them to picking stations for assembly of customers' orders.  AutoStore admits that components of a cubic AS/RS solutions are depicted at a high level in the graphic in paragraph 2 of the Complaint.  AutoStore denies the remaining allegations contained in paragraph 2 of the Complaint.

3.     AutoStore admits that its Cubic AS/RS solution stands apart from other forms of automated order management and provides for high storage density, attendant cost savings, and extremely quick, safe, and accurate order fulfillment.  AutoStore admits that its system includes robots moving in a controlled manner that may optimize their travel paths based on a variety of parameters and criteria, which enables them to store and retrieve items rapidly.  AutoStore admits that merchants that experience high throughput are increasingly turning to AutoStore's Cubic AS/RS solution as a solution, especially as online shopping increases dramatically.  To the extent that the allegations contained in paragraph 3 of the Complaint relate to other, unspecified "Cubic AS/RS" solutions, AutoStore lacks knowledge or information sufficient to form a belief as to the truth of those remaining allegations contained in paragraph 3 of the Complaint and therefore denies the allegations on that basis.

4.     AutoStore admits that online grocery businesses may need to manage high customer order volume in terms of both the number of orders and the size of any particular order, which sometimes may require fulfillment and shipment of thousands of orders in a matter of hours, and reliable storage, handling, and delivery of frozen, refrigerated, and other perishable items. AutoStore denies that the above problems are unique to online grocery businesses.  AutoStore also denies that Ocado's Cubic AS/RS—the Hive component of OSP—is innovative, as AutoStore had

developed and marketed Cubic AS/RS well before Ocado developed the Hive.  AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 4 of the Complaint and therefore denies the remaining allegations on that basis.

5.    AutoStore admits that the picture in paragraph 5 of the Complaint purports to be a picture of AutoStore's Red Line system, which utilizes cantilever robots to traverse an underlying grid.  AutoStore denies that its Red Line system is an "off the shelf system."  AutoStore further denies that its Cubic AS/RS generally, and its Red Line system in particular, have not "materially improved since 2005."  AutoStore admits that its Red Line system utilizes cantilever robots that traverse the underlying grid using two perpendicular wheel assemblies—one in the X-direction and one perpendicular in the Y-direction.  AutoStore also admits that the robot used in the Red Line system lifts storage containers (also known as bins) out of the column of the storage cube using the cantilever portion of the robot body.  AutoStore further admits that a Red Line robot occupies at least some portion of two grid spaces.  AutoStore denies the remaining allegations in paragraph 5 of the Complaint.

6.    AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 6 of the Complaint that "Ocado found the Red Line system unsuitable for a grocery business" and therefore denies the allegations on that basis.  To the extent that paragraph 6 of the Complaint is construed as alleging that AutoStore's Red Line system is unsuitable for any application (including grocery), whether due to the four "examples" listed in paragraph 6 of the Complaint or any other reasons, AutoStore denies the allegations contained in paragraph 6 of the Complaint, including specifically the veracity of any of the four "examples" provided in the paragraph or any allegation that AutoStore's Red Line system is generally

unsuitable on account of those "examples." For example, the Red Line systems' robots need not run on single-single tracks. Moreover, the Red Line system has undergone numerous improvements over time. AutoStore denies any remaining allegations in paragraph 6 of the Complaint.

7.     AutoStore admits that it met with Ocado representatives in Norway and that its representatives travelled to one of Ocado's warehouses in the United Kingdom later that year. AutoStore further admits that in 2012, Ocado contacted Hatteland Computer AS (the precursor to AutoStore AS) to acquire the right to buy the AutoStore system directly from Hatteland Computer, and to acquire exclusive rights to distribute the AutoStore Cubic AS/RS solution for sales in the grocery segment. AutoStore further admits that Hatteland Computer rejected this proposal both because it had a multi-distribution strategy in all markets and because Ocado did not meet Hatteland Computer's criteria (in terms of experience, service organization, customer portfolio, *etc.*) for selling AutoStore's products. AutoStore further admits that Ocado purchased an AutoStore Cubic AS/RS solution in 2012 for use in one of its U.K. sites, using AutoStore's distributor Swisslog to manage the project. Indeed, on information and belief, as of the time when AutoStore met with Ocado in 2012, Ocado did not have a cubic AS/RS solution. AutoStore denies the remaining allegations in paragraph 7 of the Complaint. Further, to the extent that any allegation in paragraph 7 of the Complaint implies that AutoStore believed, agreed, or expressed that anything proposed by Ocado to AutoStore in 2012 was new or an improvement to AutoStore's then-existing system, AutoStore denies the allegation.

8.     AutoStore admits that what purports to be a video of Ocado's robots in operation is available on YouTube, at https://www.youtube.com/watch?v=4DKrcpa8Z_E, and that the image pasted in paragraph 8 of the Complaint is a still image from that video. AutoStore admits

4

that Ocado's robots occupy a single space on the storage grid and that storage bins are lifted inside a cavity in the robot's body. AutoStore also admits that in certain configurations the wheels of an OSP robot used in an Ocado CFC run on "double-double" rails. AutoStore denies the remaining allegations contained in paragraph 8 of the Complaint. For example, to the extent Ocado alleges in paragraph 8 of the Complaint that it "invent[ed]" a single-cell robot, AutoStore denies the allegation. Specifically, AutoStore invented and described a single-cell robot as of December 10, 2012, at the latest, as part of Norwegian patent application NO 20121488. Further, cantilever robots do not necessarily have less "efficiency" than a "single space" robots—the efficiency of a system depends on a variety of parameters and factors, including the algorithms used to control the movements of the robots. As another example, AutoStore denies that its Cubic AS/RS, even before Ocado introduced the Hive, was not capable for use for management of grocery orders.

9. AutoStore admits that Ocado's robots move on top of a grid and are managed by control software to facilitate item storage and retrieval. AutoStore denies that Ocado's robots necessarily have greater freedom to move on top of the grid. AutoStore also denies that Ocado's Cubic AS/RS solution is advantageous in any way relative to AutoStore's Cubic AS/RS solutions. AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 9 of the Complaint and therefore denies the allegations on that basis.

10. AutoStore admits that Exhibit 1 to the Complaint purports to be Ocado's Annual Report, and that at page 7 of Exhibit 1, the document states that Ocado has invested £124 million "in developing our OSP solutions in 2019." AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 10 of the Complaint and therefore denies the allegations on that basis.

11.    AutoStore admits that Ocado entered into a partnership with The Kroger Co. ("Kroger") in 2018 to deploy OSPs at various sites (also referred to as "Customer Fulfillment Centers" or "CFCs").    AutoStore admits that paragraph 11 of the Complaint cites several documents purporting to be press releases by Kroger regarding a partnership with Ocado. AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 11 of the Complaint and therefore denies the remaining allegations on that basis.

