**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| OCADO INNOVATION LTD. and OCADO SOLUTIONS LTD., <br><br> Plaintiffs, <br><br> v. <br><br> AUTOSTORE AS and AUTOSTORE SYSTEM INC., <br><br> Defendants. | **Civil Action No. 1:21-cv-00041** |

## <u>REBUTTAL DECLARATION OF MATTHEW SPENKO, PH.D.</u>

i

**TABLE OF CONTENTS**

I.    BACKGROUND ........................................................................................................... 1

    A.    Compensation ...................................................................................................... 1

    B.    Scope................................................................................................................... 1

    C.    Materials Considered .......................................................................................... 2

II.    OPINIONS AND ANALYSIS.................................................................................... 2

    A.    The Level of Skill in the Art .............................................................................. 2

    B.    "Nestable" / "Nested" ........................................................................................ 3

III.    RESERVATION OF RIGHTS ................................................................................. 4

I, Matthew Spenko, declare under penalty of perjury as follows:

1.    I have been retained by counsel on behalf of AutoStore AS and AutoStore System, Inc. (collectively, "AutoStore" or "Defendants") to provide relevant technical explanation regarding the technology in U.S. Patent No. 9,796,080 (the "'080 patent") and to set forth my opinion about the meaning of a disputed claim term ("nestable" / "nested") in the '080 patent from the perspective of a person of ordinary skill in the relevant art ("POSITA").  I previously set forth my opinion in my declaration dated May 27, 2022 ("Original Declaration"), which is incorporated herein by reference.

2.    I understand that Plaintiffs in this matter served an expert declaration by Brian Pfeifer, Ph.D. in which he opined on, among other things, the meaning of the term "nestable" / "nested" in the context of the '080 patent.  I disagree with Dr. Pfeifer, as explained below.

## I.    BACKGROUND

### A.    Compensation

3.    As noted in my Original Declaration, I am being compensated for my time spent on this matter at my usual and customary rate of $300 per hour for consultation services and $400 per hour for deposition and trial testimony, plus reasonable expenses.  My compensation is not contingent on the outcome of this action nor my opinions, and I have no financial interest in this case.

### B.    Scope

4.    In my Original Declaration, I provided my opinion on how a person of ordinary skill in the art, at the time of the '080 patent, would understand the claim term "nestable" / "nested," in light of the claim language, the patents' specifications, the patents' prosecution histories, and other relevant sources of information.

5.      In this declaration, I explain why I disagree with Dr. Pfeifer's opinion regarding the construction of "nestable" / "nested."

6.      Dr. Pfeifer also opined on the construction of the term "a structural framework defining a grid of storage locations" in his declaration (as well as terms in patents other than the '080 patent). I did not previously opine on the meaning of this claim term, and therefore I do not respond herein to Dr. Pfeifer's opinion about that claim term. The fact that I do not respond does not mean I agree with Dr. Pfeifer's opinion on that issue; rather, the construction of that claim term (and responding to Dr. Pfeifer's opinion on that term) was simply outside the scope of my opinion.

### C.      Materials Considered

7.      A complete list of the materials I considered for my Original Declaration was attached as Exhibit 2 to my Original declaration. For this declaration, I further considered Dr. Pfeifer's opinion, and I have relied on my extensive knowledge, training, and experience as a robotics, mechanical, and control systems engineer and professor, as with my Original Declaration.

## II.      OPINIONS AND ANALYSIS

### A.      The Level of Skill in the Art

8.      Dr. Pfeifer has opined that "a POSITA at the time of the invention of the '080 Patent would have had a Master's degree in Mechanical Engineering or Robotics with at least one year of experience working as an engineer in the field of AS/RS, or a Bachelor's degree in Mechanical Engineering with at least three years of experience working as an engineer in the field of AS/RS." As I previously explained in my Original Declaration (¶¶ 31-34), I disagree with Dr. Pfeifer, but my opinion regarding the proper construction of "nestable" / "nested" would not be affected if Dr. Pfeifer's lower level of skill were ultimately adopted.

2

### B.    "Nestable" / "Nested"

9.      Dr. Pfeifer opines that the plain and ordinary meaning of "nestable" / "nested" is "place within" / "capable of being placed within," as that is (according to Dr. Pfeifer) how the "specification uses the terms."  Pfeifer Dec. ¶ 30.  I disagree, as I explained in my Original Declaration, including at ¶¶ 41-51.

10.     Dr. Pfeifer next opines that his construction "is consistent with dictionary definitions of the term."  Pfeifer Dec. ¶ 30.  Notably, Dr. Pfeifer cites one dictionary previously identified by Ocado (the Oxford English Dictionary, 7th Edition, OC-DNH_000008741), but he does not address the other dictionary previously identified by Ocado (the American Heritage Dictionary, 5th Edition, OC-DNH_000008722) which defined the term "nest" as "to fit or stack snugly together."  Dr. Pfeifer does not explain why he cites only one dictionary and disregards the other.  And even within the dictionary that Dr. Pfeifer did choose to cite, Dr. Pfeifer does not explain why he chose the specific definition he focused on, as opposed to other definitions therein.  For example, the Oxford English Dictionary cited by Dr. Pfeifer also defines the term "nest" as "a set of similar objects that are designed to fit inside each other"; Dr. Pfeifer does not explain why his construction of the term does not account for any intentionality in the design of a "nested" container.  Additionally, Dr. Pfeifer does not explain why a POSITA would turn to the Oxford English Dictionary, which is a lay dictionary not targeted to any technical field at all, in order to understand the plain and ordinary meaning of the term "nestable" / "nested" in the context of the '080 patent.  I therefore disagree with Dr. Pfeifer because he has not cited any technical dictionaries that a POSITA would actually rely on that are consistent with his proposed construction.

11.     Dr. Pfeifer next opines that the "the specification uses the term 'nested' interchangeably with the term 'combined.'"  Pfeifer Dec. ¶ 31.  I disagree, as I explained in my Original Declaration, including at ¶ 51.  I further note that a POSITA would recognize that treating

3

"nested" as "interchangeable" with "combined" would lead to redundancies in, for example, claim 23, which recites "***combined*** containers including at least one delivery container nested within a storage container"; there would be no need to specify that the delivery container is "nested" in a "combined" container if "nested" meant the exact same thing as "combined."

12.     Lastly, Dr. Pfeifer opines that "the meaning of 'snugly' itself is unclear, thus failing to inform a POSITA with reasonable certainty about the full scope of the invention." Pfeifer Dec. ¶ 31. Dr. Pfeifer fails to explain, however, why "snug" / "snugly" is unclear. Moreover, as I explained in my Original Declaration, a "snug" fit ensures that a "nested" delivery container stays in place within the storage container, so that the delivery container's contents do not spill out and so that the delivery container is in the expected location to facilitate automated removal from the storage container (by the "transfer mechanism" disclosed in the '080 patent, for example). *See* Original Declaration ¶¶ 42-50. I therefore disagree with Dr. Pfeifer's opinion that construing "nestable" / "nested" to require a "snug" fit renders the term any less clear to a POSITA.

## III.    RESERVATION OF RIGHTS

13.     I reserve the right to respond to any evidence (including further expert opinions by Dr. Pfeifer or others) that Ocado may offer in support of its claim construction positions.

//

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


Dated: June 24, 2022



_____
Matthew Spenko, Ph.D.

4