# Exhibit 2

PUBLIC VERSION

# UNITED STATES INTERNATIONAL TRADE COMMISSION

## Washington, D.C.

| | |
|---|---|
| **In the Matter of** | |
| **CERTAIN AUTOMATED STORAGE AND RETRIEVAL SYSTEMS, ROBOTS, AND COMPONENTS THEREOF** | **Inv. No. 337-TA-1228** |

**ORDER NO. 33:   CONSTRUING TERMS OF THE ASSERTED CLAIMS OF THE PATENTS AT ISSUE**

(July 22, 2021)

This order addresses the construction of disputed claim terms in U.S. Patent No. 10,083,525 ("the '525 patent"), U.S. Patent No. 10, 494,239 ("the '239 patent"), U.S. Patent No. 10,696,478 ("the '478 patent"), U.S. Patent No. 10,294,025 ("the '025 patent"), and U.S. Patent No. 10,474,140 ("the '140 patent").

## I.   BACKGROUND

In this investigation, Complainants AutoStore Technology AS, AutoStore AS, and AutoStore System Inc. (collectively, "AutoStore") are asserting the '525 patent, '239 patent, '478 patent, '025 patent, and '140 patent against Respondents Ocado Group plc, Ocado Solutions Ltd., Ocado Solutions USA Inc., Ocado Innovation Ltd., Ocado Operating Ltd., Ocado Central Services Ltd., and Tharsus Group Ltd. (collectively, "Ocado").[1]  *See* Notice of Investigation at

---

[1] Complainants also asserted the patents against Respondent Printed Motor Works Ltd. ("Printed Motor Works").  On June 2, 2021, Printed Motor Works was terminated from this investigation. Order No. 19 (June 2, 2021), *non-review* Comm'n Notice (June 22, 2021).

**PUBLIC VERSION**

attached to the vehicle body" appears in claim 1 of the '239 patent.[11]  The parties dispute the

construction of the term, proposing the following constructions:

| Complainants' Construction | Respondents' Construction |
|---|---|
| Plain and ordinary meaning: "At least two [rolling members/wheels] attached to the vehicle body" | "at least one of the two sets of vehicle rolling means is arranged fully within the vehicle"<br><br>A "set of vehicle rolling means" is a "set of four wheels" |

Complainants propose that the term "[A/a] plurality of [rolling members/wheels] attached

to the vehicle body" be construed to mean "at least two [rolling members/wheels] attached to the

vehicle body," which Complainants contend reflects the term's plain and ordinary meaning.  CIB

at 13.  Respondents propose that the term be construed to mean "at least one of the two sets of

vehicle rolling means is arranged fully within the vehicle."  RIB at 22-29.

For the reasons set forth below, the undersigned finds that Complainants' proposed

construction reflects the claim language and the well-established meaning of "plurality."  *See,*

*e.g., Dayco Prods., Inc. v. Total Containment, Inc.,* 258 F.3d 1317, 1327–28 (Fed. Cir. 2001)

("In accordance with standard dictionary definitions, we have held that 'plurality,' when used in

a claim, refers to two or more items, absent some indication to the contrary.").  In contrast,

Respondents' proposed construction adds a limitation that is not required by the claim language:

that one of the two sets of "vehicle rolling means" be "arranged fully within the vehicle."[12]

---

[11] Both parties identify claim 10 of the '239 patent as containing the term "a plurality of [rolling members/wheels] attached to the vehicle body."  CIB at 13; RIB at 22.  The term recited in claim 10, however, is different:  "two sets of wheels attached to the vehicle body."

[12] Respondents' proposed construction also defines "a plurality of rolling members/wheels" as "sets of vehicle rolling means," which Respondents define in turn as a "set of four wheels."  RIB at 22.  Complainants argue that this aspect of Respondents' proposed construction improperly limits "plurality of [rolling members/wheels] to a set of exactly four wheels."  CIB at 14-15.  Respondents state they were attempting "to simplify an issue that should not be in dispute"

**PUBLIC VERSION**

Respondents do not point to any support in the claim language for this limitation but instead argue that these limitations arise from the patentee's disavowal of claim scope. *See, e.g.,* RIB at 2 ("Every Asserted Claim of the '525, '239, and '478 Patents requires '[a] vehicle body' and 'wheels' or 'rolling members' that are 'attached to the vehicle body.' While claim terms 'generally are given their ordinary and customary meaning, . . . [courts] depart from the plain and ordinary meaning . . . when the patentee disavows the full scope of the claim term in the specification or during prosecution.'") (quoting *Poly-Am., L.P. v. API Indus., Inc.,* 839 F.3d 1131, 1136 (Fed. Cir. 2016)) (omissions and alteration in original).

