## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| OCADO INNOVATION LTD. and OCADO SOLUTIONS LTD., <br><br> Plaintiffs, <br><br> v. <br><br> AUTOSTORE AS and AUTOSTORE SYSTEM INC., <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

Case No. 1:21-cv-00041-JL

**Hon. Joseph N. Laplante**

## AUTOSTORE'S RESPONSE TO OCADO'S SUPPLEMENTAL RESPONSES TO CERTAIN OF THE COURT'S MARKMAN HEARING QUESTIONS

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   BACKGROUND ................................................................................................ 3

      A.   Ocado Purportedly Improved the Prior Art with a Single-Space Robot................. 3

      B.   Ocado Distinguished the '602 Patent Claims Over the Prior Art By Arguing
           that the Prior Art Did Not Show a Single-Space Robot........................................ 8

III.  ARGUMENT...................................................................................................... 9

      A.   The Plain and Ordinary Meaning of "Occupy a Grid Space" is a Robot that
           Occupies Only a Single Grid Space in the Storage System................................. 10

      B.   Ocado's Proposed Construction Impermissibly Expands the Scope of '602
           And '051 Patents Beyond What the Specification and Prosecution History
           Demonstrate Ocado Invented—a Single-Space Robot........................................ 15

      C.   Ocado's Irrelevant Discussion of Unclaimed Features of Prior Art Systems
           Does Not Support its Construction of "Occupy a Grid Space" ........................... 21

IV.   CONCLUSION.................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Absolute Software, Inc. v. Stealth Signal, Inc.*,
659 F.3d 1121 (Fed. Cir. 2011)...................................................................................17, 19

*Apple Inc.* v. *Wi-LAN Inc.*,
25 F.4th 960 (Fed. Cir. 2022) .................................................................................................16

*Aria Diagnostics, Inc. v. Sequenom, Inc.*,
726 F.3d 1296 (Fed. Cir. 2013)...............................................................................................16

*Aylus Networks, Inc. v. Apple Inc.*,
856 F.3d 1353 (Fed. Cir. 2017)..........................................................................................9, 10

*Baldwin Graphics Sys., Inc. v. Siebert, Inc.*,
512 F.3d 1338 (Fed. Cir. 2008)...............................................................................................13

*Comput. Docking Station Corp. v. Dell, Inc.*,
519 F.3d 1366 (Fed. Cir. 2008)...........................................................................................3, 9

*Cont'l Circuits LLC v. Intel Corp.*,
915 F.3d 788 (Fed. Cir. 2019)................................................................................................17

*Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*,
526 F. App'x 927 (Fed. Cir. 2013) .........................................................................................17

*Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l*,
246 F.3d 1336 (Fed. Cir. 2001)...............................................................................................13

*GE Lighting Sols., LLC* v. *AgiLight, Inc.*,
750 F.3d 1304 (Fed. Cir. 2014)...............................................................................................16

*Harari v. Lee*,
656 F.3d 1331 (Fed. Cir. 2011)..........................................................................................11, 13

*Hologic, Inc. v. Smith & Nephew, Inc.*,
884 F.3d 1357 (Fed. Cir. 2018)...............................................................................7, 12, 19, 20

*Howmedica Osteonics Corp.* v. *Wright Med. Tech., Inc.*,
540 F.3d 1337 (Fed. Cir. 2008)...............................................................................................16

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004)...............................................................................................16

*Intervet Inc.* v. *Merial Ltd.*,
    617 F.3d 1282 (Fed. Cir. 2010)..................................................................................16

*JVW Enters., Inc. v. Interact Accessories, Inc.*,
    424 F.3d 1324 (Fed. Cir. 2005)..................................................................................16

*KEYnetik, Inc. v. Samsung Elecs. Co.*,
    837 F.App'x 786 (Fed. Cir. 2020) ................................................................11, 12, 15

*Linear Tech. Corp.* v. *ITC*,
    566 F.3d 1049 (Fed. Cir. 2009)..................................................................................16

*NeoMagic Corp. v. Trident Microsys., Inc.*,
    287 F.3d 1062 (Fed. Cir. 2002)..................................................................................23

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)............................................................................11, 12

*Poly-Am., L.P. v. API Indus., Inc.*,
    839 F.3d 1131 (Fed. Cir. 2016)....................................................................................2

*Praxair, Inc. v. ATMI, Inc.*,
    543 F.3d 1306 (Fed. Cir. 2008)..................................................................................17

*Rambus Inc. v. Infineon Techs. AG*,
    318 F.3d 1081 (Fed. Cir. 2003)..................................................................................17

*Saunders Grp.* v. *Comfortrac, Inc.*,
    492 F.3d 1326 (Fed. Cir. 2007)..................................................................................16

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
    242 F.3d 1337 (Fed. Cir. 2001)..............................................................................1, 15

*SignalQuest, Inc. v. Ten-Ming Chou*,
    No. 11-cv-392, JL, 2015 WL 471008 (D.N.H. Feb. 4, 2015)...........................16, 17

*Techtronic Indus. Co. v. Int'l Trade Comm'n*,
    944 F.3d 901 (Fed. Cir. 2019)......................................................................... *passim*

*Trs. of Columbia Univ. in City of N.Y. v. Symantec Corp.*,
    811 F.3d 1359 (Fed. Cir. 2016).............................................................................20, 23

*Unirac, Inc. v. EcoFasten Solar, LLC*,
    Case No., C.A. No. 21-58 (MN), 2022 WL 2702421 (D. Del. July 12, 2022).........17

*Verizon Servs. Corp. v. Vonage Holdings Corp.*,
    503 F.3d 1295 (Fed. Cir. 2007)....................................................................... *passim*

*Voda v. Cordis Corp.*,
   536 F.3d 1311 (Fed. Cir. 2008)...............................................................................17

*Wang Labs., Inc. v. Am. Online, Inc.*,
   197 F.3d 1377 (Fed. Cir. 1999).................................................................................3

*Wastow Enters., LLC v. Truckmovers.com, Inc.*,
   855 F.App'x 748 (Fed. Cir. 2021) ................................................................... *passim*

*Woods v. DeAngelo Marine Exhaust, Inc.*,
   692 F.3d 1272 (Fed. Cir. 2012)...............................................................................16

## I.   INTRODUCTION

Recognizing that the shared specification of the '602 and '051 patents[1] "suggest[s] that [the claimed robot occupies] only one space," the Court asked the parties how it should square this disclosure with the seemingly broader language of certain of the claims.  Ex. 1 (Hr'g. Tr. (AM)) at 49:5–10.  The Federal Circuit has answered this exact question: "[w]here the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001).  Here, the specification makes clear that Ocado's alleged invention does not encompass robots that occupy more than a single grid space.  Ocado tries to escape this fundamental rule by recasting the narrow scope of its own specification, disregarding binding statements it made to the Patent Office, and attacking an irrelevant strawman.  The Court should reject these attempts.

