|  |  |
|---|---|
| OCADO INNOVATION LTD. and<br>OCADO SOLUTIONS LTD.,<br><br>               Plaintiffs,<br>      v.<br><br>AUTOSTORE AS and<br>AUTOSTORE SYSTEM INC.,<br><br>               Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No. 1:21-cv-00041-JL<br><br>**Hon. Joseph N. Laplante** |

## OCADO'S SUPPLEMENTAL CLAIM CONSTRUCTION BRIEF

Pursuant to the Court's December 28, 2022 Summary Order (Dkt. No. 159), Ocado files this short supplemental submission to address inconsistencies between AutoStore's new prior art references and its indefiniteness arguments for the terms "route," "potential for a collision," and "real time," as used in the '404 and '770 Patents. AutoStore argues that the terms "route/path," "potential for a collision," and "real time" are indefinite because a POSITA would not understand the scope of those limitations with reasonable certainty. AutoStore's new references undermine AutoStore's indefiniteness positions for two main reasons. First, AutoStore and its experts had no trouble understanding the terms at issue with reasonable certainty to identify alleged prior art, which is a process that requires understanding the scope of a claim limitation and then looking for that same concept in materials that might qualify as prior art. Second, AutoStore's new references demonstrate that the authors of the references understood the disputed terms quite well because they used them without further definition or elaboration in the new references, as shown below.

As a preliminary matter, there is no merit to AutoStore's argument that these inconsistencies should be ignored because AutoStore purportedly identified new prior art using

*Ocado's* claim construction for each term. There may have been validity to that argument if the parties offered competing interpretations—*e.g.*, AutoStore hypothetically argued that "potential for a collision" meant a 50% or greater probability of collision, while Ocado hypothetically argued that "potential for a collision" meant a 20% or greater probability of collision. In that entirely hypothetical situation, AutoStore could—for the sake of argument—adopt Ocado's interpretation to identify alleged prior art that used a threshold above 20% and below 50%. But here, the situation is entirely different. AutoStore says each claim term is indefinite because a POSITA could not reasonably understand the scope and meaning of each term, and Ocado says the term is not indefinite. With regard to "route/path" and "potential for a collision," Ocado's position was "[n]o construction necessary / ordinary meaning" (Dkt. No. 131-1 at 34, 40), and with regard to "real time," Ocado's proposed construction did not address the issue that AutoStore contends makes the term indefinite (*id.* at 43).* Thus, there was no construction for AutoStore to "adopt" in identifying prior art. If AutoStore's indefiniteness arguments have merit—and they do not—AutoStore and its experts would not have been able to discern the scope of the at-issue terms with reasonable certainty and thus would not, at this stage of the proceedings, have been able to identify alleged prior art that satisfies the terms.

At a minimum, there is tension between (i) the argument that AutoStore and its experts are unable to understand the scope and meaning of the claim language, and (ii) their demonstrated ability to understand the scope and meaning of that claim language by purporting to identify prior

---

* AutoStore claims that "real time" is indefinite because the '770 Patent fails to identify a specific latency period that defines "real time" control (*e.g.*, a response time of 50 milliseconds, 2 seconds, or 10 seconds). Ocado's proposed construction does not identify a proposed latency period, and thus there was nothing for AutoStore to "adopt" that would fix its purported indefiniteness issue. AutoStore and its experts apparently understood the scope of "real time" with reasonable certainty despite there being no latency period, and they identified prior art without one.

art that falls within it.  That tends to show that the claim terms are not indefinite because they can be understood by a POSITA with reasonable certainty.

### A.     "route" ('404 Patent)

Claim 20 of the '404 Patent provides a three-step method for directing the movement of each robot:  (1) determining a "route" from one location to another location on the grid; (2) reserving a "path" on the grid "based on the determined route"; and (3) providing a clearance instruction for the robot to traverse "a portion of the reserved path."  ('404 Patent claim 20.) AutoStore argues that "route" and "path" must have different meanings, and a POSITA would not reasonably understand the scope of each term.  (Dkt. No. 132 at 38.)  AutoStore rejects the position—conceded by its own expert—that a POSITA readily would understand the individual terms "route" and "path" to be interchangeable. (Dkt. No. 133 at 33.)  AutoStore's indefiniteness position is refuted by Vivaldini 2, one of AutoStore's new references.