12.    AutoStore admits that the U.S. Patent and Trademark Office ("USPTO") issued U.S. Patent No. 11,079,770 ("'770 patent"), and that the assignee named on the face of the patent is Ocado Innovation Limited.  AutoStore admits that the Complaint asserts infringement of the '770 patent against AutoStore.  AutoStore denies the remaining allegations contained in paragraph 12 of the Complaint.

13.    AutoStore admits that it was owned by private equity firm EQT AB ("EQT") from January 2017 to July 2019, and was then acquired by the private equity firm Thomas H. Lee Partners ("THL") in July 2019.  AutoStore admits that in April 2021, SoftBank Group acquired 40% of AutoStore Holdings Sarl.  AutoStore denies that an initial public offering of AutoStore shares is planned for November 2021—the public offering of AutoStore's shares occurred on October 20, 2021, on the Oslo Stock Exchange.  AutoStore denies the remaining allegations contained in paragraph 13 of the Complaint.

14.    AutoStore admits that it introduced its new Black Line system in 2019 and that the picture pasted in paragraph 14 of the Complaint is a picture of AutoStore's Black Line system. AutoStore denies that it infringes the '770 patent and denies the remaining allegations contained in paragraph 14 of the Complaint.

15.    AutoStore admits that its website at https://autostoresystem.com/news/autostore-voted-readers-choice-product-of-the-year/ states: "It combines the aware-winning design with high-volume throughput become ultra-optimized to meet the various needs of companies across multiple industries.  State-of-the-art improvements to the robot and workstation modules provide companies the tools they need to provide 24/7 service."  AutoStore admits that the website https://www.bastiansolutions.com/blog/autostore-black-line-your-questions-answered/ states: "A modified 'double-double' grid, with double tracks in both directions, permits the robots to pass side-by-side in both the x and y directions.  Combined with the robot's smaller footprint, the new grid can accept more robots and operate efficiently in high density configurations" and also "for customers with throughput requirements of up to 350 bins per hour per port.  For Black Line, the new B1 robot, in combination with the new RelayPort can achieve up to 650 bins per hour per port – almost doubling today's maximum throughput level."  AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 15 of the Complaint and therefore denies the allegations on that basis.

16.    AutoStore admits that the website at https://www.globenewswire.com/news-release/2020/09/29/2100400/0/en/AutoStore-Introduces-Router-Game-changing-Productivity-Software-to-Solve-order-fulfillment-challenges-for-eCommerce.html  states:  "AutoStore,  the Norwegian robotics technology company, today announced the release of Router, a newly developed software suite for its cube based order fulfillment system that increases robot productivity and efficiency by up to 40%."  AutoStore admits that the Router can be installed on the Controller sold by AutoStore that may be used with some Red Line and Black Line AS/RS solutions.  AutoStore denies the remaining allegations contained in paragraph 16 of the Complaint.

17.    AutoStore admits that the website at https://www.globenewswire.com/news-release/2020/09/29/2100400/0/en/AutoStore-Introduces-Router-Game-changing-Productivity-Software-to-Solve-order-fulfillment-challenges-for-eCommerce.html  states:  "Router utilizes sophisticated computer algorithms to continuously calculate and recalculate in real time the most efficient path for AutoStore robots to move and deliver orders inside the company's high-density grid system.  Every second, the advanced software analyzes and dynamically adapts to operational changes, accelerating the fulfillment process and maintaining a continuously optimized flow of order movement.  In this way the system is able to process and adapt to continuously changing events happening outside the grid, such as new orders coming in, order cancellations, and movement of fulfillment personnel."  To the extent there are any remaining allegations contained or implied in paragraph 17 of the Complaint, AutoStore denies them.

18.    AutoStore admits that the website at https://www.globenewswire.com/news-release/2020/09/29/2100400/0/en/AutoStore-Introduces-Router-Game-changing-Productivity-Software-to-Solve-order-fulfillment-challenges-for-eCommerce.html states:  "'We're excited to unveil the biggest development in AutoStore history in years.'  Based on over 20 years of research and development, Router is a disruptive technology that can be implemented in any AutoStore Cubic AS/RS solution, whether a large-scale distribution center or a back-of-store micro-fulfillment center.  This underscores the flexibility that has been a hallmark of AutoStore technology, and by purchasing this new software, users can potentially improve total system throughput by up to 4x."  AutoStore admits that there is a video at https://www.youtube.com/watch?v=L8qNU6INf40 in which the video states: "incremental improvements are simply not enough, and we were forced to re-invent ourselves in order to grow"; "a new product that will unlock the full potential of AutoStore"; "this is one of the biggest

8

milestones in the AutoStore history"; "the software has always been the silent piece behind the scenes that makes everything happen"; "positions AutoStore as the ultimate choice when it comes to eGrocery fulfillment"; and "the essence of our technology." To the extent paragraph 18 of the Complaint is construed to contain additional allegations, AutoStore denies them.

19.    AutoStore admits that it has published marketing materials that are relevant to online grocery merchants. AutoStore denies the remaining allegations contained in paragraph 19 of the Complaint.

20.    AutoStore admits that Ocado filed an action captioned *Ocado Innovation Ltd. et al. v. AutoStore AS et al.*, Case No. 1:21-cv-00041 in the District of New Hampshire in which it alleges patent infringement of U.S. Patent Nos. 9,796,080 ("'080 patent"), 10,913,602 ('602 patent"), 10,961,051 ('051 patent"), and 10,901,404 ("'404 patent") and that the case is currently pending. AutoStore admits that the '404 Patent and '770 patent are in the same family and both purport to claim priority to U.S. Patent No. 10,086,999. AutoStore admits that it filed two patent infringement actions in the United States against Ocado in October 2020. AutoStore admits that AutoStore filed the first action, which is stayed, in the Eastern District of Virginia. AutoStore admits that the second action is pending before the U.S. International Trade Commission. AutoStore admits that a hearing was held before Chief Administrative Judge Bullock on August 2-6, 2021 and his Initial Determination on the matter is expected on or before December 13, 2021. AutoStore admits that Ocado Group plc filed *inter partes review* or post-grant review of all the patents asserted by AutoStore in those actions. AutoStore admits that the U.S. Patent and Trademark Office instituted *Inter Partes* Review as to two of the asserted patents. The U.S. Patent and Trademark Office, however, declined to institute *Inter Partes* Review as to two asserted patents and declined to institute Post-Grant Review as to one asserted patent. To the extent there

9

are any remaining allegations contained or implied in paragraph 20 of the Complaint, AutoStore denies them.