Disavowal or disclaimer of claim scope requires "a clear and unmistakable disclaimer in the specification or prosecution history." *Unwired Planet, LLC v. Apple Inc.,* 829 F.3d 1353, 1358 (Fed. Cir. 2016). "While such disavowal can occur either explicitly or implicitly, it must be clear and unmistakable." *Luminara Worldwide, LLC v. Liown Elecs. Co. Ltd,* 814 F.3d 1343, 1353 (Fed. Cir. 2016). In support of their disclaimer argument, Respondents point to descriptions in the specification, Complainants' statements to foreign patent offices regarding related applications, Complainants' amendment of application claims in related applications, and Complainants' statements in an Oslo district court action. Complainants argue that the statements relied on by Respondents do not clearly and unmistakably disclaim claim scope. For the reasons discussed below, the undersigned agrees with Complainants.

### a. The patentee did not disclaim claim scope in the specification.

In support of their disclaimer argument, Respondents place particular emphasis on a two-paragraph description in the specification's "Summary of the Invention" section. RIB at 23. The

because "[a]ll of the at-issue robots (Complainants' and Respondents' robots) utilized sets of four wheels as their vehicle rolling means." RRB at 2. Respondents indicate that they "have no objection if 'vehicle rolling means' is construed more broadly than 'a set of four wheels.'" *Id.* Accordingly, this aspect of Respondents' proposed construction is not addressed herein.

**PUBLIC VERSION**

first sentence of the first paragraph describes "the present invention" as being directed to "a remotely operated vehicle or robot for picking up storage bins from a storage system." '525 patent, 2:8-10. According to the second sentence of the first paragraph, the "inventive vehicle or robot" comprises "a vehicle body, which vehicle body further comprises a first section for storing vehicle driving means and a second section for receiving any storage bin stored in a storage column within the storage system" and two sets of "vehicle rolling means." *Id.* at 2:10-22. The first two sentences of the second paragraph describe the "inventive vehicle" as being "characterized in that the second section comprises a cavity arranged centrally within the vehicle body," wherein the "cavity has at least one bin receiving opening facing towards the underlying storage columns during use." *Id.* at 2:25-29. The third sentence of the second paragraph states that, "[i]n addition, at least one of the two sets of vehicle rolling means is arranged fully within the vehicle body." *Id.* at 2:29-30.

Pointing to the use of the terms "present invention," "inventive vehicle or robot," and "inventive vehicle" in this description, Respondents argue that the patentee disclaimed vehicles that do not have "at least one of the two sets of vehicle rolling means [that] is arranged fully within the vehicle body." Respondents are correct that statements describing the "present invention" may constitute a disavowal of claim scope by "implicitly alert[ing] the reader that 'this description limits the scope of the invention.'" *Luminara*, 814 F.3d at 1353 (quoting *Regents of the Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 936 (Fed. Cir. 2013)). But the "use of the phrase 'the present invention' does not 'automatically' limit the meaning of claim terms in all circumstances, and that such language must be read in the context of the entire specification and prosecution history." *NetCraft v. eBay, Inc.,* 549 F.3d 1394, 1398 (Fed. Cir. 2008); *see also Rambus Inc. v. Infineon Techs. Ag.,* 318, F.3d 1081, 1094-95 (Fed. Cir. 2003)

19

**PUBLIC VERSION**

(rejecting argument that specification's descriptions of the "present invention" limited the claimed "bus" to a multiplexing bus) (internal citation omitted).

The only sentence that uses the term "present invention" provides a description that is unrelated to Respondents' proposed construction: "[T]he present invention concerns a remotely operated vehicle or robot for picking up storage bins from a storage system." '525 patent at 2:8-10. To support their proposed construction, Respondents must rely on the sentences that follow. These sentences do not use the term "present invention," but instead use the term "inventive vehicle or robot" or "inventive vehicle." *Id.* at 2:10-27. Although Respondents interpret "inventive vehicle or robot" and "inventive vehicle" as descriptions of the invention as a whole, the patentee appears to have used the terms to describe embodiments of the invention.