As an initial matter, Ocado is wrong that, for the Court to rule that the '602 patent claims require a robot that "occup[ies] only a single grid space," AutoStore must "show clear and unmistakable disavowal of claim scope."  Dkt. 140, Ex. A ("Brief)" at 18.  The plain and ordinary meaning of the claim term "occupy *a* grid space" is simply "occupy only a single grid space,"[2] particularly when read against the common specification's disclosure of *a single* embodiment: a robot that occupies only a single grid space.  Thus, it is ***Ocado*** who must show the claims are broader than their plain meaning when read together with the specification—***not AutoStore***.  This,

---

[1]   The '051 patent is a continuation of the '602 patent and shares a common specification. Unless otherwise indicated, references to the common specification apply equally to both patents.

[2]   While AutoStore does not agree with Ocado that the Court requested additional briefing regarding the plain meaning of the indefinite article "a" in the "occupy a grid space" limitation (Brief at 1, 16), AutoStore responds to Ocado's arguments here.

Ocado failed to do.  Indeed, Ocado's repeated admissions and disclaimers point to the complete opposite.  Now, rather than concede that its claims are directed to robots that occupy only a single grid space, Ocado pivots yet again, away from what it said in its briefs, and introduces a new proposed definition of  "occupy a grid space": "that the claimed robot must occupy a grid space *and less than an entire adjacent grid space*."  This proposal is not only bizarre; but it was also plucked out of thin air without any support in the intrinsic record.  Brief at 17, n.14.  This alone is reason to reject Ocado's construction.  The Court need go no further.

Yet even if the Court were to reach the "clear and unmistakable disavowal" standard that Ocado pushes, Ocado also disavowed robots occupying more than a single grid space.  And it did so repeatedly.  The '602 patent consistently states that "the load handling device of *the invention* occupies the space above *only one stack* of containers."  *E.g.*, Dkt. 127, Ex. 2 ("'602 patent") at 5:38–47.  Accordingly, this is not a case, like the ones Ocado cites, where the disputed limitation is but one feature of one preferred embodiment.  Quite the contrary:  Ocado's repeated reference to "the present invention" represents clear and unmistakable disavowal of robots occupying more than a single grid space. *E.g.*, *Wastow Enters., LLC v. Truckmovers.com, Inc.*, 855 F.App'x 748, 750 (Fed. Cir. 2021) ("When a patent ... describes the features of the 'present invention' as a whole, this description limits the scope of the invention.") (*quoting Verizon Servs. Corp. v. Vonage Holdings Corp.*, 503 F.3d 1295, 1308 (Fed. Cir. 2007)); *Techtronic Indus. Co. v. Int'l Trade Comm'n*, 944 F.3d 901, 906–910 (Fed. Cir. 2019) (patentee disavowed broader claim scope in part by describing "the present invention" as having the feature at issue); *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131 (Fed. Cir. 2016) (same).

But there is more.  Ocado reaffirmed that the scope of its alleged invention was limited to a robot occupying a single grid space in 2018 and 2020 to overcome prior art and obtain issuance

of the '602 and '051's relatives,[3] *and* in 2022 recited those same statements to the Patent Trial and Appeal Board ("PTAB") to overcome AutoStore's invalidity challenge.  *See, e.g.*, Ex. 2 (U.S. Patent No. 10,000,337 ("'337 patent"), File History, Feb. 7, 2018 Resp. to Office Action), at 13 ("[Prior Art] does not disclose an embodiment having a footprint that *occupies a single grid space* in the storage system."); Ex. 3 (Patent Owner Prelim. Resp., IPR2022-00443, (April 25, 2022)), at 4 ("The '602 Patent describes a compact load-handling device … i.e., *the robot occupies a single grid space in the storage system.*")  Each statement was made at least in part to overcome AutoStore's Hognaland reference, which Ocado contends occupies more than a single grid space. Accordingly, each statement further confirms disavowal of robots that occupy more than a single grid space.  *See Comput. Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1376 (Fed. Cir. 2008) (patentee disavowed scope by distinguishing their invention from prior art during prosecution); *Verizon Servs.* 503 F.3d at 1306 (finding disavowal based on patentee's statements during prosecution of a patent in the same family as the patent-in-suit).

The claim language, common specification, and prosecution history thus all point in one direction: Ocado's alleged invention is a robot that occupies only a single grid space.  The Court should hold Ocado to its repeated representations to the public and the Patent Office and construe the disputed terms accordingly.

## II.     BACKGROUND

### A.     Ocado Purportedly Improved the Prior Art with a Single-Space Robot

More than 10 years before the '602 patent's earliest possible priority date, AutoStore

---

[3]     *Verizon Servs.*, 503 F.3d at 1306 (Fed. Cir. 2007) (patentees' statement during prosecution history of related patent operated as disclaimer); *Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1384 (Fed. Cir. 1999) (applying statements from prosecution of a parent application where subject matter was common to the continuation-in-part application).

invented and commercialized the world's first cubic AS/RS system. This system used robotic vehicles that move atop a grid, lifting and transporting storage bins from the storage columns of the AS/RS system. *See* '602 patent at 2:32-4:38 (describing AutoStore's prior art system); AutoStore's Claim Construction Presentation at 3. AutoStore patented this early system as Norwegian Patent NO317366 ("NO366"). NO366 discloses a robot with: (i) two sets of wheels that allow it to move in perpendicular X- and Y- directions on top of the grid; and (ii) a "cantilever" arm that extends from the robot vehicle to lift and hold the bin:



Ex. 5 (NO366) at Fig. 3, 4:6–10 (annotated). NO366 explains how these robots "block[] access to" two grid spaces. Ex. 5 at 2:30–31. AutoStore began commercializing an embodiment of this invention in the early 2000s as the Red Line: [4]

---

[4]    *AutoStore | Warehouse Robots at Your Service*, https://www.autostoresystem.com/?utm_term=autostore&utm_campaign=P+-+Search+2.0+-+Brand+-+US&utm_source=adwords&utm_medium=ppc&hsa_acc=5520129429&hsa_cam=16605598035&hsa_grp=133944185039&hsa_ad=588683981037&hsa_src=g&hsa_tgt=kwd-297272979331&hsa_kw=autostore&hsa_mt=p&hsa_net=adwords&hsa_ver=3&gclid=EAIaIQobChMI-uir2djt-gIVF-DICh3kWwdkEAAYASAAEgKHOvD_BwE (last visited Oct. 19, 2022).