Vivaldini 2 uses "route" and "path" interchangeably, exactly as Ocado's expert and AutoStore's expert testified a POSITA would understand those terms.  Vivaldini 2 opens with: "The *routing* task may be understood as the process of simultaneously selecting appropriate *paths* for the AGVs . . . among different solutions."  (Dkt. No. 151-12 at 1 (emphasis added).)  Later, it states: "The *routing* system uses the A* algorithm in the local *path* planning" (*id*. at 6 (emphasis added)), and "[Our Routing system] guarantees optimized *routes* before sending the final *paths* to the robotic forklifts" (*id*. at 7 (emphasis added)).  Vivaldini 2's interchangeable use of "route" and "path" is consistent with the '404 Patent—each uses "route" and "path" interchangeably to refer to a travel sequence for a robot.  A POSITA would understand with reasonable certainty that "route" and "path," as used in claim 20 of the '404 Patent, are interchangeable terms that refer to the same thing—a series of grid coordinates for the robot to traverse.  That equivalency does not

create redundancy in claim 20 because the first step of the method is "determining" a route, while the second, distinct step is "reserving" a path based on the determined route. Those limitations obviously are different despite a POSITA's clear understanding that the individual terms "route" and "path" are interchangeable: The first refers to a particular set of grid coordinates that is determined for the robot to traverse, while the second refers to a possibly different (*e.g.*, more limited) set of grid coordinates that is reserved "based on" the first set.

### B. "potential for [a/the] collision" ('770 Patent)

The '770 Patent describes a system and method for controlling robot movement that involves withholding a clearance command if there is the "potential for a collision" between two robots. ('770 Patent claims 1, 8-12, 27, 29.) AutoStore argues that a POSITA would not understand with reasonably certainty what "potential for a collision" means because the '770 Patent "does not explain how high the probability of collision must be for there to be 'a potential for a collision.'" (Dkt. No. 127 at 45 (citation omitted).) In effect, AutoStore argues that the Court should "construe the claim to require [a] probability [threshold]" but conclude that it is indefinite because "there is no probability [threshold]" disclosed in the patent. (Dkt. No. 157 at 14:15-19.)

Orita, another of AutoStore's new references, entirely undermines this argument. Orita is consistent with Ocado's position that a POSITA would understand that the claim language does not contemplate a probability threshold (*e.g.*, a 50% or greater chance of collision), and it instead refers to a determination, based on the information known to the system, that there is no collision possibility if the next command were to issue. (Dkt. No. 151-9.) Specifically, Orita discusses "a possibility of collision"—nearly identical to the language in the specification of the '770 Patent ('770 Patent 18:19-21)—without any reference to a probability threshold. (Dkt. No. 151-9 at

[0015].) Orita shows that a POSITA would understand the concept of determining a collision potential/possibility without any need for a numeric probability threshold, and there is no indefiniteness.

### C. "real time" ('770 Patent)

Claim 21 of the '770 Patent describes a control system that is "configured to control operations of the plurality of transporting devices in real time." ('770 Patent claim 21.) AutoStore argues that a POSITA would not understand the meaning of "real time" with reasonably certainty because there is no specifically defined latency period for what constitutes "real time" control. Vivaldini 2 contradicts AutoStore's position because it refers to "real time control" as a well-understood concept without defining a latency period. In other words, it is evidence that a POSITA would understand the metes-and-bounds of "real time control" without the need for additional information. Vivaldini 2 discusses two papers from the early 2000s that implemented "real time control" and avoided robot collisions "in [a] real time manner," without any reference to a specific amount of latency. (Dkt. No. 151-12 at 1.) It thus is inconsistent with AutoStore's argument that a POSITA would not understand the meaning of "real time" in the absence of a specifically defined latency period, and AutoStore's indefiniteness argument respectfully should be rejected.

*     *     *

For each of the three above-identified terms, a POSITA would understand their scope and meaning with reasonable certainty. AutoStore's and its experts' ability to identify alleged prior art within the scope of those terms—with alleged prior art that uses each term without additional information or elaboration—supports Ocado's position and contradicts AutoStore's. For these reasons, and the many others set forth in Ocado's claim construction briefs and at oral argument,

-5-

Ocado respectfully asks the Court to find that AutoStore did not carry its clear and convincing evidence burden to demonstrate that each term is indefinite.

Date: January 5, 2023

Respectfully submitted,

*/s/ Henry C. Quillen*
Henry C. Quillen
New Hampshire Bar No. 265420
WHATLEY KALLAS, LLP
159 Middle Street, Suite 2C
Portsmouth, New Hampshire  03801
Tel:  (603) 294-1591
Fax:  (800) 922-4851
Email:  hquillen@whatleykallas.com


Garrard R. Beeney
Marc De Leeuw
Dustin F. Guzior
Stephen J. Elliott
Laurie N. Stempler
Alexander N. Gross
Mark C. Bennett
Michael T. Lemanski
Austin P. Mayron
Navraj S. Dhillon
*Admitted pro hac vice*
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York  10004
Tel:  (212) 558-4000
Fax:  (212) 558-3588
Email:  Ocado_DNH@sullcrom.com

*Counsel for Plaintiffs Ocado Innovation Ltd.*
*and Ocado Solutions Ltd.*