21.    AutoStore admits that in its Complaint, Ocado seeks damages and injunctive relief. AutoStore denies that Ocado is entitled to any relief.  AutoStore denies the remaining allegations contained in paragraph 21 of the Complaint.

## THE PARTIES

22.    AutoStore admits that Ocado Solutions Ltd. is a U.K. subsidiary of Ocado Group plc. AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 22 of the Complaint and therefore denies the remaining allegations on that basis.

23.    AutoStore admits that Ocado Innovation Ltd. is a U.K. subsidiary of Ocado Group plc.  AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 23 of the Complaint and therefore denies the remaining allegations on that basis.

24.    AutoStore admits that AutoStore AS is a Norwegian corporation with its headquarters and principal place of business at Stokkastrandvegen 85, 5578 Nedre Vats, Norway, and that AutoStore AS conducts R&D on Automated Storage and Retrieval Systems ("AS/RS") and markets and sells the Red Line and Black Line AS/RS solutions.  To the extent that there are additional allegations contained or implied in paragraph 24 of the Complaint, AutoStore denies them.

25.    AutoStore admits that AutoStore System Inc. is a Delaware corporation with its headquarters and principal place of business at 3 Corporate Park Drive, Unit 1, Derry, NH 03038. AutoStore admits that AutoStore System Inc. is a wholly owned subsidiary of AutoStore AS, and that AutoStore System Inc. markets AutoStore's AS/RS solutions to customers and distribution

partners in the United States and provides design, engineering, training, and support (including installation, testing, and repair) to customers and distribution partners in the United States.  To the extent that there are additional allegations contained or implied in paragraph 25 of the Complaint, AutoStore denies them.

## JURISDICTION AND VENUE

26.     AutoStore admits that this Court has subject matter jurisdiction over this patent infringement action.

27.     AutoStore admits that this Court has personal jurisdiction over AutoStore System Inc. because its headquarters and principal place of business are located in Derry, New Hampshire. AutoStore denies the remaining allegations contained in paragraph 27 of the Complaint.

28.     AutoStore denies that it has committed any acts of infringement or advertises, markets, offers for sale, imports, stores, distributes, or sells infringing products.  AutoStore admits that this Court has personal jurisdiction over AutoStore AS for purposes of this matter only. AutoStore denies the remaining allegations contained in paragraph 28 of the Complaint.

29.     As stated in the preceding paragraph, for purposes of this matter only, AutoStore does not contest personal jurisdiction over AutoStore AS.  AutoStore admits that Ocado's claims arise under federal law.  AutoStore denies the remaining allegations contained in paragraph 29 of the Complaint.

30.     AutoStore admits that venue is proper in this District as to AutoStore. AutoStore admits that AutoStore System Inc. has its headquarters in New Hampshire.  AutoStore also admits that AutoStore AS is a foreign corporation.  AutoStore denies the remaining allegations contained in paragraph 30 of the Complaint, including that it has committed acts of infringement in this District.

## THE ASSERTED PATENT

31.    AutoStore admits that historically, to fulfill customer orders, retail grocery employees would pick items off shelves in warehouses.  AutoStore also admits that such warehouses had large amounts of empty space, which is wasteful and expensive in utilities and manpower and required people running to fetch items from shelves.  AutoStore denies the remaining allegations contained in paragraph 31 of the Complaint.

32.    AutoStore admits that Ocado's Cubic AS/RS includes vertical support beams, the tops of which are connected by rails to create an X/Y grid.  AutoStore admits that Ocado's Cubic AS/RS has at least two sets of rails, with the first set running perpendicular to the second set.  AutoStore admits that Ocado's Cubic AS/RS contains rectangular columns in which storage containers are stacked.  AutoStore admits that the figures in paragraph 32 of the Complaint contain some conceptual similarities to Ocado's Cubic AS/RS.  AutoStore also admits that Ocado's Hive is an example of Cubic AS/RS.  AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 32 of the Complaint and therefore denies them.

33.    AutoStore admits that in Ocado's Cubic AS/RS, storage containers (bins) are accessed from above by robots that travel laterally across the grid and are equipped with a device that enables them to retrieve containers from the vertical columns.  AutoStore admits that, in Ocado's Cubic AS/RS, such containers are placed into the robots' container-receiving space, which may be a cavity inside the body of the robot.  AutoStore admits that the robots in Ocado's Cubic AS/RS can transport the storage bins laterally across the grid and deliver them to a picking station.  AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 33 of the Complaint and therefore denies the remaining allegations on that basis.

34.   AutoStore admits that OSP robots can communicate with a controller.  AutoStore lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 34 of the Complaint and therefore denies the remaining allegations on that basis.

35.   AutoStore denies the allegations contained in paragraph 35 of the Complaint.

36.   AutoStore admits that the Complaint contains allegations of patent infringement for a claim of the '770 patent.  AutoStore denies all such allegations and any remaining allegations contained in paragraph 36 of the Complaint.

37.   AutoStore admits that Exhibit 10 purports to be a copy of U.S. patent No. 11,079,770, which appears to have issued on August 3, 2021, and is titled "Methods, Systems and Apparatus for Controlling Movement of Transporting Devices."  AutoStore admits that the '770 patent states on its face that it is a "[c]ontinuation of application No. 15/993,097, filed on May 30, 2018, now Pat. No. 10,955,834, which is a divisional of application No. 15/316,249, filed as application No. PCT/EP2015/062380 on Jun. 3, 2015, now Pat. No. 10,086,999."  AutoStore admits that the '770 patent states on its face that it claims priority to Great Britain Patent Application No. 1409883, filed on June 3, 2014.  AutoStore admits that Ocado alleges patent infringement of the '404 patent in *Ocado Innovation Ltd. et al. v. AutoStore AS et al.*, Case No. 1:21-cv-00041 (D.N.H.).  AutoStore admits that the '404 patent and '770 patent both purport on their face to claim priority to U.S. Patent No. 10,086,999.  To the extent there are any remaining allegations contained or implied in paragraph 37 of the Complaint, AutoStore denies them.

38.   AutoStore admits that the '770 patent recites: "The present invention relates to methods systems and apparatus for controlling movement of transporting devices.  More specifically but not exclusively it relates to storage systems and methods for retrieving units from

13

a storage system.  In particular, but not exclusively, the invention further relates to systems and methods for coordinating and controlling product movement." '770 patent at 1:17-23.  AutoStore denies the remaining allegations contained in paragraph 38 of the Complaint.