The first sentence of the two-paragraph description referring to the "present invention" is immediately followed by a detailed description of the "inventive vehicle or robot." The second sentence is 12 lines long and describes the "inventive vehicle or robot" as having a (1) "a vehicle body, which vehicle body further comprises" (2) "a first section for storing vehicle driving means" and (3) "a second section for receiving any storage bin stored in a storage column within the storage system," (4) "a vehicle lifting device," (5) "a first set of vehicle rolling means connected to the vehicle body in order to allow movement of the vehicle along a first direction (X)," and (6) "a second set of vehicle rolling means connected to the vehicle body in order to allow movement of the vehicle along a second direction (Y)." '525 patent at 2:10-30. If this description of the "inventive vehicle or robot" is a disclaimer, then this description would

20

**PUBLIC VERSION**

exclude robots without the listed elements from the scope of the claims, including robots without "vehicle lifting devices."[13]

Such an interpretation, however, would be inconsistent with the claims. While some of the claims of the three patents do not require vehicles with lifting devices, other claims explicitly require such vehicles. *See, e.g.,* '478 patent, claims 1-4, 10-13, 21-23 (requiring a "lifting device"); '239 patent, claim 1 (requiring a "lifting device"). This difference in claim language indicates that the description of the "inventive vehicle or robot" was not intended to disclaim robots without "lifting devices." *See Unwired Planet*, 829 F.3d at 1358-59 ("Moreover, the patent contains other claims, for example claim 21, that specifically recite 'establishing a voice communication channel,' a limitation not present in the asserted claims. If the patentee intended to restrict the claims-at-issue to require a voice input to travel over a particular type of channel, it could have included that same limitation.").[14]

Similarly, in the "Detailed Description of the Invention" section, the patentee uses the term "inventive robot" to refer to a preferred embodiment. In particular, the embodiment shown in Figures 3 and 4 is described as "a preferential form of the embodiment, given as a non-restrictive example," and states that the figures provide perspective views of "a remotely operated vehicle according to the present invention." '525 patent at 4:17-27. In the

---

[13] In the context of the term "vehicle body," *see infra*, Respondents argue that "[i]t is a false choice" to find "disavowal with all or none of the features listed as part of the inventive vehicle;" RReply at 2 (quoting '525 patent 2:8-24). Respondents, however, do not identify any basis for determining which features are encompassed by the alleged disclaimer and which are not.

[14] Respondents argue that this line of reasoning depends on "claim differentiation, which 'cannot override clear statements of claim scope found in the specification and prosecution history.'" RReply at 2 (quoting *Poly-Am., L.P.* v. *API Indus., Inc.*, 839 F.3d 1131, 1137 (Fed. Cir. 2016). In determining whether a description in the specification is a clear disclaimer, however, it is appropriate to consider the differences in claim language. *Unwired Planet*, 829 F.3d at 1358-59.

**PUBLIC VERSION**

corresponding text, patentee refers to the "preferential form" and "remotely operated vehicle according to the present invention" shown in Figures 3 and 4 as "inventive robot 1." *Id.* at 4:50-58.

Each claim does not need to be construed to include every feature of an invention. *AllVoice Computing PLC v. Nuance Commc'ns, Inc.,* 504 F.3d 1236, 1248 (Fed. Cir. 2007) ("[E]ach claim need not include every feature of an invention. Rather, this court enforces a 'presumption that each claim in a patent has a different scope.' Thus, every claim need not contain every feature taught in the specification.") (internal citation omitted); *Ventana Medical Systems, Inc. v. Biogenex Labs., Inc.,* 473 F.3d 1173, 1181-82 (Fed. Cir. 2006) ("[E]ach claim does not necessarily cover every feature disclosed in the specification. When the claim addresses only some of the features disclosed in the specification, it is improper to limit the claim to other, unclaimed features."). As described in the "Summary of the Invention" section, the "inventive vehicle" has two distinct improvements over the prior art: (1) a "cavity arranged centrally within the vehicle body" and (2) "at least one of the two sets of vehicle rolling means . . . arranged fully within the vehicle body." '525 patent at 2:25-30. While both are described as improvements over prior art robots, the specification indicates that the central cavity is the defining feature that "characterize[s]" the "inventive vehicle." *Compare id.* at 2:25-27 ("The inventive vehicle is characterized in that the second section comprises a cavity arranged centrally within the vehicle body.") *with id.* at 2:29-30 ("In addition, at least one of the two sets of vehicle rolling means is arranged fully within the vehicle body.").

The description of the centrally located cavity—not the placement of at least a set of vehicle rolling means within the vehicle body—as a defining feature is consistent with the other paragraphs of the "Summary of the Invention" section describing the advantages provided by the

**PUBLIC VERSION**

two improvements. The specification describes the disclosed robots as offering several advantages of the prior art robots described in world application WO 98/49075 ("WO/075") and Norwegian patent NO 317,366 ("NO/366"). *Id.* at 1:24-28. The prior art robots described in the specification were configured with the vehicle lifting apparatus 9 located outside of the vehicle body 4.