While NO366 and the Red Line robots advanced the field of automated storage, they had certain disadvantages, such as: (i) having a relatively high center of gravity (which could lead to tipping over); and (ii) and occupying two grid spaces, which limited the number of robots that could operate on the grid at one time.  To address these disadvantages, AutoStore built on the Red Line system and developed the first AS/RS robot that carried a storage bin in an internal cavity. International Patent Application No. WO 2014/090684 A1 ("Hognaland") describes AutoStore's patented design.  Ex. 6 ("Hognaland").  The internal cavity robots provided for "higher stability properties, higher maximum [load] handling weights, a more effective use of available space during operation and a less time consuming lifting and transporting process of storage bins." Hognaland at 1:34–38.

**Alleged Benefit Over the Prior Art: Single Space**

AutoStore's Claim Construction Presentation at 11. It is against this background that Ocado developed its purported invention.

In 2012, Ocado ██████████████████████████████████████. *See, e.g.*, Ex. 7 (Lindbo Witness Statement) at Q/A 47, I.T.C. Inv. No. 337-TA-1228 (June 16, 2021); Dkt. 35 (Second Amended Complaint) at ¶¶ 5–7. According to Ocado, ████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████. *See* Dkt. 35 at ¶¶ 5–9 (discussing the advantages of a single-space robot for use in grocery); *see also* Ex. 7 at Q/A 77. According to Mr. Lindbo, a named inventor of the '602 and '051 patents, to achieve this goal, Ocado purported to invent ███████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████ Ex. 7 at Q/A 77–78; *see also* Dkt. 35 at ¶ 40 ("The '602 Patent describes a more compact load-handling device . . . configured to have a reduced footprint on the storage grid on which the device travels—*i.e.*, a robot that "occupies substantially only a single grid space in the storage system" (a 'Single Space Bot' or 'SSB')."); *id.* at ¶ 41 ("The reduced footprint of the Single Space Bot is accomplished by utilizing

6

a centrally located cavity accessible from the undercarriage of the robot . . . and locating bulky components above rather than to the side of the cavity.").

Ocado's single space robot was described in Great Britain Patent Application 13143113.6 ("GB313"), which Ocado contends serves as the priority document for both the '602 and '051 patents. '602 patent at cover (claiming priority to GB313); Dkt. 127, Ex. 3 ('051 patent) at cover (claiming priority to GB313); Ex. 8 (Ocado's 1st Suppl. Infringement Contentions) at 10. This means, and Ocado accepts, that the full scope of the claims of the '602 and '051 patents must be supported by the disclosure of GB313. *Hologic, Inc. v. Smith & Nephew, Inc.*, 884 F.3d 1357, 1361 (Fed. Cir. 2018) ("To be entitled to the priority date of the earlier-filed [PCT, the patentee] must show that [the] PCT discloses what the [asserted] patent claims."). In GB313, Ocado describes its single-space robot invention as follows: "Advantageously, ***each*** load handling device occupies ***only a single grid space*** in the storage system." Dkt. 132, Ex. 44 (GB313) at 5:38–39; *see also id*. at 6:10–12, 7:40–8:2, 8:8–10. Notably, the GB313 specification ***nowhere*** refers to a robot that occupies "substantially only a single grid space," nor does it include Figure 17 of the '602 and '051 patents.

Like GB313, the '602 and '051 patents' common specification describes the purported invention as a ***single-space robot***:

- "The load handling device has a footprint that, in use, ***occupies only a single grid space*** in the storage system." '602 patent at Abstract (emphasis added).[5]

- "Advantageously, ***the load handling device of the invention occupies the space above only one stack of containers*** in the frame, in contrast to the cantilever design shown in FIGS. 3A to 3C which occupies the space above two stacks." *Id.* at 5:38–42.

- "One benefit of the present invention is that, because ***the load handling devices occupy the space above only one stack***, the efficiency of a multiple-device system can be

---

[5]    All emphases are supplied unless otherwise noted.

improved compared to prior art load handling device designs which occupy two or more stack spaces." *Id.* at 7:61–65.

The common specification consistently and exclusively describes only a single embodiment: a robot that occupies only a single grid space. *E.g.*, *id.* at 4:63–5:6, 5:7–21, 7:3–8, 7:9–24, 7:25–35.

### B. Ocado Distinguished the '602 Patent Claims Over the Prior Art By Arguing that the Prior Art Did Not Show a Single-Space Robot

During the prosecution of the grandparent and parent of the '602 patent, U.S. Patent Nos. 10,000,337 ("'337 patent") and 10,829,302 ("'302 patent"), both of which share a specification with the '602 and '051 patents, Ocado distinguished prior art cited by the United States Patent and Trademark Office ("USPTO") by characterizing its invention as covering only robots that occupy only a single grid space. For example, the examiner rejected the then-pending claims of the '337 patent as anticipated by Hognaland after finding that Hognaland disclosed robots with footprints that occupy substantially only a single grid space. Ex. 9 ('337 patent, File history, Dec. 6, 2017 Non-final Office Action) at 5–6. Ocado argued in response that "Hognaland does not disclose an embodiment having a footprint that ***occupies a single grid space*** in the storage system." *See*, Ex. 2 ('337 patent, File history, Feb. 7, 2018 Resp. to Non-final Office Action), at 13. Ocado went even further, affirmatively describing its purported invention as occupying only a single grid space as part of its response:

As provided in paragraph [0030] of the specification, the load handling device is designed to occupy the space above only one stack of containers in the frame. Moreover, it is

*Id*. at 10.

Similarly, during the prosecution of the parent '302 patent, the patent examiner only allowed the claims to issue because of the alleged novelty of a single-space robot:

> The prior art of record does not disclose or render obvious a storage system as specifically claimed with the structure of the load handling device with the wheel and rail configuration as claimed, ***such that the load handling device has a footprint that occupies only a single grid space in the storage system***.