39.     AutoStore denies the allegations contained in paragraph 39 of the Complaint.

40.     AutoStore denies the allegations contained in paragraph 40 of the Complaint.

41.     AutoStore denies the allegations contained in paragraph 41 of the Complaint.

42.     AutoStore admits that the Court in case no. 1:21-cv-00041-JL stated in an order denying AutoStore's renewed motion to dismiss: "Based on the other, preferred embodiments of the invention as well as the problems confronting the inventor, the more-apt analogy would be a person trying to drive 50 cars at once in a crowded city grid without crashing them, or the technology used to control traffic signals or traffic lights in that same crowded city grid. The court cannot say that a human would be able to perform either of these tasks entirely in her mind."  Order Denying Motion to Dismiss at 15, *Ocado Innovation Ltd. et al. v. AutoStore AS et al.*, Case No. 1:21-cv-00041 (D.N.H. Aug. 13, 2021) (ECF No. 47) (citations omitted).  The claims of the '404 and '707 patents, however, may be practiced using, for example, two robotic vehicles. AutoStore denies the remaining allegations contained in paragraph 42 of the Complaint.

43.     AutoStore denies the allegations contained in paragraph 43 of the Complaint, and in particular, that any of the methods and/or systems claimed in the '707 Patent is novel in light of the prior art.

44.     AutoStore admits that the Court in case no. 1:21-cv-00041-JL stated in an order denying AutoStore's renewed motion to dismiss: "As just explained, the claims 'focus on a specific means or method that improves' grid-style automated storage control system technology; they are not 'directed to a result or effect that itself is the abstract idea and merely invoke generic processes

14

and machinery.'"   Order Denying Motion to Dismiss at 19, *Ocado Innovation Ltd. et al. v.*

*AutoStore AS et al.*, Case No. 1:21-cv-00041 (D.N.H. Aug. 13, 2021) (ECF No. 47) (citations

omitted).  AutoStore admits that the Court also stated in the same order: "Here, at least according

to the specification and Ocado's complaint, which the court must accept as true and construe in

Ocado's favor, the patented system optimizes and improves existing systems of controlling and

coordinating robot movement in an automated grid storage system.  This, in turn, allows the robots

to move dynamically, more-efficiently, with fewer collisions, and at higher speeds than prior

systems." *Id.* at 19 n.38.  AutoStore denies the remaining allegations contained in paragraph 44

of the Complaint.

45.   AutoStore denies the allegations contained in paragraph 45 of the Complaint.

46.   AutoStore admits that claim 1 of the '770 patent recites:

1. A system for controlling movement of at least one transporting device arranged to transport at least one container, the system comprising:

one or more processors configured to:

determine a plurality of paths for a plurality of transporting devices to travel on pathways of a facility so that no two of the plurality of transporting devices have locations while traveling along the plurality of paths that would cause the plurality of transporting devices to overlap at a same time, the plurality of paths comprising a first path for traveling by a first transporting device of the plurality of transporting devices and a second path for traveling by a second transporting device of the plurality of transporting devices,

wherein the pathways form a grid-like structure above a plurality of containers arranged within the facility, the pathways comprising a first set of parallel rails extending in a first direction and a second set of parallel rails extending in a second direction transverse to the first direction in a substantially horizontal plane, at least some of the plurality of containers being stored in stacks,

wherein the plurality of transporting devices are configured to selectively move laterally in the first direction and the second direction on the pathways, at least some of the plurality of

transporting devices being configured to transport the plurality of containers, generate a plurality of clearance commands for the plurality of transporting devices to cause the plurality of transporting devices to travel on the pathways along portions of the plurality of paths, the plurality of clearance commands comprising a first clearance command for the first transporting device,

determine there is a potential for a collision between the first transporting device traveling along the first path and the second transporting device traveling along the second path, and

responsive to a determination that there is the potential for the collision; withhold a second clearance command for the first transporting device that would cause the first transporting device to travel on the pathways along a portion of the first path, determine a revised path different from the first path for the first transporting device to travel on the pathways, and generate a third clearance command for the first transporting device to cause the first transporting device to travel on the pathways along a portion of the revised path; and

a memory device configured to store the plurality of clearance commands and the third clearance command.

AutoStore denies the remaining allegations contained in paragraph 46 of the Complaint.

## DEFENDANTS' ALLEGED INFRINGEMENT

47.    AutoStore admits that it has offered for sale, sold, used, made, and/or imported into the United States (i) Red Line robots and the Red Line system since at least 2015; (ii) Black Line robots and the Black Line system since at least 2019; and (iii) a control system including software called the Router, for use with the Red Line and Black Line systems, since at least October 2020. AutoStore denies the remaining allegations in this paragraph.

48.    AutoStore denies that Defendants' Red Line and Black Line systems infringe the '770 patent through use of controllers with Router software. AutoStore admits that ¶¶ 48-54 of the Complaint contain Ocado's descriptions of components of the Defendants' Red Line and Black Line systems. AutoStore denies the remaining allegations contained in paragraph 48 of the Complaint.

49.    AutoStore admits that AutoStore's Black Line and Red Line storage systems include a cubic storage structure with the top level forming a grid. AutoStore further admits that the figure in paragraph 49 of the Complaint depicts a cubic storage structure for use with the AutoStore Black Line AS/RS.  The structure is formed using vertical support beams, the tops of which are connected by a horizontal grid made up of two sets of parallel tracks—one set of parallel tracks on a rail in the X-direction perpendicular to the other set on a rail in the Y-direction. AutoStore further admits that this structure creates rectangular columns in which storage bins are stacked and which hold the bins in place.  AutoStore denies it infringes the '770 patent, and to the extent the allegations contained in paragraph 49 of the Complaint are understood to relate specifically to the claim elements of the '770 patent, AutoStore denies such allegations.

50.    The allegations in paragraph 50 of the Complaint require claim construction which has not yet occurred, and therefore AutoStore denies these allegations at least because it lacks information sufficient to form a belief regarding the truth of these allegations. AutoStore admits that the website https://autostoresystem.com/controller/ contains, as of November 22, 2021, the words: "the command center of AutoStore" and also "Advanced traffic control; Planning and scheduling of tasks; Logging Bin and Robot positions in real time."  In the context of the '770 patent and to the extent AutoStore can understand the remaining allegations in paragraph 50 of the Complaint, AutoStore denies them.

51.    AutoStore admits that at least some of Defendants' control systems use Router software.  AutoStore also admits that the Router software launched in September and October 2020. AutoStore further admits that Defendants' controllers with Router software are compatible with both the Black Line and Red Line systems.  AutoStore further admits that Exhibit 17 contains the statement: "Router utilizes sophisticated computer algorithms to continuously calculate and

17

recalculate in real time the most efficient path for AutoStore robots to move and deliver orders inside the company's high-density grid system. Every second, the advanced software analyzes and dynamically adapts to operational changes, accelerating the fulfillment process and maintaining a continuously optimized flow of order movement. In this way the system is able to process and adapt to continuously changing events happening outside the grid, such as new orders coming in, order cancellations, and movement of fulfillment personnel." AutoStore further admits that the video at https://www.youtube.com/watch?v=L8qNU6INf40 includes the words "deciding which robots to use for what job or which route that robot should take" and "working smarter." In the context of the '770 patent and to the extent that AutoStore can understand the remaining allegations in paragraph 51 of the Complaint, AutoStore denies them.