**'525 patent, Fig. 2**

According to the specification, the prior art robots have four disadvantages. First, the prior art robots could not "access to all of the available storage columns in the storage system." *Id.* at 1:48-50. Second, the prior art robots could experience "an undesirable high torque during lifting and transportation of storage bins, thereby creating potential instability problems, as well as a clear limitation of the robots maximum handling weight." *Id.* at 1:50-54. Third, "only one particular bin and one particular bin height may be accepted for each type of robot in order to ensure adequate stability." *Id.* at 1:54-57. Fourth, "the presence of an integrated yoke/overhang in the upper part of the section receiving the storage bin necessitates an undesired speed reduction at the final stage of the lifting process." *Id.* at 1:58-62.

23

**PUBLIC VERSION**

The '525 patent family discloses "a vehicle/robot with higher stability properties, higher maximum handling weights, a more effective use of available space during operation and a less time consuming lifting and transporting process of storage bins." *Id.* at 1:66-2:4. According to the specification, all of the disadvantages of the prior art robots were "solve[d], or at least alleviate[d]," through the "central arrangement of the cavity in the vehicle body" which results in "significantly higher stability and time efficiency." *Id.* at 3:48-51, 4:1-2. Loading storage bins to a cavity in the center of the vehicle body eliminates undesired torque and improves the robot's stability and "also results in a lifting and transporting process having a weight distribution with a high degree of symmetry." *Id.* at 3:48-53. The central cavity design also "allows the same vehicle to be used for lifting and transporting storage bins of heights significantly less than the cavity height . . . since the framework/body surrounding at least part of the bin receiving cavity effectively hinders any undesired bin reeling/wobbling." *Id.* at 3:54-60. The central cavity design "also allows maintaining full or nearly full lifting speed almost all the way to its end position within the cavity, as well as initiation of stable bin transportations towards the delivery station prior to a fully completed bin lifting from a storage column." *Id.* at 3:61-65. With the protective body around the cavity, "the descent of the lifting device" can be initiated before "the vehicle has come to a final halt above" a storage column. *Id.* at 3:65-4:2.

In contrast, the specification describes placing a set of the vehicle rolling means within the vehicle body as marginally improving the central cavity design in three ways: (1) providing "additional stability" to a design that already exhibits "significantly higher stability," (2) reducing total load on the vehicle lifting device because "the rolling means are situated closer to the storage bin to be lifted," and (3) improving "space efficien[cy]" so as to allow the "[p]roduction of smaller sized robots/vehicles." *Id.* at 4:1-13.

24

**PUBLIC VERSION**

In support of their disclaimer argument, Respondents point to the depictions and descriptions of the robots shown in Figures 3, 4, 5, and 9 of the specification.  RIB at 23.  The robots shown in these figures have two sets of wheels: one set is located on the vehicle's exterior and the other set is located in the vehicle's cavity.  '525 patent at 4:50-57, Figs. 3, 4, 5, and 9.  The robots shown in Figures 3, 4, 5, and 9 are "illustrative embodiment[s]" that are "not intended to be construed in a limiting sense."  *Id.* at 6:22-33; *see also id.* at 4:17-20 ("These and other characteristics of the invention will be clear from the following description of a preferential form of embodiment, given as a non-restrictive example, with reference to the attached drawings wherein . . . .").  The robots shown in Figures 3, 4, and 5 are explicitly described as "remotely operated vehicle[s] according to the present invention," while the robot shown in Figure 9 is described simply as "a remotely operated vehicle."  *Id.* at 4:21-41.  Respondents have not shown any basis that allow importing limitations from these preferred embodiments into the claims.  *See, e.g., Thorner v. Sony Computer Entertainment America LLC,* 669 F.3d 1362, 1366-67 (Fed. Cir. 2012) ("It is likewise not enough [for disavowal] that the only embodiments, or all of the embodiments, contain a particular limitation."); *Aventis Pharma S.A. v. Hospira, Inc.,* 675 F.3d 1324, 1330 (Fed. Cir. 2012) ("[I]t is  . . . not enough that the only embodiments, or all of the embodiments, contain a particular limitation to limit a claim term beyond its ordinary meaning.") (internal citation and quotation marks omitted); *Liebel-Flarsheim Co. v. Medrad, Inc.,* 358 F.3d 898, 906 (Fed. Cir. 2004) ("[T]his court has expressly rejected the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment.") (collecting cases).

  **b.  Prosecution of the Norwegian Parent Application**

In support of its disclaimer argument, Respondents point to the patentee's statements during the prosecution of Norwegian application 20121488 ("NO/488") to which the '525 patent