*See* Ex. 10 ('302 patent, File history, July 9, 2020 Notice of Allowance), at 2. These statements, made to overcome rejections based on prior art, constitute disavowal. *See Computer Docking Station*, 519 F.3d at 1376; *Verizon Servs.*, 503 F.3d at 1306.

Recently, Ocado again described the invention of the '602 patent as a single-space robot, this time to the USPTO's Patent Trial and Appeal Board ("PTAB"). In challenging AutoStore's invalidity petition against the '602 patent before the PTAB, Ocado characterized the common specification of the '602 and '051 patents as "describ[ing] a compact load-handling device (e.g., a robot) configured to have a reduced footprint on the storage grid on which the device travels as compared to prior art systems—***i.e., the robot occupies a single grid space in the storage system***." Ex. 3 (Patent Owner Prelim. Resp., IPR2022-00443), at 4. The PTAB recognized the importance of the single-space requirement to the invention of the '602 patent, noting that "the '602 patent discloses ***a load handling vehicle that 'occupies the space above only one stack of containers in the frame,'*** in contrast to prior art vehicles that occupied the spaces above two stacks of containers." Ex. 11 (Decision Denying Institution, IPR2022-00443), at 3. Ocado's description of its invention to the PTAB also disclaims claim scope. *Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1362 (Fed. Cir. 2017) (holding patentee's statements made "in a preliminary response to an IPR … constitute[d] a clear and unmistakable surrender of claim scope.").

## III.    ARGUMENT

The common specification describes the claimed invention as occupying "the space above ***only one stack*** of containers." '602 patent at 5:38–47; *see also* Section II. When seeking patent protection for its alleged invention, Ocado convinced the USPTO to grant the parent and

grandparent of the '602 patent over the prior art ***because*** its invention was limited to a robot that occupied only a single grid space. Section II.B. And when AutoStore challenged the validity of the '602 patent at the PTAB earlier this year, Ocado defended the patent on the grounds that, unlike the prior art, Ocado's purported invention was a robot that occupied only a single grid space. *Id.* Those characterizations defined the scope of Ocado's purported invention: a robot that occupies only a single grid space, disclaiming anything broader. *Techtronic Indus.*, 944 F.3d at 908; *Verizon Servs. Corp.*, 503 F.3d at 1306; *Aylus Networks, Inc.*, 856 F.3d at 1362.

Ocado now wishes to re-capture what it disclaimed to secure its patents. It seeks to expand the scope of the claims beyond: (1) their plain and ordinary meaning, and (2) the clear descriptions in the common specification and repeated representations it made to USPTO and PTAB about its invention to enlarge the scope of the claims to capture robots that Ocado admits occupy more than a single grid space: AutoStore's Black Line. As explained below, Ocado has identified no case law or intrinsic evidence that warrants deviating from the plain meaning of the claims in light of the common specification and in view of the prosecution history disclaimer.

The Court should reject Ocado's attempt to redefine its claims and hold Ocado to what it actually said it invented: a robot that occupies only a single grid space.

### A.    The Plain and Ordinary Meaning of "Occupy a Grid Space" is a Robot that Occupies Only a Single Grid Space in the Storage System

Ocado contends that AutoStore's proposed construction requires proof that Ocado disclaimed robots covering more than a single grid space. As explained below, Ocado *did* make such a disclaimer. But the Court need not even reach disclaimer in order to construe "occupy a grid space"/"occupying a grid space" in claims 1 and 12 of the '602 patent. Ex. 1 (Hr'g. Tr. (AM)) at 55:6–57:10. Rather, the plain meaning of "occupy ***a*** grid space" is occupy only a single grid space. *See* Dkt. 127 at 21; Dkt. 132 at 13–16. The "claims ***must*** be read in view of the

10

specification," as it "is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (internal quotations omitted). Here, the common specification only describes a robot that occupies a single grid space and attributes the benefits of the invention to that reduced, single-space size:

> Advantageously, ***the load handling device of the invention occupies the space above only one stack of containers in the frame***, ***in contrast to the cantilever design shown in FIGS. 3A to 3C*** which occupies the space above two stacks. ***This means that, by virtue of the invention, the efficiency of operation of the storage system can be improved***, because the reduced footprint allows more load handling devices to be accommodated and reduces the likelihood of one device obstructing the optimum path of another.

*See, e.g.*, '602 patent at 5:38–47; Dkt. 127 (AutoStore's Op. Claim Const. Br. at Section V.A); Dkt. 132 (AutoStore's Reply Claim Const. Br. at Section II.A); Ex. 1 (Hr'g. Tr. (AM)) at 29:12–33:1, 37:5–41:18. Nor is this the only example; the common specification consistently and exclusively describes a robot that occupies only a single grid space. '602 patent at 4:63–5:6, 5:7–21, 7:3–8, 7:9–24, 7:25–35. This demonstrates that the plain meaning of "occupy a grid space" is "occupy only a single grid space." *E.g.*, *KEYnetik, Inc. v. Samsung Elecs. Co.*, 837 F.App'x 786, 792–793 (Fed. Cir. 2020) (reversing "unreasonably broad" construction that did not align with the specification's disclosure or the purpose of the invention); *Harari v. Lee*, 656 F.3d 1331, 1342 (Fed. Cir. 2011) (construing "a bit line" to mean "a single bit line" when read in light of the specification).

By contrast, Ocado's proposed construction[6]—that the claims should be construed to mean

---

[6]   Ocado raised this proposed construction for the first time at the *Markman* Hearing ("Hearing"). Brief 17, n.14; Ex. 1 (Hr'g. Tr. (AM)) at 72:11–13. Ocado originally contended that "no construction was necessary." *See* Dkt. 128 at 20–21 ("a POSITA would understand the 'occupy a grid space' limitation to require a robot that occupies at least one grid space, but not limit the robot's size to only one space."); Dkt. 131-1 at 10. That Ocado cannot articulate a consistent definition of the "plain and ordinary meaning" further illustrates that AutoStore's proposed construction, not Ocado's, represents the plain meaning of the term.

"the robot must occupy at least one grid space and less than one adjacent grid space"—is devoid of intrinsic record support.  When asked where the common specification taught "this 1.5 grid space cut-off," Ocado's expert Dr. Pfeifer flatly conceded that "[i]t doesn't."  Dkt. 132, Ex. 38 (Pfeifer Dep. Tr.) at 133:8–15.  Nor does Ocado identify *any* disclosure in the common specification or prosecution history of a robot that occupies more than a single grid space in its Brief.  As this Court recognized, none exists.  Ex. 1 (Hr'g. Tr. (AM)) at 49:8–10.