52. AutoStore admits that the image contained in paragraph 52 of the Complaint appears in the video at https://www.youtube.com/watch?v=OzfR3BypU2M and appears to depict certain routing decisions made by a control system. AutoStore admits that the presentation states that the dark red rectangular boxes represent robots and the blue-shaded routes depict the robots' planned routes. In the context of the '770 patent and to the extent that AutoStore can understand the remaining allegations in paragraph 52 of the Complaint, AutoStore denies them.

53. AutoStore admits that the video at https://www.youtube.com/watch?v=OzfR3BypU2M states that "the red is the blocked area, where, for instance, this robot here cannot move ahead because it cannot cross here because it is blocked" and appears to depict the robots' reserved path across the grid. In the context of the '770 patent and to the extent that AutoStore can understand the remaining allegations in paragraph 53 of the Complaint, which are subject to the Court's future claim construction, AutoStore denies them.

18

54.    AutoStore admits that Exhibit 17 states that the Router software "analyzes and dynamically adapts to operational changes."    AutoStore admits that the video at https://www.youtube.com/watch?v=L8qNU6INf40 at 7:47 states: "constantly re-evaluating all the routes to ensure the best possible traffic flow, always."  AutoStore admits that Exhibit 20 states: "Plotting their path through the Grid using the AutoStore software platform Router, the Controller is constantly adjusting the location and path of Robots in real time" and "Robots are 40% more efficient using Router software."  In the context of the '770 patent and to the extent that AutoStore can understand the remaining allegations in paragraph 54 of the Complaint, AutoStore denies them.

**PLAINTIFFS' ALLEGATIONS THAT "DEFENDANTS HAVE WILLFULLY INFRINGED AND CONTINUE TO WILLFULLY INFRINGE THE '770 PATENT"**

55.    AutoStore admits that in 2012 Hatteland Computer AS (the precursor to AutoStore AS) met with Ocado regarding a potential partnership, but AutoStore denies that the parties "explor[ed] . . . partnership in 2012 through which the companies would co-develop Ocado's inventions."  Indeed, Ocado sought to become Hatteland Computer AS's exclusive distributor in the grocery space, which was unacceptable to Hatteland Computer AS.  AutoStore also admits that Ocado purchased, through AutoStore's partner Swisslog, a Red Line system in 2012.  AutoStore further admits that, in 2016, Ocado and Jakob Hatteland Logistics AS (the company which later changed its name to AutoStore Technology AS) were involved in litigation in Norway before the Oslo District Court with respect to claims by Ocado of alleged misappropriation of Ocado's inventions related to a robot that would lift storage containers up vertically into a cavity in the vehicle body.  Further answering, the Oslo District Court ruled that AutoStore did not misappropriate Ocado's inventions.  The court of appeals affirmed the trial court's ruling, after

19

considering AutoStore documents that proved AutoStore invented such a robot at least as of July 2010. AutoStore denies the remaining allegations contained in paragraph 55 of the Complaint.

56.     AutoStore denies the allegations contained in paragraph 56 of the Complaint.

57.     AutoStore admits that the '770 patent and '404 patent state on their face that they claim priority to Great Britain Patent Application No. 1409883. AutoStore denies the remaining allegations contained in paragraph 57 of the Complaint.

58.     AutoStore denies the allegations contained in paragraph 58 of the Complaint.

59.     AutoStore admits that Ocado alleges, *inter alia*, patent infringement of the '404 patent in *Ocado Innovation Ltd. et al. v. AutoStore AS et al.*, Case No. 1:21-cv-00041 (D.N.H.). AutoStore admits that the '404 and '770 patents contain the same specification. AutoStore denies the remaining allegations contained in paragraph 59 of the Complaint.

60.     AutoStore admits that it initiated entitlement proceedings against Ocado in the United Kingdom regarding various EP and GB patents. AutoStore admits that certain patents for which AutoStore initiated entitlement proceedings derive from the earliest parent application of the '770 patent. AutoStore denies the remaining allegations contained in paragraph 60 of the Complaint.

61.     AutoStore denies the allegations contained in paragraph 61 of the Complaint.

62.     AutoStore denies the allegations contained in paragraph 62 of the Complaint.

**FIRST COUNT I**
**ALLEGED PATENT INFRINGEMENT**
**'770 PATENT AND BLACK LINE / RED LINE**
**35 U.S.C. §§ 271 AND 281**

63.     AutoStore incorporates by reference its responses to paragraphs 1 through 62 of the Complaint.

64.     AutoStore denies the allegations contained in paragraph 64 of the Complaint.

20

65.    AutoStore denies the allegations contained in paragraph 65 of the Complaint.

66.    AutoStore admits that claim 1 of the '770 patent recites:

    a.    *The first claim element of Claim 1.*

        i.    AutoStore admits that the claim recites:

            1.    A system for controlling movement of at least one transporting device arranged to transport at least one container, the system comprising: . . .

        ii.    AutoStore incorporates by reference its responses to paragraphs 16-18 of the Complaint. AutoStore admits that the website at https://www.autostoresystem.com/system/controller states "[The Controller] knows the location of every bin, every robot, every port, and every SKU" and "Plotting their path through the Grid using the AutoStore software platform Router, the Controller is constantly adjusting the location and path of Robots in real time." AutoStore admits that the Router is installed on the Controller sold by AutoStore in use with the Red Line and Black Line AS/RS solutions. To the extent there are any remaining allegations contained or implied in paragraph 66.a.ii of the Complaint, AutoStore denies them.

    b.    *The second claim element of Claim 1.*

        i.    AutoStore admits that this claim element recites:

        one or more processors configured to:

        determine a plurality of paths for a plurality of transporting devices to travel on pathways of a facility so that no two of the plurality of transporting devices have locations while traveling along the plurality of paths that would cause the plurality of transporting devices to overlap at a same time, the plurality of paths comprising a first path for traveling by a first transporting device of the plurality of transporting devices and a second path for traveling by a second transporting device of the plurality of transporting devices,

        wherein the pathways form a grid-like structure above a plurality of containers arranged within the facility, the pathways comprising a first set of parallel rails extending in a first direction and a second set of parallel rails extending in a second direction transverse to the first direction in a

substantially horizontal plane, at least some of the plurality of containers being stored in stacks,

wherein the plurality of transporting devices are configured to selectively move laterally in the first direction and the second direction on the pathways, at least some of the plurality of transporting devices being configured to transport the plurality of containers . . .