Ocado argues that the common specification's occasional use of "substantially" supports its proposed construction.  Brief at 6.  Not so.  Ocado contends that the '602 and '051 patents are entitled to GB313's priority date, which means the disclosure of GB313 must support the scope of the asserted claims.  *See* Section II.A; *Hologic*, 884 F.3d at 1361.  The GB313 specification exclusively refers to a robot that occupies only a single grid space and *nowhere* refers to a robot that occupies "substantially" only a single grid space.  *See* Section II.A.  "Occupies only a single grid space" must therefore have the same meaning as "occupies substantially only a single grid space," as Ocado repeatedly represented to the European Patent Office.  *See* Dkt. 132 at 17; AutoStore's Claim Construction Presentation at 23.  Ocado therefore cannot rely on the word "substantially" to save its proposed construction, which does not align with the specification's teachings and should be rejected.  *E.g.*, *KEYnetik*, 837 F.App'x at 792–793; *Phillips*, 415 F.3d at 1316 ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.").

Lacking support in the intrinsic record for its proposed construction, Ocado confuses matters by arguing that AutoStore took "a very different position" regarding the construction of "a" in the parallel ITC proceedings.  Brief at 16.  In reality, it was *Ocado* that took the inconsistent position during the ITC proceedings.  At issue in the ITC proceedings was the term "a displacement

12

motor" in claim 1 of U.S. Patent No. 10,294,025 ("the '025 patent"). Contrary to its position here, Ocado argued that "a" in claim 1 of the '025 patent should be limited to "one." Ex. 12 (Ocado Response to Petition for Review), at 79. AutoStore's Federal Circuit appellate brief addresses that argument, explaining that "a" typically means "one or more," **_unless the claims, specification, or prosecution history demonstrate otherwise._** Ex. 13 (Appellate Brief) at 28–29.[7] Indeed, "[w]hen the claim language and specification indicate that 'a' means one and only one, it is appropriate to construe it as such." *Harari*, 656 F.3d at 1341. The '025 patent specification explicitly describes an embodiment that includes the use of two displacement motors. *See* Ex. 13 (AutoStore Fed. Circuit Br.) at 13–14, 19–20, 24, 28–33; *see* Ex. 14 ('025 patent) at 8:1–4. Thus, the typical construction of "a" meaning "one or more" is the appropriate construction in that context. *See Crystal Semiconductor Corp. v. TriTech Microelecs. Int'l*, 246 F.3d 1336, 1351 (Fed. Cir. 2001) (construing "a first clock signal" to mean "one or more clocks" where the specification disclosed an embodiment that used two clocks); Ex. 1 (Hr'g. Tr. (AM)) at 26:17–28:16. By contrast, the common specification and prosecution history here overwhelmingly indicate that "occupy *a* grid space" means occupy only a **single** grid space. *See* Section II; *Harari*, 656 F.3d at 1342.

Ocado also argues that should the Court construe "occupy a grid space" to mean the robot occupies only one grid space, "several claim limitations become meaningless verbiage." Brief at 17. This argument is a red herring, as all of these "limitations"— the "No Extension Limitation," "occupy a grid space," and the "No Obstruction Limitation"— work together to describe the same

---

[7]    Ocado omits the quotation indicators and citations to *Baldwin Graphics Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008) from the AutoStore Fed. Circuit Brief text that Ocado cites on pages 16–17 of its Brief. Notably, *Baldwin* also states that "where the language of the claims themselves, the specification, or the prosecution history necessitate a departure from the rule," there is an exception to the general rule that "a" means "more than one." *See Baldwin*, 512 F.3d at 1343.

invention: a single-space robot. As AutoStore has explained, this becomes apparent when looking

at the claim language as a whole. The pertinent language of claim 1 reads:

> A storage system comprising:
>
> *        *        *
>
> a multiplicity of load handling devices, wherein each load handling device includes:
>
> *        *        *
>
> a side of the external housing facing the Y-direction extending no further, in the Y-direction, than the first set of wheels on that side of the load handling device, and a side of the external housing facing the X-direction extending no further, in the X-direction, than the second set of wheels on that side of the load handling device, _**such that**_ a load handling device of the multiplicity of load handling devices will occupy a grid space _**and**_ will not obstruct a load handling device of the multiplicity of load handling devices occupying or traversing an adjacent grid space in the X-direction and will not obstruct a load handling device of the multiplicity of load handling devices occupying or traversing an adjacent grid space in the Y-direction.

'602 patent, Claim 1. When placed in the proper context, the claim requires a robot housing cannot

extend further than the wheels, and as a result: (1) the robot will occupy a grid space, and (2) the

robot will not obstruct another load handling device occupying or traversing through an adjacent

grid space in the X- or Y- direction. *See* Ex. 1 (Hr'g. Tr. (AM)) at 42:11–43:4, 104:9–19. The

claim language makes clear that "occupy a grid space" and the "No Obstruction Limitation" are

not additional elements, but rather a description of the result of the "No Extension Limitation,"

which is describing a single-space robot.   And AutoStore explained, the "No Obstruction

Limitation" is not superfluous in this context: even where the robot physically sits within the space

of a single grid space (and thus satisfies "occupy[ing] a grid space") the "No Obstruction

Limitation" precludes things like arms or extensions that stick out that would obstruct robots

occupying or traversing adjacent grid spaces. Ex. 1 (Hr'g. Tr. (AM)) at 108:9–109:9; *see also* Dkt.

132 at 21.  Indeed, if anything it is Ocado's proposed construction that renders "occupy a grid

space" superfluous, as its expert could not articulate *any* impact on the scope of the claim if

"occupy a grid space" were cut out. *See* Dkt. 132, Ex. 38 (Pfeifer Dep.) at 122:19–25.

Thus, when considering all of the intrinsic evidence, "occupy a grid space" should be

construed consistent with the plain and ordinary meaning of the term: a load handling device will occupy only a single grid space.