ii. AutoStore incorporates by reference its responses to paragraphs 49-50 of the Complaint. AutoStore admits that the figures in paragraph 66.b.ii of the Complaint depicts a cubic storage structure with a horizontal grid made up of two sets of parallel tracks —one set of parallel tracks on a rail in the X-direction perpendicular to the other set on a rail in the Y-direction. AutoStore further admits that this structure creates rectangular columns in which storage bins are stacked and which hold the bins in place. In the context of the '770 patent and to the extent AutoStore can understand the remaining allegations in paragraph 66.b.ii of the Complaint, AutoStore denies them.

iii. AutoStore       admits       that       the       video       at https://www.youtube.com/watch?v=L8qNU6INf40 includes the statements: "The Router is a completely new software architecture that allows us to do more than 100X more evaluations for every choice we need to make[,]" "deciding which robots to use for what job or which route that robot should take[,]" "working smarter" and "We are constantly re-evaluating all the routes to ensure the best possible traffic flow, always." AutoStore admits that the website     at     https://www.autostoresystem.com/faq/robots states: "The ASCS software plans and controls robot traffic to ensure robots will not collide. The robots report their position continuously to the ASCS software. The robot driving control is done by the motor encoder and secured by two different track sensors for each direction." In the context of the '770 patent and to the extent AutoStore can understand the remaining allegations in paragraph 66.b.iii of the Complaint, AutoStore denies them.

iv. AutoStore       admits       the       video       at https://www.youtube.com/watch?v=OzfR3BypU2M contains statements regarding the operation of the Router and states that "the red is the blocked area, where, for instance, this robot here cannot move ahead because it cannot cross here because it is blocked" which depict the robots' reserved path across the grid. AutoStore admits that the presentation states that the dark red rectangular boxes

22

represent robots and the blue-shaded routes depict robots' planned routes. In the context of the '770 patent and to the extent AutoStore can understand the remaining allegations in paragraph 66.b.iv of the Complaint, AutoStore denies them.

c.    *The third claim element of Claim 1.*

i.    AutoStore admits that this claim element recites:

generate a plurality of clearance commands for the plurality of transporting devices to cause the plurality of transporting devices to travel on the pathways along portions of the plurality of paths, the plurality of clearance commands comprising a first clearance command for the first transporting device . . .

ii.    AutoStore incorporates by reference its responses to paragraphs 52-54 and 72-76 of the Complaint. AutoStore admits that Exhibit 17 includes the words "the advanced software analyzes and dynamically adapts to operational changes[,]" "Router utilizes sophisticated computer algorithms to continuously calculate and recalculate in real time the most efficient path for AutoStore robots to move and deliver orders inside the company's high-density grid system." AutoStore admits that the video at https://www.youtube.com/watch?v=L8qNU6INf40 includes the words "We are constantly re-evaluating all the routes to ensure the best possible traffic flow, always." AutoStore admits that Exhibit 20 includes the statement "The Controller plans and schedules tasks to Robots and acts as an advanced traffic cop. It is constantly logging Bin and Robot positions in real time. The Controller will also run diagnostic troubleshooting when robot errors occur using XHandler, greatly increasing the system's uptime." In the context of the '770 patent and to the extent AutoStore can understand the remaining allegations in paragraphs 66.c.ii of the Complaint, AutoStore denies them.

d.    *The fourth claim element of Claim 1.*

i.    AutoStore admits that this claim element recites:

determine there is a potential for a collision between the first transporting device traveling along the first path and the second transporting device traveling along the second path, and

23

responsive to a determination that there is the potential for the collision; withhold a second clearance command for the first transporting device that would cause the first transporting device to travel on the pathways along a portion of the first path, determine a revised path different from the first path for the first transporting device to travel on the pathways, and generate a third clearance command for the first transporting device to cause the first transporting device to travel on the pathways along a portion of the revised path; and a memory device configured to store the plurality of clearance commands and the third clearance command.

ii. AutoStore denies the allegations contained in paragraph 66.d.ii of the Complaint.

iii. AutoStore incorporates by reference its responses to paragraphs 52-54 of the Complaint. AutoStore admits that the video at https://www.youtube.com/watch?v=L8qNU6INf40 includes the words "We are constantly re-evaluating all the routes to ensure the best possible traffic flow, always." Exhibit 17 includes the statement: "Router utilizes sophisticated computer algorithms to continuously calculate and recalculate in real time the most efficient path for AutoStore robots to move and deliver orders inside the company's high-density grid system." AutoStore admits that the website at https://www.autostoresystem.com/faq/robots states: "The ASCS software plans and controls robot traffic to ensure robots will not collide. The robots report their position continuously to the ASCS software." In the context of the '770 patent and to the extent AutoStore can understand the remaining allegations in paragraphs 66.d.iii of the Complaint, AutoStore denies them.

67. AutoStore denies the allegations contained in paragraph 67 of the Complaint.

68. AutoStore denies the allegations contained in paragraph 68 of the Complaint.

69. AutoStore denies the allegations contained in paragraph 69 of the Complaint.

70. AutoStore denies the allegations contained in paragraph 70 of the Complaint.

**JURY DEMAND**

71. No response is required to jury demands. To the extent that a response is required, AutoStore agrees to, and similarly demands, a jury trial of all issues in this action so triable.

## PRAYER FOR RELIEF

No response is required to prayers for relief. To the extent that a response is required, AutoStore denies that Ocado is entitled to any of the relief sought in its Complaint.

## AFFIRMATIVE DEFENSES

72. AutoStore incorporates the foregoing responses as though fully set forth in each of the affirmative defenses listed below. Further, AutoStore reserves the right to further amend this answer and assert any other affirmative defenses available to it at any time in the future. Without conceding that any of the following must be plead as affirmative defenses or that AutoStore has the burden of proof on any of them, AutoStore alleges the following affirmative defenses:

## FIRST AFFIRMATIVE DEFENSE

### (Invalidity)

73. The '770 patent is invalid for failure to satisfy one or more conditions for patentability specified in Title 35 of the United States Code.

74. The '770 patent is invalid as anticipated under 35 U.S.C. §102. For example, AutoStore's Red Line system as used and sold before the earliest-possible priority date of the '770 patent anticipates each and every claim of the '770 patent under the claim construction relied upon by Ocado to allege infringement in its Complaint.

75. The '770 patent is also invalid as obvious under 35 U.S.C. § 103. For example, AutoStore's Red Line system as used and sold before the earliest-possible priority date of the '770 patent, together with other prior art, render obvious each and every claim of the '770 patent under the claim construction relied upon by Ocado to allege infringement in its Complaint.