### B.    Ocado's Proposed Construction Impermissibly Expands the Scope of '602 And '051 Patents Beyond What the Specification and Prosecution History Demonstrate Ocado Invented—a Single-Space Robot

As explained above, the plain and ordinary meaning of the claims in light of the specification covers robots that occupy only a single grid space. Section III.A; *see also* Ex. 1 (Hr'g. Tr. (AM)) at 49:8–10. But the specification and file history, read together, go further and disclaim Ocado's made-for-litigation construction. "Where the specification makes clear that the invention does not include a particular feature, that feature is deemed to be outside the reach of the claims of the patent, even though the language of the claims, read without reference to the specification, might be considered broad enough to encompass the feature in question." *SciMed*, 242 F.3d at 1341. "A construction that is unreasonably broad and does not reasonably reflect the plain language and disclosure of the patent will not pass muster." *KEYnetik*, 837 F.App'x at 792.[8]

This binding precedent goes unrecognized with Ocado, who instead attacks a strawman, arguing that patent claims are not necessarily limited by the features of a preferred embodiment. Brief at 1–2. True enough, but that is not the issue here. Unlike the cases Ocado cites, Brief at 1–2 (citing cases), not only is the sole embodiment in the '602 and '051 patents a single-space robot, but ***the entire intrinsic record*** confirms that the alleged invention was a robot that occupies only

---

[8]    As AutoStore explained at the Hearing, while the plain and ordinary meaning of the '051 Patent's claims might appear broader than the common specification's disclosure, and thus require disavowal, not so for the '602 Patent. Ex. 1 (Hr'g. Tr. (AM)) at 55:6–57:10. Rather, consistent with the descriptions of the claimed invention in the specification, the plain meaning of "occupy *a* grid space" is occupy only a single grid space. *See* Dkt. 132 (AutoStore Reply Claim Construction Brief) at 13-15; Section III.A.

a single grid space:[9]

- The common specification repeatedly states that "the load handling device *of the invention* occupies the space above *only one stack* of containers." '602 patent at 5:38–47; *see also* Section II; *Wastow Enters.*, 855 F.App'x at 750 ("When a patent ... describes the features of the 'present invention' as a whole, this description limits the scope of the invention.").

- Ocado only obtained its patent after distinguishing AutoStore's prior art internal cavity robot on the basis that it occupied more than a single grid space. Ex. 2 at 13; *see also* Section II.B.

- Ocado told the PTAB in *April 2022* that its purported invention was a "robot [that] occupies a single grid space." Ex. 3 at 4; *see also* Section II.B.

*SignalQuest, Inc. v. Ten-Ming Chou* also does not support Ocado's position.  Brief at 2–3 (*citing SignalQuest, Inc. v. Ten-Ming Chou*, No. 11-cv-392, JL, 2015 WL 471008 (D.N.H. Feb. 4, 2015)). There, the patent at issue disclosed multiple preferred embodiments that lacked the purportedly required feature and included dependent claims containing the feature, implying that the

---

[9]      *See Apple Inc. v. Wi-LAN Inc.*, 25 F.4th 960, 967–968 (Fed. Cir. 2022) (specification did not describe the feature at issue as "the present invention" or even as important); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1122 (Fed. Cir. 2004) (specification disclosed multiple embodiments that lacked the purportedly required feature); *JVW Enters., Inc. v. Interact Accessories, Inc.*, 424 F.3d 1324, 1329–35 (Fed. Cir. 2005) (construing the function and structure of a means-plus-function term); *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309–10 (Fed. Cir. 2014) (specification did not describe the feature at issue as "the present invention," did not disparage prior art or other embodiments, and claim differentiation applied); *Aria Diagnostics, Inc. v. Sequenom, Inc.*, 726 F.3d 1296, 1301 (Fed. Cir. 2013) (specification included multiple examples that lacked the purportedly required feature); *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1284–85 (Fed. Cir. 2012) (specification and dependent claims disclosed multiple embodiments that lacked the purportedly required feature); *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1287–89 (Fed. Cir. 2010) (specification made clear the included examples were merely "representative of" a "type of" the invention and did not limit the invention to only those examples); *Linear Tech. Corp. v. ITC*, 566 F.3d 1049, 1056–58 (Fed. Cir. 2009) (specification disclosed embodiments that lacked the purportedly required feature); *Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*, 540 F.3d 1337, 1345 (Fed. Cir. 2008) (specification did not describe the feature at issue as "the present invention" nor disparage prior art or other embodiments,); *Saunders Grp. v. Comfortrac, Inc.*, 492 F.3d 1326, 1332 (Fed. Cir. 2007) (specification did not describe the feature at issue as essential or important nor did it criticize the prior art based on the lack of the feature at issue).

16

independent claim was broader.  *Id.* at \*4–\*5 (reading a limitation from one embodiment into the claim was inappropriate where two of the four preferred embodiments did not require the limitation).  No such facts exist here.

Ocado's arguments regarding the patents' description of "the present invention" is similarly unavailing.  Brief at 3.  "When a patent ... describes the features of the 'present invention' as a whole, this description limits the scope of the invention."  *Wastow Enters.,* 855 F. App'x at 750 (*quoting Verizon Servs.*, 503 F.3d at 1308).  In each of the cases cited by Ocado, the Court held that the specification's use of "the present invention" did not limit the scope of the invention, however, because it did not refer to the invention "as a whole," but rather only to optional features and embodiments.[10]  By contrast, here the common specification only describes a single-space robot and repeatedly states that "the load handling device of *the invention* occupies the space above *only one stack* of containers."[11] '602 patent at 5:38–47; *see also id*. at 7:61–8:3 (same); Dkt. 127, Ex. 13 (Derby Rebuttal Dec.) at ¶¶ 42, 45.

Ocado's attempt to analogize this case to *Unirac, Inc. v. EcoFasten Solar, LLC*, Case No.,

---

[10]    *See Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 798 (Fed. Cir. 2019) (specification described disputed feature as merely "one way to carry out the present invention"); *Absolute Software, Inc. v. Stealth Signal, Inc.*, 659 F.3d 1121, 1137 (Fed. Cir. 2011) (specification described disputed feature as one of "two optional features of the 'present invention'"); *Rambus Inc. v. Infineon Techs. AG*, 318 F.3d 1081, 1094 (Fed. Cir. 2003) ("present invention" did not limit claim scope because other "references to 'bus' in the specification d[id] not limit the ordinary meaning of this term."); *Voda v. Cordis Corp.*, 536 F.3d 1311, 1320-21 (Fed. Cir. 2008) ("present invention" did not limit claim scope because specification expressly described other embodiments without the disputed feature); *Praxair, Inc. v. ATMI, Inc.*, 543 F.3d 1306, 1326 (Fed. Cir. 2008) (same); *Creative Integrated Sys., Inc. v. Nintendo of Am., Inc.*, 526 F. App'x 927, 934 (Fed. Cir. 2013) (same).