76. The '770 patent is invalid as ineligible subject matter under 35 U.S.C. § 101.

77. The '770 patent is invalid for improper inventorship because the named inventors did not themselves invent the claimed technology, as required by 35 U.S.C. §§ 101 and 115.

25

78.    AutoStore incorporates herein by reference its forthcoming contentions and expert reports, which will be served in due course in accordance with the Court's schedule in this matter.

## SECOND AFFIRMATIVE DEFENSE

### (No Infringement)

79.    AutoStore has not infringed and does not currently infringe any claim of Ocado's '770 patent, literally or under the doctrine of equivalents, directly or indirectly, or willfully.

80.    AutoStore incorporates herein by reference its forthcoming contentions and expert reports, which will be served in due course in accordance with the Court's schedule in this matter.

## THIRD AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel, Claim Vitiation, And Ensnarement)

81.    To the extent that Ocado alleges infringement under the doctrine of equivalents, the relief sought by Ocado is barred under the doctrine of prosecution history estoppel, claim vitiation, and/or ensnarement.

## FOURTH AFFIRMATIVE DEFENSE

### (No Injunctive Relief)

82.    Ocado's claims for injunctive relief are barred, including because Ocado cannot show that it will suffer any irreparable harm from AutoStore's actions.  AutoStore denies that Ocado has suffered or will suffer any irreparable injury.  Ocado's alleged injury or damage suffered, if any, would be adequately compensated by damages, if any.  AutoStore denies that upon considering the balance of hardships between Ocado and AutoStore, a remedy in equity is warranted.  Accordingly, Ocado has a complete and adequate remedy at law and is not entitled to seek injunctive relief.

## FIFTH AFFIRMATIVE DEFENSE

### (Use by the U.S. Government)

83.    To the extent that the accused products have been used or manufactured by or for the United States, Ocado's claims for relief and alleged damages are barred by 28 U.S.C. § 1498(a).

## SIX AFFIRMATIVE DEFENSE

### (No Fees)

84.    Ocado's claims for enhanced damages, an award of fees, and costs under 35 U.S.C. §§ 285 have no basis in fact or law and should be denied.

85.    AutoStore has engaged in all relevant activities in good faith and has not engaged in any conduct that would make this an exceptional case, thereby precluding Ocado, even if it were to prevail, from recovering its reasonable attorneys' fees.

## SEVENTH AFFIRMATIVE DEFENSE

### (No Double Recovery)

86.    Without admitting that the Complaint states a claim, any remedies are limited to the extent that there is sought an overlapping or duplicative recovery pursuant to the various claims against AutoStore or others for any alleged single wrong.

## EIGHTH AFFIRMATIVE DEFENSE

### (Damages Limitations)

87.    Ocado has not suffered any legally cognizable damages resulting from AutoStore's conduct.  Without admitting that the Complaint states a claim, there has been no damage at all by reason of any act alleged against AutoStore in the Complaint, and the relief prayed for in the Complaint therefore cannot be granted.

88.     To the extent Ocado has suffered any damages, all of which AutoStore denies, Ocado failed to mitigate their damages, if any, in whole or in part, by virtue of, among other things, having failed to bring its allegations of infringement to AutoStore sooner.

89.     Ocado's claims for damages are also limited by 35 U.S.C. §§ 286, 287 (including for failure to mark any practicing products), and/or 288.

## NINTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

90.     The '770 patent is unenforceable, in whole or in part, under the doctrine of unclean hands.

91.     For example, the instant litigation is baseless and a thinly veiled attempt by Ocado to thwart lawful competition by AutoStore.  Ocado's efforts have had a chilling effect on AutoStore's business.

92.     As a further example of Ocado's unclean hands, Ocado has long been intimately aware of AutoStore's technology including, for example, by virtue of Ocado's purchase of a Red Line system in 2012.  Ocado improperly studied AutoStore's prior art technology and sought patent protection for what constitutes, at least under Ocado's infringement theory, the same technology and/or technology that is not patentably distinct from AutoStore's prior art technology. Notably, Ocado has an extensive history of improperly claiming to have invented technology that it did not actually invent, as described more fully in, for example, the U.K. action that AutoStore initiated against Ocado on November 9, 2020, regarding EP3152712, GB2528568, GB2565239, GB2565241, GB2560814, and GB2565240, and in an unsuccessful Norwegian entitlement proceeding initiated by Ocado in the Oslo District Court regarding AutoStore's NO 335 839 patent and EP application publication nos. 2962962, 2928794, and 1616677.1, in which the court ruled

that AutoStore created the inventions described in those patents and applications well before Ocado claimed to have made the inventions.

## TENTH AFFIRMATIVE DEFENSE

### (No Enhanced Damages)

93. Ocado is not entitled to seek enhanced damages for AutoStore's alleged willful infringement because AutoStore has not willfully infringed, Ocado failed to provide notice of alleged infringement prior to the filing of its complaint, and/or because Ocado has otherwise failed to meet the requirements to prove willfulness.

## RESERVATION OF RIGHTS

AutoStore is presently investigating the facts relating to, *inter alia*, the issuance of Ocado's '770 patent, the ownership history of Ocado's '770 patent, and Ocado's assertion of infringement against AutoStore, and AutoStore will continue its investigation throughout the discovery process. To the extent that this investigation reveals any additional affirmative defenses in connection with such matters, AutoStore reserves the right to seek leave to amend to assert such allegations and/or defenses that may be appropriate.

In addition to the defenses described above, AutoStore reserves all defenses under Rule 8(c) of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defenses, at law or in equity, which may now exist or in the future become available based on discovery and further factual investigation in this case.

## COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, AutoStore System Inc. and AutoStore AS (collectively, "AutoStore") allege the following:

29

### NATURE OF THE ACTION

1.      AutoStore seeks declaratory judgments of non-infringement and invalidity of U.S. Patent No. 11,079,770 that has been asserted by Ocado against AutoStore in the present action.

### THE PARTIES

2.      AutoStore AS is a Norwegian corporation with its headquarters and principal place of business at Stokkastrandvegen 85, 5578 Nedre Vats, Norway, that conducts R&D on AS/RS and markets and sells the Red Line and Black Line AS/RS solutions.

3.      AutoStore System Inc. is a Delaware corporation with its headquarters and principal place of business at 3 Corporate Park Drive, Unit 1, Derry, NH 03038, that it is a wholly owned subsidiary of AutoStore AS.  AutoStore System Inc. markets AutoStore's AS/RS solutions to customers and distribution partners in the United States and provides design, engineering, training, and support (including installation, testing, and repair) to customers and distribution partners in the United States.