[11]    AutoStore's position here is not inconsistent with the position it took in the ITC.  Brief at 3, n.3.  Contrary to Ocado's representation, the '525 Patent did *not* describe "the present invention" as being "'characterized' by specific features," as the Chief Administrative Law Judge expressly held: "[t]he only sentence that uses the term 'present invention' provides a description that is unrelated to [Ocado's] proposed construction."  Brief, Ex. 2 at 20.

C.A. No. 21-58 (MN), 2022 WL 2702421 (D. Del. July 12, 2022) also fails. Brief at 3–4. As Ocado acknowledges, the Court in *Unirac* concluded there was no disavowal because: (i) the patents at issue included independent claims both with and without the disputed feature; and (ii) the specification included language describing the feature as not required. Brief at 3–4. Neither is true here.

*First*, both independent claims of the '602 patent require a robot that "occup[ies] a grid space." '602 patent at claims 1, 12. Ocado argues that because "other patents within the same patent family" claimed "a robot that occupies only a single grid space," this suggests that "occupy a grid space" must mean something different here. Brief at 4. The Federal Circuit has expressly rejected this argument: "the fact that [Ocado] obtained more modest claims in its parent patent does not inoculate it from the specification's disavowal." *Techtronic Indus.*, 944 F.3d at 909–10.

*Second*, nothing Ocado identifies on pages 4–6 describes anything other than a single-space robot. Ocado's first bullet omits the immediately preceding passages, which expressly describe *"the present invention"* as occupying *only a single grid space*. *See* '602 patent at 5:38–47 ("the load handling device of *the invention* occupies the space above *only one stack* of containers."), 7:61–65 ("One benefit of *the present invention* is that, because the load handling devices *occupy the space above only one stack*, the efficiency of a multiple-device system can be improved compared to prior art load handling device"). Ocado's argument that "there is no statement that (i) limits the reduced-size robot to a single-space robot or (ii) excludes, e.g., a robot that occupies a grid space and a small portion of one adjacent grid space" is thus simply wrong. *E.g.*, *Wastow Enters.*, 855 F. App'x at 750 ("When a patent ... describes the features of the 'present invention' as a whole, this description limits the scope of the invention."); *Techtronic Indus.*, 944 F.3d at 908 ("consistently representing the invention as the placement of the detector in the wall

18

console, has thus effected a disavowal of alternative locations.").

In the second bullet on page 5, Ocado argues that Figure 17 supports its construction of a robot that occupies "more than one" but "less than two grid spaces," but that argument fails at the outset: as Ocado concedes, "Figure 17 still shows a single-space embodiment." Brief at 5. Indeed, Figure 17 shows the wheels on the **outside** of the body. '602 patent at Fig. 17. Because the wheels must be on tracks that surround the grid (or the robot could not move), the body is necessarily within a single grid space, making the robot a single-space robot (as Ocado concedes). With the constraint of wheels being on the **outside** of the body and having to lay on tracks, the only other possibility would be for the robot to cover at least **two** full cells (otherwise the wheels would not be on the tracks), something that Ocado concedes was already in the prior art and that it distinguished over (*see* Brief at 17, n.14 (conceding that the claimed robot could not occupy "two full adjacent grid spaces" because that was already covered by "the prior art cantilever robot")). Figure 17 is also absent from GB313 (Dkt. 132, Ex. 44), and thus it cannot add anything beyond the other single-space robot disclosures, because Ocado has already taken the position that the '602 patent claims find all of their support in GB313. *See* Section II.A; Dkt. 132 at 17–18; *Hologic*, 884 F.3d at 1361 ("To be entitled to the priority date of the earlier-filed [PCT, the patentee] must show that [the] PCT discloses what the [asserted] patent claims.").

Ocado's third bullet is wrong that the reference to "[t]he present invention" at 1:6–10 is the "kind of inconsistent usage [that] typically negates disavowal." Brief at 6. In the cases cited by Ocado, the courts held that "the present invention" did not constitute disavowal, in part, because the specifications at issue "use[d] 'present invention' in a way that expressly contradict[ed] earlier references to 'present invention.'" *Absolute Software*, 659 F.3d at 1137; *see also* n.3, *supra*. Here, the language at 1:6–10 appears in the "Field of the Invention" section and describes the invention

19

as a whole; it simply does so at the highest level of abstraction: "[t]he present invention relates to [sic] apparatus for retrieving units form [sic] a storage system." '602 patent 1:6–10. In any event, "[t]his single sentence … cannot overcome the overwhelming evidence in other parts of the specification … demonstrating that the intended definition of this term" is a load handling device that occupies only a single grid space. *Trs. of Columbia Univ. in City of N.Y. v. Symantec Corp.*, 811 F.3d 1359, 1366 (Fed. Cir. 2016).

Ocado's fourth bullet again mischaracterizes the common specification. Brief at 6. The common specification does ***not*** describe a robot that occupies only a single grid space as "advantageous," *i.e.*, as a mere "preferred embodiment[,]" but rather: "Advantageously, ***each load handling device*** occupies substantially only a single grid space in the storage system." '602 patent 5:5–6; *id.* at 5:38–40 (same). That is, the advantage/benefit of occupying substantially only a single grid space is present in each load handling device according to the invention.

Finally, Ocado's fifth bullet again relies on the common specification's occasional reference to a robot that "occupies substantially only a single grid space." Brief at 6. But, as discussed above, Ocado contended that the '602 and '051 patents are entitled to claim priority to GB313. Section II.A. This has consequences: the full scope of the claims of the '602 and '051 patents must be supported by the disclosure of GB313. *E.g.*, *Hologic*, 884 F.3d at 1361. GB313 ***never*** uses the word "substantially." *E.g.*, Dkt. 132, Ex. 44 at 5:35–39; Section II.A. "Occupies only a single grid space" must therefore have the same meaning as "occupies substantially only a single grid space." *Hologic*, 884 F.3d at 1361; Dkt. 132 at 17 (explaining how Ocado repeatedly told the European Patent Office they meant the same thing).