4.      On information and belief, Ocado Solutions Ltd. is a U.K. subsidiary of Ocado Group plc that has responsibilities for partnering with grocery retailers to deploy systems for use by grocery retailers in various countries, including the United States.

5.      On information and belief, Ocado Innovation Ltd. is a U.K. subsidiary of Ocado Group plc that provides technology and R&D services (Ocado Innovation Ltd. and Ocado Solutions Ltd. are collectively referred to herein as "Ocado.").

### JURISDICTION AND VENUE

6.      This Court has jurisdiction over AutoStore's claims pursuant to 28 U.S.C. §§ 2201 *et seq.* and 28 U.S.C. §§ 1331 and 1338(a).  Furthermore, an actual, substantial, and continuing justiciable controversy exists between AutoStore and Ocado based on Ocado having filed the

Complaint against AutoStore alleging infringement of Ocado's '770 patent. The controversy concerns the invalidity and non-infringement of Ocado's '770 patent.

7.    The Court has personal jurisdiction over Ocado because, *inter alia*, Ocado has submitted to the personal jurisdiction of this Court by filing the Complaint.

8.    Venue is proper in this District as to these counterclaims pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b) because, *inter alia*, Ocado has submitted to the venue of this Court by filing its Complaint here.

## BACKGROUND

9.    AutoStore is a pioneer and leader in the field of Automated Storage and Retrieval Systems. Since its founding in the 1990s in Nedre Vats, Norway, AutoStore has pioneered the development of AS/RS solutions. AutoStore has developed, commercialized, and patented innovative AS/RS solutions, including the Red Line and the Black Line systems (see figures below). The Red Line and the Black Line are AS/RS solutions that provide unprecedented configurability and flexibility to warehouse and other facility owners and operators. Storage bins are stacked vertically in a grid and stored in a cubic structure. The bins are retrieved by robots that travel on the top of the structure. This makes it possible for the grid to be placed around columns, on mezzanines, and on multiple levels. AutoStore Cubic AS/RS solutions offer strategic benefits for a variety of industry segments such as e-commerce, e-grocery, omni-channel facilities, third-party logistics, and parts management.



*AutoStore Black Line and Red Line robots operating on the AutoStore grid*

 

The R5 robot used in AutoStore's Red Line system

 

The B1 robot used in AutoStore's Black Line system

10.    Notwithstanding AutoStore's pioneering innovations, Ocado filed the present action asserting that AutoStore's Red Line and Black Line systems infringe the '770 patent.

11.    AutoStore developed its pioneering technology independently, without relying on or even knowledge of Ocado's patented technology.  AutoStore has not and does not infringe the '770 patent.

12.    Ocado's '770 patent is also invalid including because it (1) is anticipated and/or obvious over the prior art; (2) is ineligible subject matter; (3) fails to comply with one or more requirements of 35 U.S.C. § 112, including the written description, enablement, and/or definiteness requirements; and/or (4) has improper inventorship because the named inventors on these patents did not themselves invent the claimed technology, as required by 35 U.S.C. §§ 101 and 115.

13.    For example, under Ocado's apparent infringement theories, the '770 patent is anticipated by or obvious in view of AutoStore's own products and related product documentation, including AutoStore's Red Line system that was commercially available at least as early as 2012.

## COUNT I

### (Declaratory Judgment of Non-Infringement of the '770 Patent)

14.    AutoStore repeats and re-alleges all of the preceding paragraphs as if fully set forth herein.

15.    AutoStore has not directly or indirectly infringed any valid and enforceable claim of any of the '770 patent and has not otherwise committed any acts in violation of 35 U.S.C. § 271 regarding the '770 patent.

16.    An actual controversy exists between AutoStore and Ocado based on Ocado having filed its Complaint alleging infringement by AutoStore of the '770 patent.

17.    AutoStore has been injured and damaged by Ocado filing its Complaint.

18.     AutoStore seeks a declaration that it has not and does not infringe, directly or indirectly, literally or under the doctrine of equivalents, any valid and enforceable claim of the '770 patent.

## COUNT II

### (Declaratory Judgment of Invalidity of the '770 Patent)

19.     AutoStore repeats and re-alleges all of the preceding paragraphs as if fully set forth herein.

20.     One or more of the claims of the '770 patent are invalid for failing to meet the conditions for patentability as set forth in 35 U.S.C. § 1 *et seq.*, including, but not limited to §§ 101, 102, 103, 112, and 115.

21.     An actual controversy exists between AutoStore and Ocado based on Ocado having filed its Complaint against AutoStore alleging infringement of the '770 patent.

22.     AutoStore has been injured and damaged by Ocado filing its Complaint asserting the invalid '770 patent.

23.     AutoStore seeks a declaration that one or more of the claims of the '770 patent are invalid for failing to meet the conditions for patentability as set forth in 35 U.S.C. § 1 *et seq.*

## JURY DEMAND

24.     AutoStore requests a jury trial of all issues in this action so triable.

## PRAYER FOR RELIEF

WHEREFORE, having fully answered Ocado's Complaint and having asserted affirmative defenses and counterclaims, AutoStore asks this Court to enter judgment in AutoStore's favor and against Ocado as follows:

(a) Dismissing with prejudice Ocado's claims against AutoStore and ordering that Ocado take nothing from AutoStore;

34

(b) Finding and declaring that AutoStore does not infringe the '770 patent;

(c) Finding and declaring that the '770 patent is invalid and also unenforceable against AutoStore;

(d) Declaring this case exceptional under 35 U.S.C. § 285;

(e) Awarding AutoStore its attorneys' fees;

(f) Awarding AutoStore its fees, costs, and disbursements pursuant to 28 U.S.C. § 1920 and any other applicable statute or law; and

(g) Granting such other and further relief in favor of AutoStore as this Court deems just and proper.

Dated: December 10, 2021

Respectfully Submitted,

AUTOSTORE AS and
AUTOSTORE SYSTEM INC.,

By Their Attorneys,

*/s/ Robert R. Lucic*

Robert R. Lucic (NH Bar #9062)
Bryanna K. Devonshire (NH Bar #2694620)
SHEEHAN PHINNEY BASS & GREEN PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105
(603) 627-8188
rlucic@sheehan.com
bdevonshire@sheehan.com

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Emily M. Scott (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
(202) 389-5000
glocascio@kirkland.com
emily.scott@kirkland.com

Joseph A. Loy, P.C. (admitted *pro hac vice*)
Nathaniel L. DeLucia (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
(212) 446-4800
jloy@kirkland.com
nathaniel.delucia@kirkland.com

Ali-Reza Boloori (admitted *pro hac vice*)
Josh Glucoft (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
(310) 552-4200
ali-reza.boloori@kirkland.com
josh.glucoft@kirkland.com

36