In sum, the intrinsic record is clear: the purported invention is a robot that occupies only a single grid space. The Court should construe the disputed terms accordingly. *Wastow Enters.*,

20

855 F. App'x at 750; *Techtronic Indus.*, 944 F.3d at 909–10.

    **C.**    **Ocado's Irrelevant Discussion of Unclaimed Features of Prior Art Systems Does Not Support its Construction of "Occupy a Grid Space"**

The Court asked how the prior art robots compared to Ocado's alleged invention. Brief at 1; Ex. 4 (Hr'g Tr. (PM)) at 4:13–5:6. Rather than address this question, Ocado spends several pages describing the purported features of prior art systems with "single-single rails" and "single/double rails." Brief at 6–10. As AutoStore explained at the Hearing, this is a distraction: single rails versus double rails is not described anywhere in the common specification as an aspect of the purported invention.[12] Ex. 1 (Hr'g. Tr. (AM)) at 95:3–11, 97:10–18. Moreover, the claims of the '602 patent do not even require "double/double rails." *See* '602 patent at Claim 1. Rather, the claims merely require "a first set of parallel rails or tracks extending in an X-direction, and a second set of parallel rails or tracks extending in a Y-direction transverse to the first set of rails or tracks," *i.e.*, what Ocado describes as "single-single rails":



---

[12]    To the extent Ocado suggests that "double/double rails" were not known in the prior art, the common specification forecloses that conclusion. The common specification's Figure 2 illustrates how AutoStore's prior art system contained "double/double rails." '602 patent, at Fig. 2 (top-down view of AutoStore's prior art system), 2:32-37, 8:10-14.

*See* '602 patent at Claim 1.  In short, whether the system includes "single-single," "single/double," or "double/double" rails is irrelevant to the claim construction dispute at issue: whether the alleged invention of the '602 patent is limited to a robot that occupies a single grid space.  As described above, it is.  *See* Sections III.A–B.

A comparison of AutoStore's prior art devices to the claimed invention further supports this conclusion.  Both the Red Line and Hognaland disclose robots that occupy more than a single grid space.  *See* Section II.A.  The common specification differentiates Ocado's alleged invention from the Red Line based on Ocado's robot occupying only a single grid space.  *E.g.*, '602 patent at 5:38–42 ("the load handling device of the invention occupies the space above only one stack of containers in the frame, in contrast to the cantilever design shown in FIGS. 3A to 3C which occupies the space above two stacks.").  And when the patent office rejected Ocado's purported invention during prosecution in light of Hognaland, Ocado argued that "Hognaland does not disclose an embodiment having a footprint that ***occupies a single grid space*** in the storage system" in contrast to Ocado's alleged invention.  *See* Ex. 2 at 11–13.  These characterizations were independent of any rail configuration and Ocado is bound by them now.  *E.g.*, *Techtronic Indus.*, 944 F.3d at 908 ("consistently representing the invention as the placement of the detector in the wall console, has thus effected a disavowal of alternative locations."); *Verizon Servs.*, 503 F.3d at 1306 (patentee's statements during prosecution of a patent in the same family as the patent-in-suit constituted disavowal).

Ocado's final argument, that robots that occupy "slightly more" than a single grid space may still realize some space efficiencies as compared to the prior art cantilever robots, also fails.  Ocado does not identify a single disclosure in the common specification or prosecution history that describes a robot that occupies more than a single grid space.  *See generally*, Brief at 14–16.  At

22

best Ocado points to Figure 17 (in the context of AutoStore's B1), but Ocado concedes that even Figure 17 is "a single-space embodiment." Brief at 5. Indeed, the specification, prosecution history, and claim language all make clear that "occupy a grid space" means "occupy only one grid space." *See* Sections III.A–B; *Techtronic Indus.*, 944 F.3d at 908; *Verizon*, 503 F.3d at 1306. Ocado's made-for-litigation argument is thus not enough to support Ocado's attempt to deviate from the clear scope of its purported invention: a single space robot.[13] *See, e.g.*, *Trs. of Columbia Univ.*, 811 F.3d at 1366 ("[a] single sentence in the specification cannot overcome the overwhelming evidence in other parts of the specification and the provisional application … demonstrating that the intended definition of this term does not include information other than machine code instructions.").

## IV.    CONCLUSION

The claim language, common specification, and prosecution history all describe the purported invention as a narrow improvement over the prior art: a robot that occupies only a single grid space. The Court should construe the claims of the '602 and '051 patents consistent with this intrinsic evidence and adopt AutoStore's proposed construction.

---

[13]    Ocado also points to AutoStore's B1 robot, an accused product, as purportedly supporting its proposed construction. Brief at 14–15. While this reveals the purpose behind Ocado's proposed construction (to manufacture an infringement argument) it is legal error, as claims must be construed without reference to the accused product. *See NeoMagic Corp. v. Trident Microsys., Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims may not be construed by reference to the accused device."); *see also* Ex. 1 (Hr'g. Tr. (AM)) at 49:14–18 (AutoStore explaining that allegedly embodying commercial products are not relevant to claim construction).

Dated: October 20, 2022

Respectfully submitted,

AUTOSTORE SYSTEM INC. and
AUTOSTORE AS,

By their attorneys,

/s/  Robert R. Lucic

Robert R. Lucic (NH Bar #9062)
Bryanna K. Devonshire (NH Bar #269462)
SHEEHAN PHINNEY BASS & GREEN PA
1000 Elm Street, PO Box 3701
Manchester, NH 03105
Telephone:  (603) 627-8188
rlucic@sheehan.com
bdevonshire@sheehan.com

Gregg F. LoCascio, P.C. (admitted *pro hac vice*)
Emily M. Scott (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone:  (202) 389-5000
glocascio@kirkland.com
emily.scott@kirkland.com

Joseph A. Loy, P.C. (admitted *pro hac vice*)
Nathaniel DeLucia (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-4800
jloy@kirkland.com
nathaniel.delucia@kirkland.com

Ali-Reza Boloori (admitted *pro hac vice*)
Josh Glucoft (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone:  (310) 552-4200
ali-reza.boloori@kirkland.com
josh.glucoft@kirkland.com

Kristina R. Cary (admitted *pro hac vice*)

24

Tiffany Knapp (admitted *pro hac vice*)
KIRKLAND & ELLIS LLP
200 Clarendon Street
Boston, MA 02116
Telephone:  (617) 385-7500
kristina.cary@kirkland.com
tiffany.knapp@kirkland.com

*Attorneys for Defendants AutoStore AS and*
*AutoStore System Inc.*

25

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and paper copies will be sent to those indicated as non-registered participants on this 20th day of October, 2022.

*/s/ Robert R. Lucic*

Robert R. Lucic
